IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

KEVIN B. MERRILL, et al.

    Defendants.

Civil Action No. RDB-18-2844

## MEMORANDUM & ORDER

On September 11, 2018, a grand jury in the District of Maryland returned an indictment charging Defendants Kevin B. Merrill ("Merrill"), Jay B. Ledford ("Ledford"), and Cameron Jezierski ("Jezierski") with numerous counts, including wire fraud, identity theft, and money-laundering. *See United States v. Kevin B. Merrill, et al.*, Criminal No. RDB-18-0465 (ECF No.1, unsealed on September 18, 2018, ECF No. 12.)

On September 13, 2018, the Securities and Exchange Commission ("SEC") filed a Complaint (ECF No. 1) alleging that Merrill, Ledford, and Jezierski (collectively, the "Defendants") raised more than $345 million from over 230 investors to purportedly purchase consumer debt portfolios. The SEC alleges that from at least 2013 to the present, the Defendants operated a Ponzi-like scheme that involved, among other things, securities offerings "rife with misrepresentations," fake debt, forged signatures, fabricated wire transfers, the movement of millions of dollars into personal accounts,

and an elaborate scheme wherein Defendants offered and sold investments in the same debt and/or debt portfolios, to multiple victims. (Compl., ECF No. 1 at ¶ 1.) Of the $345 million, more than $90 million was invested by over 200 individual investors, approximately $52 million by family offices, and nearly $203 million by feeder funds. (*Id.* at ¶ 2.)

This Court appointed a temporary Receiver on the same day the SEC filed its Complaint. (ECF No. 11.) On October 4, 2018, this Court entered a Preliminary Injunction Order continuing the appointment of the Receiver. (ECF No. 28.) On October 25, 2018, this Court permitted the Government to intervene and stayed the proceedings in this case. (ECF No. 42.) The Order specified that "Defendants' obligation to respond to the Complaint and all discovery in the captioned case is stayed pending the resolution of the criminal action in this district." (*Id.*)

Jack Jamison ("Jamison"), counsel for Jay Ledford, was admitted *pro hac vice* in this case on October 26, 2018 (ECF No. 48).[1] On December 24, 2018, the Receiver filed a Motion to Disqualify Attorney Jack Jamison (ECF No. 79). The parties' submissions have been reviewed,[2] and this Court has had the benefit of arguments of counsel during

---

1      Ledford has court-appointed counsel in the criminal case. (*See* ECF No. 30 in RDB-18-0465.)
2      Including Jay B. Ledford's and Jack T. Jamison's Opposition to Receiver's Motion to Disqualify Attorney (ECF No. 93), Plaintiff Securities and Exchange Commission's Reply to Jay B. Ledford's and Jack T. Jamison's Opposition to Receiver's Motion to Disqualify Attorney (ECF No. 96), Receiver Gregory S. Milligan's Reply in Support of Motion to Disqualify Attorney Jack Jamison (ECF No. 98), Jay B. Ledford's and Jack T. Jamison's Proposed Surreply to SEC's Reply to Ledford's and Jamison's Opposition to Receiver's Motion to Disqualify Attorney (ECF No. 97-1), and the materials attached to these documents.

a telephone conference on January 16, 2019. No further hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, the Receiver's motion will be GRANTED and Jack Jamison will be disqualified from appearing in this action. Jay B. Ledford's and Jack T. Jamison's Motion for Leave to File Surreply to SEC's Reply to Ledford's and Jamison's Opposition to Receiver's Motion to Disqualify Attorney (ECF No. 97) will also be GRANTED.[3]

## RELEVANT BACKGROUND

Under this Court's Receivership Order (ECF No. 11) and First Amended Receivership Order (ECF No 62), the Receiver has the authority to take possession of all assets for the estates of the Receivership Parties, which includes Defendants and affiliated entities. There are several affiliated entities, including DeVille Asset Management LTD ("DeVille") and Centurion Capital Corporation ("Centurion"). (ECF No. 79-1 at ¶ 3.) "The trustees, directors, officers, managers, investment advisors, accountants, attorneys, and other agents of the non-individual Receivership Parties [were] dismissed and the powers of any partners, directors, and/or managers [were] suspended." (ECF No. 62 at ¶ 5.) Further, the "Receiver maintains and controls the attorney-client privilege for all non-individual Receivership Parties." (*Id.* at ¶ 16.)

---

[3] In general, parties are not permitted to file surreplies. Local Rule 105.2(a) (D. Md. 2016). A party moving for leave to file a surreply must show a need for a surreply. *Thompson v. Naval Acad. Athletic Ass'n*, No. CIV.A. RDB-12-2676, 2013 WL 3965100, at *8 (D. Md. Aug. 1, 2013). Jamison's surreply is directed to an unanticipated response by the SEC, who is not the movant, and as such, will be accepted.

3

During the period beginning on or about August 27, 2018, and ending September 18, 2018, Jamison had an attorney-client relationship with Ledford, DeVille, and Centurion concerning a contemplated business transaction and preparing transactional documents to effectuate the contemplated transaction. (ECF No. 93-1 at 8.) On September 20, 2018, an attorney for the SEC communicated with Jamison by email, (ECF No. 97-1 at ¶ 5), which was followed by a subpoena being served on Jamison on September 24, 2018, seeking production of documents regarding, among other topics, his negotiations on behalf of Defendants with an investor group (ECF 96 at 1). Jamison subsequently produced responsive documents. (ECF 96 at 1; ECF No. 97-1 at ¶ 8.)

According to Jamison, on October 19, 2018, Jamison and an SEC attorney had a telephone conversation during which Jamison inquired whether the SEC would oppose a motion by Jamison for admission *pro hac vice* to represent Ledford in this action. (ECF No. 97-1 at ¶ 10.) This conversation was followed by an email on October 23, 2018 from Jamison to the SEC attorney asking the SEC's position on his potential motion. (*Id.*) Jamison and the SEC attorney had another telephone conversation on October 24, 2018, during which Jamison was cautioned about the potential for a conflict if he were to represent Ledford and the possibility that Jamison could be called as a witness. (*Id.* at ¶ 11.) Jamison states that the SEC's position was that it would neither consent nor oppose Jamison's admission *pro hac vice* to represent Ledford in this action. (*Id.*) The SEC followed up with a letter outlining its concerns, citing Rules 19-301.7 and 19-

303.7 of the Maryland Rules of Professional Conduct, and requesting that Jamison revisit the Rules and confirm, in writing, that he had considered his obligations under the Rules. (ECF No. 96-1.)[4]

Joshua Treem, Ledford's local counsel, electronically filed Jamison's motion for admission *pro hac vice* on this Court's website on October 24, 2018. (ECF No. 97-1 at ¶¶ 12-13; *see also* ECF No. 41.) The motion was routinely granted by this Court on October 26, 2018. (ECF No. 48.)

The Receiver contacted Jamison on December 12, 2018 and again on December 14, 2018 prior to the filing of the instant motion. (ECF No. 79-1 at ¶ 15 n. 5.) The Receiver had a discussion with Jamison on December 14, 2018 regarding his conflict of interest, but Jamison refused to withdraw. (*Id.*) Counsel for the Receiver notified Jamison that the Receiver, as the holder of DeVille and Centurion's attorney-client privileges, would not waive the conflict of interest to the extent that there is any waivable conflict. (*Id.* at ¶ 15.)

Receiver Gregory S. Milligan's Motion to Disqualify Attorney Jack Jamison (ECF No. 79) was filed on December 24, 2018. After granting multiple extensions of time to respond, the motion is now fully briefed and ripe for this Court's decision.

---

[4] After repeated requests for a response, Jamison finally responded to the letter by email on December 6, 2018, warning that questioning the probity of his conduct may result in a civil action for defamation. (ECF No. 96-2.)

5

## LEGAL STANDARD

> A motion to disqualify is a serious matter, which must be decided on a case-by-case basis. This is so because two significant interests are implicated by a disqualification motion: the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community. Nevertheless, the guiding principle in considering a motion to disqualify counsel is safeguarding the integrity of the court proceedings. Thus, this court must not weigh the competing issues with hair-splitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing an appearance of impropriety, [this Court] is to resolve all doubts in favor of disqualification.

*Jarallah v. Thompson*, 123 F. Supp. 3d 719, 731 (D. Md. 2015) (citations omitted). The movant has the burden of proof to show that disqualification is warranted. *Id.*

In this case, the attorney subject to the motion for disqualification was admitted to this Court *pro hac vice*. "[N]o attorney has a due process right to *pro hac vice* status." *Belue v. Leventhal*, 640 F.3d 567, 577 (4th Cir. 2011). However, because "*pro hac vice* attorneys are 'held to the same professional responsibilities and ethical standards as regular counsel,' courts have increasingly proved willing to conclude that *pro hac vice* attorneys should not be disqualified 'under standards and procedures any different or more stringent than those imposed upon regular members of the district court bar.'" *Id.* at 576–77 (quoting *Cole v. U.S. Dist. Ct. for the Dist. of Idaho*, 366 F.3d 813, 821 (9th Cir. 2004)). "[O]nce such status is granted, attorneys must receive some modicum of due process before it is revoked." *Id.* at 577. The form of notice is left to the district court's

6

discretion, provided the attorney receives notice of the conduct that is at issue and has an opportunity to respond. *Id.* Due process "embodies a basic sense of fairness" and is viewed in light of the relevant circumstances. *Id.*

## DISCUSSION

A motion to disqualify essentially involves a two-part test. The movant must establish the following: (1) an attorney-client relationship existed with the alleged former client; and (2) the former representation and the current controversy must be substantially related. *Nichols Agency, Inc. v. Enchanted Child Care, Inc.*, 537 F.Supp.2d 774, 779 (D. Md. 2008). Pursuant to Local Rule 704, this Court applies the Maryland Rules of Professional Conduct as adopted by the Maryland Court of Appeals.

The Maryland Court of Appeals has "acknowledge[d] that determining 'what constitutes an attorney-client relationship is a rather elusive concept.'" *Attorney Grievance Comm'n v. Shoup*, 979 A.2d 120, 135 (Md. 2009) (quoting *Attorney Grievance Comm'n v. Shaw*, 732 A.2d 876, 883 (Md. 1999)). In this case, however, Jamison has admitted that he had an attorney-client relationship with DeVille and Centurion from about August 28, 2018 until September 18, 2018, which is the date that the criminal indictment was unsealed. (ECF No. 93-1 at 8.) "'Substantially related' has been interpreted to mean 'identical' or 'essentially the same,' or 'factually related'." *Nichols*, 537 F. Supp. 2d at 779 (citations omitted). It is apparent that Jamison's representation of Ledford, DeVille, and Centurion, as joint clients in a contemplated business

transaction is related to the instant action in which Ledford and DeVille are named defendants (Am. Compl., ECF No. 50), and in which DeVille and Centurion are identified as Receivership Parties. An in-depth review of Jamison's response and all the exhibits provided by both the Receiver and Jamison reveals that, at a minimum, Jamison was advising and documenting a transaction involving Boulder Group and DeVille, which is factually related to this case. (*See* ECF No. 79-1 at ¶ 9; ECF No. 93-1 at 11; ECF No. 98 at ¶ 7.) Additionally, prior to his *pro hac vice* application, Jamison was served with a subpoena in this litigation that sought production of documents regarding his negotiations on behalf of Defendants with an investor group. (ECF 96 at 1.) Jamison was certainly aware of the potential conflict of interest since he raised it with the SEC, but he did not make a point of advising this Court of the same. The Receiver has provided compelling evidence of not only a conflict of interest, but the possibility that Jamison may be a material fact witness in this case.

Jamison notes that "even closer scrutiny is required" when an opposing counsel moves for disqualification. This case, however, does not present circumstances suggesting that the motion–filed by the Receiver, not the Plaintiff–was filed for abusive or tactical reasons, or that it is based on mere speculation. Both the SEC and the Receiver expressed their concerns to Jamison before this motion was filed. Further, the Plaintiff, SEC, had raised the issue of a potential conflict with Jamison before he filed

his motion for *pro hac vice* status. That the SEC did not state that it would oppose the motion, is not grounds for Jamison to ignore the propriety of his conflicted position.

Jamison also notes that the application for *pro hac vice* status "makes no inquiry into or has any provision regarding any conceivable conflict of interest that the potential admittee's representation of the contemplated client could pose." (ECF No. 97-1 at ¶ 13 n. 6.) This Court notes however, that the application does state that "[t]he proposed admittee is familiar with the Maryland Lawyers' Rules of Professional Conduct . . . and the Local Rules of this Court, and understands he/she shall be subject to the disciplinary jurisdiction of this Court." (ECF No. 41 at ¶ 5.) All attorneys have a duty of candor (Maryland Rules of Professional Conduct 19-303.3), which dictates that Jamison should have disclosed a known potential conflict of interest rather than leaving it to be revealed by the Receiver's motion.

The Court of Appeals for the Fourth Circuit has emphasized that ethical rules governing disqualification of counsel are to be applied "with a view of preventing the appearance of impropriety." *U.S. v. Clarkson*, 567 F.2d 270, 273 n. 3 (4th Cir. 1977) (citation omitted). Even if this were a close question, the rules require that doubts be resolved in favor of disqualification. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 750 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

This Court is satisfied that the Receiver has met the burden to demonstrate that Jamison should be disqualified. While Ledford has the right to retain counsel of his

choosing, that choice does not permit retaining an attorney with a potential conflict of interest raising the appearance of impropriety. Since the procedural posture of this case is that it is stayed pending the resolution of the related criminal proceedings, Ledford has adequate time to obtain alternate counsel to represent him in this matter.

## CONCLUSION

For the foregoing reasons:

1. Jay B. Ledford's and Jack T. Jamison's Motion for Leave to File Surreply to SEC's Reply to Ledford's and Jamison's Opposition to Receiver's Motion to Disqualify Attorney (ECF No. 97) is GRANTED.
2. Receiver Gregory S. Milligan's Motion to Disqualify Attorney Jack Jamison (ECF No. 79) is GRANTED.
3. Jack Jamison is disqualified from appearing in this action; and.
4. The Court's Order granting Jack Jamison's Motion for Admission Pro Hac Vice (ECF No. 48) is hereby withdrawn and Jack Jamison's admission pro hac vice in this action is hereby revoked.

Dated: February 1, 2019

_____
Richard D. Bennett
United States District Judge