# EXHIBIT 1



January 6, 2020

Gregory S. Milligan
Harney Management Partners LLC
P. O. Box 90099
Austin, Texas 78709-0099

Dear Greg:

We are very pleased about the opportunity to assist you, in your capacity as the Court-Appointed Receiver in the case styled *Securities and Exchange Commission v. Kevin B. Merrill, et al.*, Cause No. 1:18-cv-02844-RDB pending in the United States District Court for the District of Maryland ("Client"), which Receivership Parties include DeVille Asset Management LTD and other entities and persons identified Paragraph 1 of the First Amended Order Appointing Temporary Receiver (Dkt. No. 62) (the "Receivership Parties"), in the sale of the Receivership Parties' servicing assets and loan portfolio (the "Portfolio").  This letter ("Agreement") is to set forth an agreement as to the terms of our engagement.

**1.   SCOPE OF SERVICES**

Garnet will provide Client the following services:

1.1.   **Portfolio Pricing.**  Garnet will analyze electronic and historical data to estimate market pricing for the Portfolio to assist Client with a go-to-market decision, in addition to exploring the potential range of values of the Portfolio through a "hold and collect" strategy.

1.2.   **Validation of Accounts.**  Garnet will advise and assist client with respect to the ownership and chain-of-title of accounts, and to the validation of balances.

1.3.   **Preparation of Marketing Materials.**  Garnet will prepare a one-page sale announcement (the "Sale Announcement") that will include (i) a brief description of the Portfolio and (ii) an outline of the timetable and procedures for the sale, in form satisfactory to Client.  Garnet will also prepare an offering package (the "Offering Materials") which will include an executive summary, Portfolio information, offering procedures, a form of loan sale agreement, and data file(s), each in form and substance satisfactory to Client and its counsel.

1.4.   **Marketing.**  Garnet will conduct a marketing effort to facilitate the sale of the Portfolio. Initially Garnet will contact high-impact core investors by email and phone to develop early buyer interest. Garnet will also contact a targeted list of prospective investors by email distribution of the Sale Announcement, posting the Sale Announcement on Garnet's website, and telephone follow-up to key accounts.  Garnet will also analyze the cut-off data file and distribute it to investors prior to bid.

1.5.   **Coordination of Legal Documentation.**  Garnet will assist Client and Client's counsel in developing terms for legal documentation for the transaction, including a confidentiality agreement and loan sale agreement.  Garnet will not provide legal advice to Client.

1.6.   **Prospective Investor Due Diligence.**  Garnet shall require each prospective investor to sign a confidentiality agreement approved by Client prior to granting access to Offering Materials, after which Garnet may share the Confidential Information with such prospective investors,

and Garnet shall have no liability to Client for any use or misuse of Confidential Information by any such potential investor. Garnet shall post and manage the Offering Materials in a secure Virtual Data Room, and shall permission prospective investors to such Virtual Data Room to access the Offering Materials. Garnet will act as the primary clearinghouse for prospective investor inquiry on questions which arise during the sale, and will provide answers to any questions for which the information is on hand. To the extent that inquiries require response from Client, Garnet will interface with designated Client personnel.

1.7. **Bids; Selection of Winning Bidder(s).** Garnet will take bids on the bid date, prepare and deliver a summary of bids received, and assist Client in its selection of the winning bidder(s). Client will have the right to accept or reject in its sole discretion any and all bids.

1.8. **Coordination of Closing.** Garnet will work closely with Client and the winning bidder(s) to expeditiously close the sale. Garnet will coordinate bid acceptance, assist Client in any negotiations necessary relative to the terms of sale, assist with the preparation of a settlement statement reflecting amounts due at closing. Client will be responsible for the servicing transfer.

1.9. **Post-Closing Services.** Garnet will provide assistance to Client post-closing with any issues that arise, such as post sale project review and analysis, meetings and presentations to Client personnel not involved in the sale process, post-sale contract issues, review of repurchase requests, etc.

2. **TERMS OF THE AGREEMENT**

    2.1. **Professional Fees:**

    2.1.1. Retainer Fee: waived

    2.1.2. Disposition Fee: **Garnet does NOT charge the buyer a fee**. A fee (the "Disposition Fee") equal to 5% multiplied by gross proceeds received by Client from the sale of any or all of the Portfolio shall be payable by Client to Garnet by wire transfer upon each closing and funding.

    2.1.3. Breakup Fee: If Client elects to terminate the sale process without consummating a sale, then Client shall pay Garnet a breakup fee at the time of such termination as follows:

    | Timing | Breakup Fee |
    |---|---|
    | Termination occurs before the distribution of the Sale Announcement to prospective investors | $50,000 |
    | Termination occurs after distribution of the Sale Announcement to prospective investors, but before bids are received | $150,000 |
    | Termination occurs after receipt of bids, the highest of which is at or above the valuation determined in accordance with Section 1.1 (the "Target Price") | An amount equal to what the Disposition Fee would have been if a sale had been consummated at the high bid level |
    | Termination occurs after receipt of bids, the | None |

|  | highest of which is below the Target Price |  |
|---|---|---|

- 2.1.4. <u>Post-Closing Fee</u>:  To the extent that Client requires post-closing services, Garnet shall provide 5 hours of services at no additional charge.  Thereafter, post-closing services shall continue to be provided by Garnet with Client's approval at the following rates: Managing Partner $500/hour, Managing Director $400/hour, Senior Vice President $300/hour, Vice President $200/hour, Assistant Vice President / Associate / Analyst $100/hour.

2.2. **Expense Reimbursement:** Client will reimburse Garnet for actual, Client-pre-approved, third-party vendor fees, as applicable, for virtual data room, redacting loan files, bankruptcy and deceased scrubs, litigious consumer scrubs, audit of collections and payment posting procedures, etc.

2.3. **Obligations Limited:**  Client acknowledges that the descriptions of the Portfolio and any underlying collateral have been furnished by Client and are not representations by Garnet.  Garnet shall be under no obligation to make an independent investigation or inquiry as to the correctness or completeness of any information or data given to Garnet, and shall have no liability in regard thereto.  Client shall be responsible for the content of the Sale Announcement, Offering Materials, and any updates thereto.

2.4. **Garnet Responsibilities**:  Garnet's responsibilities include, but are not limited to those shown on the attached Exhibit "A" as part of Garnet's proposal to Client.

2.5. **Client Responsibilities:** Client's responsibilities include, but are not limited to: (a) providing accurate Portfolio information, (b) reviewing and approving the Sale Announcement, Offering Materials, and any updates thereto, (c) answering investor questions to the extent necessary during the due diligence period, (d) reviewing and agreeing to a form of loan sale agreement appropriate for the product type being sold, (e) reviewing bids and selecting a winning bidder(s), (f) completing closing requirements (negotiation of loan sale agreement, preparation of conveyance documentation, provision of servicing transfer information), and (g) seeking and relying on the advice of its attorneys and accountants for tax, legal and accounting matters.

2.6. **Exclusivity:**  Client agrees that Garnet shall have the exclusive right to solicit buyers for the Portfolio during the term and any extensions hereof.

2.7. **Work Product:** Client agrees that all deliverables and work processes generated, developed or provided by Garnet shall not, without the prior written consent of Garnet, be shared by Client with any competitor of Garnet or potential buyer during or after the term of this Agreement.

2.8. **Confidentiality:** The parties acknowledge that they have executed a Confidentiality Agreement dated November 7th, 2018 (the "NDA"), the terms and provisions of which are herein incorporated by reference, and agree that such NDA sets forth the obligations and responsibilities of Garnet and Client with regard to the use, treatment, and disclosure of certain confidential and proprietary information of the parties.  If there is a conflict between the terms of the NDA and the terms of this Agreement, the terms of this Agreement shall govern and control.

2.9. **Termination:** This Agreement shall terminate after completion of the sale process contemplated hereunder. Client may terminate this Agreement on 10 business days written notice to Garnet without cause; in such case, Garnet shall be due the applicable Breakup Fee. Client or Garnet may also terminate this Agreement upon written notice to the other party in the event of an uncured breach by the other party of the terms of this Agreement; in such case, Garnet shall not be due any Fees.

2.10. **Indemnification:** The parties shall indemnify and hold each other harmless against any and all losses, claims, damages or liabilities to which either may become subject arising in any manner out of or in connection with this Agreement, unless it is finally determined by a court having jurisdiction that such losses, claims, damages or liabilities resulted directly from the gross negligence or willful misconduct of the of the party seeking indemnification. The indemnitor shall reimburse the indemnified party for any legal or other expenses reasonably incurred by it in connection with investigating, preparing to defend or defending any lawsuits, claims or other proceedings arising in any manner out of or in connection with this Agreement, except for any legal or other expenses connected with a claim arising out of or in connection with the indemnified party's gross negligence or willful misconduct. This provision shall survive any termination of this Agreement. Each party's liability under this Agreement shall be limited to direct damages and in no instance will an indemnifying party be liable for any special, consequential, indirect, incidental, exemplary or punitive damages.

2.11. **Governing Law:** This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York without regard to its conflict-of-laws principles. Client and Garnet agree that either party may choose to have any disputes, claims and controversies between them arising out of or in any way related to this Agreement, including without limitation contract, tort and indemnity disputes, resolved by the United States District Court for the District of Maryland, *In Re: Securities and Exchange Commission v. Kevin B. Merrill, et al.*, Cause No. 1:18-cv-02844-RDB ("Maryland District Court")".

2.12. **Court Approval:** Garnet acknowledges that its retention pursuant to this Agreement and any potential sale of the Portfolio to a buyer are subject to approval by the Maryland District Court by separate motion and order.

2.13. **Miscellaneous:** This Agreement is made solely for the benefit of the parties hereto, and no other person shall acquire or have any right under or by virtue of this Agreement. Nothing contained herein shall be deemed or construed to create a partnership or joint venture between the parties hereto, and Garnet's services shall be rendered to Client as an independent contractor. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect. This Agreement may be executed in one or more counterparts, each of which shall constitute an original, but all of which taken together shall constitute one and the same instrument. Delivery of an executed signature page of this Agreement by facsimile transmission or scanned email shall be effective as delivery of a manually executed counterpart hereof. Effective the date of this Agreement, Garnet may list Client as a client.

Please indicate your acceptance of this Agreement by countersigning in the space provided below.

Sincerely yours,

**GARNET CAPITAL ADVISORS, LLC**

By: _____
Name: _____
Title:    Managing Partner

**GREGORY S. MILLIGAN, RECEIVER**

By: _____
Name:  Gregory S. Milligan, Receiver
Title:    Court-Appointed Receiver in the case styled *Securities and Exchange Commission v. Kevin B. Merrill, et al.*, Cause No. 1:18-cv-02844-RDB pending in the United States District Court for the District of Maryland