**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 1:18-cv-02844-RDB |
| KEVIN B. MERRILL, et al., | ) ) | |
| Defendants. | ) ) | |

_____

**RECEIVER GREGORY S. MILLIGAN'S MOTION FOR ORDER SETTING
CLAIMS BAR DATE, ESTABLISHING CLAIMS PROCEDURE, AND
APPROVING NOTIFICATION PROCESS**

Receiver Gregory S. Milligan (the "Receiver") respectfully files this Motion for Order Setting Claims Bar Date, Establishing Claims Procedure, and Approving Notification Process (the "Motion"). In support of this Motion, the Receiver states as follows:

## I.    INTRODUCTION

1.    On September 13, 2018, the Securities and Exchange Commission (the "SEC") filed a Complaint that initiated this action (the "SEC Action") against Defendants Kevin B. Merrill ("Merrill"), Jay B. Ledford ("Ledford"), Cameron R. Jezierski ("Jezierski"), Global Credit Recovery, LLC, Delmarva Capital, LLC, Rhino Capital Holdings, LLC, Rhino Capital Group, LLC, DeVille Asset Management LTD, and Riverwalk Financial Corporation (collectively, the "Defendants") alleging various securities violations arising from the Defendants' operation of a Ponzi scheme that raised more than $345 million from more than 230 individual investors or investor groups to purportedly purchase consumer debt portfolios. *See* Dkt. No. 1. On November 6, 2018, the SEC filed an Amended Complaint adding Amanda Merrill and Lalaine Ledford as Relief Defendants in this action. Amanda Merrill is married to Merrill, and Lalaine Ledford is

1

married to Ledford.  Amanda Merrill and Lalaine Ledford are collectively the "Relief Defendants." The Relief Defendants benefited from their husbands' scheme through transfers of funds fraudulently obtained from investors and assets purchased with such funds.  The Relief Defendants have indicated that they will be asserting claims to property and the proceeds from the sale of property of the Receivership Estate.[1]

2.     On September 13, 2018, this Court entered the Order Appointing Temporary Receiver (the "Initial Receivership Order") pursuant to which the Court took exclusive jurisdiction and possession of all assets of the Defendants and their affiliated entities (collectively, the "Receivership Parties")[2] and certain assets held by the Relief Defendants including, but not limited to, all assets that are "(a) owned, controlled, or held, in whole or in part, by or for the benefit of any of the Receivership Parties; (b) in the actual or constructive possession of any of the Receivership Parties, or other individual or entity acting in concert with any of the Receivership Parties; (c) held by an agent of any of the Receivership Parties, including as a retainer for the agent's provision of services; or (d) owned, controlled, or held, in whole or in part, by, or in the

---

[1] Capitalized terms herein shall have the meaning as used in the Receivership Order (as defined below) unless otherwise noted.

[2] The Receivership Parties are defined in the Receivership Order as: (i) Merrill; (ii) Ledford; (iii) Jezierski; (iv) Global Credit Recovery, LLC; (v) Delmarva Capital, LLC; (vi) Rhino Capital Holdings, LLC; (vii) Rhino Capital Group, LLC; (viii) DeVille Asset Management LTD; (ix) Riverwalk Financial Corporation; (x) K.B. Merrill Associates; (xi) Financial Reclamation Group LLC; (xii) Halo Credit Solutions LLC; (xiii) JBL Holdings LLC; (xiv) Jay B. Ledford, P.C.; (xv) the Joseph Finance Company; (xvi) Leddy Bear LTD; (xvii) Ledford & Associates, PLLC; (xviii) King Fischer LTD d/b/a LP Investments LTD; (xix) NLEX, Inc.; (xx) Receivables Portfolio Interchange, Inc.; (xxi) Riverwalk Capital Investments, Inc.; (xxii) Riverwalk Credit Solutions, Inc.; (xxiii) Riverwalk Debt Solutions, Inc.; (xxiv) Riverwalk Fixed Asset Group LLC; (xxv) SCUSA Financial, Inc.; (xxvi) Vaquero Asset Management, Inc.; (xxvii) CRJ Holdings LLC; (xxviii) Centurion Capital Corporation; (xxix) GCR CBL CP I, LLC; (xxx) GCR CBL CP II, LLC; (xxxi) GCR CBL CP III, LLC; (xxxii) GCR CBL CP IV, LLC; (xxxiii) GCR HCP Holdings 1, LLC; (xxxiv) GCR Mercer Holdings, LLC; (xxxv) the J Trust; and (xxxvi) the Kevin B. Merrill Revocable Living Trust.  *See* Dkt. No. 62 at ¶ 1.

HB: 4815-6234-3641.2

actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned, controlled, or held, in whole or in part, by any of the Receivership Parties, including assets that have been transferred to other persons or entities but as to which assets such persons or entities do not have a legitimate claim" (the "Receivership Assets").  *See* Dkt. No. 11 at 3.  On November 27, 2018, the Court entered the First Amended Order Appointing Temporary Receiver (the "Amended Receivership Order") (the Initial Receivership Order and Amended Receivership Order are collectively, the "Receivership Order") clarifying and modifying the Receivership Parties and the Receiver's authority.  *See* Dkt. No. 62.

3.     The Court appointed Gregory S. Milligan as the Receiver for the Receivership Assets and Receivership Parties (the "Receivership Estate") with the goal and purpose of marshaling and preserving the Receivership Assets to maximize the recovery to defrauded investors.  Since being appointed, the Receiver has coordinated extensively with the SEC, U.S. Attorney's Office (the "U.S. Attorney"), the U.S. Marshals Service, and the Federal Bureau of Investigation (the "FBI") regarding the identification and safeguarding of Receivership Assets. The Receiver also operated the following businesses located in Texas while he explored the best method to maximize their value for the benefit of the Receivership Estate: (i) DeVille Asset Management Ltd. ("DeVille"); (ii) Riverwalk Credit Repair, Inc. ("Riverwalk Credit"); and (iii) Riverwalk Debt Solutions, Inc. ("Riverwalk Debt") (Riverwalk Credit and Riverwalk Debt are collectively, "Riverwalk").  Since his appointment, the Receiver has obtained Court approval to liquidate substantially all of the Receivership Assets that were owned or held in the name of the Receivership Parties, and the Receiver will continue to seek authority to liquidate the remaining Receivership Assets.  The Receivership Estate has accumulated approximately $56.2 million in cash as of December 31, 2020 from sale proceeds of Receivership Assets and business income of

3

DeVille and Riverwalk for an eventual distribution to defrauded investors and other creditors of the Receivership Parties following the claims procedure proposed in this Motion (the "Claims Procedure").

4.      The Claims Procedure is intended to incorporate the prior submissions from defrauded investors and the analysis completed by the FBI, U.S. Attorney, and SEC, which includes the information contained in the restitution claim forms and victim impact statements submitted by defrauded investors in the related criminal case (the "Criminal Action") to this SEC Action.  *See* Criminal Action, Case No. 18-cr-00465-RDB.  As detailed below, the Receiver intends to send each Known Investor (as defined below) an individualized schedule with a proposed claim amount based on each Known Investor's transfers to and from the Receivership Parties.  If the Known Investor agrees with the proposed claim amount, the Known Investor will simply sign and return the schedule and the claim will be allowed in that amount.  If the Known Investor disputes any transactions or the amount of the proposed claim, the Known Investor can submit documents and information to support the Known Investor's alleged claim.  To the extent the Known Investor has received any Compensation Payment (defined below) to compensate them, in whole or in part, for the losses sustained in the Defendants' fraudulent scheme, the Known Investor must disclose the payment or recovery to be included in the calculation of the claim amount.  The process will maintain anonymity for the Known Investors who wish to remain anonymous through use of randomly assigned investor numbers, redactions, and motions to seal any public filings.

5.      The Claims Procedure will also allow potentially unknown investors ("Unknown Investors") to submit a claim, along with sufficient documents and information for the Receiver to verify the legitimacy of the alleged claim.  As part of the process, the Receiver will publish notice

4

of the Claims Procedure on his website, www.Merrill-Ledford.com and in national and regional publications intended to reach any potential unknown claimants ("Unknown Creditors")[3] who may have invested or done business with one of the Receivership Parties.

6.     The Claims Procedure will also allow the Relief Defendants to assert claims to property of the Receivership Estate or proceeds from the sale of property that was within the Receivership Estate.  However, the ultimate resolution of the Relief Defendants' alleged claims will not be resolved until after a judgment is entered in this SEC Action with respect to the SEC's claims against each of the Relief Defendants.

7.     The proposed Claims Procedure will also provide an opportunity for other general unsecured or trade creditors to submit a claim to the extent they believe one exists against one of the Receivership Parties.

8.     If the Receiver disputes a claim, the proposed Claims Procedure allows the Claimant to supplement with additional documents and information to substantiate the claim.  If the Receiver still disputes the claim after receiving the supplement, the proposed Claims Procedure allows for an efficient resolution of claim disputes while still maintaining anonymity for Claimants who wish to remain anonymous.  The proposed Claims Procedure maintains the Court's discretion to request additional briefing, set hearings, and issue rulings with respect to the allowance or disallowance of claims.

## II.     BACKGROUND AND CREDITORS

### A.     The Ponzi Scheme.

9.     As more fully alleged by the SEC in its Amended Complaint, the Defendants

---

[3] The Known Investors, Other Creditors, Unknown Investors, Unknown Creditors, and Relief Defendants are collectively the "Claimants."

operated a Ponzi-like scheme that involved, among other things, securities offerings rife with misrepresentations, fake debt, forged signatures, fabricated wire transfers, the movement of millions of dollars into personal accounts, and an elaborate scheme wherein the Defendants offered and sold investments in the same (and often fictitious) debt and/or debt portfolios, to multiple victims.  The Defendants pled guilty to various counts and were sentenced to varying prison terms in the Criminal Action.  The Defendants also agreed to entry of consent judgments in this SEC Action that established liability on the claims brought by the SEC.

10.     In addition, the SEC has brought claims against the Relief Defendants in this SEC Action alleging they benefited from their husbands' fraudulent scheme by receiving proceeds of the fraud for which they have no legitimate claim.  *See* Dkt. No. 50.  On July 31, 2020, Amanda Merrill filed a motion to dismiss and for partial summary judgment on the claims asserted against her (the "Motion to Dismiss").  *See* Dkt. No. 327.  The SEC opposes Amanda Merrill's Motion to Dismiss.  *See* Dkt. No. 335.  As of the date of the filing of this Motion, Amanda Merrill's Motion to Dismiss remains pending.  In addition, Lalaine Ledford has failed to appear and file an answer or Rule 12 motion with respect to the claims being brought against her, and the Clerk of Court has entered an Order of Default.  *See* Dkt. No. 389.

11.     The Receiver and his attorneys have reviewed available documentation and information regarding the investment and business activity associated with the Receivership Parties and have reached a number of preliminary conclusions with regard to potential Claimants, as more fully described below.  The potential Claimants fall within one of the following categories under this proposed Claims Procedure: (i) Known Investors[4] (as defined below); (ii) Unknown Investors; (iii) Other Creditors (as defined below); and (iv) Relief Defendants.  The Receiver does

---

[4] Known Investors include individual investors and Investment Entities (as defined below).

HB: 4815-6234-3641.2

not believe that the ultimate recovery by the Receiver in this SEC Action will be sufficient to return the full amount of principal contributions to the defrauded investors and payment of all claims of Other Creditors of the Receivership Estate.

**B.      Known Investors.**

12.      On October 4, 2019, this Court entered the Order Granting Motion to Authorize Receiver to Identify Claimants and Creditors and Propose a Plan of Distribution.  *See* Dkt. No. 222.  On November 18, 2019, this Court entered an Order in the Criminal Action that authorized the U.S. Attorney to share Victim Financial Information[5] (as defined in the Order) with the Receiver for purposes of developing a proposed claims procedure and plan of distribution.  *See* Dkt. No. 187 in the Criminal Action, Case No. 18-cr-00465-RDB.  Since entry of these Orders, the Receiver has worked extensively with the SEC, U.S. Attorney, and the FBI regarding the identification of investor victims and the quantification of their claims against the Receivership Estate.

13.      The Receiver has concluded that there exists a limited number of known individual investors or pooled investor groups (the "Known Investors") who made investments with one of the Receivership Parties or were identified as victims in the Criminal Action.  Of the Known Investors, there were fifty-nine (59) corporate entities or pooled investor groups (*i.e.*, not individual investors) (the "Investment Entities") which made investments with one of the Receivership Parties.  Thirty-five (35) of the Investment Entities are either wholly owned by a single individual investor, closely held entities owned by family members, or owned by 3-4

---

[5] In connection with the sentencing proceedings in the Criminal Action, the U.S. Attorney communicated with victims of the Defendants' scheme to defraud and asked each to complete a Victim Impact Statement and a Restitution Claim Form, which have now been shared with the Receiver.  *See* Dkt. No. 186 at ¶ 2 in Case No. 18-cr-00465-RDB.  However, as discussed more fully below, not all investors completed a Victim Impact Statement or a Restitution Claim Form.

individual business partners.[6]   The remaining twenty-four (24) Investment Entities are pooled investor groups that have up to dozens of unrelated, individual investors within them that are actively managed investment vehicles.  Except as noted below with respect to the Bethesda Group, each Investment Entity will be treated as a single Known Investor for purposes of the proposed Claims Procedure.

14.     Investment Entities must certify to the Receiver that: (i) the Investment Entity has maintained its legal status as an active entity; (ii) the Investment Entity is authorized to submit claims and receive distributions on behalf of the individual investors within it that invested with the Investment Entity; and (iii) the Investment Entity will distribute any interim and final distribution to the individual investors within it in accordance with any Court-authorized distribution plan.  The Receiver anticipates that, pursuant to an order of this Court, each Investment Entity will be responsible for any interim and final distribution to the individual investors within the Investment Entity.[7]   However, individual investors within one group of Investment Entities, referred to in the Amended Complaint as the "Bethesda Group," have sued its organizer, Gary Day.  In *Connaughton et al. v. Day*, No. 461362V, previously pending in the Circuit Court for Montgomery County in the State of Maryland, the Bethesda Group investors allege that Gary Day and his related entities breached fiduciary duties, failed to conduct due diligence on the

---

[6] Some of the Investment Entities include individuals who signed an investor agreement (or other similar document) with a Receivership Party in their individual capacity but funded the investment from an account in the name of a corporate entity.  The reverse is also true.  Some of the Investment Entities include corporate entities that signed an investor agreement (or other similar document) with a Receivership Party but funded the investment from an account in the name of an individual. The Receiver's communications with these Investment Entities will be sent to both the individual and corporate entity for the avoidance of doubt.

[7] Certain Investment Entities have had a receiver appointed in conjunction with separate state-court securities actions.  The court-appointed receiver of these Investment Entities will be treated as the fund organizer or responsible party for purposes of this proposed Claims Procedure and any ultimate distributions.

Receivership Parties, and misrepresented their technical expertise in these types of investments. Due to this litigation, each individual investor within the Bethesda Group will be a Known Investor and will be treated in this Claims Procedure as though he or she had invested directly with a Receivership Party.

15.     As part of the Criminal Action, the FBI and U.S. Attorney spent hundreds of hours preparing their analysis to trace investor transactions and the net position of Known Investors, and that analysis has been reviewed by the SEC.  The Receiver has tested a random sampling of such analysis and has confirmed its accuracy but, for purposes of efficiency and maximizing the eventual return to creditors, the Receiver has not and will not repeat the same process in full that has already been completed by the FBI and U.S. Attorney.  To recreate the FBI and U.S. Attorney's analysis from scratch would cost the Receivership Estate tens of thousands of dollars that, in the Receiver's opinion, is unnecessary given the thoroughness of the analysis prepared by the FBI and U.S. Attorney.  The FBI and U.S. Attorney's comprehensive and tested analysis has been accepted by the Receiver as the starting point of this proposed Claims Procedure, and the claim determinations reached by the FBI and U.S. Attorney will serve as the initial claim amount for each Known Investor.[8]

16.     As described in more detail below, each Known Investor must confirm the accuracy of the proposed claim amount or correct any errors or omissions in the calculation of the proposed claim amount.  In addition, certain Known Investors have received payments including, but not limited to, settlements in separate litigation, recoveries paid by state-court receivers, and other

---

[8] The claim amount for each Known Investor may be adjusted slightly from the criminal restitution proceedings based on additional investigation and information as discussed more fully in this Motion.  Any adjustments will be noted in the communications the Known Investor receives from the Receiver as part of this proposed Claims Procedure.

payments to victims (these payments are referred to herein as "Compensation Payments"). Known Investors will be required to disclose to the Receiver the Known Investors' receipt of any Compensation Payments. In addition, Known Investors will have an ongoing duty to disclose to the Receiver any future Compensation Payments that they may receive after the submission of this schedule to the Receiver. If the Receiver determines that a Known Investor has failed to disclose a Compensation Payment, the Known Investor may lose their right to participate in any ultimate distribution in this SEC Action or any anticipated distribution. To the extent the Receiver discovers an undisclosed Compensation Payment after a distribution is made in this SEC Action, the Known Investor may be required to return the full amount of any distribution received in this SEC Action.

17.     Based on the Receiver's review of the above analysis, the books and records of the Receivership Parties, documents provided by the SEC, U.S. Attorney, and the FBI, documents provided in response to subpoenas, and information provided to the Receiver directly from investors of the Receivership Parties (the "Relevant Documents"), the Receiver is presently aware of three-hundred and twenty-five (325) Known Investors. The Receiver has not been in contact with each Known Investor, but the Receiver does have the last known contact information for each Known Investor from the restitution claim process in the Criminal Action and the information obtained by the Receiver in this SEC Action.

18.     As part of the proposed Claims Procedure detailed in this Motion, the Receiver will contact each Known Investor to confirm the amount of each Known Investor's claim. Additionally, the Receiver will contact individuals, to the extent contact information is available, within Investment Entities to provide notice that any potential claim will be administered through

the Investment Entity.[9]  These efforts will provide the individuals notice of the Claims Procedure and the opportunity to engage and coordinate with the organizer, manager, or responsible party for their Investment Entity to ensure the accuracy of claim amounts.

19.     As part of the proposed Claims Procedure, each Known Investor will be assigned a unique and confidential investor number to maintain privacy,[10] thereby facilitating the necessary transmission of sensitive information by and between the parties and the Court.  The unique and confidential investor numbers will be used in lieu of individuals and entities' names due to the sensitive financial information associated with their investments.  If a Known Investor does not want to maintain anonymity, the Known Investor will not be precluded from using the Known Investor's name (rather than their assigned number) during the Claims Procedure and in any filings with the Court in the SEC Action.

20.     The Receiver has analyzed the Relevant Documents and has derived preliminary conclusions concerning the investment activity attributable to each Known Investor.  The majority of the Known Investors made contributions in excess of the total sum of disbursements they received from the Receivership Parties in connection with their investments, resulting in a net loss. Through his review of the Relevant Documents, the Receiver is presently aware of approximately two-hundred and six (206) such Known Investors who suffered net losses.  These Known Investors—as well as other potential and currently Unknown Investors who suffered a net loss—

---

[9] Individual investor's contact information was collected by the Receiver from the Investment Entities through voluntary productions and formal subpoena responses.  Foreign privacy laws prevented the Receiver from obtaining contact information for individual investors within one pooled investor group.

[10] The identities and investment amounts of each Known Investor have been filed and maintained under seal in the Criminal Action to protect sensitive financial information.  The Claims Procedure proposed by the Receiver in this Motion is designed to maintain the privacy of Known Investors who wish to remain anonymous.

may have claims against the Receivership Estate in the amount of the net loss they incurred in connection with their investment(s) (the "Investor Creditors"). Such claims will be considered by the Receiver for purposes of calculating future distributions.[11]

21.    One Known Investor received disbursements from the Receivership Parties in the exact amount of the Known Investor's contribution (the "Net-Neutral Investor"), which means the Receiver does not believe this Net-Neutral Investor will have a claim against the Receivership Estate. The Receiver has determined that the remaining one-hundred and eighteen (118) Known Investors received disbursements from the Receivership Parties in excess of the total sum of their contributions (the "Net-Winner Investors"). The Receiver does not believe these Net-Winner Investors possess claims against the Receivership Estate and may themselves be subject to claims by the Receivership Estate. However, as part of the Claims Procedure proposed in this Motion, each Net-Neutral Investor and Net-Winner Investor will have an opportunity to participate in the Claims Procedure and provide sufficient documentation to support any such investor's belief that they suffered a loss and should be considered an Investor Creditor in this SEC Action.

**C.    Other Creditors.**

22.    Through his review of the Relevant Documents, the Receiver has also identified potential general unsecured creditors, trade creditors, and other categories of creditors (collectively, the "Other Creditors") who may have claims against the Receivership Estate.[12]

---

[11] The Receiver is still evaluating proposed distribution calculations and methodologies, which will be informed by the final approved list of claims of Investor Creditors, Relief Defendants, and Other Creditors. The Receiver will file a separate motion to establish distribution procedures, which the Receiver anticipates will occur after completion of the Claims Procedure.

[12] While there were some secured creditors with liens on certain Receivership Assets when this SEC Action was filed, those secured creditors have been paid in full upon the sale of each asset, thereby extinguishing all known liens on Receivership Assets. To the extent an asset has not yet been sold, the Receiver anticipates that the sale of such asset will extinguish the secured debt. Accordingly, the Claims Procedure proposed in this Motion does not contain a class for secured

However, due to the nature of DeVille and Riverwalk's ongoing business operations (*i.e.*, high-volume consumer debt collection and credit repair), the full extent and identities of potential Other Creditors who may have claims against the Receivership Estate remain unknown to the Receiver at this time.  For purposes of this Motion, the Receiver intends to include as Other Creditors all remaining known creditors and potential creditors of the Receivership Parties who are not Known Investors, excluding the Relief Defendants, which includes but is not limited to: (i) lenders and credit card companies; (ii) suppliers, vendors, and others doing business with a Receivership Party; (iii) persons or entities who the Receiver has reason to believe may file or have filed lawsuits against a Receivership Party; and (iv) applicable regulatory and taxing authorities in each jurisdiction in which debt collection or credit repair was known to have occurred on behalf of DeVille, Riverwalk, or any other Receivership Party.

23.     Upon information and belief, the Receivership Parties conducted business operations in Texas and Maryland and may have Other Creditors in other locations throughout the United States.  Other Creditors who have contacted the Receiver have been directed to the Receivership Estate website, located at www.Merrill-Ledford.com, which the Receiver has maintained and updated with relevant and required information regarding asset sales and other matters related to the case.

### III.    RELIEF REQUESTED

24.     The Receiver requests that this Court enter an Order (i) setting the claims bar date, (ii) establishing the Claims Procedure, including a notice and dispute resolution process, and (iii) approving the attendant notification process, as set forth in this Motion.  The Receiver believes

---

creditors because the Receiver is not aware of any potential secured creditors who are expected to participate in the Claims Procedure.

HB: 4815-6234-3641.2

that the establishment of the foregoing will provide for the orderly, efficient, and equitable administration of all claims while avoiding confusion, delay, and unnecessary expense.

## A.      The Claims Bar Date.

25.      The Receiver requests entry of an Order requiring all persons and entities, including, without limitation, investors, lenders, former employees, state and federal authorities and regulators, and creditors of the Receivership Parties with potential claims and/or demands against the Receivership Parties, whether due or not due, contingent, unliquidated, or otherwise, to submit their claims to the Receiver in the format described in this Motion within ninety (90) days of the date of entry of the Order requested in this Motion (the "Claims Bar Date").  The Receiver believes that setting the Claims Bar Date ninety (90) days from the date of entry of an Order will allow Claimants sufficient time to dispute, confirm, or submit their claims.  Notices of the Claims Bar Date and procedure, discussed below, will be sent within thirty (30) days following the entry of the Order.  The Notices will be published immediately on the Receiver's website, www.Merrill-Ledford.com, following entry of the Order granting this Motion.  Further, the Receiver requests that such Order declare that any person or entity failing to dispute, confirm, or submit their claim to the Receiver on or before the Claims Bar Date shall be barred from asserting claims against the Receivership Estate and: (i) in the case of Investor Creditors, shall waive all rights to dispute the Receiver's determination of their claims; (ii) in the case of Net-Neutral Investor and Net-Winner Investors, shall waive all rights to dispute the Receiver's determination that they lack claims; (iii) in the case of Relief Defendants, shall waive any right to assert claims of any kind whatsoever against the Receivership Estate and/or the Receivership Assets; (iv) in the case of Other Creditors, shall waive any right to assert claims of any kind whatsoever against the Receivership Estate; and (v) in the case of Unknown Investors or unknown Other Creditors, shall

14

waive any right to assert claims of any kind whatsoever against the Receivership Estate.  A notice, submission, or dispute under this Claims Procedure will be deemed timely: (i) if sent by U.S. Mail, Federal Express, UPS, or any other similar delivery service, postmarked on or before the Claims Bar Date or other applicable deadline; or (ii) if sent by e-mail or website submission, transmitted on or before the Claims Bar Date or other applicable deadline.

**B.      The Claims Procedure.**

       **i.      Notification Process.**

26.      Because the Receiver is aware of the identities and has last known addresses for substantially all of the Known Investors, the Relief Defendants, and many Other Creditors, but cannot be certain that additional creditors to the Receivership Estate do not exist beyond those of whom he is currently aware, the Receiver proposes notice in the following forms: (i) direct mail via certified and regular U.S. mail and e-mail; (ii) website publication; and (iii) newspaper publication.

27.      As set forth in detail below, the Receiver proposes to direct mail to each Known Investor, Relief Defendant, and known Other Creditor a Notice of Claims Procedure and the Claims Bar Date (the "Notice").  The Receiver will also direct mail and e-mail a copy of this Motion to each Known Investor, Relief Defendant, known Other Creditor, and by ECF notice for any counsel who appeared on behalf of Relief Defendants.  This correspondence will be sent via certified and regular U.S. mail and e-mail to each Known Investor, Relief Defendant, and Other Creditor.  The Receiver believes that this is a cost-effective and reliable means to ensure that known potential creditors receive the necessary information regarding this Motion and their potential claim.

28.      In addition to direct mailing, the Receiver proposes to continue to use his website,

HB: 4815-6234-3641.2

www.Merrill-Ledford.com, as a resource for reaching potential creditors. On his website, the Receiver publishes information and keeps all interested parties informed on pertinent filings with the Court and substantial events affecting the Receivership Estate.[13] Upon filing this Motion, the Receiver will publish a copy of the Motion on his website for all potential creditors to review and object to the Claims Procedure proposed in this Motion. Immediately after the date of entry of the Order requested in this Motion, the Receiver will publish the Notices, the Claims Bar Date, and the Claim Form on his website, along with a copy of the Court's Order proposed in this Motion. The Motion, the Notices, the Claims Bar Date, the Claim Form, and the Court's Order proposed in this Motion will remain on the Receiver's website for a period of at least thirty (30) consecutive days.

29. Finally, the Receiver proposes to reach any additional unknown creditors via national and targeted regional newspaper publication. Upon information and belief, the creditors of the Receivership Estate are located throughout the United States. Due to space limitations and cost concerns, the Receiver proposes to publish notice of the Claims Bar Date, along with information on how to contact the Receiver and submit a claim (the "Newspaper Publication"), substantially in the form as that attached hereto as **Exhibit A**. Because there is no known concentration of creditors in a specific area and all are spread throughout the United States, the Receiver proposes to run the Newspaper Publication on one day, for two consecutive weeks, in a publication of general circulation, such as *USA Today* or *The Wall Street Journal*. In addition, the Receiver proposes to run the Newspaper Publication on one day, for two consecutive weeks, in a

---

[13] During the pendency of the SEC Action, when contacted by investors inquiring about the claims procedure, the Receiver has consistently advised that once this Court approved such procedures, all relevant information would be published on the specific "Claims Process" page of the estate website at www.Merrill-Ledford.com/Claims-Process/.

HB: 4815-6234-3641.2

publication of regional circulation targeted to areas of business operations or significant asset purchases, including Dallas-Fort Worth, Baltimore, and Las Vegas.  The proposed Newspaper Publication is more than the United States would provide in a forfeiture case.  The Receiver believes such notice is the most cost-efficient way to reach any potential creditors who may not have otherwise received notice of this SEC Action and the appointment of the Receiver over the Receivership Parties.

a.      **Known Investors.**

30.      The Known Investors will receive a Notice sent by U.S. Mail and e-mail[14] that will be substantially in the form attached hereto as **Exhibit B** (the "Investor Notice").[15]  The Investor Notice will explain the Claims Procedure and will be accompanied by a personalized and detailed transaction schedule that sets forth the Receiver's preliminary determination of each Known Investor's net claim amount (the "Transaction Schedule"). The Transaction Schedule will be substantially in the form attached hereto as **Exhibit C**.  To the extent Investment Entities will be treated as a single Known Investor, the individuals within the Investment Entities will receive a letter (the "Letter") sent by U.S. Mail notifying them that their potential claim will be administered by the Investment Entity in the Claims Procedure.  The Letter will be substantially in the form attached hereto as **Exhibit D**.

31.      The Known Investors will be asked to review the Transaction Schedule for the accuracy of the net claim amount (the "Net Transaction").  If a Known Investor agrees with each

---

[14] On February 5, 2021, the Receiver filed the Motion for Order Authorizing Retention, Employment, and Compensation of Bankruptcy Management Solutions Inc. d/b/a Stretto as Claims Agent (the "Stretto Motion").  *See* Dkt. No. 393.  On February 9, 2021, the Court granted the Stretto Motion.  *See* Dkt. No. 394.  The exhibits attached to this Motion will be sent to their recipients by Stretto as claims agent for the Receiver.

[15] The Notices and other exhibits attached to this Motion are subject to non-substantive modifications prior to their mailing to the potential Claimants.

of the transactions on the Transaction Schedule and the amount of the Net Transaction, the Known Investor will need to sign and return the Transaction Schedule, and the Net Transaction amount included therein will be deemed to be the amount of that Known Investor's allowed claim, or lack thereof, for purposes of any interim or final distribution process approved by the Court.  If the Known Investor disputes the accuracy of the Transaction Schedule, the Known Investor will be required to indicate on the schedule the amount the Known Investor believes the claim to be and return the revised Transaction Schedule, along with any relevant supporting documentation.  If a Known Investor has received Compensation Payments that are not identified in the Transaction Schedule, the Known Investor will be required to update the Transaction Schedule to identify any payments it has received.  If a Known Investor fails to disclose their receipt of Compensation Payments, the Known Investor may waive his or her right to participate in any ultimate distribution in this SEC Action.  To the extent the Receiver discovers an undisclosed Compensation Payment after a distribution is made in this SEC Action, the Known Investor may be required to return the full amount of any distribution received in this SEC Action.  Known Investors will need to submit their signed Transaction Schedules to the Receiver by U.S. mail, e-mail, or by upload to the Receiver's website on or before the Claims Bar Date (the "Investor Response").

32.     Additionally, because the Receiver cannot conclusively determine that there are no additional Investor Creditors of whom he is presently unaware, the Receiver proposes to continue to publish on his website, www.Merrill-Ledford.com, the form Investor Notice and a claim form for any potential investor to print and complete (the "Claim Form").  The Claim Form will be substantially in the form attached hereto as **Exhibit E**.  Any Investor Creditors who do not receive an Investor Notice because they are unknown to the Receiver may submit a claim by filling out and submitting a Claim Form attaching all supporting documentation, provided it is submitted to

the Receiver by U.S. mail, e-mail, or by upload to the Receiver's website on or before the Claims Bar Date.  A timely submitted claim form from a previously unknown Investor Creditor will be deemed an Investor Response for purposes of the Claims Procedure proposed in this Motion.

      **b.**    **Other Creditors.**

33.    Because there exist numerous potential Other Creditors of whom the Receiver is aware but whose potential claim amounts remain unknown to him at this time, the known Other Creditors will receive a Notice that will be substantially in the form attached hereto as **Exhibit F** (the "Other Creditor Notice") and will be accompanied by a Claim Form to be completed by the Other Creditor.  Other Creditors will be required to review the Other Creditor Notice and return to the Receiver a completed Claim Form, along with any relevant supporting documentation, by U.S. mail, e-mail, or by upload to the Receiver's website on or before the Claims Bar Date (the "Other Creditor Response").

34.    Additionally, because of the Receiver's belief that there may exist further potential Other Creditors of the Receivership Estate of which he is currently unaware, the Receiver proposes to publish on his website the Other Creditor Notice and Claim Form for potential Other Creditors to complete and submit to the Receiver.  Other Creditor claims shall be deemed submitted upon its completion and timely submission of the Claim Form to the Receiver by U.S. mail, e-mail, or by upload to the Receiver's website on or before the Claims Bar Date.  Should the Other Creditor fail to submit a Claim Form on or before the Claims Bar Date, the Other Creditor will be deemed to have no allowed claim for purposes of any interim or final distribution process approved by the Court.

      **c.**    **Relief Defendants.**

35.    The Relief Defendants will receive a Notice that will be substantially in the form

19

attached hereto as **Exhibit G** (the "Relief Defendant Notice") and will be accompanied by a Claim Form to be completed by the Relief Defendant.  Relief Defendants will be required to review the Relief Defendant Notice and return to the Receiver a completed Claim Form, along with any relevant supporting documentation, by U.S. mail, e-mail, or by upload to the Receiver's website on or before the Claims Bar Date (the "Relief Defendant Response").

36.     A Relief Defendant's claim will be deemed submitted upon the completion and submission of the Claim Form to the Receiver on or before the Claims Bar Date.  If a Relief Defendant fails to submit a Claim Form on or before the Claims Bar Date, the Relief Defendant will be deemed to have no allowed claim for purposes of any interim or final distribution process approved by the Court.  The resolution of a Relief Defendant's timely submitted claims will not occur until after a judgment is entered in this SEC Action as to the Relief Defendant.  If a judgment is entered against a Relief Defendant, entry of the judgment will trigger the timing of deadlines as detailed in the following section for such Relief Defendant's claim.

**ii.     Dispute Resolution Process.**

37.     Within the thirty (30) days immediately following the Claims Bar Date, the Receiver will review each Investor Response and Other Creditor Response from each Known Investor, Other Creditor, Unknown Investor, and Unknown Creditor and reply with his determination of each Claimant's proposed claim amount (the "Receiver's Reply").   The Receiver's Reply will be sent within thirty (30) days immediately following the Claims Bar Date and will be sent by the same method each of the Investor Responses and Other Creditor Responses were submitted to the Receiver (*i.e.*, U.S. Mail or e-mail).  For a Known Investor who disputes any transaction and/or the Net Transaction amount, the Receiver's Reply will state whether he agrees with or disputes the sum claimed by the Known Investor and the basis for his determination.

For Other Creditors and previously unknown Investor Creditors who may submit a claim via the Claim Form, the Receiver's Reply will state whether he agrees with or disputes the amount of the claim and the basis for his determination.

38.     With respect to the Relief Defendant Responses, the Receiver's Reply will be served within thirty (30) days immediately following entry of the judgment as to the SEC's claims against a Relief Defendant and will be sent by the same method the Relief Defendant Response was submitted to the Receiver (*i.e.*, U.S. Mail or e-mail).  The Receiver's Reply will state whether he agrees with or disputes the property or sum claimed by the Relief Defendant and the basis for his determination.

39.     If the Receiver's Reply disputes, in whole or in part, the claim as set forth in the Investor Response, Other Creditor Response, or Relief Defendant Response the Claimant will be provided an opportunity to supplement their claim (the "Supplement") within twenty-one (21) days of the postmark or transmission date of the Receiver's Reply.  If the Claimant fails to submit a Supplement to their claim within the time permitted or, if after reviewing the Supplement the Receiver still disputes the claim, in whole or in part, the Receiver will file a regularly noticed motion with this Court in accordance with Local Rule 105 of the United States District Court for the District of Maryland setting out his objection(s) to the claim(s) and will serve the motion on the Claimant via certified mail and first class mail.  The Receiver shall have the discretion to consolidate similar objections into one omnibus filing.  The written motion will contain copies of the original Notice, the Claimant's Response, the Receiver's Reply, and the Claimant's Supplement for efficiency and to maintain investor anonymity.  Nothing will preclude the Claimant from filing a written response to the Receiver's motion.

HB: 4815-6234-3641.2

40.     After the expiration of the response and reply periods under Local Rule 105, this Court will make a final determination as to the disputed claims.  The Court will have the discretion to set additional discovery, briefing and/or hearing, and schedule mandatory settlement conferences as the Court deems necessary.  All claims approved by the Receiver and all claims over which this Court has made a final determination in accordance with the foregoing Objection Process shall be final and will establish conclusively the amount of each claimant's allowed claim, which shall be taken into account in formulating and executing any interim or final distribution process to be approved by the Court at a later date.

41.     The Receiver shall also have authority to compromise and settle any claim set forth by a Claimant without further Order of this Court where the value of the claim, the amount discounted, or the amount given up by the Receivership Estate is equal to or less than $25,000. The Receiver shall file periodic reports reflecting any settlements or compromises equal to or less than $25,000.  The Receiver shall file a motion seeking Court approval of any compromise or settlement of a claim exceeding $25,000.  Any objection or opposition to a motion seeking Court approval of any compromise or settlement of a claim shall be filed within fourteen (14) days of the date the Receiver's motion is filed.  If no party objects to or opposes the motion to compromise or settle a claim, the Receiver shall file a notice of no objection to the proposed compromise or settlement.

## IV.     CONCLUSION

WHEREFORE, the Receiver respectfully requests that this Court grant this Motion and enter an Order (i) setting the Claims Bar Date, (ii) establishing the Claims Procedure, (iii) approving the attendant notification process, and (iv) granting such other relief as the Court deems proper.

HB: 4815-6234-3641.2

Respectfully Submitted,

/s/Lynn H. Butler
Lynn H. Butler, *pro hac vice*
HUSCH BLACKWELL LLP
111 Congress Ave., Suite 1400
Austin, TX 78701
Tel: (512) 472-5456
Fax: (512) 479-1101
lynn.butler@huschblackwell.com

Buffey E. Klein, *pro hac vice*
HUSCH BLACKWELL LLP
2001 Ross Avenue, Suite 2000
Dallas, Texas 75201
Tel: (214) 999-6100
Fax: (214) 999-6170
buffey.klein@huschblackwell.com

Brian P. Waagner, Fed. Bar No. 14954
HUSCH BLACKWELL LLP
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Tel: (202) 378-2300
Fax: (202) 378-2318
brian.waagner@huschblackwell.com

*Counsel for Receiver Gregory S. Milligan*

HB: 4815-6234-3641.2

## <u>CERTIFICATE OF SERVICE</u>

On February 9, 2021, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court for the District of Maryland, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically through the Court's CM/ECF filing system for all parties who have registered to receive electronic service.  Additionally, the foregoing document was served on the following parties not registered for Court's CM/ECF filing system as indicated below:

**Defendant Kevin B. Merrill (via U.S. Mail):**

Kevin B. Merrill, #64274-037
FCI Allenwood Low
Federal Correctional Institution
P.O. Box 1000
White Deer, PA 17887

**Defendant Jay B. Ledford (via U.S. Mail):**

Jay B. Ledford, #55055-048
FCI Safford
Federal Correctional Institution
P.O. Box 9000
Safford, AZ 85548

**Criminal Counsel for Defendant Kevin B. Merrill (via E-Mail and U.S. Mail):**

Elizabeth Genevieve Oyer
Office of the Federal Public Defender
100 S Charles St Ste 900 Tower II
Baltimore, MD 21201
liz_oyer@fd.org

Maggie Grace
Office of the Federal Public Defender
100 S Charles St, Tower II, 9th Floor
Baltimore, MD 21201
maggie_grace@fd.org

**Criminal Counsel for Defendant Jay B. Ledford (via E-Mail and U.S. Mail):**

Harry J Trainor, Jr
Trainor Billman Bennett and Milko LLP
116 Cathedral St Ste E
Annapolis, MD 21401
htrain@prodigy.net

HB: 4815-6234-3641.2

**Criminal Counsel for Defendant Cameron R. Jezierski (via E-Mail and U.S. Mail):**

Joseph J Aronica
Duane Morris LLP
505 9th St NW Ste 1000
Washington, DC 20004
jjaronica@duanemorris.com

**Criminal Counsel for Relief Defendant Amanda Merrill (via E-Mail and U.S. Mail):**

Addy R. Schmitt
Ian Herbert
Miller & Chevalier Chartered
900 16th St NW
Washington, DC 20006
aschmitt@milchev.com
iherbert@milchev.com

**Lalaine Ledford (via U.S. Mail):**

Lalaine Ledford
10512 Courtney Cove Ave.
Las Vegas, NV 89144

Lalaine Ledford
2381 Carnegie Hall Street
Las Vegas, NV 89135
lalainebarretto@yahoo.com

**Baltimore County Office of Law (via E-Mail and U.S. Mail):**

Susan B. Dubin
Baltimore County Office of Law
400 Washington Avenue
Towson, Maryland 21204
sdubin@baltimorecountymd.gov

**Dundalk United Methodist Church (U.S. Mail):**

Dundalk United Methodist Church
c/o Edward F. Mathus
6903 Mornington Road
Baltimore, Maryland 21222

HB: 4815-6234-3641.2

**Lienholders, Tax Assessors, and Other Interested Parties (U.S. Mail):**

Florida Community Bank, N.A.
2325 Vanderbilt Beach Road
Naples, Florida 34109

Mortgage Electronic Registration Systems, Inc.
PO Box 2026
Flint, Michigan 48501-2026

Collier County, Florida Tax Assessor
3291 Tamiami Trail East
Naples, Florida 34112

Maryland Department of Assessments & Taxation
301 W. Preston Street
Baltimore, Maryland 21201-2395

Branch Banking and Trust Company,
A North Carolina Banking Corporation
PO Box 1290
Whiteville, North Carolina 28472

Talbot County, Maryland Finance Office
Talbot County Courthouse
11 North Washington Street, Suite 9
Easton, Maryland 21601

HSBC Bank USA, National Association, as trustee of
J.P. Morgan Alternative Loan Trust 2006-A5
c/o Howard n. Bierman, Trustee
c/o Select Portfolio Servicing, Inc.
3815 Southwest Temple
Salt Lake City, Utah 84115

Clark County, Nevada Tax Assessor
500 S. Grand Central Parkway
Las Vegas, Nevada 89155

First Financial Bank, N.A. Southlake
3205 E. Hwy. 114
PO Box 92840
Southlake, Texas 76092

Hunter Kelsey of Texas, LLC
4131 Spicewood Springs Road, Bldg. J-1A
Austin, Texas 78759

Frost Bank, f/k/a The Frost National Bank
c/o Michael J. Quilling
Quilling, Selander Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201

The City of Colleyville, Texas
c/o Victoria W. Thomas
Nichols, Jackson, Dilard, Hager & Smith, L.L.P.
1800 Lincoln Plaza
500 North Akard
Dallas, Texas 75201

Tarrant County, Texas Tax Assessor
100 E. Weatherford
Fort Worth, Texas 76196

J Trust
c/o Hillary RE. Badrow, Trustee
2801 Paramount Boulevard
Amarillo, Texas 79109

Dallas Central Appraisal District
2949 N. Stemmons Freeway
Dallas, Texas 75247-6195

Bozeman West
PO Box 1970
15632 West Main Street
Bozeman, Montana 59771-1970

Neil A. Patel
5308 Burgandy Court
Colleyville, Texas 76034

TIB – The Independent BankersBank
350 Phelps Court, Suite 200
PO Box 560528i
Dallas, Texas 75356-0528

HB: 4815-6234-3641.2

Wachovia Mortgage, FSB
PO Box 659548
San Antonio, Texas 78265-9548

Denton County Tax Assessor
1505 E. McKinney Street
Denton, Texas 76209-4525

Potter County, Texas Tax Assessor
900 South Polk, Suite 106
Amarillo, Texas 79101

Wells Fargo Home Mortgage
P.O. Box 10335
Des Moines, IA 50306

Albertelli Law
Attn: Coury M. Jacocks
2201 W. Royal Lane, Suite 155
Irving, TX 75063

Samual I. White, P.C.
5040 Corporate Woods Drive, Suite 120
Virginia Beach, VA 23462

Stephen D. Graeff
Dunlap Bennett & Ludwig
8300 Boone Boulevard, #550
Vienna, VA  22182

**All Known Investors and known Other Creditors (via E-Mail and U.S. Mail)**

*/s/ Lynn H. Butler*
Lynn H. Butler

HB: 4815-6234-3641.2