# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | Case No.: 1:18-cv-02844-RDB |
| **KEVIN B. MERRILL, et al.,** | ) ) ) | |
| *Defendants*. | ) ) | |

**DECLARATION OF GREGORY S. MILLIGAN IN SUPPORT OF RECEIVER'S MOTION FOR ORDER APPROVING DISTRIBUTION PLAN AND INTERIM DISTRIBUTION**

Gregory S. Milligan declares, under 28 U.S.C. § 1746 and under penalty of perjury, that the following is true and correct:

1. My name is Gregory S. Milligan and I am of sound mind and capable of making this Declaration. I have personal knowledge of the facts stated herein and they are true and correct. I make this Declaration in support of the Motion for Order Approving Distribution Plan and Interim Distribution (the "Distribution Plan").

2. I am an Executive Vice President of HMP Advisory Holdings, LLC, d/b/a Harney Partners and a Certified Turnaround Professional.

3. On September 13, 2018, the Court entered the Order Appointing Temporary Receiver (Dkt. No. 11) that appointed me as the Receiver for the estates of the Receivership Parties in the civil action styled *Securities and Exchange Commission v. Kevin B. Merrill, et al.*, Case No.: 1:18-cv-02844-RDB pending in the United States District Court for the District of Maryland. On November 27, 2018, the Court entered the First Amended Order Appointing Temporary Receiver (Dkt. No. 62) that further clarified my rights, duties and obligations. On September 14, 2021, the Court entered the Second Amended Order Appointing Temporary Receiver (Dkt. No. 484) (the "Receivership Order") that further confirmed my rights, duties, and obligations.

4. On October 4, 2019, the Court entered an Order granting me authority to identify claimants and creditors of the Receivership Estate and to propose a plan of distribution. *See* Dkt. No. 222. On February 10, 2021, the Court entered an Order granting my Motion for Order Setting Claims Bar Date, Establishing Claims Procedure, and Approving Notification Process (the "Claims Procedure"). *See* Dkt. No. 396.

1

5. Pursuant to the Claims Procedure, any Known Investors,[1] Relief Defendants, Other Creditors, Unknown Creditors, and Unknown Investor Creditors were directed to submit any claims they had against any of the Receivership Parties by May 20, 2021 (the "Claims Bar Date"). *See id*. The Claims Procedure provided procedures through which I could contest any claim and allowed the claimant to subsequently supplement the claim. The Claims Procedure similarly provided a procedure through which the Court could resolve any disputed claims. *See id*.

6. The Claims Bar Date has now passed, and I have been working diligently to resolve disputed claims. A total of 274 claims were submitted, which included 219 claims submitted by Known Investors, 1 claim submitted by a Relief Defendant, and 54 claims submitted by Other Creditors, individuals within Investment Entities, and/or Unknown Investors (collectively, the "Claimants"). Through counsel, I objected to and/or requested that 83 Claimants supplement or withdraw their claims. Following resolution of this process, there are 238 undisputed and allowed claims totaling $166,022,249.69, and there are 36 disputed claims subject to the Omnibus Objection to Claims (Dkt. No. 503) (the "Claims Objections"). The disputed claims include 8 Known Investor claims for a total amount of $8,672,556.83 and 28 Other Creditor claims for a total amount of $2,811,799.26.

7. I am aware and knowledgeable of the three primary distribution methodologies utilized in receivership cases similar to this SEC Action. These methodologies are: (i) rising tide; (ii) net investment or net loss; and (iii) last statement method.

8. The last statement method should be rejected as a distribution method in this SEC Action because its use would have the absurd effect of giving legal effect to the Defendants' fraud as many of the investments were based on fake consumer debt portfolios, or investments that never existed in the first place. Further, the Defendants did not consistently provide account statements, so it would be entirely inequitable to adopt a distribution plan based on inconsistent statements. For the same reasons the last statement methodology should not be used, the Court should find that a pooling and rising tide distribution is appropriate because the Receivership Parties commingled investors' funds and there is no equitable reason to allow certain investors to recover more than others simply based on fictitious statements.

9. As between the rising tide and net investment methodologies, I believe the rising tide is the most equitable distribution methodology for the Class 4 Claimants in this SEC Action. With respect to investors, after factoring in settlements and other recoveries, 201 investors incurred a loss on their investment with the Receivership Parties. The majority of the investors—160—lost 50% or more of their principal investment with 73 investors losing 100% of their investment. In addition, 16 allowed Class 4b general unsecured creditors will be deemed to have lost 100% of their claim.

---

[1] Capitalized terms herein shall have the same meaning as those defined in the Claims Procedure unless otherwise noted.

HB: 4864-8598-5028.1

10. If the Court adopts a rising tide methodology and assuming a $50,000,000 distribution to Class 4, 176 allowed Claimants would receive a distribution increasing the lowest recovery from 0.0 % to 48.86%. 41 allowed Claimants would not receive a distribution as they already recovered at least 48.86% of their principal investment. Attached as Exhibit B to the Distribution Plan is the distribution schedule for what each allowed Class 4 Claimant would receive under the rising tide methodology compared to the net loss methodology with the proposed $50,000,000 interim distribution.

11. If the Court were to adopt the net loss method, all allowed Claimants would receive a distribution; however, it would be at the cost of the allowed Claimants who sustained a 100% loss. Instead of these Claimants recovering 48.86% of their principal under rising tide methodology, the lowest recovery would drop to 28.17% under the net loss methodology. Thus, the allowed Claimants who lost everything would suffer at the expense of the investors who received distributions pre-Receivership.

12. The rising tide is also a more equitable distribution methodology to apply in this SEC Action as 147 allowed Claimants would recover more under a rising tide methodology than net loss, assuming a $50,000,000 distribution. Only 70 allowed Claimants would receive a higher recovery under the net loss methodology.

13. Accordingly, I recommend the Court adopt a rising tide methodology as (1) it equalizes the lowest percentage return victims of the Ponzi scheme recover on their investment, (2) more allowed Claimants will receive a greater distribution using rising tide methodology, and (3) it raises the lowest percentage of recovery from 28.17% to 48.86% with a $50,000,000 distribution when compared against the net loss methodology.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 17, 2021.

_____
GREGORY S. MILLIGAN