IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

    v.                                          Case No: 1:18-cv-02844-RDB

KEVIN B. MERRILL, *et al*.

        Defendants.

## CLAIMANT RICHY CASTRO'S RESPONSE TO THE RECEIVER'S OMNIBUS OBJECTION TO CLAIMS

Like many consumers, Mr. Castro was the victim of DeVille Asset Management, Ltd.'s abusive and illegal debt collection efforts. DeVille insisted that Mr. Castro owed several hundred dollars for his Westwood College collection account, which was not true. In an attempt to coerce Mr. Castro into paying this (incorrect) amount, DeVille reported the collection information to the credit bureaus and refused to remove the information after Mr. Castro disputed it. DeVille's conduct violated the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA").

Mr. Castro has been attempting to obtain relief for these violations for years. However, his pending litigation, in which DeVille defaulted, has been stayed as a result of this receivership. Now, the Receiver wants to deny Mr. Castro's claim (identified as Claim O-0010 in the Receiver's objection) because he allegedly has not provided sufficient documentation regarding the value of his claim. But the Receiver's proposed resolution of Mr. Castro's claim would effectively leave him with no redress for DeVille's illegal collection activity. The Court should reject the Receiver's proposed resolution of Mr. Castro's claim as inequitable and patently unfair.

## FACTUAL BACKGROUND

Several years ago, Mr. Castro attended classes at Westwood College. However, Mr. Castro left Westwood College in May 2013. At the time he stopped attending, it was his understanding that his account was paid in full and he did not have an outstanding balance. In May 2018, Mr. Castro reviewed his credit reports and noticed that DeVille was reporting a collection account with an outstanding balance for a Westwood College Account. This information was incorrect because Mr. Castro did not owe any money to Westwood College when he left school. Therefore, in May 2018, Mr. Castro sent written disputes to Experian and Trans Union explaining that he did not owe the debt and asking that the DeVille collection be removed from his credit file. Experian and Trans Union forwarded Mr. Castro's disputes to DeVille, and once it received his disputes, DeVille failed to conduct a reasonable investigation. Instead, DeVille followed a standard and systemically unlawful process where it only reviewed its own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to Experian and Trans Union. DeVille did not conduct a substantive review of any sort to determine whether the information already in its computer system was actually accurate when investigating and responding to Mr. Castro's disputes. Instead, it verified its previous reporting as accurate and indicated to Experian and Trans Union that the incorrect information should remain on Mr. Castro's credit reports. Moreover, when DeVille provided its dispute investigations to Experian and Trans Union, it failed to note that Mr. Castro disputed the account. And after Mr. Castro's dispute, DeVille continued to submit monthly reporting to Experian and Trans Union indicating that Mr. Castro owed an outstanding balance. Deville continued this monthly reporting in an attempt to collect money from Mr. Castro that he did not owe.

Mr. Castro sent a second set of dispute letters to Experian and Trans Union in July 2018 again disputing DeVille's inaccurate reporting. He attached a copy of a ledger (that he received from

2

DeVille) demonstrating that he was not enrolled in Westwood College when DeVille claimed he become delinquent on the debt, and that his account balance was zero at the time that he left Westwood College. These disputes were again forwarded to DeVille, and DeVille again failed to conduct a proper investigation, and instead verified the account as accurately reporting with an outstanding balance.

As a result of DeVille's failure to correct the inaccurate information in his credit reports and improper collection attempts, Mr. Castro suffered significant damages. For example, his credit score was reduced and Mr. Castro's ability to obtain credit on favorable terms was limited. In August 2018, when Mr. Castro applied for Wells Fargo and Capital One credit cards, he qualified for less favorable terms as a result of DeVille's negative credit reporting. DeVille's actions also caused Mr. Castro emotional distress. It affected his ability to focus on his college courses. It also caused him a great deal of stress and anxiety, as he was focusing on getting his financial affairs in order, obtaining a college degree, and taking other steps to secure a successful future at the time. He felt that DeVille's collection efforts—on a debt that he had already paid—set him back in these efforts, which was very upsetting to him.

Based on this conduct, Mr. Castro filed a lawsuit against DeVille in the Eastern District of Virginia on October 18, 2018 for violations of the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA"). He alleged that Deville violated § 1692e of the FDCPA by making false and misleading representations to Experian and Trans Union that he owed money for the Westwood College collection account and willfully violated § 1681s-2(b) of the FCRA by failing to properly investigate and respond to his dispute and failing to indicate that his account was disputed.

DeVille failed to respond to Mr. Castro's complaint and the clerk noted its default on December 20, 2018. Mr. Castro moved for a default judgment against DeVille on January 14, 2019,

and the motion was set for a hearing on January 25, 2019. However, on January 23, 2019, the Receiver entered an appearance in that case and notified the case of this action and the stay. The default judgment hearing was cancelled, and the Virginia litigation has been stayed since that time.

Then, in May 2021, Mr. Castro submitted a claim for payment to the Receiver, along with substantial documentation to support his claim. Ex. 1.[1] The Receiver requested additional information from Mr. Castro on June 18, 2021 (Ex. 2), which he provided on July 6, 2021. Ex. 3. On November 17, 2021, the Receiver objected to Mr. Castro's claim (No. O-0010), summarily stating that Mr. Castro had not provided sufficient documents to conclude that DeVille is liable for Mr. Castro's claims or that Mr. Castro has incurred the damages identified in his claim. ECF No. 503.

## LEGAL STANDARD

"[A] district court has within its equity power the authority to appoint receivers and to administer receiverships." *Gilchrist v. Gen. Elec. Capital Corp.,* 262 F.3d 295, 302 (4th Cir. 2001) (citing Fed. R. Civ. P. 66). A "district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986) (internal quotations omitted). "The primary job of the district court is to ensure that the proposed plan of distribution is fair and reasonable." *S.E.C. v. Quan*, 870 F.3d 754, 761 (8th Cir. 2017) (internal quotations omitted); *see also S.E.C. v. Torchia*, 922 F.3d 1307, 1311 (11th Cir. 2019) ("The goal of such receiverships is to grant fair relief to as many investors as possible.").

## ARGUMENT

In objecting to Mr. Castro's claim, the Receiver did not discuss his claim in any detail. In fact, it didn't even lodge a specific objection tailored to Mr. Castro's claim. Instead, in a single paragraph

---

[1] Given the large amount of sensitive personal and financial information in these documents, Mr. Castro has filed a redacted version of his claim form, but will provide the full, unredacted claim to Chambers.

that addressed seven claims, the Receiver merely stated:

> Some of these Claimants provided a copy of the lawsuit and the documents they contend support liability against the Receivership Party; the remainder did not provide any documentation for the claimed liability. The Receiver provided these Claimants with the opportunity to supplement their claim with all documents relating to, evidencing, or supporting the claim. After reviewing the documents submitted by these Claimants, the Receiver has insufficient documentation to conclude that the Receivership Party is liable for the causes of action at issue and/or that the Claimant has incurred the damages identified in their claim amount. Accordingly, the Receiver objects to the claims submitted by these Claimants on the grounds they submitted insufficient documentation to support the basis for liability or their claim amount.

ECF No. 503 at 22. This boilerplate objection does not apply to Mr. Castro's claim. First, Mr. Castro submitted documentation showing that default had been entered against DeVille in the Virginia litigation. Ex. 1 at 80. Therefore, all of Mr. Castro's well-pleaded allegations against DeVille are deemed admitted and DeVille has lost the right to raise defenses to these allegations. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). Mr. Castro's complaint contained detail allegations establishing not only that DeVille violated the FDCPA and the FCRA, but that its FCRA violations were willful. Ex. 1 at 68-79. But Mr. Castro did not merely rely on his pleadings—he also provided documents substantiating his allegations, including documents showing the inaccurate credit reporting, Mr. Castro's disputes, DeVille's dispute responses to the credit bureaus, and proof of his damages.[2] Ex. 1 at 3-67. Taken together, these allegations, supporting evidence, and DeVille's default are sufficient to establish DeVille's liability in the Virginia litigation.

Mr. Castro also submitted detailed evidence and information about the amount of DeVille's liability in the Virginia litigation, including an affidavit detailing his actual damages, proof of credit denials, an attorney's fee affidavit, and evidence regarding damages awards in similar litigation. Ex.

---

[2] Undoubtedly, there is additional documentation in DeVille's and the Receiver's possession that would substantiate Mr. Castro's claim, but given DeVille's default and the stay, Mr. Castro was unable to obtain these materials during the discovery process.

1 at 81-162. As a result of these documents and evidence, Mr. Castro is entitled to is entitled to $69,138.34, which includes $1,000 in statutory damages, $19,500 in actual damages, $37,500 in punitive damages, attorney's fees of $10,652.50, and litigation costs of $485.84.

Given this substantial documentation, all of which was submitted with Mr. Castro's claim, Deville's objection that Mr. Castro failed to establish DeVille's liability or substantiate his damages is groundless and the Court should overrule it.

DeVille's real objection—although it didn't raise it—is likely that Mr. Casto's claim should be denied because the Eastern District of Virginia never entered default judgment against DeVille, including a determination of the specific damages to which Mr. Castro was entitled. As an initial matter, the Court should rule that the Receiver has waived this objection by failing to making it. There is simply no credible argument that the Receiver's boilerplate objection provided Mr. Castro with specific notice for the basis of this objection. And even if the Receiver's objection did somehow preserve this argument, it is also patently unfair to completely deny Mr. Castro's claims on this basis. Mr. Castro has been unable to obtain a ruling on his default judgment motion as a result of the stay entered in this case. If this Court were to sustain the Receiver's objection to Mr. Castro's claim and proceed with the distribution of the Receivership as the Receiver has recommended, the estate will be liquidated and Mr. Castro will not be able to recover any money that he is awarded as a result of his pending default judgment motion after the stay is lifted, leaving Mr. Castro without any recourse for his claims. To avoid this clear inequity, this Court should overrule the Receiver's objection and either determine the amount of Mr. Castro's claim or grant Mr. Castro relief from the stay and allow the Eastern District of Virginia to rule on his default judgment motion before the distribution plan is finalized so that Mr. Castro can obtain relief for his claims. This relief is certainly within the broad power that the Court has to fashion equitable relief under a receivership, as discussed above.

## CONCLUSION

The Receiver's objection to Mr. Castro's claim should be denied because it is a boilerplate objection that is substantively incorrect because Mr. Castro has submitted detailed evidence and information establishing DeVille's liability and Mr. Castro's damages. The Receiver's proposed resolution of Mr. Castro's claim is patently unfair and would leave him completely unable to recover anything for his claims after the Receiver prevented Mr. Castro from obtaining a ruling on his default judgment Motion. The Court should use its broad discretion to either decide Mr. Castro's default judgment motion or it should allow the Eastern District of Virginia to decide the Motion before finalizing a distribution plan in this case.

Dated:  January 3, 2022                         Respectfully submitted,

                                                **RICHY CASTRO**

                                                By:   */s/ Kristi C. Kelly*
                                                         Counsel

Kristi C. Kelly, Bar No. 07244
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com
*Counsel for Claimant Richy Castro*