Exhibit 1

*Securities and Exchange Commission v. Kevin B. Merrill, Jay B. Ledford, et al.*
**United States District Court for the District of Maryland**
**Civil Action No. 18-cv-02844-RDB**

# CREDITOR CLAIM FORM

**Please complete and mail, e-mail, or submit online to:**

**Merrill-Ledford Claims**
**c/o Stretto**
**8269 E. 23rd Avenue, Suite 275**
**Denver, CO 80238**
or
**E-Mail:** TeamMerrillLedford@Stretto.com
or
**Website:** https://cases.stretto.com/merrill-ledford

**IF YOU HAVE NOT RECEIVED A NOTICE IN THE MAIL FROM THE RECEIVER SETTING FORTH THE AMOUNT OF YOUR PROPOSED CLAIM, THIS SIGNED CLAIM FORM MUST BE POSTMARKED OR SUBMITTED ON OR BEFORE MAY 20, 2021. PLEASE NOTE THAT IF YOU FAIL TO COMPLETE, SIGN, AND SUBMIT THIS CLAIM FORM TO THE RECEIVER, YOU WILL NOT HAVE A CLAIM IN THE ABOVE-REFERENCED SEC ACTION.**

| | |
|---|---|
| Name of Creditor: | Richy Castro |
| Address: | 600  Greenbrier ct, #303 Fredericksburg, VA  22401 |
| Email Address: | |
| Telephone No.: | |
| Date of Claim: | May 10, 2018 |
| Amount of Claim: | $69,138.34 |

Please attach copies of all documents relating to, evidencing, or supporting your claim (*e.g.*, invoices, receipts, correspondence, etc.). Do not send original documents. Copies of the documents provided to the Receiver will not be returned to you. You must maintain the original documents as the Receiver may ultimately request them for verification.

I declare, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the foregoing is true and correct.

Executed on __May__ __10__, 2021.

_____
Signature

__Richy  Castro__
Printed Name

For additional information regarding this receivership and claims process in the above-referenced SEC Action, please visit the Receiver's website at www.Merrill-Ledford.com/Claims-Process/.

**RICHY EDUARDO CASTRO   |**

## Withdrawals and other subtractions

| Date | Description | Amount |
|------|-------------|--------|
| 10/30/14 | CHECKCARD  1029 WILLIAMS AND FUDGE INC 803-3299791  SC 24755424302643023580369 | -2,479.16 |

**Total withdrawals and other subtractions**

To Whom It May Concern:

This letter is being sent to you in response to a listing on my credit report. Be advised this is not a refusal to pay, but a notice sent pursuant to the Fair Debt Collection Practices Act, 15 USC 1692g Sec. 809 (8), stating your claim is disputed and validation is requested.

This is NOT a request for "verification" or proof of my mailing address, but a request for VALIDATION made pursuant to the above-named Title and Section. I respectfully request your offices provide me with competent evidence that I have any legal obligation to pay you.

At this time I will also inform you that if your offices continue to report invalidated information to any of the 3 major credit bureaus (Equifax, Experian or TransUnion) this action might constitute fraud under both Federal and State Laws. Due to this fact, if any negative mark is to be found on any of my credit reports by your company or the company that you represent, I will not hesitate in bringing legal action against you and your client for the following:

Violation of the Fair Credit Reporting Act
Violation of the Fair Debt Collection Practices Act
Defamation of Character

If your offices are able to provide the proper documentation as requested in the following Declaration, I will require at least 30 days to investigate this information, during which time all collection activity must **cease and desist.** Also during this validation period, if any action is taken which could be considered detrimental to any of my credit reports, I will consult with my legal counsel for suit.

This includes any listing of any information to a credit reporting repository that could be inaccurate or invalidated. If your office fails to respond to this validation request within 30 days from the date of your receipt, all references to this account must be deleted and completely removed from my credit file and a copy of such deletion request shall be sent to me immediately.

It would be advisable that you and your client assure that your records are in order before I am forced to take legal action.

Best Regards,

Richy Eduardo Castro

**Scanned with CamScanner**

If your offices are able to provide the proper documentation as requested in the following Declaration, I will require at least 30 days to investigate this information, during which time all collection activity must **cease and desist.** Also during this validation period, if any action is taken which could be considered detrimental to any of my credit reports, I will consult with my legal counsel for suit.

This includes any listing of any information to a credit reporting repository that could be inaccurate or invalidated. If your office fails to respond to this validation request within 30 days from the date of your receipt, all references to this account must be deleted and completely removed from my credit file and a copy of such deletion request shall be sent to me immediately.

It would be advisable that you and your client assure that your records are in order before I am forced to take legal action.

Best Regards,

Richy Eduardo Castro

CREDITOR/DEBT COLLECTOR DECLARATION

Please provide all of the following information and submit the appropriate forms and paperwork within 30 days from the date of your receipt of this request for validation.

Name and Address of Alleged Creditor:

_____

Name on File of Alleged Debtor:

_____

Alleged Account #:

_____

Address on File for Alleged Debtor:

_____

Amount of alleged debt:

_____

Date that this alleged debt became payable:

**Richy Eduardo Castro**

**1814 Halifax road,**

**Woodbridge, Virginia 22191**

**Richycastro36@gmail.com**

**Social Security Number:** ▉▉▉▉▉▉

**Experian's National Consumer Assistance Center**

**P.O. Box 4500**

**Allen, TX 75013**

**05/14/2018**

To whom this may concern:

I am writing to dispute the following collections account in my file: "DEVILLE ASSET MANAGEME,D40334XXXX". The item I am disputing, as it appears on my Experian online credit report, is also attached. The attachment contains further information on the item.

This item, "DEVILLE ASSET MANAGEME,D40334XXXX", is inaccurate because the debt is unverifiable. I am requesting three things be done about this and they are listed as follows:

1. An investigation to verify this debt is launched. Verification must include an agreement which was signed by me, Richy Eduardo Castro, and the original creditor.
2. Upon discovering that this debt is not verifiable, this debt and its effects on my credit report and/or FICO score must be completely removed from my credit report.
3. Any documents obtained, created, or pertaining to this investigation to be provided to me by your bureau.

The account pertaining to this dispute has affect my FICO score and I have attached a FICO score tracker to present this evidence. I am requesting my credit to be returned to "Good" status. Please investigate this matter and correct the disputed item as soon as possible.

Sincerely,

Richy Eduardo Castro

**Richy Eduardo Castro**

**1814 Halifax road,**

**Woodbridge, Virginia 22191**

**Richycastro36@gmail.com**

**Social Security Number:** ███████

**TransUnion Consumer Solutions**

**P.O. Box 2000**

**Chester,PA 19016-2000**

**5/14/2018**

To whom this may concern:

      I am writing to dispute the following collections account in my file: "07 WESTWOOD COLLEGE,D40334XXXX". The item I am disputing, as it appears on my Experian online credit report, is also attached. The attachment contains further information on the item.

This item, "07 WESTWOOD COLLEGE,D40334XXXX", is inaccurate because the debt is unverifiable. I am requesting three things be done about this and they are listed as follows:

1. An investigation to verify this debt is launched. Verification must include an agreement which was signed by me, Richy Eduardo Castro, and the original creditor.
2. Upon discovering that this debt is not verifiable, this debt and its effects on my credit report and/or FICO score must be completely removed from my credit report.
3. Any documents obtained, created, or pertaining to this investigation to be provided to me by your bureau.

Please investigate this matter and correct the disputed item as soon as possible.

Sincerely,

Richy Eduardo Castro

**DeVille Asset Management Limited**
Post Office Box 1987
Colleyville, Texas 76034

(800 or 817) 205-1831
Local (817) 251-7000
Facsimile (817) 251-7009
info@devilleltd.com
www.devilleltd.com

05/18/2018

CASTRO RICHY
1814 HALIFAX RD
WOODBRIDGE, VA 22191

Re:    Verification of Debt

Dear CASTRO RICHY,

This letter and any attachment are provided in response to your recently received inquiry concerning this debt.

| | |
|---|---|
| Internal ID: | 4033483 |
| Original Creditor: | WESTWOOD COLLEGE |
| Original Account Number: | |
| Date of first Delinquency: | 05/27/2014 |
| Last Payment Date | |
| Last Payment Amount | |
| Principal Balance | $1,648.11 |

Please be advised that your dispute has been acknowledged. Please see attached documents, which lists the pertinent dates associated with this outstanding debt.

Please review this documentation and respond accordingly.

In an attempt to resolve this matter, DeVille is extending a **Debt Reduction Offer of twenty-five percent (25%). We are not obligated to renew this offer**. In the event, you are unable to take advantage of this opportunity, please contact our office and we can discuss alternative repayment plans.

If you have any further questions, feel free to contact us.

You have thirty (30) days to make payment arrangements, or further collection efforts will commence.

Sincerely,

Validation Department
817-677-6163
Compliance@devilleltd.com
DeVille Asset Management, LTD

IN REGARDS TO THIS COMMUNICATION, DEVILLE ASSET MANAGEMENT, LTD IS ACTING AS A DEBT COLLECTOR AND THIS IS A COMMUNICATION FROM A DEBT COLLECTOR, AS DEFINED BY U.S.C. 1692 (A)(6). THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

7/14/2016
2:43:40PM

# Ledger Card

**Student Name** Castro, Richy
**Address** 1814 Halifax Rd, Woodbridge, VA 22191

**Balance** $ 0.00
**Student ID** 1206201685
**Current Status** Drop
**Program Version** Bachelor of Science in Criminal Justice, Major in Administration
**Start Date** 8/1/2012
**LDA** 5/21/2013
**Graduation Date** 7/30/2015

## Annandale

| Date | Check/Ref | Enrollment | Term | Campus | Code | Pmt Per/Av | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/1/2012 | Auto-Bill | CA12062762 : Bachelor of Sc | 12AUG | VAA | RESOURF | | Resource Fee | 100.00 | | 100.00 |
| 8/1/2012 | Auto-Bill | CA12062762 : Bachelor of Sc | 12AUG | VAA | TUIT | | Tuition | 5,115.00 | | 5,215.00 |
| 8/7/2012 | 4550128 | CA12062762 : Bachelor of Sc | 12AUG | VAA | BOOK | | Richy Castro - ORDER | 264.03 | | 5,479.03 |
| 8/8/2012 | 98447/FA 98447 | CA12062762 : Bachelor of Sc | 12AUG | VAA | | | FSEOG 2012-13 | | 600.00 | 4,879.03 |
| 8/16/2012 | FA 99180 | CA12062762 : Bachelor of Sc | 12AUG | VAA | | | Pell Grant 2012-13 | | 1,850.00 | 3,029.03 |
| 8/31/2012 | 100280/FA 100280 | CA12062762 : Bachelor of Sc | 12AUG | VAA | | | Direct Subsidized Stafford Loan 2012-13 | | 1,156.00 | 1,873.03 |
| 8/31/2012 | 100280/FA 100280 | CA12062762 : Bachelor of Sc | 12AUG | VAA | | | Direct Unsubsidized Stafford Loan 2012-13 | | 1,980.00 | (106.97) |
| 10/3/2012 | 102181/FA 102181 | CA12062762 : Bachelor of Sc | 12OCT | VAA | | | Direct Subsidized Stafford Loan 2012-13 | | 1,156.00 | (1,262.97) |
| 10/3/2012 | 102181/FA 102181 | CA12062762 : Bachelor of Sc | 12OCT | VAA | | | Direct Unsubsidized Stafford Loan 2012-13 | | 1,980.00 | (3,242.97) |
| 10/10/2012 | Auto-Bill | CA12062762 : Bachelor of Sc | 12OCT | VAA | TUIT | | Tuition | 5,115.00 | | 1,872.03 |
| 10/10/2012 | Auto-Bill | CA12062762 : Bachelor of Sc | 12OCT | VAA | RESOURF | | Resource Fee | 100.00 | | 1,972.03 |
| 10/11/2012 | FA 102716 | CA12062762 : Bachelor of Sc | 12OCT | VAA | | | FSEOG 2012-13 | | 600.00 | 1,372.03 |
| 10/17/2012 | 4719825 | CA12062762 : Bachelor of Sc | 12OCT | VAA | BOOK | | Richy Castro - ORDER | 259.68 | | 1,631.71 |
| 10/25/2012 | 103541/FA 103541 | CA12062762 : Bachelor of Sc | 12OCT | VAA | | | Pell Grant 2012-13 | | 1,850.00 | (218.29) |
| 1/2/2013 | 106636/FA 106636 | CA12062762 : Bachelor of Sc | 13JAN | VAA | | | Direct Subsidized Stafford Loan 2012-13 | | 1,155.00 | (1,373.29) |
| 1/2/2013 | 106636/FA 106636 | CA12062762 : Bachelor of Sc | 13JAN | VAA | | | Direct Unsubsidized Stafford Loan 2012-13 | | 1,980.00 | (3,353.29) |
| 1/7/2013 | 4845974 | CA12062762 : Bachelor of Sc | 13JAN | VAA | BOOK | | Richy Castro - ORDER | 409.24 | | (2,944.05) |
| 1/9/2013 | Auto-Bill | CA12062762 : Bachelor of Sc | 13JAN | VAA | TUIT | | Tuition | 5,115.00 | | 2,170.95 |
| 1/9/2013 | Auto-Bill | CA12062762 : Bachelor of Sc | 13JAN | VAA | RESOURF | | Resource Fee | 100.00 | | 2,270.95 |
| 1/10/2013 | 107001/FA 107001 | CA12062762 : Bachelor of Sc | 13JAN | VAA | | | FSEOG 2012-13 | | 600.00 | 1,670.95 |
| 1/24/2013 | 107616/FA 107616 | CA12062762 : Bachelor of Sc | 13JAN | VAA | | | Pell Grant 2012-13 | | 1,850.00 | (179.05) |

Westwood and Redstone Colleges - PRODUCTION

7/14/2016
2:43:40PM

## Ledger Card

**Student Name  Castro, Richy**

| Date | Reference | Account : Program | Term | Loc | Type | Description | Amount | Balance |
|---|---|---|---|---|---|---|---|---|
| 2/1/2013 | UNREG/DROP REFUND | CA12062762 : Bachelor of Sc | 13JAN | VAA | TUIT | Tuition | 154.00 | (25.05) |
| 2/8/2013 | 13JAN PRICING | CA12062762 : Bachelor of Sc | 13JAN | VAA | TUITMAN | Manual Tuition Adjustment | 153.00 | 127.95 |
| 3/4/2013 | metro | CA12062762 : Bachelor of Sc | 13JAN | VAA | TRPT | Transportation Fees | 25.00 | 152.95 |
| 3/7/2013 | CORRECTION | CA12062762 : Bachelor of Sc | 13JAN | VAA | TUITMAN | Manual Tuition Adjustment | (153.00) | (0.05) |
| 3/18/2013 | metro cards | CA12062762 : Bachelor of Sc | 13JAN | VAA | TRPT | Transportation Fees | 25.00 | 24.95 |
| 3/20/2013 | Auto-Bill | CA12062762 : Bachelor of Sc | 13MAR | VAA | TUIT | Tuition | 5,269.00 | 5,293.95 |
| 3/20/2013 | Auto-Bill | CA12062762 : Bachelor of Sc | 13MAR | VAA | RESOURF | Resource Fee | 100.00 | 5,393.95 |
| 3/21/2013 | 4999423 | CA12062762 : Bachelor of Sc | 13MAR | VAA | BOOK | Richy Castro - ORDER | 362.64 | 5,756.59 |
| 3/21/2013 | 110081/FA | CA12062762 : Bachelor of Sc | 13MAR | VAA | | Direct Subsidized Stafford Loan 2012-13 | 1,485.00 | 4,271.59 |
| 3/21/2013 | 110081/FA | CA12062762 : Bachelor of Sc | 13MAR | VAA | | Direct Unsubsidized Stafford Loan 2012-13 | 661.00 | 3,610.59 |
| 4/13/2013 | metro card | CA12062762 : Bachelor of Sc | 13MAR | VAA | TRPT | Transportation Fees | 20.00 | 3,630.59 |
| 5/6/2013 | metro cards | CA12062762 : Bachelor of Sc | 13MAR | VAA | TRPT | Transportation Fees | 20.00 | 3,650.59 |
| 5/20/2013 | 112592/FA | CA12062762 : Bachelor of Sc | 13MAY | VAA | | Direct Subsidized Stafford Loan 2012-13 | 1,485.00 | 2,165.59 |
| 5/20/2013 | 112592/FA | CA12062762 : Bachelor of Sc | 13MAY | VAA | | Direct Unsubsidized Stafford Loan 2012-13 | 661.00 | 1,504.59 |
| 5/29/2013 | Auto-Bill | CA12062762 : Bachelor of Sc | 13MAY | VAA | TUIT | Tuition | 5,268.00 | 6,772.59 |
| 5/29/2013 | Auto-Bill | CA12062762 : Bachelor of Sc | 13MAY | VAA | RESOURF | Resource Fee | 100.00 | 6,872.59 |
| 6/3/2013 | 5170677 | CA12062762 : Bachelor of Sc | 13MAY | VAA | BOOK | Ricky Castro - ORDER | 245.68 | 7,118.27 |
| 6/4/2013 | UNREG | CA12062762 : Bachelor of Sc | 13MAY | VAA | TUIT | Tuition | (1,754.00) | 5,364.27 |
| 6/4/2013 | UNREG | CA12062762 : Bachelor of Sc | 13MAY | VAA | TUIT | Tuition | (1,755.00) | 3,609.27 |
| 6/4/2013 | UNREG | CA12062762 : Bachelor of Sc | 13MAY | VAA | TUIT | Tuition | (1,759.00) | 1,850.27 |
| 6/4/2013 | UNREG | CA12062762 : Bachelor of Sc | 13MAY | VAA | RESOURF | Resource Fee | (100.00) | 1,750.27 |
| 6/7/2013 | EFT | CA12062762 : Bachelor of Sc | 13MAY | VAA | | Refund - DIRSUB 2012-13 | (324.00) | 2,074.27 |
| 6/7/2013 | EFT | CA12062762 : Bachelor of Sc | 13MAY | VAA | | Refund - DIRSUB 2012-13 | (1,485.00) | 3,559.27 |
| 6/7/2013 | EFT | CA12062762 : Bachelor of Sc | 13MAY | VAA | | Refund - DIRUNSUB 2012-13 | (661.00) | 4,220.27 |
| 12/16/2013 | EFT | CA12062762 : Bachelor of Sc | 13MAY | VAA | | W & F A/R Transfer 2012-13 | 4,220.27 | 0.00 |

**Annandale Totals:**    $22,799.27    $22,799.27

**Student Totals:**    $22,799.27    $22,799.27

PO Box 9701
Allen, TX 75013



0007640 02 SP 0.510 **SNGLP T9 0 7138     -C02-P07647-I
RICHY EDUARDO CASTRO
1814 HALIFAX ROAD
WOODBRIDGE VA 22191-2442



# Dispute Results

Report # **0466-7067-95** for **06/08/18**

# RICHY EDUARDO CASTRO

*To assist you in understanding your correction summary, we have provided additional information that relates directly to items on your personal credit report.*

According to the Fair Credit Reporting Act (FCRA), a national consumer credit reporting agency's role in the dispute process is to review the accuracy and completeness of any disputed item which may include contacting the furnisher of the information or the vendor that collected the information from a public record source, such as a court or other government office, notifying them of the disputed information and disclosing all relevant information regarding the consumer's dispute. In order to help resolve the consumer's dispute, Experian will review all relevant documents submitted by the consumer with the dispute and will forward such documents to the furnisher if Experian is unable to resolve the issue based on those documents. Consumers may also contact creditors directly to dispute items reported by the creditor. If the issue is not resolved, then the consumer credit reporting agency must offer to include a consumer statement on the personal credit report.

To order a copy of your VantageScore® report with a credit card, log on to www.experian.com/help or call 1 888 EXPERIAN. To order with a check or money order, write to us at:

Experian
P.O. Box 2002
Allen, TX 75013

Be sure to include the following information:

- Your full name including middle initial (and generation such as JR, SR, II, III)
- Social Security number
- Complete addresses for the past two years
- Date of birth

- One copy of a government issued identification card, such as a driver's license, state ID card, etc.
- One copy of a utility bill, bank or insurance statement, etc.

Make sure that each copy is legible and displays your name and current mailing address and the date of issue (statement dates must be recent). We are unable to accept credit card statements, voided checks, lease agreements, magazine subscriptions or postal service forwarding orders as proof.

To protect your personal identification information, Experian does not return correspondence sent to us. Send **copies** of any documents you wish to provide to us and always retain your original documents.

Please enclose payment of $7.95 plus any applicable tax.

Because your score is based on information in your personal credit report, it is very important that you review a copy of your personal credit report carefully for accuracy. To order a copy of your personal credit report with a credit card, log on to www.experian.com/help or call 1 (888) EXPERIAN (1 888 397-3742). To order by mail, send all of the information listed above. If you are not eligible for a free report by federal or state law, fees for credit reports, with applicable taxes, are:

California - $8; Colorado, Massachusetts - 1 free report per calendar year, $8 thereafter; New Jersey - 1 free report per calendar year, $8.55 thereafter; Connecticut - $5.32 for first copy per calendar year, $7.98 thereafter; Georgia - 2 free reports per calendar year, $12 thereafter; Maine - 1 free report per 12-month period, $5 thereafter; Maryland - 1 free report per 12-month period, $5.30 thereafter; Minnesota - $3; Montana, $8.50; Vermont - 1 free report per 12-month period, $7.50 thereafter. All other states and territories - $12 plus any applicable tax

7138-02-00-0007640-0001-0053719

Acceptable forms of payment are credit card, check and money order. If you submit your credit card information by mail, be sure to include the name exactly as it is displayed on the card, the credit card type, the credit card number and the expiration date. Accepted credit cards are American Express, Discover, MasterCard and VISA.

Designers of credit scoring models review a set of consumers - often over a million - who opened loans at the same time, and determine who paid their loan and who did not. The credit profiles of the consumers who defaulted on the loans are examined to identify common traits they exhibited at the time they applied for the loan (such as number of open accounts; amount of outstanding balances; number and severity of late payments; type, number and age of accounts; recent inquiries, etc.) The designers then build statistical models that assign weights to each variable, and these variables are combined to create a credit score.

Experian and other designers of credit scoring models will not disclose the formula used to calculate your score because this is proprietary information. We also cannot advise you specifically how to raise your score, or how changes to your credit report might impact your score. For general information on how to improve your score, see the back of your credit score report. We calculate your score based on information in your personal credit report and we cannot change the score; however, inaccurate information in your report can be corrected, which may change your score. If you feel that your score does not accurately reflect your credit history, please review your personal credit report. If any information is inaccurate, log on to www.experian.com/disputes or contact us at the toll-free number on your credit report to initiate a dispute. If the dispute process results in a change to your credit report, your score may or may not be impacted when you request a new credit score report.

To obtain your VantageScore®, call 1 (888) EXPERIAN (397-3742).

Scores reflect credit payment patterns over time with more emphasis on recent information. In general, a score may improve, if you:

- Pay your bills on time. Delinquent payments and collections can have a major negative impact on a score.
- Keep balances low on credit cards and other "revolving credit." High outstanding debt can affect a score.
- Apply for and open new credit accounts only as needed. Don't open accounts just to have a better credit mix -- it probably won't raise your score.
- Pay off debt rather than moving it around. Also don't close unused cards as a short-term strategy to raise your score. Owing the same amount but having fewer open accounts may lower your score.

We cannot advise you specifically how to raise your score, or how changes to your credit report might impact

your score. If you feel that your score does not **accurately** reflect your credit history, please review your personal credit report. If any information is inaccurate, log on to www.experian.com/disputes or contact us at the toll-free number on your credit report to initiate a dispute. If the dispute process results in a change to your credit report, your score **may** or **may not** be impacted when you request a new credit score report.

Sincerely,

Experian
NCAC
PO BOX 9701
Allen TX 75013

## Dispute Results

Our reinvestigation of the dispute you recently submitted is now complete. If we were able to make changes to your credit report based on information you provided, we have done so. Otherwise, we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to: review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records and systems as necessary.

If an item you disputed is not in the list of results below, it was either not appearing in your credit file or it already reflected the requested status at the time of our reinvestigation.

### How to read your results

**Deleted** - This item was removed from your credit report.

**Remains -** The company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute.

**Updated** (Your results will indicate which one of the following applies.)

• The information you disputed has been updated. Please review your report for the details.

• The item you disputed has been updated, which may include an update to the disputed information. Please review your report for the details.

• The information you disputed has been verified as accurate, however, information unrelated to your dispute has been updated. Please review your report for the details.

• Information on this item has been updated. Please review your report for the details.

**Processed** - This item was either updated or deleted; Please review your report for the details.

If our reinvestigation has not resolved your dispute, you have several options:

• You may add a statement of up to 100 words to your report. If you provide a consumer statement that contains medical information related to service providers or



**RICHY EDUARDO CASTRO** | Report # **0466-7067-95** for **06/08/18**

medical procedures, then you expressly consent to Experian including this information in every credit report we issue about you.

• You may contact the company that reports the information to us and dispute it directly with them. If you wish to obtain documentation or written verification concerning your accounts, please contact your creditors directly.

• You may provide us additional information or documents about your dispute to help us resolve it by visiting www.experian.com/upload. You may also mail your information to Experian, P.O. Box 9701, Allen, Texas 75013.

• You may file a complaint about Experian or the company reporting the item, with the Consumer Financial Protection Bureau or your State Attorney General's office.

If there has been a change to your credit history resulting from our reinvestigation, or if you add a consumer statement, you may request that Experian send an updated report to those who received your report within the last two years for employment purposes, or within the last six months for any other purpose (the past 12 months for residents of Colorado, Maryland or New York). If you send a request to have your results sent to past recipients of your credit report, please designate the organization's name and address. In the event an organization is not specifically designated, we will generally default to

sending only to companies that have requested your credit information as a result of an action you took, such as applying for credit, insurance, employment or apartment rental.

If interested, you may also request a description of how the reinvestigation was conducted along with the business name, address and telephone number (if reasonably available) of the furnisher of information.

Thank you for helping ensure the accuracy of your credit information.

For frequently asked questions about your credit report, please visit experian.com/consumerfaqs.

If no information follows, our response appeared on the previous page.

**Medical Information**

By law, we cannot disclose certain medical information (relating to physical, mental, or behavioral health or condition). Although we do not generally collect such information, it could appear in the name of a data furnisher (e.g. "Cancer Center") that reports your payment history to us. If so, those names display on your report, but on reports to others, they display only as MEDICAL PAYMENT DATA. Consumer statements included on your report at your request that contain medical information are disclosed to others.

**Here are your results**
**We completed the processing of your dispute(s).**

**Credit items**

DEVILLE ASSET MANAGEME D4033483N1
Outcome: Remains - The company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute. Please review your report for the details.

## Credit items

**Before dispute**

DEVILLE ASSET MANAGEMENT Partial account #    1132 GLADE RD, COLLEYVILLE, TX 76034 or
D4033483N1

| | | | | Payment history |
|---|---|---|---|---|
| **Date opened** Dec 2017 | **First reported** Apr 2018 | **Recent balance** $1,648 as of May 2018 | | |
| **Address ID #** 0045047887 | **Terms** 1 Months | **Status** Collection account. | | |
| **Original creditor** WESTWOOD COLLEGE | **Monthly payment** Not reported | $1,648  past due as of May 2018. | | |
| **Type** Collection | **Credit limit or original amount** $1,648 | This account is scheduled to continue on record until Feb 2021. | | |
| **Responsibility** Individual | **High balance** Not reported | **Date of Status** Apr 2018 | | |

Payment history

|  | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2018 | | | | C | C | | | | | | | |

**Account History** *  (AB = Account Balance, DPR = Date Payment Received, SPA = Scheduled Payment Amount, AAP = Actual Amount Paid)

| | Apr18 | Feb18 | Feb18 | Dec17 | Nov17 | Sep17 | Aug17 | Jul17 | Jun17 | May17 | Apr17 | Mar17 | Feb17 | Jan17 | Dec16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AB ($) | 36,046 | 36,993 | 37,556 | 38,270 | 38,969 | 40,457 | 41,115 | 41,876 | 43,389 | 44,641 | 44,641 | 45,221 | 45,517 | 45,818 | 46,036 |
| DPR | Mar02 | Feb24 | Jan06 | Dec05 | Nov02 | Sep09 | Aug04 | Jul11 | Jun23 | Apr19 | Apr19 | Mar07 | Feb06 | Jan27 | Nov11 |

RICHY EDUARDO CASTRO | Report # 0466-7067-95 for 06/08/18

| SPA ($) | 981 | 981 | 981 | 981 | 981 | 981 | 981 | 981 | 981 | 981 | 981 | 981 | 981 | 981 | 981 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AAP ($) | 996 | 1,015 | 981 | 981 | 981 | 981 | 981 | 1,661 | 1,943 | ND | 1,000 | 581 | 400 | 981 | ND |

| | Nov16 | Oct16 | Sep16 | Aug16 | Jul16 | Jun16 |
|---|---|---|---|---|---|---|
| AB ($) | 48,036 | 48,906 | 50,004 | 50,004 | 50,290 | 51,605 |
| DPR | Nov11 | Oct31 | Aug19 | Aug19 | Jul05 | May09 |
| SPA ($) | 981 | 981 | 981 | 981 | 981 | 981 |
| AAP ($) | 981 | 2,943 | ND | 823 | 2,000 | ND |

The original amount of this account was $55,784



# Payment History Legend

OK Current/Terms of agreement met
30 Account 30 days past due
60 Account 60 days past due
90 Account 90 days past due
120 Account 120 days past due
150 Account 150 days past due
180 Account 180 days past due

CRD Creditor received deed
FS Foreclosure proceedings started
F Foreclosed
VS Voluntarily surrendered
R Repossession
PBC Paid by creditor
IC Insurance claim

G Claim filed with government
DC Defaulted on contract
C Collection
CO Charge off
CLS Closed
ND No data for this time period

*If your creditor reported your account balances to us, we list them in this section as additional information about your account. Your account history may also include your credit limit and high balance or the original loan amount for an installment loan. This section also includes the scheduled payment amounts, amounts actually paid and the dates those payments were made. ND: No Data

Personal statements you've asked us to include   You've given us the following statement to include every time a company asks us for your credit report:
"FILE LOCKED AT CONSUMERS REQUEST"

## Your accounts that may be considered negative

The most common items in this section are late payments, accounts that have been charged off or sent to collection, bankruptcies, liens, and judgments. It also may contain items that are not necessarily negative, but that a potential creditor might want to review more closely, such as an account that has been settled or transferred. This information is generally removed seven years from the initial missed payment that led to the delinquency. Missed payments and most public record items may remain on the credit report for up to seven years, except Chapters 7, 11 and 12 bankruptcies, which may remain for up to 10 years. Unpaid tax liens may remain for up to 10 years from the filing date, and paid tax liens may remain for up to seven years from the filing date. Transferred accounts that have not been past due remain up to 10 years after the date the account was transferred.

## Credit items

**DEVILLE ASSET MANAGEMENT** Partial account # D4033483N1     1132 GLADE RD, COLLEYVILLE , TX 76034 or No phone number available

| | | |
|---|---|---|
| **Date opened** Dec 2017 | **First reported** Apr 2018 | **Recent balance** $1,648 as of May 2018 |
| **Address ID #** 0045047887 | **Terms** 1 Months | **Status** Collection account. |
| **Original creditor** WESTWOOD COLLEGE | **Monthly payment** Not reported | $1,648 past due as of May 2018. |
| **Type** Collection | **Credit limit or original amount** $1,648 | This account is scheduled to continue on record until Feb 2021. |
| **Responsibility** Individual | **High balance** Not reported | **Date of Status** Apr 2018 |

Payment history

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2018 | | | | C | C | | | | | | | |

Account History * (AB = Account Balance, DPR = Date Payment Received, SPA = Scheduled Payment Amount, AAP = Actual Amount Paid)

| | Apr18 |
|---|---|
| AB ($) | 1,648 |
| DPR | ND |
| SPA ($) | ND |
| AAP ($) | ND |

The original amount of this account was $1,648

718-02-00-0007640-0002-0055716

1023232909



RICHY EDUARDO CASTRO | Report # **0466-7067-95** for **06/08/18**

Your accounts in good standing (continued)

**Your accounts in good standing** These items may stay on your credit report for as long as they are open. Once an account is closed or paid off it may continue to appear on your report for up to ten years.

Credit items



Your accounts in good standing (continued)



7138-02-03-0207640-0003-0053715

# Record of requests for your credit  history

We make your credit history available to your current and prospective creditors and employers as allowed by law. Experian may list these inquiries for up to two years.

## Inquiries shared with others

The section below lists companies that have requested your credit information as a result of an action you took, such as applying for credit or financing or as a result of a collection. The inquiries in this section are shared with companies that receive your credit history.

Examples of inquiries shared with others include:
- a real estate loan
- a home mortgage loan
- an auto loan
- an application for credit

## Inquiries shared only with you

You may not have initiated the following inquiries, so you may not recognize each source. We report these requests to you only as a record of activities, and **we do not include any of these requests on credit reports to others.**

We offer credit information about you to those with a permissible purpose, such as:
- other creditors who want to offer you preapproved credit;
- an employer who wishes to extend an offer of employment;
- a potential investor in assessing the risk of a current obligation;
- Experian Consumer Assistance to process a report for you;
- your current creditors to monitor your accounts (date listed may reflect only the most recent request);
- an end user to complete your mortgage loan application;
- insurance underwriting (auto or home).

**These inquiries DO NOT affect your credit score and are not seen by anyone but you (except insurance companies may be able to see other insurance company inquiries).**

--- End of Report ---

## Personal information

The following information is reported to us by you, your creditors
and/or other sources. Each source may report your personal
information differently, which may result in variations of your
name, address, Social Security number, etc. As part of our
fraud protection efforts, a notice with additional information may
appear.

### Names



THIS PAGE INTENTIONALLY LEFT BLANK

DEPT:
SUBSCRIBER RESPONSE DATE: 06/11/18                        CONTROL: 374054907   007  001    IMAGE: YES - 1
TO COMPLY WITH F.C.R.A., A RESPONSE IS REQUIRED BY: 06/12/18   DATE ENTERED: 05/18/18         DATE RECD: 05/18/18
                                                          VERF   SUBSCRIBER CHANGES TO CONSUMER DEMOGRAPHIC DATA:
    NAME: RICHY E CASTRO                                  (S) NAME:
    AKA: RICHY EDUARDO CASTRO                                 AKA:
    ADDR: 1814 HALIFAX RD                                 (S) ADDR:
         WOODBRIDGE, VA 22191-2442
    PREV:                                                 (S) PREV:

    SSN:                                                  (S)  SSN:
    DOB:                                                  (S)  DOB:
    PHONE:                                                (S) PHONE:
CONSUMER    Consumer states inaccurate information. Provide or confirm complete ID and verify all Account Information.
DISPUTE:
CONSUMER MESSAGE:

RESPONSE CODE:   01 ACCT INFO ACCURATE AS OF DATE REPORTED
-------------------------------------------------------------------------------------------------------------------
SUPPRESS?:                                   UPDATE?:     AUTH BY: Brad White                    / 817-677-6163
-------------------------------------------------------------------------------------------------------------------
SUBSCRIBER: DeVille Asset Management Lim   ACCOUNT #:              SUB.CODE: 2F8X001  OPEN DATE: 12/20/17

UPDATE?     ACCOUNT STATUS         PAYMENT RATING       COMPL COND CODE      SPECIAL COMMENTS     CONS INFO IND

    ORIGINAL-->    93
              PORF TP.   ACCOUNT TP.           ECOA                      PAYMENT AMT       PAYMENT DATE

    ORIGINAL--> 0      AG: COLL AGCY/ATTRNY    1
              OPENED       EFFECTIVE                                     CURRENT BLNC      PAST DUE

    ORIGINAL--> 12/20/17       05/10/18                                      $1648              $1648
              CLOSED                                                    CREDIT LIMIT      HIGH CREDIT

    ORIGINAL-->                                                                               $1648
              DT 1ST DEL      ORIG CHRG OFF                             PP START DT      PYMT PATTERN     ORIGINAL PP
                                                                          05/2018
    ORIGINAL--> 05/27/14                                                   04/2018
              TERMS (DUE AMT/FREQ/DUR)              ORIGINAL CLIENT - CLASS

    ORIGINAL--> / /                                 WESTWOOD COLLEGE-07
              SP. PAYMENT (BALLOON AMT - DUE DT)    SP. PAYMENT (DEFERRED DT)

    ORIGINAL-->
              PORTFOLIO SALE                        MORTGAGE (ID#/ACCT#/AGCY)

    ORIGINAL-->
-------------------------------------------------------------------------------------------------------------------

| | ACCT STATUS | PAYMENT RATING | COMPLIANCE CONDITION CD | SPECIAL COMMENTS | CONSUMER INFO IND | ! | ACCT RATING | RATING REMARK | CMPLNC REMARK | GENERIC REMARK | AFFIL REMARK |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RECEIVED | | | | | | ! | | | | | |
| ORIGINAL | 93 | | | | | ! | G | CLA | | | |

| | FIRST NAME (S) | MIDDLE NAME (S) | LAST NAME (S) | GEN SUFFIX (S) | RESULT (S) |
|---|---|---|---|---|---|
| NAME VERIFICATION FLAGS | | | | | |

*** 374054907-010 ***
TransUnion LLC
PO Box 805
Woodlyn, PA 19094-0805

06/12/2018



P8GQNB00204264-I038823-049459493

RICHY E. CASTRO
7412 POHICK RD
LORTON, VA 22079-1518

Dear RICHY E. CASTRO,

We understand that recently something on your credit report did not seem right to you. We take this matter seriously, and we want to make sure your TransUnion credit report is accurate. It's our commitment to you.

If we were able to make changes to your credit report based on information you provided, we made those changes.  Otherwise, we asked the company reporting the information you disputed to do all of the following:

1.  Review relevant information we sent them, including any documents you gave us as part of your dispute
2.  Investigate your dispute and verify whether the information they report is accurate
3.  Provide us a response to your dispute and update any other information
4.  Update their records and systems, if necessary

Your dispute is important.  In the pages that follow you will see your detailed investigation results, including the business name and contact details of the source of the information.  Please review the results carefully.

---

## How to Read Your Investigation Results

You will see that, for each disputed item, a summary explanation appears in the gray box, followed by a brief paragraph describing the results of our investigation, followed by a view of how the item appears in your updated credit report. Please note any changes we made to personal information (name, address, employment, SSN, date of birth) will appear at the end of **Your Investigation Results.**

Want to review a full copy of your credit report? Get yours at www.transunion.com/fullreport

P 8GQNB-002 04264-I038823 01/10

## A Note on Credit Report Updates

Information in your credit report is updated frequently which means items you disputed may not appear on your credit report or have already changed by the time we received your dispute. In most cases, the **Date Updated** represents the last time the account information was updated or reported by the data furnisher. Please note that this date may not change following our investigation of your dispute. For **Payment Received** and **Last Payment Made**, please keep in mind, the data may not represent very recent payment activity. For inactive accounts or accounts that have been closed and paid, **Pay Status** represents the last known status of the account.

## Definitions

For your reference, here are some definitions to help you understand **Your Investigation Results.**

### For ACCOUNTS:

| | |
|---|---|
| **Balance:** The balance owed as of the date the account was verified or reported | **Original Charge Off:** If applicable, the amount charged off due to non-payment of the account |
| **Credit Limit:** The maximum amount of credit approved by the creditor on the account | **Past Due:** The amount past due as of the date the account was verified or reported |
| **Date Opened:** The date the account was Opened | **Pay Status:** The current status of the account; how you are currently paying |
| **High Balance:** The highest amount ever owed on an account | **Remarks:** If applicable, the creditor may provide additional information here related to the account |
| **Last Payment Made:** The date the creditor received the last payment on the account | **Responsibility:** The type of contractual ownership (individual, joint, authorized user, etc.) of the account |
| **Maximum Delinquency:** If applicable, the maximum amount past due before an account becomes a charge-off or a collection account | **Terms:** The monthly payment amount or monthly minimum payment due on the account |

## Rating Key

Some creditors report the timeliness of your payments each month in relation to your agreement with them. The ratings in the key below describe the payments that may be reported by your creditors. This rating key will help you understand any updates to your **PAYMENT HISTORY**, if applicable to **YOUR INVESTIGATION RESULTS**. Any rating that is shaded or any value in the account detail appearing with brackets (> <) may indicate that it is considered adverse.

| N/R | X | OK | 30 | 60 | 90 | 120 | COL | VS | RPO | C/O | FC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Not Reported | Unknown | Current | 30 days late | 60 days late | 90 days late | 120+ days late | Collection | Voluntary Surrender | Repossession | Charge Off | Foreclosure |



Want to review a full copy of your credit report? Get yours at www.transunion.com/fullreport

P 8GQNB-002 04264-I038824 02/10

# TransUnion Credit Score

RICHY E. CASTRO

YOUR CREDIT SCORE



| Your Score & Grade | Score & Grade Range | Where You Rank |
|---|---|---|
| Score **Not Purchased** (See Below) Grade - Created on 06/12/2018 | Unavailable (See Below) | Unavailable (See Below) |
| Based on your TransUnion credit report, this is a depiction of your creditworthiness. | The numerical score ranges from 850 to 300 equaling grade ranges from A to F. | Your credit ranks higher than --% of the nation's population. |

## Summary

You did not order a TransUnion credit score. You can purchase your credit score for $9.95 by calling 1-866-SCORE-TU or 1-866-726-7388.

Want to review a full copy of your credit report? Get yours at www.transunion.com/fullreport

P 8GQNB-002 04264-I038825 03/10

Case 1:16-cv-02844-RDB   Document 556-1   Filed 01/03/22   Page 27 of 162

# Your Investigation Results

**INVESTIGATION RESULTS - VERIFIED AS ACCURATE:** The disputed item was verified as accurate.

**DEVILLE ASSET MANAGEMENT** #D40334**** ( 1132 GLADE ROAD, COLLEYVILLE, TX 76034, (888) 205-1831 )
We investigated the information you disputed and the disputed information was **VERIFIED AS ACCURATE**.
Here is how this item appears on your credit report following our investigation.

| | | | |
|---|---|---|---|
| Placed for collection: 12/20/2017 | Balance: | $1,648 | Pay Status:   >In Collection< |
| Responsibility:   Individual Account | Date Updated: | 05/10/2018 | |
| Account Type:   Open Account | Original Amount: | $1,648 | |
| Loan Type:   COLLECTION | Original Creditor: | WESTWOOD | |
| AGENCY/ATTORNEY | | COLLEGE (Educational) | |
| | Past Due: | >$1,648< | |

Remarks: >PLACED FOR COLLECTION<
Estimated month and year that this item will be removed: 04/2021

■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■



-00000-

Want to review a full copy of your credit report? Get yours at www.transunion.com/fullreport

P 8GQNB-002 04264-I038826 04/10

File Number:     374054907
Date Issued:     06/12/2018

**TransUnion**

## Personal Information

You have been on our files since 07/17/2012



## Account Information

Typically, creditors report any changes made to your account information monthly. This means that some accounts listed below may not reflect the most recent activity until the creditor's next reporting. This information may include things such as balances, payments, dates, remarks, ratings, etc. The key(s) below are provided to help you understand some of the account information that could be reported.

**Rating Key**

Some creditors report the timeliness of your payments each month in relation to your agreement with them. The ratings in the key below describe the payments that may be reported by your creditors. Any rating that is shaded indicates that it is considered adverse. Please note: Some but not all of these ratings may be present in your credit report.

| N/R | X | OK | 30 | 60 | 90 | 120 | COL | VS | RPO | C/O | FC |
|-----|---|-----|-----|-----|-----|------|-----|-----|------|-----|-----|
| Not Reported | Unknown | Current | 30 days late | 60 days late | 90 days late | 120+ days late | Collection | Voluntary Surrender | Repossession | Charge Off | Foreclosure |

**Remark Key**

Additionally, some creditors may notate your account with comments each month. We refer to these creditor comments as "Remarks". The key below gives the descriptions of the abbreviated remarks contained in your credit file. Any remark containing brackets > < indicates that this remark is considered adverse.

PDE   PAYMENT DEFERRED

## Adverse Accounts

**DEVILLE ASSET MANAGEMENT** #D40334**** ( 1132 GLADE ROAD, COLLEYVILLE, TX 76034, (888) 205-1831 )

| | | |
|---|---|---|
| Placed for collection: 12/20/2017 | Balance: $1,648 | Pay Status: >In Collection< |
| Responsibility: Individual Account | Date Updated: 05/10/2018 | |
| Account Type: Open Account | Original Amount: $1,648 | |
| Loan Type: COLLECTION AGENCY/ATTORNEY | Original Creditor: WESTWOOD COLLEGE (Educational) | |
| | Past Due: >$1,648< | |

Remarks: >PLACED FOR COLLECTION<
Estimated month and year that this item will be removed: 04/2021

P 8GOUD-002 01092-J013095 03/12

File Number: 374054907   Date Issued: 06/12/2018

Promotional Inquiries

Account Review Inquiries

**To dispute online go to: http://transunion.com/disputeonline**

P.8GOUD-002.01092-J013099 07/12



P 8GQUD-002 01092-i013100 08/12

Summary of Rights

## GENERAL SUMMARY OF CONSUMER RIGHTS UNDER THE FCRA

*Para informacion en esponol, visite www.consumerfinonce.gov/learnmore o escribe o lo Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.*

### A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. **For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.**

- **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment -- or to take another adverse action against you-must tell you, and must give you the name, address, and phone number of the agency that provided the information.

- **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security Number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:
  - a person has taken adverse action against you because of information in your credit report;
  - you are the victim of identity theft and place a fraud alert in your file;
  - your file contains inaccurate information as a result of fraud;
  - you are on public assistance;
  - you are unemployed but expect to apply for employment within 60 days.

  In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for more additional information.

- **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

- **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

- **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete, or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

- **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

- **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

- **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.

- **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-567-8688 (888-5OPTOUT).

- **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

- **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore.

States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For information about your federal rights, contact:

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| 1.a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates | Bureau of Consumer Financial Protection<br>1700 G Street NW<br>Washington, DC 20552 |
| b. Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the CFPB: | Federal Trade Commission<br>Consumer Response Center - FCRA<br>Washington, DC 20580          1-877-382-4357 |
| 2. To the extent not included in item 1 above:<br>a. National banks, federal savings associations, and federal branches and federal agencies of foreign banks | Office of the Comptroller of the Currency<br>Customer Assistance Group<br>1301 McKinney Street, Suite 3450<br>Houston, TX 77010-9050 |
| b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and insured state branches of foreign banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act | Federal Reserve Consumer Help (FRCH)<br>PO Box 1200<br>Minneapolis, MN 55480          1-888-851-1920 |
| c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and Insured state savings associations | FDIC Consumer Response Center<br>1100 Walnut Street, Box #11<br>Kansas City, MO 64106 |
| d. Federal Credit Unions | National Credit Union Administration<br>Office of Consumer Protection (OCP)<br>Division of Consumer Compliance and Outreach (DCCO)<br>1775 Duke Street<br>Alexandria, VA 22314 |
| 3. Air carriers | Asst. General Counsel for Aviation Enforcement & Proceedings<br>Aviation Consumer Protection Division<br>Department of Transportation<br>1200 New Jersey Avenue, S.E.<br>Washington, DC 20590          1-202-366-1306 |
| 4. Creditors Subject to Surface Transportation Board | Office of Proceedings, Surface Transportation Board<br>Department of Transportation<br>395 E Street, S.W.<br>Washington, DC 20423 |
| 5. Creditors subject to Packers and Stockyards Act, 1921 | Nearest Packers and Stockyards Administration area supervisor |
| 6. Small Business Investment Companies | Associate Deputy Administrator for Capital Access<br>United States Small Business Administration<br>409 Third Street, SW, 8th Floor<br>Washington, DC 20416 |
| 7. Brokers and Dealers | Securities and Exchange Commission<br>100 F Street NE<br>Washington, DC 20549 |
| 8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations | Farm Credit Administration<br>1501 Farm Credit Drive<br>McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | FTC Regional Office for region in which the creditor operates or Federal Trade Commission:  Consumer Response Center-FCRA<br>Washington, DC 20580          1-877-382-4357 |

**VIRGINIA BILL OF RIGHTS**

Virginia Consumers Have the Right to Obtain a Security Freeze

You have a right to place a "security freeze" on your credit report, which will prohibit a consumer reporting agency from releasing your credit report without your express authorization. A security freeze must be requested in writing by certified mail. The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, government services or payments, rental housing, employment, investment, license, cellular phone, utilities, digital signature, Internet credit card transaction, or other services, including an extension of credit at point of sale. When you place a security freeze on your credit report, you will be provided a personal identification number or password to use if you choose to remove the freeze on your credit report or to authorize the release of your credit report for a specific period of time or for a specific party after the freeze is in place. To provide that authorization you must contact the consumer reporting agency and provide all of the following:

1. The personal identification number or password;
2. Proper identification to verify your identity; and
3. The proper information regarding the period of time or the specific party for which the report shall be available.

A consumer reporting agency must authorize the release of your credit report no later than three business days after receiving the above information. After September 1, 2008, a consumer reporting agency must authorize the release of your credit report no later than 15 minutes after receiving the request.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account, that requests information your credit report for the purposes reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

You have a right to bring civil action against anyone, including a consumer reporting agency, who improperly obtains access to a file, knowingly or willfully misuses file data, or fails to correct inaccurate file data.

Unless you are a victim of identity theft with a police report to verify the crimes, a consumer reporting agency has the right to charge you up to $10 to place a freeze on your credit report.



P 8GQNB-002 04264-I038832 10/10

Richy Eduardo Castro
7412 Rohick Rd
Lorton, VA 22079


July 9, 2018


Experian/ NCAC

P.O. Box 4500

Allen, TX 75013

Dear Sir or Madam:

I am writing to follow-up on your investigation results dated June 6, 2018. You continue to report inaccurate information within my credit file. This is a dispute pursuant to the Fair Credit Reporting Act. My social security number is ███████. My date of birth is ███████. Please conduct an investigation, delete the inaccurate information and send me an update report.

Deville Asset Management, Acct. No. D40334, is reporting inaccurately. My Westwood College file indicates that my balance is $0 as of December 2013 (enclosed), and that my date of last attendance at the college was May 21, 2013. However, recently I received a correspondence from Deville Asset Management stating that the date of last delinquency as May 27, 2014 (enclosed) and that I had an outstanding balance. I wasn't even attending Westwood College at that time and therefore there would not have been any charges to my account in 2014. I have paid everything that I owe on this account long before it was transferred to Deville. Since this is an invalid debt, please delete this account from my file.

Again, I request that you re-investigate my credit file and delete the Deville Asset Management account.  When you have completed your re-investigation, please send me a copy of my credit report that shows the exact information that you would give to someone who was considering me for a loan. Before you continue to report any further information regarding this matter, please contact me in order that I may supply you with any other information that you may find helpful. My phone number is 571-260-7891.

Thank you,


Richy Eduardo Castro

Richy Eduardo Castro
7412 Rohick Rd
Lorton, VA 22079


July 9, 2018


TransUnion LLC
Consumer Dispute Center
P.O. Box 2000
Chester, PA 19016

Dear Sir or Madam:

I am writing to follow-up on your investigation results dated June 12, 2018. You continue to report inaccurate information within my credit file. This is a dispute pursuant to the Fair Credit Reporting Act. My social security number is ███████     My date of birth is ███████     Please conduct an investigation, delete the inaccurate information and send me an update report.

Deville Asset Management, Acct. No. D40334, is reporting inaccurately. My Westwood College file indicates that my balance is $0 as of December 2013 (enclosed), and that my date of last attendance at the college was May 21, 2013. However, recently I received a correspondence from Deville Asset Management stating that the date of last delinquency as May 27, 2014 (enclosed) and that I had an outstanding balance. I wasn't even attending Westwood College at that time and therefore there would not have been any charges to my account in 2014. I have paid everything that I owe on this account long before it was transferred to Deville. Since this is an invalid debt, please delete this account from my file.

Again, I request that you re-investigate my credit file and delete the Deville Asset Management account.  When you have completed your re-investigation, please send me a copy of my credit report that shows the exact information that you would give to someone who was considering me for a loan. Before you continue to report any further information regarding this matter, please contact me in order that I may supply you with any other information that you may find helpful. My phone number is 571-260-7891.

Thank you,


Richy Eduardo Castro

*** 374054907-015 ***
TransUnion LLC
PO Box 805
Woodlyn, PA 19094-0805

07/12/2018



P8M6K600200994-I011917-050440391
RICHY EDUARDO CASTRO
7412 POHICK RD
LORTON, VA 22079-1518

Dear RICHY EDUARDO CASTRO,

We understand that recently something on your credit report did not seem right to you. We take this matter seriously, and we want to make sure your TransUnion credit report is accurate. It's our commitment to you. In the pages that follow you will see a full copy of your credit report.

Scanned with CamScanner

# TransUnion Credit Score
RICHY EDUARDO CASTRO



### YOUR CREDIT SCORE

| Your Score & Grade | Score & Grade Range | Where You Rank |
|---|---|---|
| Score **Not Purchased** (See Below) Grade - Created on 07/12/2018 | Unavailable (See Below) | Unavailable (See Below) |
| Based on your TransUnion credit report, this is a depiction of your creditworthiness. | The numerical score ranges from 850 to 300 equaling grade ranges from A to F. | Your credit ranks higher than --% of the nation's population. |

**Summary**
You did not order a TransUnion credit score. You can purchase your credit score for $9.95 by calling 1-866-SCORE-TU or 1-866-726-7388.

## Important Information Concerning Your TransUnion Credit Report:

- Your SSN has been masked for your protection. You may request disclosure of your full Social Security number by writing to us at the address found at the end of this report.
- For your protection, your account numbers have been partially masked, and in some cases scrambled.
- Please note: Accounts are reported as "Current; Paid or paying as agreed" if paid within 30 days of the due date. Accounts reported as Current may still incur late fees or interest charges if not paid on or before the due date.

**YOUR CREDIT FILE CONTAINS:**

- One or more Adverse Accounts. Adverse information typically remains on your credit file for up to 7 years from the date of the delinquency. To help you understand what is generally considered adverse, we have added ›brackets‹ or shading to those items in this report.
- One or more satisfactory accounts.
- Promotional Inquiries. The companies listed received your name, address and other limited information about you so they could make a firm offer of credit or insurance. They did not receive your full credit report. These inquiries are not seen by anyone but you and do not affect your score.
- Account Review Inquiries. The listing of a company's inquiry in this section means that they obtained information from your credit file in connection with an account review or other business transaction with you. These inquiries are not seen by anyone but you and will not be used in scoring your credit file (except insurance companies may have access to other insurance company inquiries, certain collection companies may have access to other collection company inquiries, and users of a report for employment purposes may have access to other employment inquiries, where permitted by law).



Scanned with CamScanner

**File Number:** 374054907
**Date Issued:** 07/12/2018

**TransUnion**

## Personal Information

You have been on our files since 07/17/2012

## Account Information

Typically, creditors report any changes made to your account information monthly. This means that some accounts listed below may not reflect the most recent activity until the creditor's next reporting. This information may include things such as balances, payments, dates, remarks, ratings, etc. The key(s) below are provided to help you understand some of the account information that could be reported.

### Rating Key

Some creditors report the timeliness of your payments each month in relation to your agreement with them. The ratings in the key below describe the payments that may be reported by your creditors. Any rating that is shaded indicates that it is considered adverse. Please note: Some but not all of these ratings may be present in your credit report.

| N/R | X | OK | 30 | 60 | 90 | 120 | COL | VS | RPO | C/O | FC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Not Reported | Unknown | Current | 30 days late | 60 days late | 90 days late | 120+ days late | Collection | Voluntary Surrender | Repossession | Charge Off | Foreclosu |

### Remark Key

Additionally, some creditors may notate your account with comments each month. We refer to these creditor comments as "Remarks". The key below gives the descriptions of the abbreviated remarks contained in your credit file. Any remark containing brackets › ‹ indicates that this remark is considered adverse.

PDE   PAYMENT DEFERRED

## Adverse Accounts

**DEVILLE ASSET MANAGEMENT** #D40334**** ( 1132 GLADE ROAD, COLLEYVILLE, TX 76034, (888) 205-1831 )

| | | |
|---|---|---|
| **Placed for collection:** 12/20/2017 | **Balance:** $0 | **Pay Status:** ›Account Paid in Full; was a Collection‹ |
| **Responsibility:** Individual Account | **Date Updated:** 06/11/2018 | |
| **Account Type:** Open Account | **Original Amount:** $1,648 | |
| **Loan Type:** COLLECTION AGENCY/ATTORNEY | **Original Creditor:** WESTWOOD COLLEGE (Educational) | |

**Remarks:** ACCT INFO DISPUTED BY CONSUMR; ›PAID COLLECTION‹
**Estimated month and year that this item will be removed:** 04/2021

To dispute online go to: http://transunion.com/disputeonline

Scanned with CamScanner

Account Type: Installment Account

Scanned with CamScanner



Scanned with CamScanner

Scanned with CamScanner



Promotional Inquiries

Account Review Inquiries

Scanned with CamScanner



Scanned with CamScanner

## Summary of Rights

### GENERAL SUMMARY OF CONSUMER RIGHTS UNDER THE FCRA

*Para informacion en espanol, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.*

### A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. **For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.**

- **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment -- or to take another adverse action against you--must tell you, and must give you the name, address, and phone number of the agency that provided the information.

- **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security Number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:
    - a person has taken adverse action against you because of information in your credit report;
    - you are the victim of identity theft and place a fraud alert in your file;
    - your file contains inaccurate information as a result of fraud;
    - you are on public assistance;
    - you are unemployed but expect to apply for employment within 60 days.

In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for more additional information.

- **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it.  In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

- **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

- **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete, or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

- **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

- **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

- **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.

- **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-567-8688 (888-5OPTOUT).

- **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

- **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore.

Scanned with CamScanner

States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For information about your federal rights, contact:

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| 1.a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates | Bureau of Consumer Financial Protection<br>1700 G Street NW<br>Washington, DC 20552 |
| b. Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the CFPB: | Federal Trade Commission<br>Consumer Response Center - FCRA<br>Washington, DC 20580    1-877-382-4357 |
| 2. To the extent not included in item 1 above:<br>a. National banks, federal savings associations, and federal branches and federal agencies of foreign banks | Office of the Comptroller of the Currency<br>Customer Assistance Group<br>1301 McKinney Street, Suite 3450<br>Houston, TX 77010-9050 |
| b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and insured state branches of foreign banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act | Federal Reserve Consumer Help (FRCH)<br>PO Box 1200<br>Minneapolis, MN 55480    1-888-851-1920 |
| c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and Insured state savings associations | FDIC Consumer Response Center<br>1100 Walnut Street, Box #11<br>Kansas City, MO 64106 |
| d. Federal Credit Unions | National Credit Union Administration<br>Office of Consumer Protection (OCP)<br>Division of Consumer Compliance and Outreach (DCCO)<br>1775 Duke Street<br>Alexandria, VA 22314 |
| 3. Air carriers | Asst. General Counsel for Aviation Enforcement & Proceedings<br>Aviation Consumer Protection Division<br>Department of Transportation<br>1200 New Jersey Avenue, S.E.<br>Washington, DC 20590    1-202-366-1306 |
| 4. Creditors Subject to Surface Transportation Board | Office of Proceedings, Surface Transportation Board<br>Department of Transportation<br>395 E Street, S.W.<br>Washington, DC 20423 |
| 5. Creditors subject to Packers and Stockyards Act, 1921 | Nearest Packers and Stockyards Administration area supervisor |
| 6. Small Business Investment Companies | Associate Deputy Administrator for Capital Access<br>United States Small Business Administration<br>409 Third Street, SW, 8th Floor<br>Washington, DC 20416 |
| 7. Brokers and Dealers | Securities and Exchange Commission<br>100 F Street NE<br>Washington, DC 20549 |
| 8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations | Farm Credit Administration<br>1501 Farm Credit Drive<br>McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | FTC Regional Office for region in which the creditor operates or Federal Trade Commission: Consumer Response Center-FCRA<br>Washington, DC 20580    1-877-382-4357 |

P 8M6K6-002 00994-I011926 10/



Scanned with CamScanner

### VIRGINIA BILL OF RIGHTS

#### Virginia Consumers Have the Right to Obtain a Security Freeze

You have a right to place a "security freeze" on your credit report, which will prohibit a consumer reporting agency from releasing your credit report without your express authorization. A security freeze must be requested in writing by certified mail. The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, government services or payments, rental housing, employment, investment, license, cellular phone, utilities, digital signature, Internet credit card transaction, or other services, including an extension of credit at point of sale. When you place a security freeze on your credit report, you will be provided a personal identification number or password to use if you choose to remove the freeze on your credit report or to authorize the release of your credit report for a specific period of time or for a specific party after the freeze is in place. To provide that authorization you must contact the consumer reporting agency and provide all of the following:

1. The personal identification number or password;
2. Proper identification to verify your identity; and
3. The proper information regarding the period of time or the specific party for which the report shall be available.

A consumer reporting agency must authorize the release of your credit report no later than three business days after receiving the above information. After September 1, 2008, a consumer reporting agency must authorize the release of your credit report no later than 15 minutes after receiving the request.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account that requests information in your credit report for the purposes reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

You have a right to bring civil action against anyone, including a consumer reporting agency, who improperly obtains access to a file, knowingly or willfully misuses file data, or fails to correct inaccurate file data.

Unless you are a victim of identity theft with a police report to verify the crimes, a consumer reporting agency has the right to charge you up to $5 to place a freeze on your credit report.

Scanned with CamScanner

*EO4000*

P 8M6K6-002 00994-I011928 12/12

Scanned with CamScanner

PO Box 9701
Allen, TX 75013



0006165  02 MB 0.421  **AUTO  T7 0 7191 22079-151812  -C02-P06171-I
RICHY EDUARDO CASTRO
7412 POHICK RD
LORTON VA 22079-1518



# Dispute Results

Report # **3289-5894-04** for **08/09/18**

## RICHY EDUARDO CASTRO

### Dispute Results

*Our reinvestigation of the dispute(s) and/or other request(s) you recently submitted is now complete. If we were able to make changes to your credit report based on information you provided, or if you requested the addition of a statement, we have done so. Otherwise, we have contacted the company reporting the information you* disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to:  review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records and systems as necessary.

If an item you disputed is not in the list of results below, it was either not appearing in your credit file or it already reflected the requested status at the time of our reinvestigation.

### How to read your results

**Deleted -** This item was removed from your credit report.

**Remains -** The company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute.

**Updated** (Your results will indicate which one of the following applies.)

• The information you disputed has been updated. Please review your report for the details.

• The item you disputed has been updated, which may include an update to the disputed information. Please review your report for the details.

• The information you disputed has been verified as accurate, however, information unrelated to your dispute has been updated. Please review your report for the details.

• Information on this item has been updated. Please review your report for the details.

**Processed -** This item was either updated or deleted; Please review your report for the details.

If our reinvestigation has not resolved your dispute, you have several options:

• You may add a statement of up to 100 words to your report. If you provide a consumer statement that contains medical information related to service providers or medical procedures, then you expressly consent to Experian including this information in every credit report we issue about you.

• You may contact the company that reports the information to us and dispute it directly with them.  If you wish to obtain documentation or written verification concerning your accounts, please contact your creditors directly.

• You may provide us additional information or documents about your dispute to help us resolve it by visiting www.experian.com/upload. You may also mail your information to Experian, P.O. Box 9701, Allen, Texas 75013.

• You may file a complaint about Experian or the company reporting the item, with the Consumer Financial Protection Bureau or your State Attorney General's office.

If there has been a change to your credit history resulting from our reinvestigation, or if you add a consumer statement, you may request that Experian send an updated report to those who received your report within the last two years for employment purposes, or within the last six months for any other purpose (the past 12 months for residents of Colorado, Maryland or New York). If you send a request to have your results sent to past recipients of your credit report, please designate the organization's name and address.  In the event an organization is not specifically designated, we will generally default to sending only to companies that have requested your

7191-02-00-0006165-0001-0044689

**Scanned with CamScanner**

**RICHY EDUARDO CASTRO** | Report # 3289-5894-04 for 08/09/18



credit information as a result of an action you took, such as applying for credit, insurance, employment or apartment rental.

If interested, you may also request a description of how the reinvestigation was conducted along with the business name, address and telephone number (if reasonably available) of the furnisher of information.

Thank you for helping ensure the accuracy of your credit information.

For frequently asked questions about your credit report, please visit experian.com/consumerfaqs.

If no information follows, our response appeared on the previous page.

**Medical Information**

By law, we cannot disclose certain medical information (relating to physical, mental, or behavioral health or condition). Although we do not generally collect such information, it could appear in the name of a data furnisher (e.g. "Cancer Center") that reports your payment history to us. If so, those names display on your report, but on reports to others, they display only as MEDICAL PAYMENT DATA. Consumer statements included on your report at your request that contain medical information are disclosed to others.

**Here are your results**
**We completed the processing of your dispute(s).**

**Credit items**

DEVILLE ASSET MANAGEME D4033483N1
Outcome: Remains - The company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute. Please review your report for the details.

**Credit items**

**Before dispute**

***DEVILLE ASSET MANAGEMENT*** Partial account # D4033483N1    1132 GLADE RD , COLLEYVILLE , TX 76034 or

| Date opened | First reported | Recent balance | Payment history |
|---|---|---|---|
| Dec 2017 | Apr 2018 | $1,648 as of Jul 2018 | |
| **Address ID #** | **Terms** | **Status** | |
| 0045047887 | 1 Months | Collection account. | |
| **Original creditor** | **Monthly payment** | $1,648 past due as of | |
| WESTWOOD | Not reported | Jul 2018. | |
| COLLEGE | **Credit limit or original** | This account is | |
| **Type** | **amount** | scheduled to continue on | |
| Collection | $1,648 | record until Feb 2021. | |
| **Responsibility** | **High balance** | This item remained | |
| Individual | Not reported | unchanged from our | |
| | | processing of your | |
| | | dispute in Jun 2018. | |
| | | **Date of Status** | |
| | | Apr 2018 | |

Payment history

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2018 | | | | C | C | ND | C | | | | | |

**Account History *** (AB = Account Balance, DPR = Date Payment Received, SPA = Scheduled Payment Amount, AAP = Actual Amount Paid)

| | Jul17 | May17 | Apr17 | Mar17 | Feb17 | Jan17 | Dec16 | Nov16 | Oct16 | Sep16 | Aug16 | Jul16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **AB ($)** | 56,970 | 61,810 | 61,128 | 63,496 | 66,975 | 68,226 | 70,576 | 75,242 | 75,242 | 79,867 | 79,867 | 84,449 |
| **DPR** | May15 | Mar30 | Mar30 | Feb24 | Dec06 | Dec06 | Nov14 | Sep07 | Sep07 | Jul09 | Jul09 | May09 |
| **SPA ($)** | 2,901 | 2,904 | 2,904 | 2,904 | 2,904 | 2,904 | 2,904 | 2,904 | 2,904 | 2,904 | 2,904 | |
| **AAP ($)** | ND | ND | 3,037 | 6,075 | ND | 2,904 | 5,941 | ND | 5,941 | ND | 5,987 | ND |

*The original amount of this account was $327,120*

**Scanned with CamScanner**

**RICHY EDUARDO CASTRO | Report # 3289-5894-04 for 08/09/18**

# Payment History Legend

| | | | | | |
|---|---|---|---|---|---|
| OK | Current/Terms of agreement met | CRD | Creditor received deed | G | Claim filed with government |
| 30 | Account 30 days past due | FS | Foreclosure proceedings started | D | Defaulted on contract |
| 60 | Account 60 days past due | F | Foreclosed | C | Collection |
| 90 | Account 90 days past due | VS | Voluntarily surrendered | CO | Charge off |
| 120 | Account 120 days past due | R | Repossession | CLS | Closed |
| 150 | Account 150 days past due | PBC | Paid by creditor | ND | No data for this time period |
| 180 | Account 180 days past due | EC | Insurance claim | | |

*If your creditor reported your account balances to us, we list them in this section as additional information about your account. Your account history may also include your credit limit and high balance or the original loan amount for an installment loan. This section also includes the scheduled payment amounts, amounts actually paid and the dates those payments were made. ND: No Data

## Your accounts that may be considered negative

The most common items in this section are late payments, accounts that have been charged off or sent to collection, and bankruptcies. It also may contain items that are not necessarily negative, but that a potential creditor might want to review more closely, such as an account that has been settled or transferred. This information is generally removed seven years from the initial missed payment that led to the delinquency. Missed payments may remain on the credit report for up to seven years. Chapters 7, 11 and 12 bankruptcies may remain on the credit report for up to 10 years. Transferred accounts that have not been past due remain up to 10 years after the date the account was transferred.

*Credit items*

**DEVILLE ASSET MANAGEMENT** Partial account # D4033483N1    1132 GLADE RD , COLLEYVILLE , TX 76034 or **No phone number available**

| Date opened | First reported | Recent balance | Payment history |
|---|---|---|---|
| Dec 2017 | Apr 2018 | $1,648 as of Jul 2018 | |
| **Address ID #** | **Terms** | **Status** | Jan Feb Mar Apr May Jun Jul Aug Sep Oct Nov Dec |
| 0045047887 | 1 Months | Collection account. | 2018   C   C   ND   C |
| **Original creditor** | **Monthly payment** | $1,648 past due as of Jul 2018. | |
| WESTWOOD COLLEGE | Not reported | This account is scheduled to continue on record until Feb 2021. | **Account History *** (AB = Account Balance, DPR = Date Payment Received, SPA = Scheduled Payment Amount, AAP = Actual Amount Paid) |
| **Type** | **Credit limit or original amount** | This item remained unchanged from our processing of your dispute in Jun 2018. | |
| Collection | $1,648 | | May18   Apr18 |
| **Responsibility** | **High balance** | | AB ($)    1,648    1,648 |
| Individual | Not reported | **Date of Status** | DPR      ND      ND |
| | | Apr 2018 | SPA ($)   ND      ND |
| | | | AAP ($)   ND      ND |

The original amount of this account was $1,648.

Scanned with CamScanner

RICHY EDUARDO CASTRO | Report # 3289-5894-04 for 08/09/18

Your accounts that may be considered negative (continued)

1023232909

Scanned with CamScanner

RICHY EDUARDO CASTRO



Scanned with CamScanner

**RICHY EDUARDO CASTRO** | Report # **3289-5894-04** for **08/09/18**

Your accounts in good standing (continued)

1023232909

Scanned with CamScanner

RICHY EDUARDO CASTRO | Report # 3289-5894-04 for 08/09/18

Your accounts in good st...



Scanned with CamScanner

## Record of requests for your credit history

*We make your credit history available to your current and prospective creditors and employers as allowed by law. Experian may list these inquiries for up to two years.*

### Inquiries shared with others

The section below lists companies that have requested your credit information as a result of an action you took, such as applying for credit or financing or as a result of a collection. The inquiries in this section are shared with companies that receive your credit history.

Examples of inquiries shared with others include:
- a real estate loan
- a home mortgage loan
- an auto loan
- an application for credit

### Inquiries shared only with you

You may not have initiated the following inquiries, so you may not recognize each source. We report these requests to you only as a record of activities, and **we do not include any of these requests on credit reports to others.**

We offer credit information about you to those with a permissible purpose, such as:
- *other creditors who want to offer you preapproved credit;*
- *an employer who wishes to extend an offer of employment;*
- *a potential investor in assessing the risk of a current obligation;*
- *Experian Consumer Assistance to process a report for you;*
- *your current creditors to monitor your accounts (date listed may reflect only the most recent request);*
- an end user to complete your mortgage loan application;
- insurance underwriting (auto or home).

**These inquiries DO NOT affect your credit score and are not seen by anyone but you (except insurance companies may be able to see other insurance company inquiries).**

1023232909

Scanned with CamScanner

**▉▉▉Y EDUARDO CASTRO** | Report # **3289-5894-04** for **08/09/18**

*Personal information continued*

--- End of Report ---

## Personal information

The following information is reported to us by you, your creditors and/or other sources. Each source may report your personal information differently, which may result in variations of your name, address, Social Security number, etc. As part of our fraud protection efforts, a notice with additional information may appear.

**Names**

## Addresses

These addresses are listed in no particular order and may include previous addresses where you received mail. The Address identification number is how our system identifies the address and the source of that address, such as a creditor, court or potential creditor. The geographical code shown with each address identifies the state, county, census tract, block group and Metropolitan Statistical Area associated with each address. These listings do not affect your credit score.

**Address**

## Social Security number variations

As a security precaution, we did not list the Social Security number that you provided when you contacted us. The numbers below are variations that have been reported to us. Only the last four digits of each reported variation are displayed. Numbers that appear here vary from the number you used to generate this report. Actual differences in the numbers may be part of the displayed portion or part of the hidden portion.

None

7191-02-00-0006165-0005-0044685

Scanned with CamScanner

RICHY EDUARDO CASTRO | Report # 3289-5894-04 for 08/09/18

THIS PAGE INTENTIONALLY LEFT BLANK

Scanned with CamScanner

**WELLS FARGO**

Wells Fargo Consumer Credit Solutions
7000 Vista Drive
West Des Moines, IA 50266-9310

August 23, 2018

RICHY E CASTRO              L208
7412 POHICK RD                 975
LORTON VA 22079-1518
ı‖ı|ı‖ııı‖‖ıl‖ıl‖ıp‖|‖|lı‖ı‖‖|‖ıı‖|‖|ı‖|‖ıl‖ıl‖ı‖ı‖ı‖ı‖ı‖ı

Subject: Your credit card account ending in 5405

Dear RICHY E CASTRO,

Thank you for opening a new Wells Fargo Credit Card account. Your credit card, additional information on the card features, and terms of the account will be arriving soon in a separate mailing.

Enclosed you will find information intended to help you better understand your credit report. If you have questions about this notice, please call 1-800-888-4213.

To learn more about building, managing and protecting your credit please visit our Smarter Credit™ Center at www.wellsfargo.com/smarter_credit.

If you have any questions about your new account, please call us at 1-800-642-4720. Our hours are 24 hours per day, 7 days per week.

Thank you for choosing Wells Fargo. We appreciate your business.

*Athena A. Tracey*

Athena A. Tracey
Senior Vice President
Credit Card

Enclosure

TUW4ENG

Wells Fargo Bank, N.A.

Together we'll go far

COLR0157 5596 0001 CC 1   07 180824 PAGE 00001 OF 00003          975

**Scanned with CamScanner**

Wells Fargo Bank, N.A.
## Your Credit Score and the Price You Pay for Credit

| Your Credit Score | |
|---|---|
| **Your credit score** | 622 |
| | RICHY E CASTRO |
| | Your account ending in 5405 |
| | Source:  TransUnion |
| | 2 Baldwin Place |
| | P.O. Box 1000 |
| | Chester, PA 19022-1000 |
| | 1-800-888-4213 |
| | www.transunion.com/myoptions |
| | Date:   August 23, 2018 |

| Understanding Your Credit Score | |
|---|---|
| **What you should know about credit scores** | Your credit score is a number that reflects the information in your credit report. |
| | Your credit report is a record of your credit history.  It includes information about whether you pay your bills on time and how much you owe to creditors. |
| | Your credit score can change, depending on how your credit history changes. |
| **How we use your credit score** | Your credit score can affect whether you can get a loan and how much you will have to pay for that loan. |
| **The range of scores** | Scores range from a low of 300 to a high of 850. |
| | Generally, the higher your score, the more likely you are to be offered better credit terms. |

Scanned with CamScanner

| How your score compares to the scores of other consumers | |
|---|---|



| Key factors that adversely affected your credit score | Serious delinquency and public record or collection filed<br>Too many accounts with balances<br>Proportion of loan balances to loan amounts is too high<br>Length of time revolving accounts have been established |
|---|---|

## Checking Your Credit Report

| What if there are mistakes in your credit report? | You have a right to dispute any inaccurate information in your credit report. If you find mistakes on your credit report, contact the consumer reporting agency.<br><br>It is a good idea to check your credit report to make sure the information it contains is accurate. |
|---|---|

Scanned with CamScanner

| How can you obtain a copy of your credit report? | Under federal law, you have the right to obtain a free copy of your credit report from each of the nationwide consumer reporting agencies once a year. |
| --- | --- |
| | To order your free annual credit report— |
| | *By telephone:* Call toll-free: 1-877-322-8228 |
| | *On the web:* Visit www.annualcreditreport.com |
| | *By mail:* Mail your completed Annual Credit Report Request Form (which you can obtain from the Federal Trade Commission's website at http://www.ftc.gov/bcp/conline/include/requestformfinal.pdf) to:<br><br>Annual Credit Report Request Service<br>P.O. Box 105281<br>Atlanta, GA 30348-5281 |
| How can you get more information? | For more information about credit reports and your rights under federal law, visit the Consumer Financial Protection Bureau's website at www.consumerfinance.gov/learnmore. |

9-0



# CREDIT SCORE DISCLOSURE NOTICE
## Capital One
### Your Credit Score and the Price You Pay for Credit

## YOUR CREDIT SCORE

| Your credit score | 605 | | |
|---|---|---|---|
| | Source: Experian | Date: | 08/31/2018 |

## UNDERSTANDING YOUR CREDIT SCORE

| What you should know about credit scores | Your credit score is a number that reflects the information in your credit report. Your credit report is a record of your credit history. It includes information about whether you pay your bills on time and how much you owe to creditors. Your credit score can change, depending on how your credit history changes. |
|---|---|
| How we use your credit score | Your credit score can affect whether you get a loan and how much you will have to pay for that loan. |
| The range of scores | Scores range from a low of 325 to a high of 850. Generally, the higher your score, the more likely you are to be offered better credit terms. |
| How your score compares to the scores of other consumers |  |

% of Consumers with Scores in a Particular Range

| 325-499 | 500-549 | 550-599 | 600-649 | 650-699 | 700-749 | 750-799 | 800-850 |
|---|---|---|---|---|---|---|---|
| 3% | 6% | 8% | 11% | 15% | 16% | 22% | 19% |

FICO® Credit Score Range

©2016 Fair Isaac Corporation. All rights reserved.

## CHECKING YOUR CREDIT REPORT

| What if there are mistakes in your credit report? | You have a right to dispute any inaccurate information in your credit report. If you find mistakes on your credit report, contact the consumer reporting agency. It is a good idea to check your credit report to make sure the information it contains is accurate. |
|---|---|
| How can you obtain a copy of your credit report? | Under federal law, you have the right to obtain a free copy of your credit report from each of the nationwide consumer reporting agencies once a year. To order your free annual credit report — |

| By telephone: | Call toll-free 1-877-322-8228 |
|---|---|
| On the web: | Visit www.annualcreditreport.com |
| By mail: | Mail your completed Annual Credit Report Request Form (which you can obtain from the Federal Trade Commission's web site at http://www.ftc.gov/bcp/conline/include/requestformfinal.pdf ) to: |

Annual Credit Report Request Service
P.O. Box 105281
Atlanta, GA 30348-5281

| How can you get more information? | For more information about credit reports and your rights under federal law, visit the Consumer Financial Protection Bureau's website at www.consumerfinance.gov/learnmore. |
|---|---|

Scanned with CamScanner

15324_48 1285441

## CAPITAL ONE® ACCOUNT TERMS

| Interest Rates and Interest Charges | |
|---|---|
| Annual Percentage Rate (APR) for Purchases and Transfers | **22.97%.** This APR will vary with the market based on the Prime Rate. |
| APR for Cash Advances | 26.97%. This APR will vary with the market based on the Prime Rate. |
| Paying Interest | Your due date is at least 25 days after the close of each billing cycle. We will not charge you interest on new purchases, provided you have paid your previous balance in full by the due date each month. We will begin charging interest on cash advances on the transaction date. |
| For Credit Card Tips from the Consumer Financial Protection Bureau | To learn more about factors to consider when applying for or using a credit card, visit the website of the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/learnmore. |

| Fees | |
|---|---|
| Annual Fee | None. |
| Transaction Fees • Transfer • Cash Advance | None. Either $10 or 3% of the amount of each cash advance, whichever is greater. |
| Penalty Fees • Late Payment | Up to $38. |

**How Do You Calculate My Balance?** We use a method called "average daily balance (including new transactions)." See "How Do You Calculate The Interest Charge?" section below.

**What Are My Billing Rights?** Information on your rights to dispute transactions and how to exercise those rights is provided in the "Your Billing Rights" section in the enclosed Additional Disclosures.

**Are There Any Other Penalty Fees Associated With This Card That Are Not Listed In The Box Above?** No. There are no additional Penalty Fees associated with this card.

**What Should I Put For Total Annual Income?** You may include personal income, which is income you have earned, including full-time, part-time, or seasonal jobs, self-employment, interest or dividends, retirement, and public assistance. You may also include shared income, which is money from somebody else that is regularly deposited into your individual account or into a joint account that person shares with you. If you are 21 or over, you may also include somebody else's income that is regularly used to pay your expenses.

**What Will My APR Be If I Transfer A Balance?** [illegible] account's Purchase segment. Any balances transferred after [illegible] Purchase segment of your account unless the transfer is made in connection with a future offer from [illegible]

**Can You Change My APRs?** While a late payment won't cause your APR to increase, in the future, we may increase your APRs if market conditions change. If we increase your APRs for any reason other than an increase in the Prime Rate, the new APRs will apply only to new transactions you make after we notify you of the change in writing.

**Can You Change My Account Terms?** We can change the terms of your account as permitted by law. When required, we will send you notice before doing so.

COLR9671 6056 1092 204    07 180901 PAGE 00002 OF 00004 CPAD01D    1463    2/ADNAS-RLEN0009/1/EXP

Scanned with CamScanner

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

RICHY CASTRO,

        Plaintiff,

v.

    Civil Action No. 1:18cv1303  (LMB/IDD)

TRANS UNION, LLC

    Serve:  Corporation Service Company
            100 Shockoe Slip
            2nd Floor
            Richmond, VA 23219

EXPERIAN INFORMATION SOLUTIONS, INC.

    Serve:  David N. Anthony, Registered Agent
            Troutman Sanders LLP
            1001 Haxall Point
            Richmond, VA 23219

DE VILLE ASSET MANAGEMENT LIMITED

    Serve:  Jay B. Ledford, P.C., Registered Agent
            2801 Paramount Blvd.
            Amarillo, TX 79109

        Defendants.

## COMPLAINT

COMES NOW Plaintiff, Richy Castro ("Plaintiff"), by counsel, and files this Complaint

against Defendants, Trans Union, LLC ("Trans Union"); Experian Information Solutions, Inc.

("Experian"); and De Ville Asset Management Limited ("DeVille") (collectively "Defendants").

Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for statutory, actual, and punitive damages; costs; and attorney's fees brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

2.      The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information." 15 U.S.C. § 1681 (emphasis added). In furtherance of its underlying purposes, the FCRA sets out requirements and obligations that consumer reporting agencies must follow when consumers dispute the accuracy of the information reported in their credit reports. 15 U.S.C. § 1681i

3.      In this case, DeVille, a debt collector, erroneously furnished inaccurate, derogatory information that was reported on Plaintiff's credit reports. After Plaintiff disputed the inaccurate information with Experian and Trans Union, Defendants failed to correct Plaintiff's credit reports.

4.      Accordingly, Plaintiff alleges claims against Experian and Trans Union for failing to reasonably ensure the maximum possible accuracy of Plaintiff's credit reports in violation of the FCRA, 15 U.S.C. §1681e(b), and for failing to fulfill their reinvestigation duties in violation of the FCRA, 15 U.S.C. § 1681i.

5.      Plaintiff also alleges claims against DeVille for failing to fully and properly investigate Plaintiff's disputes and to review all relevant information provided by the consumer reporting agencies in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1) and by making a false representation in connection with the collection of a debt in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 168lp, and 15 U.S.C. § 1692k(d).

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

8.     Plaintiff is a natural person residing in this District and Division and a consumer as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

9.     Trans Union is a foreign limited liability company authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

10.     Experian is a foreign corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

11.     DeVille is a foreign corporation. It is a furnisher as governed by the FCRA and a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## FACTS

12.     Several years ago, Plaintiff attended classes at Westwood College.

13.     However, Plaintiff left Westwood College in May 2013. At the time that Plaintiff stopped attending, his account was paid in full and he did not have an outstanding balance.

14.     In May 2018, Plaintiff reviewed his credit reports and noticed that Defendant DeVille was reporting a collection account with an outstanding balance for a Westwood College Account.

15.     This information was incorrect because Plaintiff did not owe any money to Westwood College when he left school.

16.     On or around May 14, 2018, Plaintiff sent written disputes letters to Experian and Trans Union explaining that he did not owe the debt and asking that the collection account be removed from his credit file.

17.     DeVille failed to conduct a reasonable investigation of the Plaintiff's dispute and continued to report that he was liable for the Westwood College collections account.

18.     In response to Plaintiff's disputes, Experian and Trans Union failed to conduct a proper investigation and continued to report the inaccurate DeVille account.

19.     In addition, despite Plaintiff's dispute of the inaccurate information, DeVille continued to report the collection account on Plaintiff's credit file in an attempt to collect money from the Plaintiff that he did not owe.

20.     On or around July 9, 2018 Plaintiff issued follow-up dispute letters to Trans Union and Experian indicating that DeVille was still inaccurately reporting that he owed them money. He attached a copy of a ledger (that he received from DeVille) demonstrating that he was not enrolled in Westwood College when DeVille claimed he become delinquent on the debt, and that his account balance was zero at the time that he left Westwood College.

21.     DeVille, Experian, and Trans Union again failed to conduct a proper investigation in response to Plaintiff's dispute.

22.     Experian and Trans Union verified that the DeVille account belonged to the Plaintiff and that the outstanding balance on the account was correctly attributed to him.

23.     As a result of the Defendants' conduct, Plaintiff suffered actual damages including, without limitation, denial of credit opportunities, credit damage, damage to reputation, embarrassment, humiliation, and other emotional distress.

## Defendants' FCRA Violations Were Willful

24.     As a standard practice, Experian and Trans Union do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

25.     Upon information and belief and consistent with their standard policies and procedures, Experian and Trans Union automatically generated their "investigation" results once DeVille provided its response to Plaintiff's disputes, verifying the status of the account, and they did not take any additional actions to verify the accuracy of the information that DeVille provided.

26.     Instead, Defendants blindly accepted DeVille's version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit reports.

27.     Experian and Trans Union continue the practice of parroting the response from the furnisher despite numerous lawsuits alleging (and establishing) that they fail to conduct a reasonable investigation as required by the FCRA.

28.     Defendants do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

29.     Therefore, at all times relevant to this Complaint, Experian's and Trans Union's, conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, their conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these common errors prior to furnishing reports.

30.     In addition, at all times pertinent to this Complaint, DeVille's processing of consumer reports was willful and carried out in reckless disregard for a consumer rights as set forth under the FCRA. By example only and without limitation, DeVille's conduct was willful because it was intentionally accomplished through intended procedures and as DeVille's efficiency in processing disputes is believed to be more important than making sure that the disputes are investigated thoroughly and accurately.

## COUNT ONE:
### VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)
### (DEFENDANTS EXPERIAN AND TRANS UNION)

31.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

32.     Experian and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files they published and maintained.

33.     Because of Experian and Trans Union's conduct, Plaintiff suffered actual damages, including without limitation: credit damage, damage to reputation, embarrassment, humiliation, and other emotional distress.

34.     Experian and Trans Union's conduct in violating § 1681e(b) was willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

**COUNT TWO:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681i**
**(DEFENDANTS EXPERIAN AND TRANS UNION)**

35.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

36.     Experian and Trans Union violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide DeVille with all the relevant information regarding Plaintiff's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Plaintiff in violation of §1681i(a)(4); and (4) failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

37.     Because of Experian and Trans Union's violations of §1681i, Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

38.     Experian and Trans Union's violations of § 1681i were willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorney's

fees in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, they were

negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

**COUNT THREE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)**
**(DEFENDANT DEVILLE)**

39.      Plaintiff incorporates by reference each of the allegations set forth in the preceding

paragraphs.

40.      On one or more occasion within the past two years, by example only and without

limitation, Deville violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly

investigate Plaintiff's disputes.

41.      When Plaintiff disputed his account with the credit bureaus, DeVille used a dispute

system named, "e-Oscar," which has been adopted by the consumer reporting agencies and their

furnisher-customers such as DeVille. E-Oscar is an automated system, and the procedures used by

the credit reporting agencies are systemic and uniform.

42.      When the credit bureaus receive consumer disputes, they (usually via an outsourced

vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

43.      Upon information and belief, the ACDV form is the method by which DeVille has

elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

44.      Upon information and belief, Plaintiff alleges that the credit bureaus forwarded

Plaintiff's dispute via an ACDV to DeVille.

45.      DeVille understood the nature of Plaintiff's disputes when it received the ACDV

form.

46.      Upon information and belief, when DeVille received the ACDV form containing

Plaintiff's disputes, DeVille followed a standard and systemically unlawful process where it only

8

reviews its own internal computer screen for the account and repeats back the same information to the ACDV system that was previously reported to the credit reporting agency.

47.     Upon information and belief, when DeVille receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether the information already in its computer system is itself accurate.

48.     Because of DeVille's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

49.     DeVille's conduct in violating § 1681s-2(b)(1)(A) was willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, DeVille was negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

50.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from DeVille in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT FOUR:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)**
**(DEFENDANT DEVILLE)**

51.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

52.     On one or more occasions within the past two years, by example only and without limitation, DeVille violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit bureaus.

53.     As Plaintiff detailed in the previous Count, DeVille has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies.

54.     DeVille was aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

55.     DeVille does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

56.     DeVille understood Plaintiff's disputes and that Plaintiff claimed the information was inaccurate.

57.     Because of DeVille's violations of 15 U.S.C. § 1681s-2(b)(1)(B), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

58.     DeVille's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, DeVille was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

59.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from DeVille in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT FIVE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(C) and (D)
## (DEFENDANT DEVILLE)

60.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

61.     On one or more occasions within the past two years, by example and without limitation, DeVille violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing its representations within Plaintiff's credit files without also including a notation that the account was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

62.     Specifically, DeVille failed to add the "XB" or "XC" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to the credit reporting agencies, which would have indicated that the account was disputed.

63.     Upon information and belief, Plaintiff alleges that DeVille rarely, if ever, added the XB or XC code or other notation that an account was disputed when it responded to ACDV forms.

64.     Furthermore, DeVille knew that Plaintiff disputed the subject account through his dispute letters to the credit reporting agencies.

65.     Plaintiff's disputes were bona fide as he did not owe an outstanding balance on his Westwood College account.

66.     Because of DeVille's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

67.     DeVille's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, DeVille was negligent, entitling Plaintiff to recover against DeVille under 15 U.S.C. §1681o.

68.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from DeVille in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT SIX:
## VIOLATION OF FDCPA, 15 U.S.C. § 1692e
## (DEFENDANT DEVILLE)

69.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

70.     Defendant DeVille violated § 1692e of the FDCPA by using any false, deceptive, or misleading representation or means in connection with the collection of any debt including, but

not limited to, its reporting to Experian and Trans Union that the Plaintiff was liable for the Westwood College collection account.

71.     Plaintiff suffered actual damages as a result of DeVille's violation of § 1692e, including loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

72.     Plaintiff is entitled to recover actual damages, statutory damages, his reasonable attorney's fees, and costs, pursuant to 15 U.S.C. § 1692k.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants as pleaded above; his attorney's fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,
**RICHY CASTRO**

By:_____*/s/ Kristi C. Kelly*_____
Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
Casey S. Nash, Esq., VSB #84261
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
Email: casey@kellyandcrandall.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |  |
|---|---|---|
| Richy Castro | ) | |
| Plaintiff | ) | |
| v. | ) | CIVIL ACTION NO.    1:18cv1303 |
| | ) | |
| Trans Union, LLC, et al | ) | |
| Defendant | ) | |

## ENTRY OF DEFAULT

In accordance with plaintiff's request to enter default and affidavit of Casey Nash, counsel of record for plaintiff, the Clerk of this Court does hereby enter the default of De Ville Asset Management Limited for failure to plead or otherwise defend as provided by the Federal Rules of Civil Procedure.

The entry of default is in accordance with Rule 55(a) Federal Rules of Civil Procedure.


FERNANDO GALINDO
CLERK OF COURT



BY:      /s/
Dana Van Metre
DEPUTY CLERK

DATED:  12/20/2018

| PROGRAM: | CAPRESPA | EXPERIAN-CONSUMER ASSISTANCE - CAPS | | | PAGE: 1 | | |
|---|---|---|---|---|---|---|---|
| RUN DATE: | 01/02/2019 | ACDV Response | | DOCUMENT VIEWED: | Y | | |
| RUN TIME: | 15:03:34 | Auto Response: | | | | 3289589404001 | |
| SUBCODE: | 2451510 | ACCOUNT #: ▮ | | | | | |
| | | SUBSCRIBER: DeVille Asset Management Limit | | | | | |

| DISPUTE REASON: | 112 - Claims inaccurate information. Did not provide specific dispute. Provide complete ID and verify account information. | Office: | 1 |
|---|---|---|---|
| | | Date Sent: | 07/26/2018 |
| REMARKS: | | Date Due: | 08/12/2018 |
| | | Resp Date: | 08/09/2018 |

| | CONSUMER IDENTIFICATION | SUBSCRIBER CONSUMER ID | DNR Date: | 08/12/2018 |
|---|---|---|---|---|
| Name: | RICHY EDUARDO CASTRO | RICHY EDUARDO CASTRO | Name Flag: | S \| S \| S \| S |
| SSN: DOB: | ▮ | | Second Name: | |
| Curr Address: | 7412 POHICK RD | 7412 POHICK RD | Curr Addr Flag: | Same |
| | LORTON, VA | LORTON, VA | Prev Addr Flag: | |
| ZIP: | 22079 | 22079 | SSN Flag: | Same |
| Prev Addr 1: | | | DOB Flag: | Same |
| Prev Addr 2: | | | Authorized Verifier: | ashley rhoades |
| Account Name: | | | Phone: | (817) 677-6163 |
| RESPONSE: | 01 - Account information accurate as of date reported. | | DF Contact Phone #: | |

| TRADE INFORMATION | SUBSCRIBER RESPONSE | | ON PROFILE | | CONSUMER CLAIMS | | |
|---|---|---|---|---|---|---|---|
| Acct Condition/Cumm Status: | | | / COLL ACCT | | | | |
| Act Status/Rating: | | | | | | | |
| Payment Rating: | | | | | | | |
| CII: | ECOA: | 1 | | 1 | | | |
| Balance: Balance Date: | | | 1,648 | 07/10/2018 | | | |
| Amt Past Due: | | | 1,648 | | | | |
| Orig Delinq Date: | | | | | | | |
| Credit Limit/Orig Amt: | | | | | | | |
| High Credit Balance: | | | 1,648 | | | | |
| Charge Off Amt: | | | | | | | |
| Sch Monthly Pay: Act Pay: | | | | | | | |
| Portfolio Name: | | | | | | | |
| Date Last Pay: | | | | | | | |
| Open Date: Closed Date: | | | 12/20/2017 | | | | |
| Spec Comm Code: | | | | | | | |
| Cons Compl Code: | | | | | | | |
| Type: Terms: Freq: | | | 48 | 001 | | | |
| Original Creditor: | | | WESTWOOD COLLEGE | | | | |
| Special Payment/Date/Amt: | | | | | | | |

**Response History Grid**

| Year | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2018 | | | | | | | | | | | | |
| 2017 | | | | | | | | | | | | |
| 2016 | | | | | | | | | | | | |
| 2015 | | | | | | | | | | | | |
| 2014 | | | | | | | | | | | | |
| 2013 | | | | | | | | | | | | |
| 2012 | | | | | | | | | | | | |
| 2011 | | | | | | | | | | | | |

**On-File History Grid**

| Year | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2018 | | | | | | | D | G | G | | | |
| 2017 | | | | | | | | | | | | |
| 2016 | | | | | | | | | | | | |
| 2015 | | | | | | | | | | | | |
| 2014 | | | | | | | | | | | | |
| 2013 | | | | | | | | | | | | |
| 2012 | | | | | | | | | | | | |
| 2011 | | | | | | | | | | | | |

EXPCASTRO_0000072

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| RICHY CASTRO, | |
| Plaintiff, | |
| v. | Civil Action No. 1:18-cv-01303(LMB/IDD) |
| TRANS UNION, LLC, et al., | |
| Defendants. | |

**MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST
DEFENDANT DE VILLE ASSET MANAGEMENT, LTD**

COMES NOW the Plaintiff, Richy Castro, by counsel, and moves this Court for entry of

Default Judgment against Defendant De Ville Asset Management, Ltd. pursuant to Fed. R. Civ.

P. 55, for the reasons set forth in the contemporaneously-filed Memorandum of Law and the

Proposed Findings of Fact and Conclusions of Law.

Respectfully Submitted,
**RICHY CASTRO**

By: _____/s/_____
Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7570 – Telephone
(703) 591-0167 – Facsimile
E-mail: kkelly@kellyandcrandall.com
E-mail: aguzzo@kellyandcrandall.com
Email: casey@kellyandcrandall.com
*Counsel for the Plaintiff*

1

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of January, 2019, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

_____/s/_____
Casey S. Nash, VSB #84261
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7570 – Telephone
(703) 591-0167 – Facsimile
E-mail: casey@kellyandcrandall.com
*Counsel for the Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| RICHY CASTRO, | |
| Plaintiff, | |
| v. | Civil Action No. 1:18-cv-01303(LMB/IDD) |
| TRANS UNION, LLC, et al., | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT
JUDGMENT AGAINST DEFENDANT DE VILLE ASSET MANAGEMENT, LTD.**

The Plaintiff, Richy Castro, by counsel, respectfully submits the following memorandum of law as support for his Motion for Entry of Default Judgment against Defendant De Ville Asset Management, Ltd.

Plaintiff filed his Complaint on October 19, 2018, against several defendants including Deville Asset Management, Ltd. ("DeVille"). (*See* Dkt. No. 1.) Plaintiff served De Ville through the Secretary of the Commonwealth on November 7, 2018, making its responsive pleadings due November 28, 2018. (Dkt. No. 5.) DeVille did not file a responsive pleading on or before that deadline. Accordingly, Plaintiff requested that the Clerk enter default as to DeVille, which the Clerk entered on December 20, 2018. (Dkt. No. 19.)

The Plaintiff now moves this Court for entry of default judgment pursuant to Fed. R. Civ. P. §55(b)(2) and requests that the Court enter the Proposed Findings of Fact and Conclusions of Law attached hereto as Exhibit 1. Plaintiff's damages are both liquidated and unliquidated. Accordingly, Plaintiff will present evidence of his damages at the hearing on January 25, 2019 unless the Court is satisfied with the evidence presented in the Plaintiff's declaration attached

hereto as Exhibit 2. Plaintiff further asserts that entry of a default judgment is permissible because DeVille is not a minor or incompetent person and that the Service Members Civil Relief Act does not apply to DeVille, making the entry of default appropriate.

Respectfully Submitted,
**RICHY CASTRO**

By:_____/s/_____
Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA  22030
(703) 424-7570 – Telephone
(703) 591-0167 – Facsimile
E-mail:  kkelly@kellyandcrandall.com
E-mail:  aguzzo@kellyandcrandall.com
Email: casey@kellyandcrandall.com
*Counsel for the Plaintiff*

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of January, 2019, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/
_____
Casey S. Nash, VSB #84261
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA  22030
(703) 424-7570 – Telephone
(703) 591-0167 – Facsimile
E-mail:  casey@kellyandcrandall.com
*Counsel for the Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

RICHY CASTRO,

        Plaintiff,

v.

        Civil Action No. 1:18-cv-01303(LMB/IDD)

TRANS UNION, LLC, et al.,

        Defendants.

---

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Plaintiff, Richy Castro, by counsel, respectfully offers the following as his Proposed Findings of Fact and Conclusions of Law.

### OVERVIEW

This case is brought against the Defendant, De Ville Asset Management, Ltd. ("DeVille"), pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. Plaintiff's claim is based on DeVille's efforts to collect a debt that the Plaintiff did not owe. In connection with these efforts, DeVille reported inaccurate information about the account on Plaintiff's Experian and Trans Union credit reports, and refused to correct the inaccurate information about the Plaintiff disputed the account with the credit-reporting agencies. Instead, DeVille verified the inaccurate information as correct and instructed the credit-reporting agencies to continue reporting the inaccurate information on the Plaintiff's reports. This conduct violated § 1681s-2(b) of the FCRA and § 1692e of the FDCPA. Based on the Defendants' failure to answer the Complaint, Plaintiff respectfully requests that the Court enter the following facts and conclusions of law:

Exhibit 1

**DEVILLE WAS SERVED**

1.      Plaintiff filed his Complaint on October 19, 2018 against the Defendant, DeVille, (Dkt. No. 1.)

2.      Deville was served on November 7, 2018 through the Secretary of the Commonwealth. (Dkt. No. 5.)

3.      Accordingly, DeVille's responsive pleading was due on or before November 28, 2018. DeVille has not filed an answer or other responsive pleading within the time provided by the Federal Rules of Civil Procedure and is therefore in default.

4.      On December 19, 2018, Plaintiff requested that the Clerk enter default as to DeVille, which the Clerk entered on December 20, 2018. (Dkt. Nos. 18-19.)

5.      On January 14, 2019, Plaintiff's counsel filed a Motion for Default Judgment, as well as a supporting memorandum of law and these Proposed Findings of Fact and Conclusions of Law.

6.      On January 14, 2019, Plaintiff mailed a copy of the pleadings to DeVille.

7.      On January 14, 2019, Plaintiff personally appeared with his counsel and moved the Court for entry of a Default Judgment and an award of damages. Plaintiff testified at the hearing under oath to establish the findings of fact contained herein and sought and obtained the admission of certain documents and records as trial exhibits.

**DEVILLE'S COLLECTION ACTIVITY VIOLATED THE FDCPA**

8.      Plaintiff Castro is a resident of the Commonwealth of Virginia. (Compl. ¶ 8). He is a "natural person," whom DeVille contended owed it a debt and therefore he is a "consumer" as defined by § 1692a(3) of the FDCPA. (Compl. ¶¶ 8, 14.) He is also a consumer under 15 U.S.C. § 1681a(c) of the FCRA. (Compl. ¶ 8).

9.      DeVille is a foreign corporation. It is a furnisher as governed by the FCRA and a "debt collector" as defined by § 1692a(6) of the FDCPA because it uses interstate commerce or mail in its business, the principal purpose of which is debt collection. (Compl. ¶ 11).

10.      Several years ago, Plaintiff attended classes at Westwood College. (Compl. ¶ 12).

11.      However, Plaintiff left Westwood College in May 2013. At the time Plaintiff stopped attending, it was his understanding that his account was paid in full and he did not have an outstanding balance. (Compl. ¶ 13).

12.      In May 2013, Plaintiff reviewed his credit reports and noticed that DeVille was reporting a collection account with an outstanding balance for a Westwood College Account. (Compl. ¶ 14).

13.      The information that DeVille reported on Plaintiff's credit report was incorrect because Plaintiff did not owe any money to Westwood College when he left school. (Compl. ¶ 15).

14.      On or around May 14, 2018, Plaintiff sent written disputes to Experian and Trans Union explaining that he did not owe the debt and asking that the DeVille collection be removed from his credit file. (Compl. ¶ 16).

15.      In response to this dispute, DeVille failed to conduct a reasonable investigation of the Plaintiff's dispute and continued to report that he was liable for the Westwood College collections account. (Compl. ¶ 17).

16.      When Plaintiff disputed his account with the credit bureaus, DeVille used a dispute system named, "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher-customers such as DeVille. E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systemic and uniform. (Compl. ¶ 41).

17.     When the credit bureaus receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form. (Compl. ¶ 42).

18.     The ACDV form is the method by which DeVille has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a). (Compl. ¶ 43).

19.     The credit bureaus forwarded Plaintiff's dispute via an ACDV to DeVille. (Compl. ¶ 44).

20.     DeVille understood the nature of Plaintiff's disputes when it received the ACDV form. (Compl. ¶ 45).

21.     When DeVille received the ACDV form containing Plaintiff's disputes, DeVille followed a standard and systemically unlawful process where it only reviewed its own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to the credit reporting agency. (Compl. ¶ 46).

22.     DeVille did not conduct a substantive review of any sort to determine whether the information already in its computer system is itself accurate when responding to the ACDV regarding Plaintiff's dispute. (Compl. ¶ 47).

23.     In addition, despite understanding that Plaintiff disputed the information that it was reporting about him, DeVille published its representations in Plaintiffs' credit file without also including a notation that the account was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency. (Compl. ¶ 61).

24.     Specifically, DeVille failed to add the "XB" or "XC" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to the credit

reporting agencies, which would have indicated that the account was disputed, even though it understood the nature of Plaintiff's *bona fide* dispte. (Compl. ¶¶ 62-65).

25.     Despite Plaintiff's dispute, DeVille continued to report the collection account on Plaintiff's credit file in an attempt to collect money from the Plaintiff that he did not owe. (Compl. ¶ 17).

26.     On or around July 9, 2018 Plaintiff issued follow-up dispute letters to Trans Union and Experian indicating that DeVille was still inaccurately reporting that he owed them money. He attached a copy of a ledger (that he received from DeVille) demonstrating that he was not enrolled in Westwood College when DeVille claimed he become delinquent on the debt, and that his account balance was zero at the time that he left Westwood College. (Compl. ¶ 20).

27.     In response to this follow-up dispute, DeVille again failed to conduct a proper investigation, and instead followed the same steps outlined above. (Compl. ¶ 21).

28.     DeVille's processing of consumer reports was willful and carried out in reckless disregard for a consumer rights as set forth under the FCRA. By example only and without limitation, DeVille's conduct was willful because it was intentionally accomplished through intended procedures and as DeVille's efficiency in processing disputes is believed to be more important than making sure that the disputes are investigated thoroughly and accurately. (Compl. ¶ 30).

29.     Accordingly, DeVille violated § 1692e of the FDCPA and § 1681s-2(b) of the FCRA.

**THE COURT SHOULD AWARD ACTUAL, STATUTORY, AND PUNTIVE DAMAGES, AS WELL AS ATTORNEY'S FEES AND COSTS**

30.     The FDCPA allows an individual plaintiff to recover actual damages, statutory damages up to $1,000.00, and attorney's fees and costs. 15 U.S.C. § 1629k(a).

31.     Actual damages under the FDCPA include emotional distress damages. *Anderson v. Didonato*, No. 1:12-cv-00643 TSE, 2012 WL 6553675, at *4 (E.D. Va. Nov. 19, 2012), *report and recommendation adopted,* No. 1:12-cv-643, 2012 WL 6561259 (E.D. Va. Dec. 14, 2012); *see also Carter v. Countrywide Home Loans, Inc.*, 3:07-cv-651, 2009 WL 1010851, at *4 (E.D. Va. Apr. 14, 2009); *Davis v. Creditors Interchange Receivable Mgmt., LLC,* 585 F. Supp. 2d 968, 971–73 (N.D. Ohio 2008); *McGrady v. Nissan Motor Acceptance Corp.,* 40 F. Supp. 2d 1323, 1338 (M.D. Ala. 1998) (finding that damages for mental anguish are recoverable under the FDCPA); *Chiverton v. Fed. Fin. Group, Inc.,* 399 F. Supp. 2d 96, 102 (D. Conn. 2005).

32.     As to statutory damages, the court may award up to $1,000.00 per lawsuit. 15 U.S.C. § 1692k(a)(2)(A). To determine the appropriate amount, the relevant factors are "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." *Lundie v. Smith & Cohen, LLC*, 2:15-cv-291, 2016 WL 717113, at *5 (E.D. Va. Jan. 26, 2016), *report and recommendation adopted,* 2:15-cv-291, 2016 WL 715736 (E.D. Va. Feb. 18, 2016) (citing 15 U.S.C. § 1692k(b)(1)).

33.     Finally, when a plaintiff in an FDCPA action establishes liability, an award of attorney's fees is mandatory except in "the most unusual circumstances." *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995) (citing *Graziano v. Harrison*, 950 F.2d 107, 113–14 (3d Cir. 1991)).

34.     Here, the Plaintiff requests that the Court award him $7,000 in actual damages and $1,000 in statutory damages for his FDCPA claim.

35.     As a result of DeVille's inaccurate credit reporting made in an attempt to force Plaintiff to pay the debt, Plaintiff's credit score was reduced. (Castro Decl. ¶ 14).

36.     This decreased credit score harmed Plaintiff's ability to obtain credit on favorable terms. For example, Plaintiff applied for Wells Fargo and Capital One credit cards in August

6

2018. Even though he obtained credit cards, the credit limit and interest rate that he qualified for was affected by DeVille's negative credit reporting. (Castro Decl. ¶ 15)

37.     In addition, Plaintiff, through his testimony, has established that he suffered actual damages in the form of mental, emotional, and physical stress as a result of DeVille's illegal collection activity.

38.     For example, DeVille's collection efforts affected the Plaintiff's ability to focus on his college courses. (Castro Decl. ¶ 19).

39.     DeVille's collection efforts also caused the Plaintiff a great deal of stress and anxiety, as he is focusing on getting his financial affairs in order, obtaining a college degree, and taking other steps to secure a successful future. He felt that DeVille's collection efforts—on a debt that he had already paid—set him back in these efforts, which was very upsetting to him. (Castro Decl. ¶¶ 17-18).

40.     These actual damages are not liquidated and do not lend themselves to a statement of calculation but may be subject to an award of damages. *Williams v. Trader Pub. Co.,* 218 F.3d 481, 486-487 (5th Cir. 2000); *See Burrell v. Crown Central Petroleum, Inc.*, 177 F.R.D. 376, 386 (E.D. Tex. 1997).

41.     Actual damage awards in FDCPA cases include:

*Brablec v. Paul Coleman & Assocs., P.C.*, No. S-08-1843MCE-GGH, 2010 WL 235062, at *2 (E.D. Cal. Jan. 21, 2010) (awarding a consumer $25,000 in actual damages due to emotional distress stemming from FDCPA violations);

*Campbell v. Bradley Fin. Grp.,* No. CIV.A. 13–604–CG–N, 2014 WL 3350054 (S.D. Ala. July 9, 2014) (Plaintiff awarded $15,000 in emotional distress damages after debt collector wrongfully alleged that she owed a debt and would be sued if she did not pay, resulting in the plaintiff paying the illegitimate debt);

*Clodfelter v. United Processing, Inc.*, 2008 WL 422555 (C.D. Ill. Sept. 12, 2008). (Award of $100,000 of emotional distress FDCPA actual damages following entry of default where the evidence showed that the defendant debt collectors, consistent with pattern and practice evidence that they had committed the same type of misconduct

against several other consumers, made multiple unlawful third party contacts, and threats of criminal prosecution to collect a $400 loan);

*Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 445 (6th Cir. 2009) (following a successful bench trial, the court awarded the plaintiff $25,000 in actual damages for emotional distress);

*Haas v. PMCW*, No. 12-CV-570-H (WVG), 2013 WL 12116598, at *4 (S.D. Cal. Nov. 5, 2013) (entering default judgment against debt collector in FDCPA action and awarding plaintiff $10,000 in emotional distress damages without proof of medical visits or expenses);

*Latimore v. Gateway Retrieval, LLC*, No. 1:12-cv-00286-TWT, 2013 WL 791258, at *11 (N.D. Ga. Feb. 1, 2013), *report and recommendation adopted,* No. 1:12-CV-286-TWT, 2013 WL 791308 (N.D. Ga. Mar. 4, 2013) (In granting plaintiff's motion for default judgment, court *sua sponte* awarded plaintiff $10,000 for emotional distress actual damages, even though plaintiff had not requested it as relief in her motion);

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 957 (9th Cir. 2011) (affirming jury's award of $250,000 in emotional distress actual damages);

*Morisaki v. Davenport, Allen & Malone, Inc.*, No. 2:09-cv-0298 MCE DAD, 2010 WL 3341566, at *5-6 (E.D. Cal. Aug. 23, 2010) (entering default judgment against debt collector and awarding $73,000 in emotional distress actual damages based on allegation in plaintiff's complaint and declaration);

*Myers v. LHR, Inc.*, 543 F. Supp. 2d 1215 (S.D. Cal. Feb. 25, 2008) (default judgment entered against debt collector for $90,000 in actual damages because she suffered sleeplessness, upset, and embarrassment. In addition to over-the-counter medications, plaintiff was prescribed Flexeril to relieve pain, and underwent steroid injections for back pain. She also testified to the extreme emotional distress caused by the erroneous reporting of the debt on Plaintiff's credit report hindering her ability to timely purchase a home.");

*Panahiasl v. Gurney*, No. 04-04479 JF, 2007 WL 738642, at *3 (N.D. Cal. Mar. 8, 2007) (awarding to one plaintiff $50,000 in actual damages due to emotional distress arising from FDCPA violations that caused her to suffer embarrassment, fear, anger, panic, humiliation, nervousness, crying fits, difficulty eating and sleeping, and diarrhea);

42.    The FCRA allows an individual plaintiff to recover actual and punitive damages and attorney's fees and costs for a willful violation of the statute. 15 U.S.C. § 1681n.

43.    In comparable FCRA cases when a defendant was subject to default judgment, this Court—Judges Williams and Spencer have awarded actual damages in the amounts of

$125,000.00, $10,000.00 and $1,000.00, respectively, and punitive damages in the amounts of $100,000.00, $15,000.00 and $249,000.00 respectively. *Lowery v. Trans Union*, 3:07-cv-511 (E.D. Va. 2007 (Docket No. 22) (attached Exhibit 1A); *Wilder v. Prestige Auto, Inc.*, 3:03-cv-00866-DWD, (E.D. Va. 2003) (Docket Nos. 40 & 41) (attached as Exhibit 1B); *Streat v. Equifax*, 3:01-cv-00677-DWD (Docket No. 18) (Williams, J.) (entering judgment in favor of the plaintiff in the amount of $1,000.00 in actual damages, $249,000.00 in punitive damages, $5,450.00 in attorneys' fees, and $184.00 costs).

44.     Plaintiff requests that the Court award him actual damages in the amount of $12,500.00 and punitive damages in the amount of $37,500.00 for his FCRA claim.

45.     Plaintiff, through his testimony, has established that he suffered actual damages in the form of a decreased credit score, less favorable credit terms on credit applications, and mental, emotional, and physical stress as a result of DeVille's inaccurate credit reporting. (Castro Decl. ¶¶ 14-19.)

46.     These actual damages are not liquidated and do not lend themselves to a statement of calculation but may be subject to an award of damages. *Williams v. Trader Pub. Co.*, 218 F.3d 481, 486-487 (5th Cir. 2000); *see also Burrell v. Crown Central Petroleum, Inc.*, 177 F.R.D. 376, 386 (E.D. Tex. 1997).

47.     The applicable case law makes it clear that the requested amount of actual damages is well within the reasonable range. *Anderson v. Conwood Co.* 34 F. Supp. 2d 650 (W.D. Tenn. 1999) ($50,000 in actual damages awarded in absence of testimony other than worry, stress and anxiety); *Bell v. May Dep't Stores*, (Missouri 2000, Case No. 22942-09508-01, jury award $50,000 actual damages); *Stevenson v. TRW*, 987 F.2d 288 (5th Cir. 1993) ($30,000 in mental anguish and embarrassment damages); *Thompson v. San Antonio Retail Merchant*, 682 F.2d 509 (5th Cir. 1982)($10,000 actual damages for humiliation and mental distress even when no out of pocket expenses).

48.     Courts have also routinely awarded substantial punitive damages for much levels of intent much less than established in this case. For example, these verdicts include: *Saunders v. Branch Banking and Tr. Co. of VA*, 526 F.3d 142, 152 (4th Cir. 2008) (upholding a punitive damages award of $80,000 when the other other damages awarded were $1,000 in statutory damages); *Boris v. ChoicePoint Servs., Inc.*, 249 F. Supp. 2d 851, (W.D. Ky. 2003)($250,000 in punitive damages award was appropriate under FCRA); *Brimm v. Midland Credit Management, Inc.,* No. CV 10-J-369-NE (N.D. AL February 25, 2011) ($623,180 jury verdict for punitive damages for emotional distress and lost credit based upon Defendant's violation of the Fair Credit Reporting Act); *Dixon-Rollins v. Trans Union* (E.D. Pa. Civ. No. 09-0646) ($30,000 jury verdict for actual damages) (jury award of $500,000 in punitive damages, remitted to $270,000).

49.     Plaintiff is also entitled to recover his attorney's fees and costs against DeVille for his FDCPA and FCRA claims, which he will move for after the Court enters judgment against DeVille in this case.

## CONCLUSIONS OF LAW

50.     The Court has jurisdiction over the parties and over the subject matter of this action pursuant to the FDCPA at 15 U.S.C. § 1692k(d) and the FCRA at 15 U.S.C. § 1681(p).

51.     This Court also has personal jurisdiction over the Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and Va. Code § 8.01–328.1(A)(1). Although DeVille was never physically present in Virginia, physical presence in the forum state is not required. *See Peanut Corp. of Am. v. Hollywood Brands, Inc.,* 696 F.2d 311, 314 (4th Cir. 1982). DeVille attempted to collect a loan obligation for a debt that was incurred in Virginia and attempted to collect the loan in Virginia. DeVille thus purposely availed itself of the "benefits and protections" of Virginia law. *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). Personal jurisdiction is therefore proper under the applicable Virginia law.

52.     In addition, this Court's exercise of personal jurisdiction would not violate due process. DeVille knew that the Plaintiff lived in Virginia when it attempted to collect the debt from him. It also knew that he incurred the debt there. DeVille sent correspondence to the Plaintiff's Virginia address. These facts demonstrate that DeVille's contacts with Virginia are not "'random,' 'fortuitous,' or 'attenuated.'" *Alitalia–Linee Aeree Italiane S.p.A. v. Casinoalitalia.Com,* 128 F. Supp. 2d 340, 349 (E.D. Va. 2001) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). They also demonstrate that DeVille should not be surprised at being sued in Virginia and, in fact, "should [have] reasonably anticipate[d] being haled into court [ ]here." *Rossman v. State Farm Mut. Auto. Ins. Co.,* 832 F.2d 282, 286 (4th Cir. 1987).

53.     Finally, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district.

54.     The FDCPA is a federal consumer protection statute enacted by Congress, in part, to protect consumer against abusive, deceptive, and unfair debt collection practices, which contribute to the number of personal bankruptcies, marital instability, loss of employment, and invasions of individual privacy. *See* 15 U.S.C. § 1692(a).

55.     DeVille's conduct violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e. This section states, in relevant part, that "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" 15 U.S.C. § 1681e.

56.     Section 1692e provides a non-exclusive list of violative conduct, at least four of which occurred in this case. These include:

> a.  The false representation of the legal status of Plaintiff's debt, 15 U.S.C. 1692e(2)(A);

     b.   The false representation of the amount of Plaintiff's debt, 15 U.S.C. 1692e(2)(A);

     c.   Communicating or threatening to communicate to any person credit information that is false, 15 U.S.C. 1692e(8); and

     d.   The use of any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer, 15 U.S.C. 1692e(10).

57.     To prevail on a claim under the FDCPA, a plaintiff must demonstrate that "(1) the plaintiff is a 'consumer' within the meaning of the statute; (2) the defendant collecting the debt is a 'debt collector' within the meaning of the statute, [and]; (3) the defendant has violated by act or omission a provision of the FDCPA." *Creighton v. Emporia Credit Serv., Inc.*, 981 F. Supp. 411, 414 (E.D. Va. 1997).

58.     Plaintiff's undisputed evidence establishes that: (1) that he is a "consumer" within the meaning of the FDCPA (Compl. ¶ 8); that DeVille is a "debt collector" within the meaning of the FDCPA (Compl. ¶ 11); and (3) that DeVille violated the FDCPA, including by falsely representing to the credit bureaus that Plaintiff had a Westwood College account with an outstanding balance (Compl. ¶ 14-15, 19), in violation of 15 U.S.C. 1692e(2)(A), 15 U.S.C. 1692e(8), and 15 U.S.C. 1692e(10).

59.     DeVille's collection efforts continued from at least December through July 2018. It reported his account to the credit bureaus each month and sent him a letter during that time.

60.     Furthermore, DeVille was part of a massive Ponzi scheme, and is currently in receivership for its improper conduct. *See* Order Appointing Temporary Receiver, *Securities & Exchange Commission v. Merrill*, 1:18-cv-2844-RDB (D. Md.) (ECF No. 11) (attached as Exhibit 1C.

61.     Accordingly, DeVille's collection efforts were frequent, persistent, and intentional, such that an award of the maximum amount of damages under the FDCPA is appropriate.

62.     The Plaintiff has also presented sufficient evidence of his actual damages establishing that an award of $7,000 for his FDCPA claim is appropriate.

63.     The FCRA is a federal consumer protection statute enacted by Congress, in part, to ensure the protection of confidential information and individual privacy. *See* 15 U.S.C. § 1681a(4), (b).

64.     DeVille's conduct violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

65.     The FCRA provides, in relevant part:

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

     (i) modify that item of information;
     (ii) delete that item of information; or
     (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s–2(b)(1).

66. The FCRA accordingly requires that a furnisher of credit information "conduct a reasonable investigation of [its] records to determine whether the disputed information can be verified." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004). This determination whether a furnisher's investigation was "reasonable" is based on an evaluation of information within the furnisher's possession, such as correspondence between the consumer and the furnisher, the data identified by the reporting agency as disputed, and the furnisher's other records relating to the disputed account. *See Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 151 (4th Cir. 2008) (holding that a bank's internal records of ongoing correspondence could support a conclusion that the bank intended not to furnish accurate information to the reporting agencies).

67. In addition to compensatory damages, the FCRA also permits an award of statutory and punitive damages for willful violations of the FCRA, as well as an award of attorneys' fees in cases involving willful misconduct. 15 U.S.C. § 1681n(a). The term "willfulness," within the meaning of the FCRA, includes acting with "reckless disregard" of one's obligations under the statute. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007).

68. Plaintiff's undisputed evidence establishes that: (1) he disputed the inaccurate account information with DeVille; (2) that DeVille received and responded to Plaintiff's dispute; (3) that DeVille did not conduct a meaningful investigation of Plaintiff's dispute because it did merely verified that the disputed information merely matched the information already in its system and did not take any additional steps to verify the accuracy of the disputed information; and (4) did not update its credit reporting to indicate with the appropriate Compliance Condition Code to indicate that Plaintiff disputed the information that DeVille was reporting about him.

69. DeVille's violations of § 1681s-2(b) were willful. In *Safeco*, the United States Supreme Court articulated a modest threshold for willfulness: reckless disregard. *Safeco Ins. Co. of America v. Burr*, 127 S. Ct. 2201 (U.S. 2007).

70.     DeVille's conduct in this case was intentional but need only be reckless. The evidence offered established that at the time that DeVille received Plaintiff's dispute, it had implemented a system whereby it merely verified the information that it was already reporting to the credit bureaus and did not have any procedures in place to conduct a meaningful and searching investigation as required by the FCRA. In addition, DeVille failed to answer the Complaint or defend itself against Plaintiffs' allegations that its conduct was willful.

71.     These ongoing intrusions were either intentional, or DeVille cared so little about the duties owed under the FCRA that its conduct was carried out with reckless disregard, which gives rise to a willful violation.

72.     Damages for a willful violation of the FCRA includes both actual and punitive damages. Both this Court and the Fourth Circuit have recognized a consumer's recoverable actual damages under the FCRA are broad. Plaintiff's actual damages may properly include her frustration, embarrassment, and other emotional distress. Often, as in this case, "[t]he most significant damage sustained by a consumer is the emotional distress and vexation of dealing with the repercussions of an inaccurate credit report and the often frustrating ordeal of trying to set the record straight." Fair Credit Reporting, Fifth Ed., NCLC, § 11.2.3.1, p. 273 (2002).

73.     Plaintiff has provided sufficient evidence to support his claim of actual damages in the amount of $12,500 for his FCRA claim.

74.     He has also provided sufficient evidence to support a punitive damages award of $37,500.

75.     Plaintiff is also entitled to an award of attorneys' fees and costs for both his FDCPA and FCRA claims, which he can move for after the Court's entry of judgment.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LONNIE LOWERY,

Plaintiff,

v.                              Civil Action Number 3:07CV511

TRANS UNION, et al.,

Defendants.

## AMENDED JUDGMENT ORDER

This matter is before the Court on plaintiff's motion for default judgment. Based upon the Court's findings of fact and conclusions of law, judgment is ENTERED in favor of plaintiff against defendant GE Money Bank in the amount of $125,000 in actual damages. Judgment is also ENTERED in favor of plaintiff against defendant GE Money Bank in the amount of $100,000 in punitive damages.

It is so ORDERED.

Let the Clerk send a copy of this Order and the accompanying findings of fact and conclusions of law to all counsel of record.

April 30, 2008                    _____/s/_____
DATE                              RICHARD L. WILLIAMS
                                  SENIOR UNITED STATES DISTRICT JUDGE

Exhibit 1A

Case 1:18-cv-01303-LMB-IDD   Document 25-3   Filed 01/14/19   Page 1 of 8 PageID# 129
Case 1:18-cv-02844-RBB   Document 336-1   Filed 01/03/22   Page 103 of 162
Case 3:03-cv-00866-DWD   Document 41   Filed 05/09/05   Page 1 of 1 PageID# 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

ANDRE WILDER, SR.,

                              Plaintiff.

              v.                                  Civil Action Number 3:03CV866

PRESTIGE AUTO, INC., et al.,

                              Defendants.

## FINAL ORDER

THIS MATTER comes before the Court on the Magistrate Judge Dennis Dohnal's Report and Recommendation.  Having heard no objections from the remaining Defendants,[1] the Court hereby ACCEPTS the Report and ADOPTS the damage award for the reasons stated in the Magistrate Judge's Report and Recommendation.

Let the Clerk send a copy of this Order to all parties of record.

It is SO ORDERED.

ENTERED this 9th  day of MAY, 2005

                              /s/ James R. Spencer
                              UNITED STATES DISTRICT JUDGE

---

[1] Of the eight defendants, only three remain: National Auto Finance Company, Inc., Prestige Auto, Inc. and Premium Auto Sales, Inc.  These three defendants have not entered an appearance in this case or otherwise consented to the jurisdiction of this Court.  Although this Court referred the case to the magistrate judge for disposition pursuant to 28 U.S.C. § 636(c)(1), due to the defendants' default, Judge Dohnal submitted a report and recommendation under § 636(b)(1)(B) rather than entering judgment.

Exhibit 1B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANDRE L. WILDER, SR.,                    )
                                          )
            Plaintiff                     )
                                          )
v.                                        )        Civil Action No. 3:03CV00866
                                          )
PRESTIGE AUTO, INC., et al                )
                                          )
            Defendant.                    )

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter was referred to this court upon consent of the Plaintiff and entry of default

against three Defendants. (Order, June 25, 2004). Those Defendants that are in default have still

not entered any appearance or otherwise affirmatively consented to the jurisdiction of this court

pursuant to 28 U.S.C. § 636(c)(1). Because the Plaintiff has now moved for the entry of default

judgment and has appeared at an evidentiary hearing to determine the amount of damages, the

court will treat the matter as one in which a report and recommendation is necessary and

appropriate pursuant to 28 U.S.C. § 636(b)(1)(B).

### Procedural Background

The Plaintiff alleges in his complaint that the Defendants violated various provisions of

the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §1691 *et seq.*, as well as the Fair Credit

Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, by impermissibly obtaining his credit report

and failing to provide him with any adverse action notice on credit denial decisions involving his

application for financing to purchase an automobile. (Compl. ¶¶ 21-34). The Plaintiff seeks

punitive damages as well as attorney's fees and costs. (Compl. ¶¶ 25, 33).

The Plaintiff, a Virginia resident, served the registered agent of each of the Defendants, each located within the Richmond Division of this court. (Pl.'s Mem. Supp. of Pl. Mot. for Default J. at 1 (Pl.'s Mem.)). In addition, Plaintiff requested and accomplished substitute service on Prestige Auto, Inc. and National Auto Finance Co., Inc. through the Virginia Secretary of the Commonwealth pursuant to Va. Code Ann. § 8.01-329. (Pl.'s Mem. at 1-2). Defendant Americredit Financial Services, Inc. served an Offer of Judgment which the Plaintiff accepted pursuant to Fed. R. Civ. P. 68. (Judgment, Nov. 20, 2003). Defendants Triad Financial Corp., Onyx Acceptance Corp., Moore Loans, Inc., and Capital One stipulated to dismissals with prejudice. (Stipulated Dismissal Orders, Dec. 15, 2003, Jan. 16, 2004, July 27, 2004, April 5, 2005). The remaining Defendants, Prestige Auto, Inc. (Prestige), Premium Auto Sales, Inc. (Premium), and National Auto Finance Company, Inc. (National) have never appeared nor filed an answer or other responsive pleading. Notice of entry of default was accordingly filed by the Clerk and the Plaintiff has now moved for entry of default judgment against Prestige, Premium, and National. (Clerk's Entry of Default, Aug. 10, 2004; Clerk's Entry of Default, Jan. 26, 2005). The court finds that all three Defendants were properly served, that the entries of default were proper, and consequently that "the facts as alleged by the Plaintiff are deemed admitted." America Online, Inc. v. IMS, et al., No. 980011-A, 1998 U.S. Dist. LEXIS 20645, at *8 (E.D. Va. Dec. 30, 1998) (unpublished) ("We are permitted to accept [plaintiff's] factual allegations because upon entry of default, the facts as alleged by the plaintiff are deemed admitted."); Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact. . . .").

## Analysis and Damages

Punitive damages are allowable and appropriate in this case, together with attorney's fees and costs, under both the ECOA and FCRA claims. 15 U.S.C. § 1691e(a), (b), (d); 15 U.S.C. § 1681n; *see* Giant of Virginia, Inc. v. Pigg, 152 S.E.2d 271, 277 (1967). "Actual damages are not a statutory prerequisite to an award of punitive damages under the [FCRA]." Yohay v. Alexandria Employees Credit Union, Inc., 827 F.2d 967, 972 (4th Cir. 1987); 15 U.S.C. § 1691e(b) ("Any creditor . . . who fails to comply with any requirement imposed under [the ECOA] shall be liable to the aggrieved applicant for punitive damages in an amount not greater than $ 10,000, in addition to any actual damages . . . ."). The uncontested facts concerning the Defendants in default (Defendants) are that the Plaintiff attempted to purchase an automobile from Prestige and Premium, but was denied financing and the sale by both Defendants, and that each of the Defendants, including National, willfully obtained and used copies of Plaintiff's credit report without Plaintiff's permission. (Compl. ¶¶ 12, 15, 17; Pl.'s Mem. at 2). More specifically, Plaintiff alleges that National impermissibly used his credit report in consideration of the assignment of his automobile purchase and loan, and that Prestige and Premium, as automobile dealers, also independently and impermissibly obtained a copy of his credit report. (Pl.'s Mem. at 2). The Defendants' impermissible use of the credit reports violates the FCRA. The statute only allows the use of such a report if the report "is obtained for a purpose for which the consumer report is authorized to be furnished under [15 U.S.C. § 1681b]," or if the purpose is in accordance with 15 U.S.C. § 1681e "by a prospective user of the report through a general or specific certification." 15 U.S.C. § 1681b. Since the Plaintiff "did not give permission to any of [the] [D]efendants to obtain or use his report," Defendants willfully, impermissibly and

unlawfully used Plaintiff's report in violation of the FCRA. (Pl.'s Mem. at 2).[1]

Plaintiff also alleges that in addition to the impermissible use of his credit report, the Defendants failed to provide notice of denial or other adverse action to Plaintiff when they declined to finance the vehicle purchase and Plaintiff's loan application. (Compl. ¶ 22; Pl.'s Mem. at 2-3). To establish his claim under the ECOA, the Defendants must: 1) be defined as a "creditor"; 2) have taken an "adverse action" against the Plaintiff; and 3) failed to provide written notification of such adverse action. The ECOA definition of a creditor includes "any person who regularly arranges for the extension, renewal, or continuation of credit." 15 U.S.C. § 1691a(e). The Complaint alleges that Prestige and Premium are "creditors" within the purview of ECOA as automobile dealers that participate in credit decisions regarding customers. (Compl. ¶¶ 12, 15). National Auto Finance Company is, by self-definition, a creditor. (Compl. ¶ 9). The ECOA defines an "adverse action" as "a denial or revocation or credit . . . or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). By "not financing the purchase and loan," the Defendants engaged in an adverse action. (Pl.'s Mem. at 2). The ECOA requires creditors who take adverse actions against consumers to provide some form of written notice containing reasons for the adverse action. Specifically, creditors must "provid[e] statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or . . . giv[e] written notification of [the] adverse action which discloses

_____

[1]The court recognizes that automobile dealers and creditors may obtain and use consumer credit reports lawfully under the FCRA. 15 U.S.C. § 1681b(3)(A) (providing that a consumer reporting agency may furnish a credit report "[t]o a person which it has reason to believe . . . intends to use the information in connection with a credit transaction involving the consumer . . . and involving the extension of credit"). Such practice is especially necessary for the sale and purchase of automobiles. However, due to the default of each remaining Defendant in this case, the court must accept as true the Plaintiff's factual allegation that said Defendants accessed the Plaintiff's credit reports without a permissible purpose.

(I) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained." 15 U.S.C. § 1691(d)(2)(A)–(B). Prestige, Premium, and National all failed to fulfill this requirement as they did not "provid[e] any notice of denial or other action to the Plaintiff." (Pl.'s Mem. at 2). The FCRA also requires that creditors who take adverse actions against consumers must "notify the consumer of the action." 15 U.S.C. § 1681m(b)(2)(A)(I). For the aforementioned reasons, Defendants violated the notice portion of the FCRA as well.

The Plaintiff appeared at an evidentiary hearing before this court to make a determination of the amount of punitive damages and attorney's fees. "Punitive or exemplary damages are . . . allowed not so much as compensation for plaintiff's loss, as to warn others and to punish the wrongdoer, if he has acted wantonly, oppressively, or with such malice as to evince a spirit of malice or criminal indifference to civil obligations." Pigg at 685-86. The uncontested allegations here are that the Defendants willfully and blatantly disregarded their duties under both the ECOA and FCRA when they not only obtained Plaintiff's credit report without his permission, but also subsequently failed to send notice to him of their adverse action in not financing his loan for the subject purchase. The ECOA requires the court to impose punitive damages against a creditor who fails to comply with the statute. 15 U.S.C. § 1691(e)(b) ("Any creditor . . . who fails to comply with any requirement imposed under this title *shall* be liable to the aggrieved applicant for punitive damages") (emphasis added). Punitive damages under the FCRA are under the discretion of the court and "comport[] with the underlying deterrent purpose of the FCRA." Yohay, 827 F.2d at 972. The court therefore has no hesitation in recommending damages requested by the Plaintiff in the sum of $30,000, representing $10,000 for each Defendant's violation of the ECOA, given the statutory "caps" and consistent with other awards that have been obtained in similar cases in this division by way of settlement or contested action. 15 U.S.C. § 1691e(b) ("Any creditor . . . who fails to comply with any requirement imposed

-5-

under this title shall be liable to the aggrieved applicant for punitive damages in an amount not greater than $10,000, in addition to any actual damages . . . ."). The court also recommends the sum of $45,000 in punitive damages representing $15,000 for each Defendant's violation of the FCRA. 15 U.S.C. § 1681n(a)(2) ("Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable . . . [for] such amount of punitive damages as the court may allow . . . .").

The court also finds that the Plaintiff's request for an award of $3000 in attorney's fees is more than justified based on counsel's experience, expertise, and the amount of time and effort necessarily expended in this case in pursuit of the defaulting Defendants, obtaining judgment, and appearing before the court to present argument on damages. Accordingly, the $3000 requested-for fee should be granted and the Defendants should be held jointly and severally liable for payment of said sum.[2]  15 U.S.C. §§ 1691e(d).

## Conclusion

It is therefore recommended that default judgment be entered in favor of the Plaintiff against the Defendants Prestige, Premium, and National, in the amount of $25,000 per Defendant as punitive damages as well as the additional joint and several sum of $3,000 for accrued attorney's fees, for a total of $78,000.

Let the clerk forward a copy of this report and recommendation to the Honorable James R. Spencer, to counsel of record, to the defaulting Defendants, and to the Secretary of the Commonwealth of Virginia.

It is so ordered.

---

[2]However, the award of punitive damages are not subject to joint and several liability given the statutory scheme that imposes a "cap" as to each party.

**Notice to Parties**

Failure to file written objections to the proposed findings, conclusions and

recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days

after being served with a copy of this report shall bar you from attacking on appeal the findings

and conclusions accepted and adopted by the District Judge except on grounds of plain error.

Dennis W. Dohnal
United States Magistrate Judge

Dated: APR 1 2 2005

Case 1:18-cv-01303-LMB-JDD Document 25-4 Filed 01/14/19 Page 1 of 36 PageID# 137
Case 1:18-cv-02844-RDB Document 3-6 Filed 09/13/18 Page 1 of 26 PageID# 82
Case 1:18-cv-02844-RDB *SEALED* Document 3-6 Filed 09/13/18 Page 2 of 27

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

        v.

KEVIN B. MERRILL, et al.,

                Defendants.

Case No. $R D B - 18 - 2844$

FILED UNDER SEAL

### [PROPOSED] ORDER APPOINTING TEMPORARY RECEIVER

**WHEREAS** this matter has come before this Court upon Plaintiff Securities and
Exchange Commission's (the "SEC") Motion for a Temporary Restraining Order Freezing
Assets, Appointing a Temporary Receiver, and Granting Other Emergency Relief;

**WHEREAS** Defendants and their affiliate entities possess significant assets—the full
nature and extent of which are not currently known to the Court—including but not limited to
debt portfolios, automobiles, jewelry, real estate, and other assets, the value of which should be
preserved during the pendency of this litigation;

**WHEREAS** the Court finds that, based on the record in these proceedings, the
appointment of a receiver in this action is necessary and appropriate for the purposes of
marshaling and preserving all assets of Defendants Kevin B. Merrill, Jay B. Ledford, Cameron
R. Jezierski, Global Credit Recovery, LLC, Delmarva Capital, LLC, Rhino Capital Holdings,
LLC, Rhino Capital Group, LLC, DeVille Asset Management LTD, Riverwalk Financial
Corporation ("Defendants"), and the affiliate entities of Defendants, as described below;

**WHEREAS** this Court has subject matter jurisdiction over this action and personal

Exhibit 1C

Case 1:18-cv-01303-LMB-JDD   Document 25-4   Filed 01/14/19   Page 2 of 26 PageID# 138
Case 1:18-cv-02844-RDB   Document 11   Filed 09/13/18   Page 2 of 26 162
Case 1:18-cv-02844-RDB *SEALED*   Document 3-6   Filed 09/13/18   Page 3 of 27

jurisdiction over Defendants, and venue properly lies in this district;

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. This Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the following Defendants, and the affiliate entities of Defendants, including but not limited to:  Kevin B. Merrill ("Merrill"), Jay B. Ledford ("Ledford"); Cameron R. Jezierski ("Jezierski"); Global Credit Recovery, LLC; Delmarva Capital, LLC; Rhino Capital Holdings, LLC; Rhino Capital Group, LLC; DeVille Asset Management LTD; Riverwalk Financial Corporation; K.B. Merrill Associates; Financial Reclamation Group LLC; Halo Credit Solutions LLC; JBL Holdings LLC; Jay B. Ledford, P.C.; the Joseph Finance Company; Leddy Bear LTD; Ledford & Associates, PLLC; King Fischer LTD d/b/a LP Investments LTD; NLEX, Inc.; Receivables Portfolio Interchange, Inc.; Riverwalk Capital Investments, Inc.; Riverwalk Credit Solutions, Inc.; Riverwalk Debt Solutions, Inc.; Riverwalk Fixed Asset Group LLC; SCUSA Financial, Inc.; Vaquero Asset Management, Inc.; CRJ Holdings LLC; Centurion Capital Corporation; GCR CBL CP I, LLC; GCR CBL CP II, LLC; GCR CBL CP III, LLC; GCR CBL CP IV, LLC; GCR HCP Holdings 1, LLC; and GCR Mercer Holdings, LLC (collectively, the "Receivership Parties").

2. Until further Order of this Court, Gregory S. Milligan, of the firm Harney Management Partners, LLC, is hereby appointed to serve without bond as receiver (the "Receiver") for the estates of the Receivership Parties.

**I.     Asset Freeze**

3. Except as otherwise specified herein, all assets of Defendants and Receivership Parties (collectively, "Receivership Assets") are frozen until further order of this Court. "Receivership Assets" means assets of any and every kind whatsoever, including without

2

Case 1:18-cv-01303-LMB-JDB Document 25-4 Filed 01/14/19 Page 3 of 26 PageID# 139
Case 1:18-cv-02844-RDB Document 11 Filed 09/13/18 Page 3 of 26 182
Case 1:18-cv-02844-RDB *SEALED* Document 3-6 Filed 09/13/18 Page 4 of 27

limitation all assets described in this Order, that are: (a) owned, controlled, or held, in whole or in part, by or for the benefit of any of the Receivership Parties; (b) in the actual or constructive possession of any of the Receivership Parties, or other individual or entity acting in concert with any of the Receivership Parties; (c) held by an agent of any of the Receivership Parties, including as a retainer for the agent's provision of services; or (d) owned, controlled, or held, in whole or in part, by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, trust, or other entity directly or indirectly owned, controlled, or held, in whole or in part, by any of the Receivership Parties, including assets that have been transferred to other persons or entities but as to which assets such persons or entities do not have a legitimate claim. Accordingly, all persons, institutions, and entities with direct or indirect control over any Receivership Assets— other than the Receiver or law enforcement officials acting within the course and scope of their official duties—are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such Receivership Assets. This freeze shall include, but not be limited to, Receivership Assets that are on deposit with financial institutions such as banks, brokerage firms, and mutual funds, or other institutions, including but not limited to casinos.

## II.     General Powers and Duties of Receiver

4.     Except as limited herein, the Receiver shall have all powers, authorities, rights, and privileges heretofore possessed by the officers, directors, managers, and general and limited partners of the Receivership Parties under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959

3

Case 1:18-cv-01303-LMB-JDD Document 25-4 Filed 01/14/19 Page 4 of 26 PageID# 140
Case 1:18-cv-02844-RDB Document 11 Filed 09/13/18 Page 4 of 26 162
Case 1:18-cv-02844-RDB *SEALED* Document 3-6 Filed 09/13/18 Page 5 of 27

and 1692, Fed. R. Civ. P. 66, and this Order, including but not limited to paragraphs 48 and 49 of this Order.

5.    The trustees, directors, officers, managers, investment advisors, accountants, attorneys, and other agents of the non-individual Receivership Parties are hereby dismissed and the powers of any partners, directors, and/or managers are hereby suspended. Such persons and entities shall have no authority with respect to the Receivership Parties' operations or assets, except to the extent as hereafter may be expressly granted by the Receiver. This Order, however, does not dismiss Defendants' attorneys, if any, who file an appearance in this action.

6.    The Receiver shall assume and control the operation of the non-individual Receivership Parties and shall preserve all of their claims or interests using the powers set forth in this Order. The Receiver shall not have the power to bring suits in law or in equity without further Order of this Court. The Receiver may continue and conduct the business of the Receivership Parties in such manner, to such extent and for such duration as the Receiver may deem to be necessary or appropriate, if at all.

7.    No person holding or claiming any position of any sort with any of the non-individual Receivership Parties shall possess any authority to act by or on behalf of any of the non-individual Receivership Parties, unless expressly authorized, in writing, by the Receiver.

8.    Subject to the specific provisions in Sections III through XIV, below, the Receiver shall have the following general powers and duties:

    A.    To use reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Parties, including, but not limited to, monies, funds, securities, credits, investments, savings, options, shares, cash, currencies, checks, accounts, vehicles, boats, equipment, fixtures,

4

Case 1:18-cv-01303-LMB-JDD   Document 25-4   Filed 01/14/19   Page 5 of 26 PageID# 141
Case 1:18-cv-02844-RDB   Document 11   Filed 09/13/18   Page 5 of 26 #182
Case 1:18-cv-02844-RDB *SEALED*   Document 3-6   Filed 09/13/18   Page 6 of 27

effects, goods, chattels, lands, premises, leases, claims, notes, membership

interests in any limited liability company, partnership interests, contracts,

certificates of title, instruments, inheritances, interests in any trust, art,

collectibles, furnishings, jewelry, personal effects, digital currencies,

virtual currencies, cryptocurrencies, digitial or electronic property, casino

accounts, deposits, or chips, rights, and other assets, together with all

rents, profits, dividends, interest, or other income attributable thereto, of

whatever kind, which the Receivership Parties own, possess, have a

beneficial interest in, or control directly or indirectly (the foregoing,

together with all assets described in this Order collectively may be

referred to as the "Receivership Assets" or the "Receivership Estate");

B.     To take custody, control, and possession of all Receivership Assets and

records relevant thereto from the Receivership Parties;

C.     To manage, control, operate, and maintain the Receivership Estate and

hold in his possession, custody, and control all Receivership Assets,

pending further Order of this Court;

D.     To use Receivership Assets for the benefit of the Receivership Estate,

making payments and disbursements and incurring expenses as may be

necessary or advisable in the ordinary course of business in discharging

his duties as Receiver;

E.     To take any action which, prior to the entry of this Order, could have been

taken by the officers, directors, partners, managers, trustees, and agents of

the Receivership Parties, except as limited by this Order;

Case 1:18-cv-01303-LMB-JFA Document 25-4 Filed 01/14/19 Page 6 of 26 PageID# 142
Case 1:18-cv-02844-RDB Document 11 Filed 09/13/18 Page 6 of 26 162
Case 1:18-cv-02844-RDB *SEALED* Document 3-6 Filed 09/13/18 Page 7 of 27

      F.      To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders, or auctioneers;

      G.      To take such action as necessary and appropriate for the preservation of Receivership Assets or to prevent the dissipation or concealment of Receivership Assets;

      H.      To the extent necessary to locate and identify assets, the Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

      I.      To resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estate; and,

      J.      To take such other action as may be approved by this Court.

9.      Unless otherwise limited by this Order, the Receiver is authorized to exercise all equitable powers under applicable law.

10.      The Receiver may delegate to his agents any of the powers of the Receiver granted to him by this Order.

11.      The Receiver may seek further Orders of this Court regarding standing powers of the Receiver, operations of Receivership Parties, and administration of Receivership Assets as may be deemed necessary to conserve the Receivership Assets, secure the best interests of

Case 1:18-cv-01303-LMB-JDD Document 25-4 Filed 01/14/19 Page 7 of 26 PageID# 143
Case 1:18-cv-02844-RDB *SEALED* Document 11 Filed 09/13/18 Page 7 of 26
Case 1:18-cv-02844-RDB *SEALED* Document 3-6 Filed 09/13/18 Page 8 of 27

creditors, investors, and other stakeholders of the Receivership Parties, and protect the interests

of the Receiver.

**III.     Access to Information**

12.     The individual Receivership Parties and the past and/or present officers, directors,

agents, managers, general and limited partners, trustees, attorneys, accountants, and employees

of the non-individual Receivership Parties, as well as those acting in their place, are hereby

ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic

information of, and/or relating to, the Receivership Parties and/or all Receivership Assets; such

information shall include but not be limited to books, records, documents, accounts, all financial

and accounting records, balance sheets, income statements, bank records (including monthly

statements, canceled checks, records of wire transfers, details of items deposited, and check

registers), client lists, title documents, writings, drawings, graphs, charts, photographs, audio and

video recordings, computer records, computer files, databases and other data compilations,

including but not limited to records relating to debt portfolios, including but not limited to all

information stored using Debtmaster software, electronically stored records and information,

including any information stored by third parties or using cloud-based services, access codes,

security codes, passwords, safe deposit keys, combinations, and all other instruments, papers,

and electronic data or records of any kind or nature. This does not, however, include any

documents or files of Merrill's, Ledford's, or Jezierski's personal attorneys, if any, that are

protected by the work-product doctrine and/or attorney-client privilege.

13.     Within ten (10) days of the entry of this Order, the Receivership Parties shall file

with the Court and serve upon the Receiver and the SEC a sworn statement, listing: (a) the

identity, location, and estimated value of all Receivership Assets, including contact information

for the party in possession of all assets of such Receivership Party, held jointly or singly,

Case 1:18-cv-01303-LMB-JDD   Document 25-4   Filed 01/14/19   Page 8 of 26 PageID# 144
Case 1:18-cv-02844-RDB   Document 11   Filed 09/13/18   Page 8 of 26-162
Case 1:18-cv-02844-RDB *SEALED*   Document 3-6   Filed 09/13/18   Page 9 of 27

including without limitation all assets held outside the territory of the United States; (b) all employees (and job titles thereof), other personnel, attorneys, accountants, and any other agents or contractors of the Receivership Parties; and (c) the amount and nature of all liabilities of such Receivership Party, including without limitation the names, addresses, and amounts of claims of all known creditors of the Receivership Parties. Such sworn statement shall include the names, addresses, telephone numbers, facsimile numbers, and e-mail addresses of the holders of any legal, equitable, or beneficial interests in such assets and the names, addresses, telephone numbers, facsimile numbers, and e-mail addresses of any financial institutions or other persons or entities holding such assets, along with the account numbers and balances. The sworn statements shall be accurate as of the date of this Order, shall be signed and verified as true and complete under penalty of perjury.

14.     Within thirty (30) days of the entry of this Order, the Receivership Parties shall file with the Court and serve upon the Receiver and the SEC a sworn statement and accounting, with complete documentation, covering the period from January 1, 2013 to the present:

        A.     Of all Receivership Assets, wherever located, held by or in the name of the Receivership Parties, or in which any of them, directly or indirectly, has or had any beneficial interest, or over which any of them maintained or maintains and/or exercised or exercises control, including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry, digital assets, including but not limited to any assets contained in digital assets held at crypto-currency exchanges, and other assets, stating the location of each; and (b) any and all accounts, including all funds held in such accounts, with any bank, brokerage, or other financial institution,

Case 1:18-cv-01303-LMB-JDD  Document 25-4  Filed 01/14/19  Page 9 of 26 PageID# 145
Case 1:18-cv-02844-RDB  Document 11  Filed 09/13/18  Page 9 of 26 162
Case 1:18-cv-02844-RDB *SEALED*  Document 3-6  Filed 09/13/18  Page 10 of 27

or any other institution, including but not limited to casinos, held by, in the name of, or for the benefit of any of them, directly or indirectly, or over which any of them maintained or maintains and/or exercised or exercises any direct or indirect control, or in which any of them had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage, or other financial institution;

B.  Identifying every account at every bank, brokerage, or other financial institution, including but not limited to casinos: (a) over which Receivership Parties have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Parties;

C.  Identifying all credit, bank, charge, debit or other deferred payment card issued to or used by each Receivership Party, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months;

D.  Of all assets received by any of Receivership Parties from any person or entity, including the value, location, and disposition of any assets so received;

E.  Of all funds received by the Receivership Parties, and each of them, in any way related, directly or indirectly, to the conduct alleged in the SEC's Complaint.  The submission must clearly identify, among other things, all investors, the securities they purchased, the date and amount of their

Case 1:18-cv-01303-LMB-JDB Document 25-4 Filed 01/14/19 Page 10 of 26 PageID# 146
Case 1:18-cv-02844-RDB *SEALED* Document 11 Filed 09/13/18 Page 10 of 26 2
Case 1:18-cv-02844-RDB *SEALED* Document 3-6 Filed 09/13/18 Page 11 of 27

investments, and the current location of such funds;

    F.    Of all expenditures exceeding $1,000 made by any of Receivership

Parties, including those made on their behalf by any person or entity; and

    G.    Of all transfers of assets made by any of Receivership Parties.

15.    Within thirty (30) days of the entry of this Order, the Receivership Parties shall
provide to the Receiver and the Commission copies of the Receivership Parties' federal income
tax returns for 2013 through 2017 with all relevant and necessary underlying documentation.

16.    The individual Receivership Parties and the non-individual Receivership Parties'
past and/or present officers, directors, agents, attorneys, managers, shareholders, employees,
accountants, debtors, creditors, managers and general and limited partners, and other appropriate
persons or entities shall answer all questions which the Receiver may put to them and produce all
documents as required by the Receiver regarding the business of the Receivership Parties, or any
other matter relevant to the operation or administration of the receivership or the collection of
funds due to the Receivership Parties. The Receiver maintains and controls the attorney-client
privilege for all non-individual Receivership Parties. Nothing in this Order shall operate as or
effectuate a waiver of the attorney-client privilege regarding communications between
Defendants Merrill, Ledford, and Jezierski and their respective personal attorneys, if any, and
such personal attorneys shall not be compelled by this Order to divulge information that would
otherwise be protected by the attorney-client privilege.

17.    The Receivership Parties are required to assist the Receiver in fulfilling his duties
and obligations. As such, they must respond promptly and truthfully to all requests for
information and documents from the Receiver. This cooperation and assistance shall include,
but not be limited to: (a) providing any information or documents that the Receiver deems

Case 1:18-cv-01303-LMB-JDB   Document 25-4   Filed 01/14/19   Page 11 of 26 PageID# 147
Case 1:18-cv-02844-RDB *SEALED*  Document 1-1   Filed 09/13/18   Page 11 of 26-302
Case 1:18-cv-02844-RDB *SEALED*   Document 3-6   Filed 09/13/18   Page 12 of 27

necessary or appropriate to the exercise of the Receiver's authority and the discharge of the

Receiver's responsibilities under this Order; (b) providing any keys, including but not limited to

physical, digital, and cryptographic keys, codes, device PINs, and passwords, including but not

limited to account, encryption, email account, and computer passwords required to access any

computer, electronic file, or telephonic data in any medium; (c) immediately advising all persons

who owe money or currency of any kind to the Receivership Parties that all debts should be paid

directly to the Receiver; (d) providing full access to all Receivership Assets; and (e) maintaining

and not wasting, damaging, disposing of, or transferring in any manner any Receivership Assets.

**IV.     Access to Books, Records, and Accounts**

18.     The Receiver is authorized to take immediate possession of all assets, bank

accounts or other financial accounts, books, and records and all other documents or instruments

relating to the Receivership Parties.  All persons and entities having control, custody, or

possession of any Receivership Assets are hereby directed to turn such property, including but

not limited to all accounts, over to the Receiver.

19.     The Receivership Parties, as well as their agents, servants, employees, attorneys,

any persons acting for or on behalf of the Receivership Parties, and any persons receiving notice

of this Order by personal service, facsimile transmission, or otherwise, having possession of the

property, business, books, records, accounts, or assets of the Receivership Parties are hereby

directed to deliver the same to the Receiver, his agents, and/or employees.

20.     All banks, brokerage firms, financial institutions, and other persons or entities

which have possession, custody, or control of any assets or funds held by, in the name of, or for

the benefit of, directly or indirectly, the Receivership Parties that receive actual notice of this

Order by personal service, facsimile transmission, or otherwise shall:

Case 1:18-cv-01303-LMB-JDB   Document 25-4   Filed 01/14/19   Page 12 of 26 PageID# 148
Case 1:18-cv-02844-RDB   Document 1-1   Filed 09/13/18   Page 12 of 26 PageID# 02
Case 1:18-cv-02844-RDB *SEALED*   Document 3-6   Filed 09/13/18   Page 13 of 27

A.    Not liquidate, transfer, sell, convey, or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Parties except upon instructions from the Receiver;

B.    Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

C.    Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the SEC a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

D.    Cooperate expeditiously in providing information and transferring funds, assets, and accounts to the Receiver or at the direction of the Receiver.

## V.    Access to Real and Personal Property

21.    The Receiver is authorized but not directed to take immediate possession of all personal property of the Receivership Parties, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, and equipment.

22.    The Receiver is authorized but not directed to take immediate possession of all real property of the Receivership Parties, wherever located, including but not limited to all ownership and leasehold interests and fixtures.  Upon receiving actual notice of this Order by

Case 1:18-cv-01303-LMB-JDB Document 25-4 Filed 01/14/19 Page 13 of 26 PageID# 149
Case 1:18-cv-02844-RDB Document 1-1 Filed 09/13/18 Page 13 of 26 02
Case 1:18-cv-02844-RDB *SEALED* Document 3-6 Filed 09/13/18 Page 14 of 27

personal service, facsimile transmission, or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing, or erasing anything on such premises. Notwithstanding the foregoing, the individual Receivership Parties, or any of their respective family members, shall be permitted to continue residing in their respective primary places of residence, until further notice by the Receiver.

23.     In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receivership Parties, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

24.     The Receiver is authorized to open all mail, other than mail directed to the spouses of individual Defendants, directed to or received by or at the offices or post office boxes of the Receivership Parties, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

25.     Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records, or other materials belonging to the Receivership Estate. In addition, the Receiver is authorized to request similar assistance from any other federal, state, county, or civil law enforcement officer(s) or constable(s) of any jurisdiction.

Case 1:18-cv-01303-LMB-JDB   Document 25-4   Filed 01/14/19   Page 14 of 26 PageID# 150
Case 1:18-cv-02844-RDB   Document 1-1   Filed 09/13/18   Page 14 of 26 ID#02
Case 1:18-cv-02844-RDB *SEALED*   Document 3-6   Filed 09/13/18   Page 15 of 27

## VI.    Notice to Third Parties

26.    The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, and general and limited partners of the Receivership Parties, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

27.    All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver, and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

28.    In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate.   All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

29.    The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations, or activities of any of the Receivership Parties (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Parties.  The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail.  The Receivership Parties shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver.  All personal mail of any individual Receivership Parties, mail

14

Case 1:18-cv-01303-LMB-IDB Document 25-4 Filed 01/14/19 Page 15 of 26 PageID# 151
Case 1:18-cv-02844-RDB Document 1-1 Filed 09/13/18 Page 15 of 26
Case 1:18-cv-02844-RDB *SEALED* Document 3-6 Filed 09/13/18 Page 16 of 27

addressed to any individual Receivership Defendant's spouse, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee or addressee's attorney by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented, or used by the Receivership Parties. The Receivership Parties shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository, or courier service.

30.    Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage, or trash removal services to the Receivership Parties shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

## VII.    Injunction Against Interference with Receiver

31.    The Receivership Parties and all persons, other than law enforcement officials acting within the course and scope of their official duties, receiving notice of this Order by personal service, facsimile, or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

> A.    Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Assets; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any

15

Receivership Assets;

B.    Hinder, obstruct or otherwise interfere with the Receiver in the
      performance of his duties; such prohibited actions include but are not
      limited to, concealing, destroying, or altering records or information;

C.    Dissipate or otherwise diminish the value of any Receivership Assets;
      such prohibited actions include but are not limited to, releasing claims or
      disposing, transferring, exchanging, assigning or in any way conveying
      any Receivership Assets, enforcing judgments, assessments, or claims
      against any Receivership Assets or any Receivership Defendant,
      attempting to modify, cancel, terminate, call, extinguish, revoke or
      accelerate (the due date), of any lease, loan, mortgage, indebtedness,
      security agreement or other agreement executed by any Receivership
      Defendant or which otherwise affects any Receivership Assets; or,

D.    Transact any of the business of the Receivership Parties or
      transfer any Receivership Assets to anyone other than the Receiver;

E.    Destroy, secret, deface, transfer, delete, or otherwise alter or dispose of
      any documents of or pertaining to the Receivership Parties and to the
      extent any such documents are no longer in existence, fail to disclose the
      nature and contents of such documents and how, when, and by whom such
      documents were caused to no longer be in existence;

F.    Fail to notify the Receiver of any Receivership Assets, including accounts
      constituting Receivership Assets held in any name other than the name of
      a Receivership Defendant, or by any person other than the Receivership

16

Case 1:18-cv-01303-LMB-JDD   Document 25-4   Filed 01/14/19   Page 17 of 26 PageID# 153
Case 1:18-cv-02844-RDB   Document 11   Filed 09/13/18   Page 17 of 26
Case 1:18-cv-02844-RDB *SEALED*   Document 3-6   Filed 09/13/18   Page 18 of 27

Parties, or fail to provide any assistance or information requested by the

Receiver in connection with obtaining possession, custody, or control of

such Receivership Assets;

G.    Refuse to cooperate with the Receiver or the Receiver's duly authorized

agents in the exercise of their powers, duties, or authority under any order

of this Court; or

H.    Interfere with or harass the Receiver, or interfere in any manner with the

exclusive jurisdiction of this Court over the Receivership Estate.

32.    The Receivership Parties shall cooperate with and assist the Receiver in the

performance of his duties.

33.    The Receiver shall promptly notify the Court and SEC counsel of any failure or

apparent failure of any person or entity to comply in any way with the terms of this Order.

**VIII.   Stay of Litigation**

34.    As set forth in detail below, the following proceedings, excluding the instant

proceeding, all police or regulatory actions, and actions of the SEC related to the above-

captioned enforcement action, are stayed upon entry of this Order and until further Order of this

Court: All civil legal proceedings of any nature, including, but not limited to, bankruptcy

proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of

any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Assets,

wherever located; (c) any of the Receivership Parties, including subsidiaries and partnerships; or,

(d) any of the Receivership Parties' past or present officers, directors, managers, agents, or

general or limited partners sued for, or in connection with, any action taken by them while acting

in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party

Case 1:18-cv-01303-LMB-IDD   Document 25-4   Filed 01/14/19   Page 18 of 26 PageID# 154
Case 1:18-cv-02844-RDB *SEALED*   Document 11   Filed 09/13/18   Page 18 of 26
Case 1:18-cv-02844-RDB *SEALED*   Document 3-6   Filed 09/13/18   Page 19 of 27

defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

35.     The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

36.     All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Parties against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

IX.     **Managing Assets**

37.     The Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Assets (the "Receivership Funds").

38.     The Receiver's deposit account shall be entitled "Receiver's Account, Estate of [Name of Receivership Defendant]" together with the name of the action, or a title to that effect.

39.     Without further Order of this Court, the Receiver may not liquidate or otherwise dispose of Receivership Assets, including real estate, other than in the ordinary course of business.

40.     The Receiver is authorized to use the Receivership Assets and proceeds thereof to pay debts and expenses of Receivership Parties that (i) have accrued prior to or during the receivership and (ii) in the sole discretion of the receiver are essential or necessary to the operations of the non-individual Receivership Parties.

Case 1:18-cv-01303-LMB-JDD   Document 25-4   Filed 01/14/19   Page 19 of 26 PageID# 155
Case 1:18-cv-02844-RDB *SEALED*   Document 1-1   Filed 09/13/18   Page 19 of 26 62
Case 1:18-cv-02844-RDB *SEALED*   Document 3-6   Filed 09/13/18   Page 20 of 27

41.     The Receiver's duties shall include, using reasonable efforts, identifying, marshaling, taking custody of, and preserving the value of the Receivership Assets. Without further Order of this Court, the Receiver's duties shall not include a forensic investigation to identify claimants on or creditors of Receivership Assets or any determination of amounts owed to such parties. Defendants Merrill, Ledford, and Jezierski shall retain responsibility, and the Receiver shall assume no responsibility, for preparing and filing their respective personal income tax returns.

42.     Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estate.

43.     The Receiver is authorized to take all actions to manage or maintain business operations of the Receivership Estate, including making payments to creditors, employees, and agents of the Receivership Estate and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

44.     The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable.

**X.      Bankruptcy Filing**

45.     The Receiver may seek an Order of this Court authorizing the Receiver to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Parties, or any of them. If a Receivership Defendant is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estate as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the

Case 1:18-cv-01303-LMB-JDB Document 25-4 Filed 01/14/19 Page 20 of 26 PageID# 156
Case 1:18-cv-02844-RDB Document 11 Filed 09/13/18 Page 20 of 26 802
Case 1:18-cv-02844-RDB *SEALED* Document 3-6 Filed 09/13/18 Page 21 of 27

exclusion of any other person or entity. Pursuant to Paragraph 4 above, the Receiver is vested

with management authority for all non-individual Receivership Parties and may therefore file

and manage a Chapter 11 petition.

46.     The provisions of Section VIII above bar any person or entity, other than the

Receiver, from placing any of the Receivership Parties in bankruptcy proceedings.

## XI.     Liability of Receiver

47.     Until further Order of this Court, the Receiver shall not be required to post bond

or give an undertaking of any type in connection with his fiduciary obligations in this matter.

48.     The Receiver may choose, engage and employ attorneys, accountants, appraisers,

and any other independent contractors and technical specialists, including, but not limited to,

securities traders, registered representatives, financial or business advisers, liquidating agents,

real estate agents, forensic experts, property managers, brokers, traders, and auctioneers

(collectively, "Retained Personnel") as the Receiver deems advisable or necessary in the

performance of the Receiver's duties and responsibilities under the authority granted by this

Order. The Receiver and his Retained Personnel, acting within scope of such agency, are

entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to

anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no

event shall the Receiver or Retained Personnel be liable to anyone for their good faith

compliance with their duties and responsibilities as Receiver or Retained Personnel, including

compliance with applicable law governing the collection of debt, nor shall the Receiver or

Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a

finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross

negligence, or in reckless disregard of their duties.

Case 1:18-cv-01303-LMB-JDB   Document 25-4   Filed 01/14/19   Page 21 of 26 PageID# 157
Case 1:18-cv-02844-RDB   Document 11   Filed 09/13/18   Page 21 of 26 PageID# 602
Case 1:18-cv-02844-RDB *SEALED*   Document 3-6   Filed 09/13/18   Page 22 of 27

49.     This Court shall retain exclusive jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions alleged to have been committed in their representative capacities.

50.     In the event the Receiver decides to resign, the Receiver shall first give written notice to the SEC's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

51.     The Receiver shall not be personally liable for any liabilities that have accrued or will accrue to the Receivership Estate or the Receivership Parties.

## XII.   Insurance

52.     Given the urgency to appoint a Receiver, the Court recognizes that the Receiver accepts this appointment without time for independent verification that appropriate insurance is in place on the property or that appropriate liability or other insurance is in place to protect the Receivership Assets and the Receivership Estate. Accordingly, the Court acknowledges that the Receiver has no responsibility or liability until such time as he can confirm that such insurance is in place or acquire the appropriate insurance. The Receiver shall make it a priority to verify or obtain insurance coverage immediately upon this Order Appointing Receiver being entered; however, the SEC, Receivership Parties, and Court acknowledge there may be a gap of time before such insurance may be in place to properly protect the assets of the estate and any employees of the estate, and that the Receiver has no responsibility or liability until such time as he/it has notified the Court by filing a notice that insurance is in place.

53.     Defendants Merrill, Ledford, and Jezierski are ordered to immediately provide the Receiver with all available insurance information for both existing and prior insurance policies. This includes all applications, policies, riders, correspondence, endorsements, claims and other

Case 1:18-cv-01303-LMB-JDD   Document 25-4   Filed 01/14/19   Page 22 of 26 PageID# 158
Case 1:18-cv-02844-RDB   Document 1-1   Filed 09/13/18   Page 22 of 26
Case 1:18-cv-02844-RDB *SEALED*   Document 3-6   Filed 09/13/18   Page 23 of 27

information.  Merrill, Ledford, and Jezierski are ordered: (1) to advise the insurance agent(s) of

this Order in writing, (2) designate all authority over the policies to the Receiver, and (3) take no

action with regard to terminating or modifying existing insurance policies.

      54.    Any insurance broker, agent, carrier, or underwriter is specifically ordered by the

Court to cooperate with the Receiver by timely furnishing the following: (1) copies of all

insurance policies including any riders, endorsements and applications with respect to policies

related to the Receivership Estate, (2) loss history for five consecutive years or for as long as

insurance has been in force if less than five years, (3) premium payment history including current

status, and (4) any correspondence with insurance agents, brokers and companies.  Policies shall

be endorsed by the Defendants naming the Receiver as Named Insured and Loss Payee effective

the date of this Order as appropriate to the type of coverage, and evidence of this policy

endorsement shall be promptly supplied to the Receiver.

      55.    The Receiver is hereby authorized to engage insurance brokers and consultants as

necessary to properly insure the Receivership Assets.

**XIII.  Recommendations and Reports**

      56.    The Receiver is authorized, empowered, and directed to develop a plan for the

fair, reasonable, and efficient preservation of assets during the pendency of this litigation (the

"Preservation Plan").

      57.    Within 60 days of the entry date of this Order the Receiver shall file the

Preservation Plan in the above-captioned action, with service copies to counsel of record, to

allow the Court to evaluate the best course of action for the preservation of assets.

      58.    Within thirty (30) days after the end of each calendar quarter, the Receiver shall

file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status

Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the

Case 1:18-cv-01303-LMB-IDD   Document 25-4   Filed 01/14/19   Page 23 of 26 PageID# 159
Case 1:18-cv-02844-RDB *SEALED*   Document 1-1   Filed 09/13/18   Page 23 of 26 02
Case 1:18-cv-02844-RDB *SEALED*   Document 3-6   Filed 09/13/18   Page 24 of 27

report) the existence, value, and location of all Receivership Assets, and of the extent of

liabilities, both those claimed to exist by others and those the Receiver believes to be legal

obligations of the Receivership Estate.

      59.    The Quarterly Status Report shall contain the following:

         A.    A summary of the operations of the Receiver;

         B.    The amount of cash on hand, the amount and nature of accrued

              administrative expenses, and the amount of unencumbered funds in the

              estate;

         C.    A schedule of all the Receiver's receipts and disbursements (attached as

              Exhibit A to the Quarterly Status Report), with one column for the

              quarterly period covered and a second column for the entire duration of

              the receivership;

         D.    A description of all known Receivership Assets, including approximate or

              actual valuations, anticipated or proposed dispositions, and reasons for

              retaining assets where no disposition is intended;

         E.    A description of liquidated and unliquidated claims held by the

              Receivership Estate, including the need for forensic and/or investigatory

              resources; approximate valuations of claims; and anticipated or proposed

              methods of enforcing such claims (including likelihood of success in: (i)

              reducing the claims to judgment; and, (ii) collecting such judgments);

         F.    A list of all known creditors with their addresses and the amounts of their

              claims;

         G.    The status of Creditor Claims Proceedings, after such proceedings have

Case 1:18-cv-01303-LMB-JDB   Document 25-4   Filed 01/14/19   Page 24 of 26 PageID# 160
Case 1:18-cv-02844-RDB   Document 11   Filed 09/13/18   Page 24 of 26

Case 1:18-cv-02844-RDB *SEALED*   Document 3-6   Filed 09/13/18   Page 25 of 27

been commenced; and,

H.   The Receiver's recommendations for a continuation or discontinuation of
the receivership and the reasons for the recommendations.

60.   On the request of the SEC, the Receiver shall provide the SEC with any
documentation that the SEC deems necessary to meet its reporting requirements, that is
mandated by statute or Congress, or that is otherwise necessary to further the SEC's mission.

**XIV.   Fees, Expenses, and Accountings**

61.   Subject to Paragraphs 62-68 immediately below, the Receiver need not obtain
Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary
course of the administration and operation of the receivership.  Further, prior Court approval is
not required for payments of applicable federal, state, or local taxes.

62.   Subject to Paragraph 63 immediately below, the Receiver is authorized to solicit
persons and entities ("Retained Personnel") to assist him in carrying out the duties and
responsibilities described in this Order.  With the exception of the retention of counsel to
represent him in this matter, the Receiver shall not engage any Retained Personnel without first
obtaining an Order of the Court authorizing such engagement.

63.   The Receiver and Retained Personnel are entitled to reasonable compensation and
expense reimbursement from the Receivership Estate as described in the "Billing Instructions for
Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the
"Billing Instructions") agreed to by the Receiver.  Such compensation shall require the prior
approval of the Court.

64.   Throughout the pendency of the receivership, the Receiver and Retained
Personnel shall apply to the Court for compensation and expense reimbursement from the
Receivership Estates (the "Interim Fee Applications").  Interim Fee Applications are to be filed

24

Case 1:18-cv-01303-LMB-JDD   Document 25-4   Filed 01/14/19   Page 25 of 26 PageID# 161
Case 1:18-cv-02844-RDB   Document 1-1   Filed 09/13/18   Page 25 of 26
Case 1:18-cv-02844-RDB *SEALED*   Document 3-6   Filed 09/13/18   Page 26 of 27

by the Receiver and Retained Personnel no more frequently than every 60 days. At least thirty (30) days prior to filing each Interim Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

65.     All Interim Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

66.     Interim Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

67.     Each Interim Fee Application shall:

A.     Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

B.     Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

Case 1:18-cv-01303-LMB-JDB   Document 25-4   Filed 01/14/19   Page 26 of 26 PageID# 162
Case 1:18-cv-02844-RDB *SEALED*   Document 1-1   Filed 09/13/18   Page 26 of 26
Case 1:18-cv-02844-RDB *SEALED*   Document 3-6   Filed 09/13/18   Page 27 of 27

68.     At the close of the Receivership, the Receiver shall submit a Final Accounting, in

a format to be provided by SEC staff, as well as the Receiver's final application for

compensation and expense reimbursement.

69.     All such fees and expenses of the Receiver, including all amounts due to the

Receiver or his counsel, shall be accorded priority to the maximum extent provided by applicable

law.

        IT IS SO ORDERED, this **13** day of September, 2018, at Baltimore, Maryland.

                                _____

                               UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

RICHY CASTRO,

        Plaintiff,

v.

                                        Civil Action No. 1:18-cv-01303(LMB/IDD)

TRANS UNION, LLC, et al.,

        Defendants.

## DECLARATION OF RICHY CASTRO

Pursuant to 28 U.S.C. § 1746, I declare the following:

1.      My name is Richy Castro. I am an adult and competent to make this declaration.

2.      I have personal knowledge of all of the facts contained in this declaration.

3.      I reside in Woodbridge, Virginia.

4.      Several years ago, I attended college courses at Westwood College.

5.      I left Westwood College in 2013. It is my understanding that this for-profit school closed shortly thereafter and is no longer operational.

6.      It is my understanding that at the time I left Westwood College, I did not owe the school any money, as I financed my education through grants and student loans.

7.      However, in 2014, I received a letter from a debt collector stating that I owed money to Westwood College and that it had been assigned to them for collections. I did not believe that I owed the money, but I wanted to put the ordeal behind me, and I did not want it to negatively affect my credit, so I settled the account and paid it in full.

Exhibit 2

8.      In May 2018, I reviewed my Trans Union and Experian credit report and learned that a company named DeVille Asset Management, Ltd. was reporting that I owed them money for a Westwood College account.

9.      This information was not correct. Not only did I not owe any money to Westwood College when I left, I had already paid money to settle any Westwood College debt with another debt collector.

10.      I disputed this inaccurate information with Experian and Trans Union twice. The inaccurate information was not corrected and I believe that it is still reporting on my credit reports to this day.

11.      After my first credit dispute, DeVille sent me a letter that was allegedly my account ledger with Westwood College. The amount on the ledger did not match the amount on my credit reports.

12.      I don't know how DeVille could have verified the information contained on this ledger, given that Westwood College no longer exists.

13.      DeVille's refusal to correct this inaccurate information caused me to suffer damages.

14.      For example, it caused my credit score to decrease.

15.      This decreased credit score caused me to receive a less favorable interest rate and credit limit on two credit cards with Wells Fargo and Capital One that I applied for in August 2018.

16.      In addition, this situation has placed a great deal of stress on me.

17.      Over the past two years, I have been focused on improving my life and financial situation. I have reenrolled in college and am currently attending classes. I have also been working to improve my credit and taking other steps to build a financially secure future.

18.     I feel that these steps have been hampered by DeVille's inaccurate credit reporting, which has been very upsetting to me.

19.     This situation has also impeded my ability to focus on my college classes, as the stress and anxiety of the ongoing situation with my credit has been hanging over my head for several months.

I declare under penalty of perjury that the foregoing is true and correct.

Date: January 11ᵗʰ, 2019

Richy Castro

**Cardmember Services**
P.O. Box 621809
Orlando, FL 32862-1809

March 17, 2019

RICHY E. CASTRO
1203 HALE CT
WOODBRIDGE, VA 22191

Dear Richy E. Castro:                                   ID#: 20190711021350

Thank you for applying for an increase to your SunTrust Credit Card credit limit. After reviewing your application, we regret that we are unable to approve your request based on the following reasons:
    Sufficiently Obligated with SunTrust Bank.

The consumer reporting agency referenced below did not make this decision and is unable to provide you with the specific reasons why your application was not approved. However, since our decision was based in whole or in part on information from this consumer reporting agency, under the Fair Credit Reporting Act, you are entitled to know the information provided to us. You also have the right to receive a free copy of your consumer report from the consumer reporting agency, if you request it within 60 days of this notice. In addition, you also have the right to notify the consumer reporting agency and dispute the accuracy or completeness of any information on your consumer report. To receive this information, contact:

    Equifax
    P.O. Box 740241
    Atlanta, GA 30374-0241
    1-800-685-1111

We also obtained your credit score from this consumer reporting agency and used it in making our credit decision. Your credit score is a number that reflects the information in your credit report. Your credit score can change, depending on how the information in your credit report changes.

Your credit score: 625
Date: March 11, 2019
Score range from a low of 250 to a high of 900
Key factors that adversely affected your credit score:
    Serious delinquency, and derogatory public record or collections filed
    Length of time accounts have been established
    Proportion of loan balances to loan amounts is too high
    Number of accounts with delinquency

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Bureau of Consumer Financial Protection, 1700 G Street NW., Washington DC 20006.

Richy Eduardo Castro
1203 Hale Court
Woodbridge, Virginia 22191

April 9, 2019

Equifax Information Services, LLC
P.O. Box 740256
Atlanta, GA 30348

Dear Sir or Madam:

I am writing to dispute inaccurate information that you are reporting in my credit file. This is a
dispute pursuant to the Fair Credit Reporting Act. My social security number is ███████ My date
of birth is ████████ Please conduct an investigation, delete the inaccurate information and send
me an update report.

Deville Asset Management, Acct. No. D40334, is reporting inaccurately. My Westwood College
file indicates that my date of last attendance at the college was May 21, 2013. However, recently I
received a correspondence from Deville Asset Management stating that the date of last delinquency as
May 27, 2014 (enclosed) and that I had an outstanding balance. I wasn't even attending Westwood
College at that time and therefore there would not have been any charges to my account in 2014. I have
paid everything that I owe on this account long before it was transferred to Deville. Since this is an
invalid debt, please delete this account from my file.

Please investigate my credit file and delete the Deville Asset Management account. When you
have completed your investigation, please send me a copy of my credit report that shows the exact
information that you would give to someone who was considering me for a loan. Before you continue to
report any further information regarding this matter, please contact me in order that I may supply you
with any other information that you may find helpful. My phone number is 571-260-7891.

Thank you,

Richy Eduardo Castro

**DeVille Asset Management Limited**
Post Office Box 1987
Colleyville, Texas 76034

205-1831
Local (817) 251-7000
Facsimile (817) 251-7009
info@devilleltd.com
www.devilleltd.com

05/18/2018

CASTRO RICHY
1814 HALIFAX RD
WOODBRIDGE, VA 22191

Re:    Verification of Debt

Dear CASTRO RICHY,

This letter and any attachment are provided in response to your recently received inquiry concerning this debt.

| | |
|---|---|
| Internal ID: | 4033483 |
| Original Creditor: | WESTWOOD COLLEGE |
| Original Account Number: | |
| Date of first Delinquency: | 05/27/2014 |
| Last Payment Date | |
| Last Payment Amount | |
| Principal Balance | $1,648.11 |

Please be advised that your dispute has been acknowledged. Please see attached documents, which lists the pertinent dates associated with this outstanding debt.

Please review this documentation and respond accordingly.

In an attempt to resolve this matter, DeVille is extending a **Debt Reduction Offer of twenty-five percent (25%). We are not obligated to renew this offer**. In the event, you are unable to take advantage of this opportunity, please contact our office and we can discuss alternative repayment plans.

If you have any further questions, feel free to contact us.

You have thirty (30) days to make payment arrangements, or further collection efforts will commence.

Sincerely,

Validation Department
817-677-6163
Compliance@devilleltd.com
DeVille Asset Management, LTD

IN REGARDS TO THIS COMMUNICATION, DEVILLE ASSET MANAGEMENT, LTD IS ACTING AS A DEBT COLLECTOR AND THIS IS A COMMUNICATION FROM A DEBT COLLECTOR, AS DEFINED BY U.S.C. 1692 (A)(6). THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

7/14/2016
2:43:40PM

# Ledger Card

**Student Name** Castro, Richy
**Address** 1814 Halifax Rd
Woodbridge, VA 22191

**Balance** $ 0.00
**Student ID** 1206201685
**Current Status** Drop
**Program Version** Bachelor of Science in Criminal Justice, Major in Administration
**Start Date** 8/1/2012
**LDA** 5/21/2013
**Graduation Date** 7/30/2015

| Date | Check/Ref | Enrollment | Term | Campus | Code | Pmt Per/Av | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **Annandale** | | | | | | | | | | |
| 8/1/2012 | Auto-Bill | CA12062762 : Bachelor of Sc | 12AUG | VAA | RESOURF | | Resource Fee | 100.00 | | 100.00 |
| 8/1/2012 | Auto-Bill | CA12062762 : Bachelor of Sc | 12AUG | VAA | TUIT | | Tuition | 5,115.00 | | 5,215.00 |
| 8/7/2012 | 4550128 | CA12062762 : Bachelor of Sc | 12AUG | VAA | BOOK | | Richy Castro - ORDER | 264.03 | | 5,479.03 |
| 8/8/2012 | 98447/FA 98447 | CA12062762 : Bachelor of Sc | 12AUG | VAA | | | FSEOG 2012-13 | | 600.00 | 4,879.03 |
| 8/16/2012 | FA 99180 | CA12062762 : Bachelor of Sc | 12AUG | VAA | | | Pell Grant 2012-13 | | 1,850.00 | 3,029.03 |
| 8/31/2012 | 100280/FA 100280 | CA12062762 : Bachelor of Sc | 12AUG | VAA | | | Direct Subsidized Stafford Loan 2012-13 | | 1,156.00 | 1,873.03 |
| 8/31/2012 | 100280/FA 100280 | CA12062762 : Bachelor of Sc | 12AUG | VAA | | | Direct Unsubsidized Stafford Loan 2012-13 | | 1,980.00 | (106.97) |
| 10/3/2012 | 102181/FA 102181 | CA12062762 : Bachelor of Sc | 120CT | VAA | | | Direct Subsidized Stafford Loan 2012-13 | | 1,156.00 | (1,262.97) |
| 10/3/2012 | 102181/FA 102181 | CA12062762 : Bachelor of Sc | 120CT | VAA | | | Direct Unsubsidized Stafford Loan 2012-13 | | 1,980.00 | (3,242.97) |
| 10/10/2012 | Auto-Bill | CA12062762 : Bachelor of Sc | 120CT | VAA | TUIT | | Tuition | 5,115.00 | | 1,872.03 |
| 10/10/2012 | Auto-Bill | CA12062762 : Bachelor of Sc | 120CT | VAA | RESOURF | | Resource Fee | 100.00 | | 1,972.03 |
| 10/11/2012 | FA 102716 | CA12062762 : Bachelor of Sc | 120CT | VAA | | | FSEOG 2012-13 | | 600.00 | 1,372.03 |
| 10/17/2012 | 4719825 | CA12062762 : Bachelor of Sc | 120CT | VAA | BOOK | | Richy Castro - ORDER | 259.68 | | 1,631.71 |
| 10/25/2012 | 103541/FA 103541 | CA12062762 : Bachelor of Sc | 120CT | VAA | | | Pell Grant 2012-13 | | 1,850.00 | (218.29) |
| 1/2/2013 | 106636/FA 106636 | CA12062762 : Bachelor of Sc | 13JAN | VAA | | | Direct Subsidized Stafford Loan 2012-13 | | 1,155.00 | (1,373.29) |
| 1/2/2013 | 106636/FA 106636 | CA12062762 : Bachelor of Sc | 13JAN | VAA | | | Direct Unsubsidized Stafford Loan 2012-13 | | 1,980.00 | (3,353.29) |
| 1/7/2013 | 4845974 | CA12062762 : Bachelor of Sc | 13JAN | VAA | | | Richy Castro - ORDER | 409.24 | | (2,944.05) |
| 1/9/2013 | Auto-Bill | CA12062762 : Bachelor of Sc | 13JAN | VAA | TUIT | | Tuition | 5,115.00 | | 2,170.95 |
| 1/9/2013 | Auto-Bill | CA12062762 : Bachelor of Sc | 13JAN | VAA | RESOURF | | Resource Fee | 100.00 | | 2,270.95 |
| 1/10/2013 | 107001/FA 107001 | CA12062762 : Bachelor of Sc | 13JAN | VAA | RESOURF | | Resource Fee | | 600.00 | 1,670.95 |
| 1/24/2013 | 107616/FA 107616 | CA12062762 : Bachelor of Sc | 13JAN | VAA | | | Pell Grant 2012-13 | | 1,850.00 | (179.05) |

Westwood and Redstone Colleges - PRODUCTION

7/14/2016
2:43:40PM

# Ledger Card

**Student Name  Castro, Richy**

| Date | Reference | Program | Term | Campus | Type | Description | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 2/1/2013 | UNREG/DROP REFUND / 13JAN PRICING | CA12062762 : Bachelor of Sc | 13JAN | VAA | TUIT | Tuition | (154.00) | | (25.05) |
| 2/8/2013 | metro | CA12062762 : Bachelor of Sc | 13JAN | VAA | TUITMAN | Manual Tuition Adjustment | 153.00 | | 127.95 |
| 3/4/2013 | metro | CA12062762 : Bachelor of Sc | 13JAN | VAA | TRPT | Transportation Fees | 25.00 | | 152.95 |
| 3/7/2013 | CORRECTION | CA12062762 : Bachelor of Sc | 13JAN | VAA | TUITMAN | Manual Tuition Adjustment | (153.00) | | (0.05) |
| 3/18/2013 | metro cards | CA12062762 : Bachelor of Sc | 13JAN | VAA | TRPT | Transportation Fees | 25.00 | | 24.95 |
| 3/20/2013 | Auto-Bill | CA12062762 : Bachelor of Sc | 13MAR | VAA | TUIT | Tuition | 5,269.00 | | 5,293.95 |
| 3/20/2013 | Auto-Bill | CA12062762 : Bachelor of Sc | 13MAR | VAA | RESOURF | Resource Fee | 100.00 | | 5,393.95 |
| 3/21/2013 | 4999423 | CA12062762 : Bachelor of Sc | 13MAR | VAA | BOOK | Richy Castro - ORDER | 362.64 | | 5,756.59 |
| 3/21/2013 | 110081/FA 110081 | CA12062762 : Bachelor of Sc | 13MAR | VAA | | Direct Subsidized Stafford Loan 2012-13 | | 1,485.00 | 4,271.59 |
| 3/21/2013 | 110081/FA 110081 | CA12062762 : Bachelor of Sc | 13MAR | VAA | | Direct Unsubsidized Stafford Loan 2012-13 | | 661.00 | 3,610.59 |
| 4/13/2013 | metro card | CA12062762 : Bachelor of Sc | 13MAR | VAA | TRPT | Transportation Fees | 20.00 | | 3,630.59 |
| 5/6/2013 | metro cards | CA12062762 : Bachelor of Sc | 13MAR | VAA | TRPT | Transportation Fees | 20.00 | | 3,650.59 |
| 5/20/2013 | 112592/FA 112592 | CA12062762 : Bachelor of Sc | 13MAY | VAA | | Direct Subsidized Stafford Loan 2012-13 | | 1,485.00 | 2,165.59 |
| 5/20/2013 | 112592/FA 112592 | CA12062762 : Bachelor of Sc | 13MAY | VAA | | Direct Unsubsidized Stafford Loan 2012-13 | | 661.00 | 1,504.59 |
| 5/29/2013 | Auto-Bill | CA12062762 : Bachelor of Sc | 13MAY | VAA | TUIT | Tuition | 5,268.00 | | 6,772.59 |
| 5/29/2013 | Auto-Bill | CA12062762 : Bachelor of Sc | 13MAY | VAA | RESOURF | Resource Fee | 100.00 | | 6,872.59 |
| 6/3/2013 | 5170677 | CA12062762 : Bachelor of Sc | 13MAY | VAA | BOOK | Richy Castro - ORDER | 245.68 | | 7,118.27 |
| 6/4/2013 | UNREG | CA12062762 : Bachelor of Sc | 13MAY | VAA | TUIT | Tuition | (1,754.00) | | 5,364.27 |
| 6/4/2013 | UNREG | CA12062762 : Bachelor of Sc | 13MAY | VAA | TUIT | Tuition | (1,755.00) | | 3,609.27 |
| 6/4/2013 | UNREG | CA12062762 : Bachelor of Sc | 13MAY | VAA | TUIT | Tuition | (1,759.00) | | 1,850.27 |
| 6/4/2013 | UNREG | CA12062762 : Bachelor of Sc | 13MAY | VAA | RESOURF | Resource Fee | (100.00) | | 1,750.27 |
| 6/7/2013 EFT | | CA12062762 : Bachelor of Sc | 13MAR | VAA | | Refund - DIRSUB 2012-13 | | (324.00) | 2,074.27 |
| 6/7/2013 EFT | | CA12062762 : Bachelor of Sc | 13MAY | VAA | | Refund - DIRSUB 2012-13 | | (1,485.00) | 3,559.27 |
| 6/7/2013 EFT | | CA12062762 : Bachelor of Sc | 13MAY | VAA | | Refund - DIRUNSUB 2012-13 | | (661.00) | 4,220.27 |
| 12/16/2013 EFT | | CA12062762 : Bachelor of Sc | 13MAY | VAA | | W & F A/R Transfer 2012-13 | | 4,220.27 | 0.00 |

| | | |
|---|---|---|
| **Annandale Totals:** | **$22,799.27** | **$22,799.27** |
| **Student Totals:** | **$22,799.27  $22,799.27** | **$22,799.27** |

# EQUIFAX

**CREDIT FILE :  May 2, 2019**
**Confirmation #  9108023521**

Dear RICHY EDUARDO CASTRO:

We are pleased to let you know that the results of the dispute you recently filed with Equifax are complete.  Here are a few things to know about the process:

**Were changes made to my credit report and what actions were taken?**

Please see the following page(s) for more detailed information on your specific results.

If we were able to make changes to your credit report based on the information you provided, we have done so. Otherwise, we contacted the company reporting the information to Equifax for them to investigate your dispute.

In this situation:

*    We request that the reporting company verify the accuracy of the information you disputed;

*    We provide them with any relevant information and supporting documentation you provided us with the dispute to consider as part of the investigation; and

*    We request that they send Equifax a response to your dispute and update their records and systems, as necessary.

If your dispute involves a public record item, Equifax contacts a third party vendor to obtain the most recent status of the public record.

**How do I know that all of this is happening?**

When the reporting company replies to us, they certify that they have followed Equifax's instructions and the law; considered all information and documentation provided; and updated your information, as necessary.

**What should I do if I do not agree with the results of the investigation?**

You have a few options:

*    You may add a statement of up to 100 words (200 words for Maine residents) to your credit report.  If you provide a consumer statement that contains medical information related to services provided or medical procedures, then you expressly consent to including this information in every credit report we issue about you.
*    You may contact the company that reports the information to us and dispute it directly with them. If you would like written proof about your accounts (such as the original agreement), please contact your creditors directly.
*    You may provide us additional information or documents (such as an identity theft report or a letter from the reporting company) about your dispute to help us resolve it by visiting our website https://www.ai.equifax.com/CreditInvestigation/home.action.  You may also mail your documents to PO Box 740256, Atlanta GA 30348 or contact us by calling a Customer Representative at (888) 425–7961 from 9:00 a.m. to 5:00 p.m. Monday – Friday in your time zone.
*    You may contact the Consumer Financial Protection Bureau or your State Attorney General's office about your issue or complaint against Equifax or the company reporting the information.

0027251 42–5723
RICHY EDUARDO CASTRO
PO BOX 9008
RADFORD, VA 24142–9008

P. O. Box 105518
Atlanta, GA 30348

**What else should I know?**

If there has been a change to your credit report based on your dispute, or if you add a consumer statement, you may request that Equifax send an updated report to companies who received your credit report within the last two years for employment purposes, or within the last six months for any other purpose (the past 12 months for residents of California, Colorado, Maryland, New York and New Jersey residents).

Also, if you are interested, you may  request a description of how the reinvestigation was conducted along with the business name, address and telephone number (if reasonably available) of the furnisher of your disputed information.

For frequently asked questions about your credit report and the dispute process, please visit Equifax at https://help.equifax.com/.

As always, we thank you for contacting Equifax and the results of your dispute are on the pages following this letter.

How should I read my dispute results?

To better assist you with understanding the results of your dispute, please review the information below:

- \*    If an item states "**Deleted**", we have removed it from your credit report and taken steps so it does not reappear.
- \*    If an item states "**Verified as Reported**", the reporting company has certifed it is reporting accurately.
- \*    If an item states "**Updated**", we have updated one or more fields on the item based on information received from the reporting company.

Updated disputed account information only: **The information you disputed has been updated.**

Updated disputed account information. Additional account information was also updated: **The information you disputed has been updated as well as other information on this item.**

Disputed information accurate. Updated account information unrelated to the dispute: **The information you disputed has been verified as accurate, however, information unrelated to your dispute has been updated.**

Consumer's dispute not specific. Consumer Information verified. Account information updated: **Information on your report has been updated.**

---

**The Results Of Our Reinvestigation**

**>>> *We have reviewed your concerns and our conclusions are:***
Please submit a copy of your social security card, driver's license and/ or an official document to update your name.

**Collection Agency Information**   *(This section includes accounts that have been placed for collection with a collection agency.)*

**>>> *We have researched the collection account.  Account # − D4033483N1  The results are:*** We verified that this item belongs to you. We have verified that this item has been reported correctly. THE FOLLOWING FIELDS HAVE BEEN MODIFIED: \*STATUS DATE \*BALANCE DATE. If you have additional questions about this item please contact: ***Deville Asset Management, Limited, 1132 Glade Rd, Colleyville  TX  76034−4227 Phone: (817) 251−7000***

| **Deville Asset Management** | LIMITED 1132 GLADE RD COLLEYVILLE TX 76034−4227 : (817) 251−7000 | | | | | | |
|---|---|---|---|---|---|---|---|
| Account Number | Date Reported | Date Assigned | Creditor Class | | Client Name | | Original Amount |
| D4033483N1 | 05/2019 | 12/2017 | Educational | | Westwood College | | $1,648 |
| Status Date  Status | Date of 1st Delinquency | | Balance Date | Balance Amount | Last Payment Date | Whose Account | |
| *05/2019* Unpaid | 05/2014 | | *05/2019* | $1,648 | | Individual Account | |

## State Of Massachusetts – Notice to Consumer

You have a right to obtain a copy of your credit file from a consumer credit reporting agency. You may be charged a reasonable fee not exceeding eight dollars. There is no fee, however, if you have been turned down for credit, employment, insurance, or rental dwelling because of information in your credit report within the preceding sixty days. The consumer credit reporting agency must provide someone to help you interpret the information in your credit file. Each calendar year you are entitled to receive, upon request, one free consumer credit report.

You have a right to dispute inaccurate information by contacting the consumer credit reporting agency directly, either in writing, by mail or electronic communication through the credit reporting agency website, or by telephone.  The consumer reporting agency shall provide, upon request and without unreasonable delay, a live representative of the consumer reporting agency to assist in dispute resolution whenever possible and practicable, or to the extent consistent with federal law. However, neither you nor any credit repair company or credit service organization has the right to have accurate, current, and verifiable information removed from your credit report. In most cases, under state and federal law, the consumer credit reporting agency must remove accurate, negative information from your report only if it is more than seven years old, and must remove bankruptcy information only if it is more than ten years old.

 If you have notified a consumer credit reporting agency in writing that you dispute the accuracy of information in your file, the consumer credit reporting agency must then, within 30 business days, reinvestigate and modify or remove inaccurate information.  The consumer credit reporting agency may not charge a fee for this service. Any pertinent information and copies of all documents you have concerning a dispute should be given to the consumer credit reporting agency.

If reinvestigation does not resolve the dispute to your satisfaction, you may send a statement to the consumer credit reporting agency to keep in your file, explaining why you think the record is inaccurate. The consumer credit reporting agency must include your statement about the disputed information in a report it issues about you.

You have a right to receive a record of all inquiries relating to a credit transaction initiated in the six months preceding your request, or two years in the case of a credit report used for employment purposes. This record shall include the recipients of any consumer credit report.

You have the right to opt out of any prescreening lists compiled by or with the assistance of a consumer credit reporting agency by calling the agency's toll–free telephone number or contacting the agency through electronic communications or in writing*. You may be entitled to collect compensation, in certain circumstances, if you are damaged by a person's negligent or intentional failure to comply with the credit reporting act.

* If you prefer not to receive pre–approved offers, please notify:

Equifax Opt–Out
P.O. Box 740123
Atlanta, GA 30374–0123

Include your full name, complete address, Social Security number, daytime telephone number, and signature.

Or you may call toll free: .

CONSUMERS HAVE THE RIGHT TO OBTAIN A SECURITY FREEZE

You have a right to place a 'security freeze' on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without your express authorization. The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

As an alternative to a security freeze, you have the right to place an initial or extended fraud alert on your credit file at no cost. An initial fraud alert is a 1−year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting 7 years.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account that requests information in your credit report for the purposes of reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

To place, temporarily lift or permanently remove the security freeze on your Equifax credit report, you can:

* Go to www.equifax.com;

* Call us at (800) 685−1111;

* Or mail your request to:    Equifax Information Services LLC
                              P.O. Box 105788
                              Atlanta, GA 30348

If you are contacting us by phone, please have the following information ready. If you are contacting us by mail, please be sure to include:

| All of these items in your letter | A copy of one (1) item in this column to validate your identity | A copy of one (1) item in this column to validate your address |
|---|---|---|
| Your complete name, including any suffix (Jr., Sr., etc.) | Valid driver's license or state ID (can be used to validate identity and address) | Valid driver's license or state ID (can be used to validate identity and address) |
| Your complete address | Social Security card | Utility bill with correct address (gas, water, cable) |
| Your Social Security number | Pay stub (can be used to validate identiy and address) | Cell phone or residential phone bill |
| Your date of birth | W2 or 1099 form (can be used to validate identity and address) | Pay stub (can be used to validate identity and address) |
|  | Birth certificate | W2 or 1099 form (can be used to validate identity and address) |
|  | Passport | Rental lease agreement or house deed |
|  | State or military ID | Mortgage or bank statement |

( Continued On Next Page )

9108023521APPLADM−002725142−  5723− 29826 −

If you provide a copy of either a valid driver's license, state ID card, paystub, W2, or 1099 form to validate both your identity and address, then you do not need to provide additional documents.

When you place a security freeze on your Equifax credit report, you will be provided a 10−digit personal identification number (PIN) to use if you choose to temporarily lift or permanently remove the security freeze from your credit report. To make either request, you can contact Equifax by phone or mail and provide all the following:

1. Proper identification.

2. The unique PIN provided by Equifax when you placed the security freeze.

3. If requesting a temporary lift, specify the period of time for which the credit report is to be available
   (for example, from March 15, 2018 to March 21, 2018).

You can also create or sign into your account on www.equifax.com to authorize the temporary lift or permanent removal of your security freeze from your Equifax credit report.

Equifax will authorize the release of your credit report within one hour after receiving the above information if the request is by phone or electronic means or no later than three business days when a written request is submitted.

Placing, lifting, and removing a security freeze on your Equifax credit report is free.

---

### *Notice to Consumers*

You may request a description of the procedure used to determine the accuracy and completeness of the information, including the business name and address of the furnisher of information contacted, and if reasonably available the telephone number.

If the reinvestigation does not resolve your dispute, you have the right to add a statement to your credit file disputing the accuracy or completeness of the information; the statement should be brief and may be limited to not more than one hundred words (two hundred words for Maine residents) explaining the nature of your dispute.

If the reinvestigation results in the deletion of disputed information, or you submit a statement in accordance with the preceding paragraph, you have the right to request that we send your revised credit file to any company specifically designated by you that received your credit report in the past six months (twelve months for California, Colorado, Maryland, New Jersey and New York residents) for any purpose or in the past two years for employment purposes.



**Decline of application**
May 15, 2019

PO Box 6495
Sioux Falls SD 57117-6495

5000041012 1 AB 0 J12 S1238074 7MW 006465.0092
[barcode marks]
RICHY E CASTRO
1203 HALE CT
WOODBRIDGE, VA 22191-2213

## We can't approve your application

Thanks for your interest in the Citi® Rewards+ Mastercard® account. We reviewed your application and can't approve it because:

- A garnishment, attachment, foreclosure, collection action or judgment was recorded on your credit bureau report.

### Important information for you

Our credit decision was based, in whole or in part, on information obtained in a report from the following consumer reporting agency:

Equifax Credit Information Services
PO Box 740241
Atlanta, GA 30374-0241
1-800-685-1111
www.equifax.com

Please note, other than providing information, the reporting agency played no part in our decision and is unable to supply the specific reasons why we denied your request.

You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. We encourage you to review your credit report for accuracy.

### Your right to get a copy of your credit report

You also have a right to a free copy of your credit report from the consumer reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have a right to dispute the matter with the reporting agency(ies). If your credit report changes as a result of a dispute, please give us a call within 60 days so we can re-evaluate our decision.

### Thanks again for considering us

We hope we were clear in explaining this decision. Feel free to contact us if you have any questions.

**Need our help?**

| | |
|---|---|
| Visit | citia |
| Call | 1-866-4 |
| TTY/TTD | 1-800-20 |



**RICHY E CASTRO**
Application ID
190514814333709

Please see reverse side for important information

0.L0CD0501001 /201905150001 4167 408.I.ZZ.SY.8000.SYSTEMB765432937882514.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| RICHY CASTRO, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 1:18-cv-1303 |
| | : |
| TRANS UNION, LLC, *et al.*, | : |
| | : |
| Defendants. | : |
| _____ | : |

## DECLARATION OF KRISTI C. KELLY

I, Kristi C. Kelly declare:

1.      My name is Kristi C. Kelly. I am over 21 years of age, of sound mind, capable of executing this declaration, and have personal knowledge of the facts stated herein, and they are all true and correct.

2.      I am one of the attorneys working on behalf of the Plaintiff in the above-styled litigation, and I am a founder and a partner of Kelly Guzzo, PLC, a law firm located at 3925 Chain Bridge Road, Suite 202, Fairfax, Virginia 22030. Prior to January 15, 2014, I was an attorney and equity partner at Surovell Isaacs Petersen & Levy, PLC, a nineteen-attorney law firm with offices in Fairfax, Virginia. My primary office was 4010 University Drive, Suite 200, Fairfax, Virginia 22030. I also worked for Legal Services of Northern Virginia focusing exclusively on housing and consumer law for approximately three years prior to Surovell Isaacs Petersen & Levy, PLC.

3.      Since 2006, I have been and presently am a member in good standing of the Bar of the highest court of the State of Virginia, where I regularly practice law. Since 2007, I have been and presently am a member in good standing of the Bar of the highest courts of the District of Columbia and since 2014 of Maryland. I am also admitted in the United States District Courts for

the District of Columbia and Maryland.

4.     My law firm is committed to representing the most vulnerable – and often overlooked – consumers. We work with various legal aid organizations to help identify areas of need, where our firm can "step up" and meet those need through class action litigation or pro bono work. Many of these cases include seeking remedies for credit reporting errors or lending abuses. Kelly Guzzo was the co-recipient of the 2019 Frankie Muse Freeman Organizational Pro Bono Award by the Virginia State Bar Association.

5.     I have taught numerous Continuing Legal Education programs for other attorneys in the areas of consumer law, including mortgage servicing abuses, landlord tenant defense, dealing with debt collectors, credit reporting, defenses to foreclosure, discovery in federal court, resolving cases, and internet lending for various legal aid organizations, state and local bar associations,  National Consumer Law Center, Consumer Federation of America, National Council of Higher Education and National Association of Consumer Advocates at its various conferences. I was also recently asked to be a panelist for the Consumer Financial Protection Bureau and Federal Trade Commission on the issue of credit reporting.

6.     My peers have recognized me as a Super Lawyer and Rising Star consistently for the past eight years. Additionally, I was selected to be a member of the Virginia Lawyers Weekly "Leader in the Law," class of 2014 and Influential Women in the Law, class of 2020. I serve on the Board of Directors for the Legal Aid Justice Center and Virginia Poverty Law Center. I am a former State Chair for Virginia of the National Association of Consumer Advocates and am currently a member of the Partners' Council for the National Consumer Law Center and Board of Directors of the National Association of Consumer Advocates.

7.     I have also been appointed to the Merit Selection Panel for recommendation for the

2

Magistrate Judge by the United States District Court Eastern District of Virginia, Richmond Division.

8.       I have significant experience representing consumers in litigation under the Federal Consumer Credit Protection Act, 15 U.S.C. § 1601, *et seq.*, and in particular the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*, the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, *et seq.*, and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. I also have significant experience representing consumers against perpetrators of fraud in consumer transactions. My first jury trial was in 2010, against a foreclosure rescue scammer, where I obtained a jury verdict of $686,000 plus my attorneys' fees and costs. *Ansary v. Smuckler*, CL-2009-8572 (Fairfax County Circuit Court). I also recently obtained a $15,000 judgment, plus an award of $70,000 in attorney's fees and costs, against a debt collector seeking to collect a time-barred note. *Collins Asset Group, LLC v. Elena*, CL-2018-933 (Fairfax County Circuit Court). My office also recent obtained two default judgments in the amounts of $686,498.15 and $654,738.48 against the perpetrator of a Ponzi-esque lapping scheme arising out of a 1031 exchange company. *Tsuchida v. Blackacre 1031 Exchange Services, LLC*, 2019-15803 (Fairfax County Circuit Court); *Rivera v. Blackacre 1031 Exchange Services, LLC*, 2019-15802 (Fairfax County Circuit Court).

9.       My firm has litigated hundreds of consumer protection lawsuits in courts across the country. Several courts have recognized Kelly Guzzo's skill in the consumer protection arena. *See, e.g.*, Final Approval Hr'g Trans., *Campos-Carranza v. Credit Plus, Inc.*, Case No. 16-cv-120, at 5:3-7 (LMB/MSN) (E.D. Va. Feb. 17, 2017) ("I think this is an extremely, as I say, extremely fair, reasonable, and adequate settlement. Again, the claims – and I think being generous on the time limit for the claims was also appropriate. So I have no difficulty in signing this order."); *Ceccone*

*v. Equifax Info. Servs. LLC*, No. 13-1314, 2016 WL 5107202, at \*6 (D.D.C. Aug. 29, 2016) ("Given these qualifications, and in light of Class Counsel's conduct in court and throughout these proceeding, this Court concludes that Class Counsel is qualified to prosecute the interests of this class vigorously."); *Dreher v. Experian Info. Sols., Inc*., No. 11-00624, 2014 WL 2800766, at \*2 (E.D. Va. June 19, 2014) ("Dreher's counsel is well- experienced in the arena of FCRA class action litigation."); Fairness Hr'g Tr., *Burke v. Seterus, Inc*., No. 16-cv-785, at 9:19-22 (E.D. Va. 2017) ("Experience of counsel on both sides in this case is extraordinary. Ms. Kelly and Ms. Nash and their colleagues are here in this court all the time with these kinds of cases and do a good job on them.").

10.     I have litigated numerous cases in which courts have approved my hourly rate as reasonable, including the rates currently sought in this case. *See Tsvetovat, v. Segan, Mason, & Mason, PC,* Case No. 1:12-cv-510 (E.D. Va.); *Conley v. First Tennessee Bank*, Case No. 1:10-cv-1247 (E.D. Va.); *Dreher v. Experian Information Solutions*, *Inc.*, Case No. 3:11-cv-624 (E.D. Va.); *Shami v. Middle East Broadcast Network*, Case No. 1:13-cv-467 (E.D. Va.); *Goodrow v. Friedman & MacFadyen*, Case No. 3:11-cv-20 (E.D. Va.); *Kelly v. Nationstar*, Case No. 3:13-cv-311 (E.D. Va.); *Thomas v. Wittstadt*, Case No. 3:12-cv-450 (E.D. Va.); *Fariasantos v. Rosenberg & Associates, LLC*, No. 3:13-cv-543 (E.D. Va.); *Morgan v. McCabe Weisberg & Conway, LLC*, Case No. 3:14-cv-695 (E.D. Va.); *Burke v. Shapiro, Brown & Alt, LLP*, Case No. 3:14-cv-838 (E.D. Va.); *Bartlow v Medical Facilities of America, Inc.,* Case No. 3:16-cv-573 (E.D. Va.); *Blocker v. Marshalls of MA, Inc.,* Case No. 1:14-cv-1940 (D.D.C.); *Ceccone v. Equifax Info. Servs., LLC*, Case No. 1:13-cv-1314 (D.D.C.); *Jenkins v. Equifax Info. Servs., LLC*, Case No. 1:15-cv-443 (E.D. Va.); *Ridenour v. Multi-Color Corporation,* Case No. 2:15-cv-00041 (E.D. Va.); *Hayes v. Delbert Services Corp.,* Case No. 3:14-cv-258 (E.D. Va.); *Campos-Carranza, et al. v. Credit Plus, Inc.,*

Case No. 1:16-cv-120 (E.D. Va.); *Jenkins v. Realpage, Inc.*, 2:15-cv-1520 (E.D. Pa.); *Kelly v. First Advantage Background Services, Corp.*, 3:15-cv-5813 (D.N.J.); *Burke v. Seterus, Inc., 3:16-cv-785* (E.D. Va.); *Williams v. Corelogic Rental Property Solutions, LLC,* Case No. 8:16-cv-58 (D. Md.); *Clark v. Trans Union, LLC*, Case No. 3:15-cv-391 (E.D. Va.); *Clark v. Experian Information Solutions, Inc.*, 3:16-cv-32 (E.D. Va.); *Thomas v. Equifax Info. Servs., LLC*, No. 3:18-cv-684 (E.D. Va.); *Heath v. Trans Union, LLC*, Case No. 3:18-cv-720 (E.D. Va.); *Gibbs v. Plain Green, LLC*, 3:17-cv-495 (E.D. Va.); *Turner v. ZestFinance, Inc.*, Case No. 3:19-cv-293 (E.D. Va.) *Gibbs v. Plain Green, LLC*, Case No. 3:17-cv-495 (E.D. Va.); and *Galloway v. Williams*, Case No. 3:19-cv-470 (E.D. Va.).

11.    At Kelly Guzzo, PLC, we use MyCase billing software to contemporaneously record our time expended and costs advanced in client matters. While, the majority of our work is contingent, pro bono, or brought under a fee-shifting statute and we do not generally charge our clients a fee, we still forward our clients invoices detailing our time and expenses expended for the preceding calendar month.

12.    My hourly rate of $550.00 per hour has been approved in several cases, most recently in March 2021 by Judge Lauck in *Gibbs, et al., v. TCV V, L.P., et al*, 3:19-cv-789 (E.D. Va.). Since I have been practicing for over thirteen years, pursuant to the Laffey Matrix (since my law firm is based in Northern Virginia), my rate during the pendency of this case would be $747 per hour. *See* (http://www.laffeymatrix.com/). After reviewing this publication, I believe my prior rate is actually on the low side for the type of work that I do. This rate has also been approved in individual cases in federal courts: *Garmer v. Easy Motors*, 1:20-cv-540 (E.D. Va. Nov. 23, 2020) (ECF 27 at 50).

13.    Other attorneys from my firm that have worked on this case include Casey Nash.

14.     Casey Nash was an associate at Consumer Litigation Associates, PC and is currently an associate at Kelly Guzzo, PLC. I supervise and work closely with Ms. Nash. She graduated from law school at the Catholic University of America in 2012. The entire time she has been practicing law, she has practiced exclusively in the field of consumer protection litigation. She has significant federal litigation experience, including litigation of over 250 federal cases and dozens of complex, class-action cases. She is licensed to practice law in Virginia and Washington, D.C. She has been named a Super Lawyers' Rising Star in Virginia and Washington, D.C. for the past several years. She has also taught and trained lawyers, including providing training about the FCRA and other consumer protection statutes to legal aid organizations and at national conferences. She has been approved as class counsel in numerous class action cases, including some of the cases listed above, as well as several others that she litigated during her time at Consumer Litigation Associates. *See, e.g.*, *Souter v. Equifax Information Services, LLC*, No. 3:10-cv-107 (E.D. Va.); *James v. Experian Information Solutions, Inc.*, No. 3:12-cv-908 (E.D. Va.); *Manuel v. Wells Fargo Nat'l Bank, N.A.*, No. 3:14-cv-00238 (E.D. Va.); *Milbourne v. JRK Residential Am., LLC*, No. 3:12-cv-00861 (E.D. Va.); *Thomas v. FTS USA, LLC*, No. 3:13-cv-825-REP (E.D. Va.).

15.     Ms. Nash's rate should be $475 per hour. This rate has been approved in several cases, most recently in *Gibbs, et al., v. TCV V, L.P., et al*, 3:19-cv-789 (E.D. Va.). Again, her rate is in line with the market rates in Northern Virginia for someone with over 8 years of experience.

16.     Natalie Cahoon is a paralegal at Kelly Guzzo, PLC, with over four years of experience in the legal field.  She graduated from the University of Maine. Ms. Cahoon's hourly rate is $200.00 per hour. This rate has been approved in several cases, including *Gibbs, et al., v. TCV V, L.P., et al*, 3:19-cv-789 (E.D. Va.), *Turner v. ZestFinance, Inc.*, 3:19-cv-293 (E.D. Va.)

and *Gibbs v. Plain Green, LLC*, 3:17-cv-495 (E.D. Va.).

17.     In November 2020, these rates were also approved in Judge Ortiz in Fairfax County Circuit Court. *Rivera v. Blackacre 1031 Exchange Services, LLC, et al*, No. CL 2019-15802 And Tsuchida v *Blackacre 1031 Exchange Services, LLC, et al*, No. CL 2019-15803.

18.     Aimee Solano is a law clerk at Kelly Guzzo, PLC. She is a third-year law student at the Catholic University of America and has received her Third-Year Practice Certificate. Her currently hourly rate is $150.00. Her hourly rate was most recently approved in *Gibbs, et al., v. TCV V, L.P., et al*, 3:19-cv-789 (E.D. Va.).

19.     Generally, if a task does not take more than .1 (or six minutes), attorneys and paralegals at Kelly Guzzo, PLC will not bill for that task. This includes reviewing routine court filings, fielding brief telephone calls, responding to quick emails, etc.

20.     On May 3, 2021, I pulled my firm's time entries for Ms. Castro's claims against Deville Asset Management, Ltd. in this case from our MyCase billing software. The total hours expended by Kelly Guzzo, PLC, along with the applicable fees are attached as Exhibit A and summarized in in the following chart:

| Professional | Title | Rate | Time | Total Fee |
|---|---|---|---|---|
| Kristi Kelly | Partner | $550.00/hour | 0.4 | $220.00 |
| Casey Nash | Associate | $475.00/hour | 19.9 | $9,452.50 |
| Natalie Cahoon | Paralegal | $200.00/hour | 1.9 | $380.00 |
| Aimee Solano | Law Clerk | $150.00/hour | 4.0 | $600.00 |
| **TOTAL:** | | | **26.2** | **$10,652.50** |

21.     My law firm as also advanced $485.84 for litigation costs. These costs include filing fees, process server fees, postage, and federal express costs, as detailed in the attached invoice.

22.     I am familiar with the fees charged for attorneys with my experience and expertise and believe the rates of my law firm are consistent with the prevailing market rates in Virginia, as

discussed above.

23.     The fees listed above were appropriate and necessary to ensure the successful outcome of this case for our client.

24.     In addition, these fees and the amount of time that we spent litigating this case are in line with other cases that we have litigated under the claims raised in this complaint, including the FCRA and FDCPA.

I declare under penalty of perjury of the laws of the United States that the foregoing is correct.

Signed this 3rd day of May, 2021.


_____ */s/ Kristi C. Kelly* _____

# Exhibit A

**Kelly Guzzo, PLC**
3925 Chain Bridge Rd.
Suite 202
Fairfax, VA 22030
United States
703-424-7570

# Kelly Guzzo, PLC

**Richy Castro**
502 Tyler Ave
Radford, VA 24141

| | |
|---|---|
| **Balance** | $11,138.34 |
| **Invoice #** | 40558 |
| **Invoice Date** | May 3, 2021 |
| **Payment Terms** | |
| **Due Date** | |

---

## Castro/Richy

### Time Entries

| Da e | EE | Ac v y | Descr p on | Ra e | ours | L ne To a |
|------|-----|--------|-----------|------|------|-----------|
| 07/09/2018 | NC | Prepare | CRA d spu es | $200.00 | 0.6 | $120.00 |
| 07/09/2018 | CN | Conference | w h c en . Ed d spu e ers. | $475.00 | 0.5 | $237.50 |
| 08/15/2018 | CN | Te ephone ca | w h c en . | $475.00 | 0.1 | $47.50 |
| 08/16/2018 | CN | Te ephone ca | w h c en . | $475.00 | 0.2 | $95.00 |
| 08/23/2018 | CN | Te ephone ca | w h c en . | $475.00 | 0.3 | $142.50 |
| 08/30/2018 | CN | Ema correspondence | w h c en . | $475.00 | 0.1 | $47.50 |
| 09/04/2018 | CN | Ema correspondence | w h c en . | $475.00 | 0.2 | $95.00 |
| 09/10/2018 | CN | Ema correspondence | w h c en . | $475.00 | 0.2 | $95.00 |
| 10/03/2018 | CN | Rev ew of f e | n prepara on of draf ng comp a n . S ar draf ng comp a n . Respond o c en ema . | $475.00 | 2.5 | $1,187.50 |
| 10/17/2018 | CN | Draf | Comp a n . | $475.00 | 1.0 | $475.00 |
| 10/18/2018 | NC | Prepare | Summonses for TU, Exper an & De V e, C v Cover Shee for f ng; Research De V e's Serv ce Address | $200.00 | 0.5 | $100.00 |
| 10/19/2018 | NC | Prepare | Prepare and f e no ces of appearance for Mr. Guzzo and Ms. Nash. | $200.00 | 0.8 | $160.00 |
| 12/19/2018 | CN | Research | re: s a us of De V e Asse Managemen ; reach ou o na ona counse re: serv ce of comp a n ; prepare defau papers for De V e; ema correspondence w h c en . | $475.00 | 3.5 | $1,662.50 |
| 01/07/2019 | CN | Draf | Mo on for Defau Judgmen . | $475.00 | 1.0 | $475.00 |
| 01/09/2019 | CN | Draf | Proposed Conc us ons of Fac s and F nd ngs of Law re: DeV e. Ema correspondence w h c en . | $475.00 | 1.0 | $475.00 |
| 01/11/2019 | KK | Ed | Ed defau judgmen . | $550.00 | 0.4 | $220.00 |

| Date | EE | Activity | Description | Cost | Quantity | Line Total |
|------|-----|----------|-------------|------|----------|------------|
| 01/11/2019 | CN | Draft | Proposed Findings of Fact and Conclusions of Law; certain declaration for default motion. | $475.00 | 2.3 | $1,092.50 |
| 01/14/2019 | CN | Finalize | and file Motion for Default Judgment. | $475.00 | 2.0 | $950.00 |
| 01/16/2019 | CN | File | notice of hearing. | $475.00 | 0.3 | $142.50 |
| 01/22/2019 | CN | Telephone call | which client. Discuss case with KCK. | $475.00 | 0.5 | $237.50 |
| 01/23/2019 | CN | Email correspondence | which client. | $475.00 | 0.2 | $95.00 |
| 01/24/2019 | CN | Email correspondence | which client. | $475.00 | 0.3 | $142.50 |
| 08/27/2019 | CN | Email correspondence | Email correspondence with receivership. | $475.00 | 0.3 | $142.50 |
| 08/30/2019 | CN | Draft | and file status update re: case against DeVe. | $475.00 | 0.5 | $237.50 |
| 04/29/2020 | CN | Draft | status report and file with court. | $475.00 | 0.8 | $380.00 |
| 07/27/2020 | CN | Email correspondence | with receiver re: DeVe. | $475.00 | 0.2 | $95.00 |
| 07/28/2020 | CN | Draft | Status report. | $475.00 | 0.5 | $237.50 |
| 07/29/2020 | CN | Finalize | and file status report. | $475.00 | 0.4 | $190.00 |
| 01/13/2021 | CN | Email correspondence | with receiver re: case status. | $475.00 | 0.2 | $95.00 |
| 01/15/2021 | CN | Draft | and file status report. | $475.00 | 0.4 | $190.00 |
| 03/29/2021 | AS | Review | Reviewed notice of claims procedure and client case file. | $150.00 | 1.0 | $150.00 |
| 03/31/2021 | AS | Review | Reviewed notice of claims procedure from the court-appointed receiver and case file of the client to determine what next steps need to be taken. | $150.00 | 1.5 | $225.00 |
| 04/02/2021 | CN | Review | A meet's write-up of receivership claim; send edits. (DeVe case). | $475.00 | 0.4 | $190.00 |
| 04/07/2021 | AS | Draft | Drafted claim packet for the receivership. | $150.00 | 1.5 | $225.00 |

Totals:  26.2  $10,652.50

## Expenses

| Date | EE | Activity | Description | Cost | Quantity | Line Total |
|------|-----|----------|-------------|------|----------|------------|
| 07/09/2018 | NC | Postage | certified mailing for disputes | $6.72 | 2.0 | $13.44 |
| 10/18/2018 | CN | Filing Fee for Complaint | | $400.00 | 1.0 | $400.00 |
| 10/22/2018 | JD | Secretary of Commonwealth | | $28.00 | 1.0 | $28.00 |
| 11/15/2018 | JD | Marston Agency | Invoice #551188 | $26.00 | 1.0 | $26.00 |
| 01/14/2019 | JD | Federal Express | Invoice # 4-664-53977 Courtesy Copies to Court | $18.40 | 1.0 | $18.40 |

Expense Total:  $485.84

| | |
|---|---|
| Time Entry Sub-Total: | $10,652.50 |
| Expense Sub-Total: | $485.84 |
| **Sub-Total:** | $11,138.34 |
| **Total:** | $11,138.34 |
| **Amount Paid:** | $0.00 |
| **Balance Due:** | $11,138.34 |