# EXHIBIT B

**David L. Osias** (California State Bar No. 091287)
E-mail: dosias@allenmatkins.com
**Jeffrey R. Patterson** (California State Bar No. 126148)
E-mail: jpatterson@allenmatkins.com
**Loraine L. Pedowitz** (California State Bar No. 120614)
E-mail: lpedowitz@allenmatkins.com
ALLEN MATKINS LECK GAMBLE & MALLORY LLP
501 West Broadway, Ninth Floor
San Diego, California 92101-3577
Telephone:  (619) 233-1155
Facsimile:  (619) 233-1158

**Paul B. George** (Oregon State Bar No. 99009)
E-mail: georp@foster.com
**Carter M. Mann** (Oregon State Bar No. 96089)
E-mail: mannc@foster.com
FOSTER PEPPER & SHEFELMAN LLP
101 S.W. Main Street, 15th Floor
Portland, Oregon 97204-3223
Telephone:  (503) 221-0607
Facsimile:  (503) 221-1510

Attorneys for Receiver Thomas F. Lennon

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>CAPITAL CONSULTANTS, LLC, f/k/a CAPITAL CONSULTANTS, INC., JEFFREY L. GRAYSON and BARCLAY GRAYSON,<br><br>Defendants. | Case No. CV 00-1290-KI<br><br>**ORDER IMPLEMENTING APPROVED SECOND AMENDED DISTRIBUTION PLAN**<br><br>Judge:  Hon. Garr M. King |

On November 22, 2002, at 9:00 a.m., in Courtroom 9A, the Court heard the Motion of

Thomas F. Lennon, Receiver ("Receiver") for an Order Approving the Receiver's Proposed

Distribution Plan.  David L. Osias of Allen Matkins Leck Gamble & Mallory LLP appeared on

behalf of the Receiver.  Other appearances were as noted on the record.  On December 5, 2002,



the Court issued its Opinion and Order granting the Receiver's motion and instructing the

Receiver to prepare an Order implementing the Plan in accordance with the Opinion and Order.

On December 23, 2002, after a lengthy meet and confer process, the Receiver submitted his

proposed Order as instructed.  Thereafter, certain parties filed various objections to the form of

the order and/or motions for reconsideration/clarification of the Court's Opinion and Order.

After another lengthy meet and confer process that did not resolve the remaining disputes, on

February 28, 2003, at 11:00 a.m., the Court heard the following motions and objections

(collectively referred to herein as the "Objections"):

     1. American Funeral Plaintiffs' Objections to Receiver's Proposed Tracing Exception

Procedure and Form of Order Re Proposed Distribution Plan;

     2. Motion for Reconsideration by the Oregon Laborers-Employers Defined Benefit

Pension Plan, the Oregon Laborers-Employers Health and Welfare Plan, and the Oregon

Laborers-Employers Defined Contribution Trust Fund or, in the Alternative, Objections to the

Receiver's Proposed Order Implementing the Distribution Plan; and

     3. Motion for Reconsideration and Clarification of the Opinion and Order Granting the

Receiver's Motion to Approve Receiver's Distribution Plan as Modified or, in the Alternative,

Objections to the Receiver's Proposed Order Granting Receiver's Motion to Approve Distribution

Plan, filed by certain members of the former plaintiffs' consortium in the related litigation.

     At the February 28, 2003 hearing, David L. Osias of Allen Matkins Leck Gamble &

Mallory LLP appeared on behalf of the Receiver.  Other appearances were as noted on the

record.  After consideration of the above-referenced Objections, the Receiver's responses thereto,

and other responses and replies filed by the various parties, the Court finds and orders as follows:

     The Court finds that the Receiver's Motion was duly noticed;

     The Court finds that the actions proposed to be taken by the Receiver in connection with

the proposed Distribution Plan as amended are reasonable and within the Receiver's sound

business discretion, and in the best interests of the CCL receivership estate;

The Court finds that, but for the further modifications to the Distribution Plan proposed by the Receiver in response to the Objections and as described in below and/or in the Plan, the Objections are overruled.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.    Pursuant to and for the reasons set forth in the Court's Opinion and Order, filed December 5, 2002, and the Court's comments made on the record at the February 28, 2003 hearing, the Court approves the Receiver's Second Amended Distribution Plan ("Plan"), a copy of which is attached hereto as Exhibit "A."

2.    The Receiver shall provide notice of entry of this Order to all creditors of the Capital Consultants estate substantially in the form attached hereto as Exhibit "B" (the "Notice").

**<u>Tracing Exception</u>**

3.    The Notice shall provide that within 30 days of service of the Notice, any investor creditor which asserts that it qualifies for the tracing exception to the Plan's pro rata distribution scheme, and is willing to forego any share of the settlement proceeds from the Related Litigation, must make such election by giving written notice of such election, directly or through its counsel, to the Receiver.

4.    Within 20 days after making such election, the creditor, directly or through its counsel, shall file with the Court and serve on the Receiver's counsel all written evidence and any affidavits or sworn declarations on which the creditor intends to rely to prove the following:

      (a) that the client instructed CCL to make specific investments;

      (b) that CCL complied with those instructions; and

      (c) that CCL did not have or exercise any discretion in moving that creditor's money between investments.

      In its submission, the creditor shall also include its contention as to the traced value of its investments and any evidence in support of that contention.

5.    Within 20 days of receiving such evidence, the Receiver must file any written evidence and affidavits or sworn declarations in opposition.

6.      This Court will review the submitted evidence, and in accordance with the Summary Procedures Order previously entered in the case, the Court may rule on the tracing exception claim without further hearing or, if necessary, schedule a telephonic status conference to consider whether further evidence or oral argument is necessary and identify other procedures for a prompt, economic and fair resolution of the dispute.

**Claim Amounts**

7.      In conjunction with the Notice, the Receiver shall provide to each investor creditor a statement and back-up documentation supporting the Receiver's calculation of that creditor's claim in amount and as a relative percentage in the receivership estate, based on the approved "money-in/money-out" approach.

**Post-Receivership Management Fees**

8.      In conjunction with the Notice, the Receiver shall also provide to each investor creditor a statement of the Receiver's calculation of the amount that the creditor paid in post-receivership management fees, which amount unless disputed, shall be used to adjust the payment of the dividend to that creditor, pursuant to section IV.H. of the Plan.

**Dispute Resolution**

9.      If any investor creditor disputes the Receiver's calculation of that creditor's money-in/money-out claim amount and/or the reported amount of post-receivership management fees, then within 30 days of the Notice, the creditor shall submit to the Receiver's counsel a written statement of the creditor's calculations of its claim amount and/or the amount if paid in post-receivership management fees and any evidence in support thereof.  The Receiver and the creditor shall then meet and confer in an attempt to resolve any dispute regarding these calculations.  If the parties cannot resolve the dispute between themselves, they may submit the dispute to the Court for resolution.  The Court will resolve the dispute in accordance with the Summary Procedures Order previously entered in this case, with or without further briefing, argument or hearing, at the Court's discretion.

**Pending Real Estate Issues**

10.     In its Opinion and Order, filed December 5, 2003, the Court identified that on the record presently before it, the Court could not yet determine whether three specific real estate assets, i.e., One Technology Center, Two Technology Center and Crimson Corners Shopping Center, should be considered part of the receivership estate for purposes of the Plan.  The Court has requested further submissions on this issue from the Receiver and certain investor creditors. The Court's decision on these issues will be the subject of a separate Order.

**Plan Implementation**

11.     The Receiver is ordered to proceed to finalize claim amounts, determine dividend amounts and distribute the estate's assets to creditors of the estate as expeditiously as reasonably practicable, pursuant to the terms of the Plan and this Order.  Based on the delay associated with resolving the Objections, the Receiver now estimates that he will be in a position to distribute the first partial dividends to creditors by the end of May 2003..  The Receiver is directed to advise the Court if that time estimate will be materially delayed.

**IT IS SO ORDERED.**

Dated:  2/28/03

GARR M. KING, JUDGE
UNITED STATES DISTRICT COURT

Submitted by:

ALLEN MATKINS LECK GAMBLE
 & MALLORY LLP

By:

JEFFREY R. PATTERSON
CA BAR NO. 126148
Attorneys for Thomas F. Lennon,
Receiver for Capital Consultants, LLC

**David L. Osias** (California State Bar No. 091287)
E-mail: dosias@allenmatkins.com
**Jeffrey R. Patterson** (California State Bar No. 126148)
E-mail: jpatterson@allenmatkins.com
**Loraine L. Pedowitz** (California State Bar No. 120614)
E-mail: lpedowitz@allenmatkins.com
ALLEN MATKINS LECK GAMBLE & MALLORY LLP
501 West Broadway, Ninth Floor
San Diego, California 92101-3577
Telephone: (619) 233-1155
Facsimile: (619) 233-1158

**Paul B. George** (Oregon State Bar No. 99009)
E-mail: georp@foster.com
**Carter M. Mann** (Oregon State Bar No. 96089)
E-mail: mannc@foster.com
FOSTER PEPPER & SHEFELMAN LLP
101 S.W. Main Street, 15th Floor
Portland, Oregon 97204-3223
Telephone: (503) 221-0607
Facsimile: (503) 221-1510

Attorneys for Receiver Thomas F. Lennon

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| ELAINE L. CHAO, Secretary of the United States Department of Labor, | Case No. CV 00-1291-KI |
| Plaintiff, | **SECOND AMENDED DISTRIBUTION PLAN** |
| vs. | |
| CAPITAL CONSULTANTS, LLC, f/k/a CAPITAL CONSULTANTS, INC., JEFFREY L. GRAYSON and BARCLAY GRAYSON, | Date: February 28, 2002<br>Time: 11:00 a.m.<br>Dept: 9A<br>Judge: Hon. Garr M. King |
| Defendants. | |

## I.  INTRODUCTION

This Second Amended Distribution Plan ("Plan"),[1] will determine how claims against the Receivership Estate are calculated, and how those claims are treated.  Further information about the background of these Receivership Cases is contained in the Memorandum of Points and Authorities in Support of the Motion to Approve Receiver's Distribution Plan, the Declarations of Thomas F. Lennon, Gayle M. Case, and Christopher R. Barclay filed in support of the Distribution Plan and the Appendix of Exhibits.[2]

## II.  DEFINITIONS

Unless the context otherwise requires, the following terms have the following meanings when used in their capitalized forms in the Plan.  Such meanings are equally applicable to both the singular and plural forms of the terms.

**Administrative Claims**.  Claims arising from post Receivership Date activities such as services rendered by the Receiver and for the Receiver by attorneys and accountants, goods and services provided by vendors such as equipment lessors post Receivership Date, and litigation claimants who prevail on any claim that they were damaged by the post Receivership Date conduct of the Receiver.

**Allowed Claim**.  Any Claim for which (a) a proof of claim or request for payment was timely and properly filed; (b) a proof of claim or request for payment was deemed timely and properly filed by the Court; or (c) such Claim has been allowed or deemed allowed pursuant to the entry of a Final Order of the Court; and in any such case, as to which no objection to the allowance thereof has been brought by the Receiver, or as to which any objection has been determined by a Final Order of the Court.  Unless otherwise specified herein or by order of the

---

[1]  Capitalized terms are sometimes used before they are defined.  Consult the Definitions section.

[2]  In the event of any conflict or inconsistency between the terms of the Distribution Plan as described in any of the supporting documents and the terms set out in the Distribution Plan, the Distribution Plan controls.

SECOND AMENDED DISTRIBUTION PLAN

573441.01/SD

Court, "Allowed Claim," shall not, for purposes of computation of Distributions under the Plan, include any of those items disallowed in the Order Granting Omnibus Objection to Claims.

**Borrower Excess Claims.** Claims asserted by CCL borrowers or guarantors against CCL in excess of the outstanding balance of the loans as of the Portfolio Sale cut off date, September 15, 2001, as more particularly described in the Overbid Contract attached to the Order Approving Receiver's Sale of Certain Private Investment Assets at Auction and Payment of Break-up Fee, entered January 24, 2002.

**BOW Allowed Secured Claim.** The secured claim held by Bank of the West, as defined by the Settlement Agreement with Bank of the West approved by the Court on September 28, 2001, in the amount of $1,560,227.46, of which approximately $445,000 remains unpaid as of August 1, 2002.

**CCL.** Capital Consultants, LLC, fka Capital Consultants, Inc.

**CCL Business Assets.** Those assets owned by CCL as of the Receivership Date, including its interest in the Capital Center Limited Partnership, certain notes receivable, and miscellaneous furniture and equipment.

**Claim.** A claim against CCL including, (a) any right to payment from CCL whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from CCL whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Client Claim.** A claim held by a CCL client whose funds were invested in the Private Investment Portfolio, as calculated on a Money-in/Money-out basis and which has become an Allowed Claim.

**Court.** United States District Court for the District of Oregon.

**Distribution Plan or Plan.** This Second Amended Distribution Plan.

**Estate** or **Receivership Estate**.  All assets including all claims, causes of action, or rights of recovery held by the Receiver, CCL, or any trust, partnership, joint venture, or other entity controlled by CCL or the Receiver.

**Final Order**.  An order, judgment or decree (or any revision, modification, and/or amendment thereof) of the Court which has not been reversed, set aside or stayed and as to which the time to appeal, to petition for certiorari or for rehearing, or to move for relief, to amend or alter, or to make additional findings of fact has expired and as to which no appeal, petition for certiorari or rehearing, or other proceedings for relief, to amend or alter, or make additional findings of fact shall then be pending.

**Grayson Assets**.  Those assets recovered and to be recovered from Jeffrey Grayson and Barclay Grayson, including $500,000 in cash and assets recovered from Barclay Grayson pursuant to a settlement agreement approved by the Court on March 28, 2002, and $720,000 recovered to date from Jeffrey Grayson from proceeds from his Carmel house, his interest in the proceeds of the sale of Capital Center and other assets.

**Money-in/Money-out**.  As defined in Article III, E.

**Non-client Claim Fund**.  A $2.5 million fund out of which all claims other than Administrative Claims and Client Claims will be paid.  The Non-client Claim Fund will be funded, after payment of Administrative Claims, from the same sources used to pay Administrative Claims, excluding Settlement Proceeds.

**Post Receivership Management Fees**.  Amounts billed by the Receiver to Clients for the management of the Private Investment Portfolio after the Receivership Date.

**Pre Receivership Management Fees**.  Amounts billed by CCL to Clients for the management of their investments before the Receivership Date.

**Private Investment Liquidation Proceeds**.  The proceeds obtained by the Receiver from the disposition of the assets comprising the Private Investment Portfolio.

**Private Investment Portfolio.** All CCL's non-public investment vehicles, including unsecured loans and loans secured by real estate and non-real estate collateral, real estate ownership, and unregistered stock or membership interests as of the Receivership Date.

**Reallocated Post Receivership Management Fee.** The Post Receivership Management Fees divided by the value of the Private Investment Liquidation Proceeds, multiplied by the distribution to be made on each Client Claim.

**Receiver.** Thomas F. Lennon, or any successor appointed by the Court.

**Receivership Action or Receivership Cases.** That certain litigation, pending in the Court, known as *Securities and Exchange Commission v. Capital Consultants, LLC, f/k/a Capital Consultants, Inc., Jeffrey L. Grayson, and Barclay Grayson*, Case No. CV 00 −1290-KI, and the companion case known as *Elaine Chao, Secretary of the Department of Labor v .Capital Consultants, LLC, f/k/a Capital Consultants, Inc., Jeffrey L. Grayson, and Barclay Grayson*, Case No. CV 00 −1290-KI the Honorable Garr M. King, District Judge, presiding.

**Receivership Date.** September 21, 2000, the date on which the Receiver was appointed.

**Receivership Recoveries.** Those amounts recovered by the Receiver from the pursuit of fraudulent transfer or preference claims, disallowed or assigned proofs of claim, or other amounts not resulting from the Related Litigation and Mediation or the Private Investment Liquidation Proceeds.

**Related Litigation and Mediation.** Those claims and lawsuits referred to mediation by order of the Court entered January 16, 2001, and those lawsuits initiated by the Receiver for recovery of damages from CCL's service providers.

**Residual Assets.** Any Receivership assets other than Settlement Proceeds and Private Investment Portfolio Proceeds that remain after the payment of Administrative Claims and operational expenses of the Receivership Estate.

**Settlement Proceeds.** Those amounts recovered by settlement or judgment enforcement from the defendants and potential defendants in the Related Litigation and Mediation after deduction of actual attorneys' fees and costs incurred by CCL clients solely in relation to the

creation of the Settlement Funds, and allowed by the Court pursuant to the same application procedure used for the Administrative Claims of the Receiver and his professionals.

**Third Party Recoveries**.  Recoveries, other than Settlement Proceeds, obtained by or for the benefit of CCL Clients, from sources other than the Receivership Estate, including claims asserted against third parties, for damages incurred in connection with the Clients' investments with CCL.

**Trade Claims**.  Claims asserted by vendors and service providers for goods and services rendered to CCL prior to the Receivership Date, including unsecured loans or other advances made to CCL.

## III.    TREATMENT OF CLAIMS

### A.    Administrative Claims

With the exception noted below, administrative claimants with Allowed Claims will be paid in full first from the following sources in order of priority: Grayson Assets, Receivership Recoveries, Post Receivership Management Fees, CCL Business Assets, Settlement Proceeds. Fees and Expenses incurred by the Receiver in connection with his participation in the Related Litigation and Mediation, subject to Court approval for reasonableness, will be paid first from the Settlement Proceeds.

### B.    BOW Allowed Secured Claim

Payments to BOW, including past and future payments totaling $1,560,227.46 will be paid from the Non-client Claim Fund.

### C.    Trade Claims

Trade Claims that are determined to be Allowed Claims, together with Borrower Excess Claims, if any, determined to be Allowed Claims, will be paid pro rata, after payment in full of the BOW Allowed Secured Claim, from the Non-client Claim Fund.

D.     **Borrower Excess Claims**

Borrower Excess Claims that are determined to be Allowed Claims, together with allowed Trade Claims, will be paid pro rata, after payment in full of the BOW Allowed Secured Claim, from the Non-client Claim Fund.

E.     **Client Claims**

With the exception noted below, Client Claims will be paid pro rata from the Private Investment Liquidation Proceeds, the Settlement Proceeds, and Residual Assets.  Distributions will be made on Allowed Client Claims on a Money-in/Money-out basis calculated as follows:

The total of the cost value of the client's Private Investment Portfolio investments as of January 1, 1996, if any, together with all funds and non-cash assets paid by the client to CCL for the funding of any asset in the Private Investment Portfolio or the payment of Pre Receivership Management Fees from January 1, 1996 though September 21, 2000 ("Money-in"), *less* all principal paydowns, interest payments, or other payments in funds, securities or other property credited to the client's account as a result of its investment in the Private Investment Portfolio from January 1, 1996 through September 21, 2000 ("Money-out").  In addition, to the extent the client obtains or has obtained any Third Party Recoveries, 50% of those amounts shall also be treated as Money-out and deducted from the total Money-in.

As a condition to the receipt of an initial distribution and as a condition to any subsequent distributions, and in order to permit the Receiver to monitor Third Party Recoveries and adjust the amount of a Client's Claim, within 30 days of approval of a Distribution Plan by the Court, and each 6-month period thereafter until the date the Receivership Case is otherwise ready to close, each CCL investor creditor must submit to the Receiver, with a copy to the Department of Labor; a sworn statement setting forth:

a)    Amount, identity and coverage information for applicable insurance;

b)    Name, address and services provided by third party advisors to the client during the five years prior to the Receivership Date;

c)    Steps taken to investigate, demand and recover losses from insurers or third party advisors.

Tracing Exception: If a CCL client can present evidence that (1) it instructed CCL to invest in specific investments; (2) CCL complied with those instructions; and (3) CCL did not have and did not exercise any discretion in moving that client's money between investments, that client will have an option to receive a distribution from the proceeds of only those specific investments, based on a traced/asset value, using its Receivership Date principal balance in those investments as it Claim amount. If the client chooses to receive a distribution based on the traced/asset value, the client will not receive any distribution from the Settlement Proceeds. The client must make the election within 30 days after Notice by the Receiver of entry of the Court's Order Implementing this Plan.

## IV.    DISTRIBUTIONS

### F.    Interim Distributions

The Receiver shall make first interim distributions under the Plan as soon as is practicable, but in all events, no later than 60 days after a Final Order is entered by the Court approving the Distribution Plan. Subsequent interim distributions shall be made, subject to the discretion of the Receiver, when material amounts are available to distribute.

### G.    Reserves

In making interim distributions, the Receiver shall reserve for the following contingencies:

1.    Disputed claim amounts. In making interim distributions, the Receiver shall set appropriate reserves to allow a pro rata distribution to be made on the full

amount of a disputed claim until the allowed amount of such claim is finally determined.

2.      Third Party Recoveries:  The Receiver shall establish a reserve, in his *or other amount, subject to Judicial review,* reasonable discretion in the amount of ~~at least~~ 15% of the estimated dividend of each Client Claim until the final distributions are made in order to make adjustments to the final distribution in the event the client obtains any Third Party Recoveries.  As each investor creditor demonstrates that it has exhausted its potential claims for Third-Party Recoveries, the Receiver will release that creditor's percentage interest in the holdback account.  At the close of the case, the Receiver will disburse the remainder of the holdback account according to the unpaid dividends as finally calculated on that date.  There will be no limitation on the amount a client may recover against third parties.  However, if, prior to the close of the case, a Client obtains third-party recoveries in such an amount that the dividends it has already received from the receivership estate exceed those it would be entitled to based on its adjusted claim amount (after deducting 50% of net third-party recoveries), then the Client will be required to return the amount of the overpayment to the Receiver for redistribution to other Clients.

3.      Administrative Claims and Operating Costs:  The Receiver shall also estimate the administrative and operational expenses associated with fully administering the Receivership Estate and set appropriate reserves to cover those expenses.

**H.      Adjustments to Distributions**

For each Allowed Client Claim, the Receiver shall calculate the Reallocated Post Receivership Management Fee for that Client, subtract from that amount the actual Post Receivership Management Fees paid by the Client, and deduct any amounts owed or credit any amounts overpaid, in making the distribution.

In addition, the Receiver shall adjust the distributions to those Clients that received Interim Distributions of Real Estate as provided for in the Order Granting Receiver's Motion

Under Summary Procedures Order to Approve Process for Interim Distribution of Certain Receivership Real Estate Assets entered October 12, 2001.

### I.    Final Distributions

At such time as all Receivership Assets have been fully administered, all Claims have been resolved by Final Order of the Court, and after approval of a final report and accounting, the Receiver shall make a final distribution.

### J.    Distribution of Unclaimed Property

Any distribution of cash under the Plan which is unclaimed after six (6) months following the date of distribution shall be forfeited, and such distribution together with all interest earned thereon and shall become part of the Residual Assets.

## V.    RETENTION OF JURISDICTION

The Court shall have and retain exclusive jurisdiction of matters arising out of, and related to the Receivership Action and the Distribution Plan, and the Related Litigation and Mediation for, among other things, the following purposes:

1. To consider any modification of this Plan.

2. To hear and determine pursuant to the Summary Procedure Order all objections or other disputes with respect to Claims.

3. To protect the property of the Receivership Estate from adverse Claims or interference inconsistent with the Plan.

4. To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in the Plan or any order of the Court.

5. To issue such orders in aid of execution of the Plan as may be necessary and appropriate.

6. To hear and determine all applications for compensation and reimbursement of expenses of professionals.

7.   To hear and determine all litigation, causes of action and all controversies, suits and disputes that may arise in connection with the interpretation, implementation or enforcement of this Plan.

8.   To recover all assets of the Receivership Estate, wherever located.

9.   To enter a Final Decree closing the Receivership Action and discharging the Receiver.

## VI.   MISCELLANEOUS PROVISIONS

The Plan supersedes all prior discussions, understandings, agreements, and documents pertaining or relating to any subject matter of the Plan.  The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner shall affect the provisions or interpretation(s) of the Plan.  All notices, requests and demands to or upon the Receiver to be effective shall be in writing (including, without limitation, by telex or facsimile transmission) addressed as follows:

Thomas F. Lennon
United States District Court Receiver
Capital Consultants, LLC
2300 SW First Avenue, Suite 100
Portland, OR 97201

with a copy to:
David L. Osias, Esq./Jeffrey R. Patterson, Esq.
Allen Matkins Leck Gamble & Mallory LLP
501 West Broadway, Ninth Floor
San Diego, California 92101-3577


Dated: February 14, 2003

Jeffrey R. Patterson
California State Bar No. 126148
(619) 233-1155
Attorney for Receiver Thomas F. Lennon

SECOND AMENDED DISTRIBUTION PLAN                                              Page 11
573441.01/SD

# NOTICE OF ORDER APPROVING DISTRIBUTION PLAN AND RELATED PROCEDURES

On December 5, 2002, the Court issued its Opinion and Order on the Receiver's proposed Distribution Plan (the "Plan"). The opinion directed the Receiver's counsel to prepare an order implementing the Plan. On _____, 2003, the Court entered that order, entitled, Order Implementing Approved Second Amended Distribution Plan (the "Plan Order"). Both the Opinion and the Plan Order are available for review on CCL's website at http://www.capitalconsultantsllc.com.

*Pursuant to the Plan Order, you are receiving this notice which contains important deadlines regarding the claim allowance and distribution process under the Plan. Please review this notice carefully and note the deadlines for taking certain actions.*

## CLAIM ALLOWANCE INFORMATION

### A. NON-INVESTOR CREDITORS

Pursuant to the Receiver's Objection to Specific Claims the claim amounts of non-investor creditors of CCL were determined. Pursuant to the Opinion and Plan Order non-investor creditors will paid pro rata from the Non-client Claim Fund of $2.5 million, after payment in full of the secured Bank of the West claim of $1,631,000. At the time of this notice all non-administrative, non-investor claims have been resolved and total of approximately $2.5 million. The Receiver anticipates making distributions to non-investor creditors by the end of May 2003. *The balance of the information in this notice relates to Investor Creditors only.*

### B. INVESTOR CREDITORS

Pursuant to the Opinion and Plan Order, the Court adopted the Receiver's proposal for calculating the claims of CCL investors on a money-in/money-out basis. Attached to this notice

is a summary of the money-in/money-out calculation for your account in amount and as a relative percentage in the receivership estate, and cash ledger reports maintained by CCL and used to arrive at the calculation.  The final allowed claim amount will be further adjusted to deduct 50% of any third party recoveries as discussed below.  The summary also reflects the amount of post-receivership management fees you have paid according to CCL's records.  The post receivership management fee amount is provided as that figure will be used to adjust the ultimate dividend amount as described in section IV.H. of the Plan.

If you agree with the money-in/money-out calculation and the amount of post receivership management fees paid, you do not need to respond to this notice *in that regard.*  If, however, you dispute either the claim calculation or the management fees amount, you must submit to the Receiver's counsel, at the address indicated below a statement of your calculation of the claim amount or post receivership management fees and any evidence in support thereof. *STATEMENTS DISPUTING THE CLAIM CALCULATION OR POST RECEIVERSHIP MANAGEMENT FEES MUST BE SUBMITTED TO RECEIVERS' COUNSEL BY APRIL____, 2003*.  The Receiver's counsel will then contact you or your counsel, as appropriate, in an effort to resolve any dispute over claim calculation or management fees.  If the parties cannot resolve the dispute, it will be submitted to the Court for resolution.  The Court will resolve the dispute in a summary procedure, with or without further hearing, at the Court's discretion.

### THIRD PARTY RECOVERY INFORMATION

Pursuant to the Opinion and Plan Order, fifty percent of any recoveries, net of legal expenses, obtained by CCL clients from third parties for damages incurred in connection with the Clients' investments with CCL will be deducted from the otherwise allowed amount of their

claim.  These third party recoveries do not include amounts recovered in settlement of the

Related Litigation, pursuant to the settlements approved by the Court on June 22, 2002 (the

"Settlement Proceeds").  In order for the Receiver to monitor third party recoveries, it is a

condition to the receipt of an initial distribution and a condition to any subsequent distributions,

that *each CCL investor creditor must submit to the Receiver, **BY APRIL __, 2003**,*[1] *a sworn

statement setting forth the following*:

> *(a)  the amount, identity and coverage information for any applicable insurance;*

> *(b)  the name, address and services provided by any third party advisors to the client

during the five years prior to the Receivership Date;*

> *(c)  steps taken to investigate, demand and recover losses from insurers or third party

advisors;*

> *(d)  Any agreements for and/or the gross amount of any actual third party recoveries

received or to be received; and*

> *(e)  The amount of any legal expenses incurred in obtaining any third party recoveries.*

> *In addition, each client must submit an updated statement containing the same

information each six month period thereafter, or October __, 2003, April __, 2004, etc., until

such time as the Receivership case is otherwise ready to close.*

## APPLICATIONS FOR ATTORNEYS' FEES AND COSTS INCURRED IN RELATION TO THE CREATION OF SETTLEMENT FUNDS

Any CCL client that incurred attorneys' fees or costs that relate to the creation of the

Settlement Funds may apply to the Court to have those attorneys' fees paid from the Settlement

---

[1]      If you are a CCL client governed by the provisions of ERISA, you must also submit a
copy of your statement to the Department of Labor in care of Stacey Elias, U.S. Department of
Labor, Plan Benefits Security Division, P.O. Box 1914, Washington, D.C.  20013-1914.

Funds.  In order to apply to the Court, those clients must submit to the Receiver **BY APRIL ___,**

**2003**, a notice of their intent to apply, including the amounts sought to be reimbursed and

detailed backup supporting same.

## TRACING EXCEPTION

The Plan provides a limited tracing exception to pro rata distribution for those clients

who so elect and qualify as described below.  If you elect to assert the tracing exception and

successfully demonstrate that you qualify for the exception, you will forego any distributions

from the Settlement Proceeds and, instead, will receive only the traced value of your investment

as determined by the Court. *IF YOU ELECT TO ASSERT THE TRACING EXCEPTION,*

*YOU  MUST PROVIDE WRITTEN NOTICE OF YOUR ELECTION TO COUNSEL FOR*

*THE RECEIVER AT THE ADDRESS INDICATED BELOW BY APRIL __, 2003.  WITHIN*

*TWENTY (20) DAYS AFTER MAKING THAT ELECTION, YOU MUST ALSO FILE WITH*

*THE COURT AND SERVE ON THE RECEIVER'S COUNSEL ALL WRITTEN EVIDENCE*

*AND ANY AFFIDAVITS OR SWORN DECLARATIONS UNDER PENALTY OF PERJURY*

*ON WHICH YOU INTEND TO RELY TO PROVE THE FOLLOWING:*

*(a) that you instructed CCL to make specific investments;*

*(b) that CCL complied with those instructions; and*

*(c) that CCL did not have or exercise any discretion in moving your money between*

*investments.*

*In addition, you must include in you submission your contention as to the traced value*

*of your investments and any evidence on which you rely to support your contention.*  After

reviewing the evidence, the court may rule on the tracing exception claim without further hearing

or, if necessary, schedule a telephonic status conference to consider whether further evidence or

oral argument are necessary.

 All submissions required under this notice to be sent to Receiver's counsel should be

mailed to:

  Allen Matkins Leck Gamble and Mallory, LLP
  501 West Broadway, Suite 900
  San Diego, CA 92101
  Attn: David L. Osias/Jeffrey R. Patterson


Dated: _____  _____
                David L. Osias (CA Bar No. 91287)
                Jeffrey R. Patterson (CA Bar No. 126148
                Allen Matkins Leck Gamble & Mallory LLP
                Attorneys for Thomas F. Lennon,
                Receiver for Capital Consultants, LLC