# EXHIBIT A

**UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION**

**SECURITIES EXCHANGE ACT OF 1934**
Release No. 93146 / September 28, 2021

**INVESTMENT ADVISERS ACT OF 1940**
Release No. 5876 / September 28, 2021

**INVESTMENT COMPANY ACT OF 1940**
Release No. 34387 / September 28, 2021

**ADMINISTRATIVE PROCEEDING**
File No. 3-20605

| | |
|---|---|
| In the Matter of<br><br>John Howley,<br><br>Respondent. | **ORDER INSTITUTING ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS, PURSUANT TO SECTIONS 15(b) AND 21C OF THE SECURITIES EXCHANGE ACT OF 1934, SECTION 203(f) OF THE INVESTMENT ADVISERS ACT OF 1940, AND SECTION 9(b) OF THE INVESTMENT COMPANY ACT OF 1940, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER** |

**I.**

The Securities and Exchange Commission (the "Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Sections 15(b)(6) and 21C of the Securities Exchange Act of 1934 (the "Exchange Act"), Section 203(f) of the Investment Advisers Act of 1940 (the "Advisers Act"), and Section 9(b) of the Investment Company Act of 1940 (the "Investment Company Act") against John Howley ("Howley" or "Respondent").

**II.**

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over him and the subject matter of

these proceedings, which are admitted, and except as provided herein in Section V, Respondent consents to the entry of this Order Instituting Administrative and Cease-and-Desist Proceedings, Pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934, Section 203(f) of the Investment Advisers Act of 1940, and Section 9(b) of the Investment Company Act of 1940, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order (the "Order"), as set forth below.

### III.

On the basis of this Order and Respondent's Offer, the Commission finds[1] that:

### SUMMARY

Howley was a registered representative of a dually registered broker-dealer and investment adviser (the "IA/BD") from 1999 through October 2018. From late 2016 through September 2018, Howley suggested that his brokerage customers consider investing in securities offered by Global Credit Recovery LLC ("GCR"), advised them as to the merits of investing in GCR, and helped some of them obtain loans to fund their investments. Howley did not disclose this activity to the IA/BD.

### RESPONDENT

1. Howley is a resident of Naples, Florida. Howley was associated with the IA/BD from 1999 until October 2018 when his association was terminated for failing to disclose private securities transactions. Howley held Series 6 and Series 63 licenses. In September 2019, FINRA barred Howley from associating with any FINRA member after he failed to appear for testimony regarding GCR.

### OTHER RELEVANT INDIVIDUALS AND ENTITIES

2. Kevin B. Merrill, 56, is incarcerated at FCI Allenwood Low in Allenwood, PA. Merrill pleaded guilty to conspiracy to commit wire fraud and wire fraud, and admitted civil liability, in connection with a fraudulent scheme in which, from at least 2013 to September 2018, he sold investments in purported portfolios of charged-off consumer debt through, among other entities, GCR while misappropriating millions of dollars of investors' money.

3. Jay Ledford, 57, is incarcerated at FCI Safford in Safford, AZ. Ledford pleaded guilty to conspiracy to commit wire fraud, identity theft, and money laundering, and admitted civil liability, in connection with a fraudulent scheme in which, from at least 2013 to September 2018, he sold, with Merrill, investments in purported portfolios of charged-off consumer debt while misappropriating millions of dollars of investors' money.

4. Michael Staisil, 53, is a resident of New York, New York. Staisil is not registered with the Commission in any capacity. Staisil was previously associated with formerly registered

---

[1] The findings herein are made pursuant to Respondent's Offer and are not binding on any other person or entity in this or any other proceeding.

broker-dealer Montgomery Securities in the mid-1990s. On September 30, 2020, in connection with Staisil's involvement with GCR, the Commission charged Staisil with violating the antifraud provisions of the Securities Act and Exchange Act, and violating Section 15(a) of the Exchange Act.

5.      GCR is a Maryland limited liability company. Prior to the appointment of a receiver in *SEC v. Merrill, et al.*, 18-CV-2844 (D. Md.) (the "Merrill-Ledford Civil Litigation"), Merrill owned and operated GCR out of Towson, MD. GCR was the primary entity through which Merrill conducted the aforementioned fraudulent scheme. GCR was never registered with the Commission in any capacity.

## FACTS

6.      From at least 2013 to September 2018, Merrill and Ledford, directly, and through entities under their control, raised at least $345 million from more than 230 investors by persuading them to invest in purported portfolios of consumer debt. Merrill and Ledford spent only a fraction of the money they raised on any debt portfolios as promised. Instead, they misappropriated nearly $87 million for themselves and used over $213 million to make Ponzi-like payments to investors to maintain the scheme.

7.      Howley was an insurance agent and was a registered representative associated with the IA/BD with a license to sell, among other securities, mutual funds. As part of his business, Howley provided financial planning services, which provided him the opportunity to talk about potential investment opportunities, including GCR.

8.      Howley was introduced to Merrill and GCR in 2016. He made his first investment in GCR in April 2016. Over time, Howley personally invested a total of $1.75 million in GCR.

9.      In late 2016, Howley hosted a dinner for Merrill to meet prospective investors. Then, in January 2017, Howley compiled a list of more than 100 people he thought might be interested in investing in GCR and provided the list to Merrill and Staisil. Howley, Merrill, and Staisil discussed ways to facilitate having these individuals invest in GCR. Along with Staisil, Howley set aspirational goals for the amount of money that they could help raise for GCR.

10.     During meetings with prospective investors, Howley discussed GCR as a possible investment opportunity. In some instances, Howley discussed with the prospective investor their proposed investment amount and specifics on timing and the various sources of funds available to them.

11.     Howley helped a number of investors obtain a line of credit to fund their investment in GCR. Additionally, Howley acted as a liaison with GCR, including in some instances by forwarding investment checks and signed investment agreements to Merrill at the customers' request.

12.     In his conversations with prospective investors, Howley cited his substantial personal investments in GCR. Customers trusted Howley and relied on his judgment that GCR was a good investment.

13.     The investors that Howley introduced to GCR were offered returns of between 15–19% based on investment size. Based on the account statements Merrill sent to Howley, Howley was to receive a 20% return on his investment. Ultimately though, as the scheme collapsed, Howley did not receive any of this purported return, nor did he receive back any of his $1.75 million investment, or any other compensation from Merrill or GCR, other than relatively minor gifts.

14.     The IA/BD had a policy that only securities approved by the IA/BD may be sold by its registered representatives. Investments in GCR were not approved for sale by the IA/BD. Moreover, the IA/BD prohibited unapproved outside business activities, and did not allow its registered representatives to raise capital for private placements under any circumstances. Howley did not disclose his relationship with GCR to the IA/BD or otherwise obtain approval to offer GCR securities.

15.     While Howley was associated with the IA/BD, approximately 20 investors invested approximately $13 million in GCR. The IA/BD has reimbursed its customers' losses.

## VIOLATIONS

16.     As a result of the conduct described above, Howley willfully[2] violated Section 15(a) of the Exchange Act, which makes it unlawful for any broker or dealer "to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security" unless such broker or dealer is registered in accordance with Section 15(b) of the Exchange Act.

## UNDERTAKING

17.     In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a party, Respondent (i) agrees to appear and be interviewed by Commission staff at such times and places as the staff requests upon reasonable notice; (ii) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (iii) appoints Respondent's attorney as agent to receive service of such notices and subpoenas; (iv) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the party requesting the testimony reimburses Respondent's travel, lodging,

---

[2]     "Willfully," for purposes of imposing relief under Section 15(b) of the Exchange Act "'means no more than that the person charged with the duty knows what he is doing.'" *Wonsover v. SEC*, 205 F.3d 408, 414 (D.C. Cir. 2000) (quoting *Hughes v. SEC*, 174 F.2d 969, 977 (D.C. Cir. 1949)). There is no requirement that the actor "also be aware that he is violating one of the Rules or Acts." *Tager v. SEC*, 344 F.2d 5, 8 (2d Cir. 1965). The decision in *The Robare Group, Ltd. v. SEC*, which construed the term "willfully" for purposes of a differently structured statutory provision, does not alter that standard. 922 F.3d 468, 478-79 (D.C. Cir. 2019) (setting forth the showing required to establish that a person has "willfully omit[ted]" material information from a required disclosure in violation of Section 207 of the Advisers Act).

and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consents to personal jurisdiction over Respondent in any United States District Court for purposes of enforcing any such subpoena.

**IV.**

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondent's Offer.

Accordingly, pursuant to Sections 15(b) and 21C of the Exchange Act, Section 203(f) of the Advisers Act, and Section 9(b) of the Investment Company Act it is hereby ORDERED that:

A. Respondent shall cease and desist from committing or causing any violations and any future violations of Section 15(a) of the Exchange Act.

B. Respondent be, and hereby is, barred from association with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization, participating in any offering of a penny stock, including: acting as a promoter, finder, consultant, agent or other person who engages in activities with a broker, dealer or issuer for purposes of the issuance or trading in any penny stock, or inducing or attempting to induce the purchase or sale of any penny stock, and prohibited from serving or acting as an employee, officer, director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, depositor, or principal underwriter.

C. Within ten (10) days of the entry of this Order, Respondent shall pay a civil monetary penalty in the amount of $30,000 to Gregory S. Milligan, Harney Management Partners, LLC (the "Receiver"), the receiver appointed by the United States District Court for the District of Maryland in the Merrill-Ledford Civil Litigation, for disposition pursuant to any terms ordered by the Court in the Merrill-Ledford Civil Litigation. If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. § 3717.

Payment must be made in one of the following ways: (a) Respondent may transmit payment electronically to the Receiver, who will provide detailed ACH transfer/Fedwire instructions upon request; or (b) Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to Gregory S. Milligan and hand-delivered or mailed to:

Gregory S. Milligan, Receiver
P.O. Box 90099
Austin, Texas 78709-0099

Payments by check or money order must be accompanied by a cover letter identifying Howley as Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Scott A. Thompson, Co-Acting Regional Director, Division of Enforcement, Securities and Exchange Commission, Philadelphia Regional Office, 1617 J.F.K. Blvd, Suite 520, Philadelphia, PA 19103.

D.	Pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002, a Fair Fund is created for the civil money penalty. This Fair Fund may receive the funds from and/or be combined with funds paid by other respondents or defendants, including without limitation defendants in the Merrill-Ledford Civil Litigation. Amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Respondent agrees that in any Related Investor Action, he shall not argue that he is entitled to, nor shall he benefit by, offset or reduction of any award of compensatory damages by the amount of any part of Respondent's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Respondent agrees that he shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the Securities and Exchange Commission. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondent by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

## V.

It is further Ordered that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the findings in this Order are true and admitted by Respondent, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Respondent under this Order or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Respondent of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).

By the Commission.

Vanessa A. Countryman
Secretary