# EXHIBIT B

STATE OF NEW JERSEY
BUREAU OF SECURITIES
P.O. Box 47029
Newark, New Jersey 07101
(973) 504-3600

| | |
|---|---|
| IN THE MATTER OF:<br><br>John C. Howley (CRD No. 2229244),<br><br>Respondent. | **CONSENT PENALTY AND**<br>**REVOCATION ORDER** |

Pursuant to the authority granted to Christopher W. Gerold, Chief of the New Jersey Bureau of Securities ("Bureau Chief"), under the Uniform Securities Law (1997), N.J.S.A. 49:3-47 to -89 ("Securities Law") and certain regulations thereunder, and based upon documents and information obtained during the investigation by the New Jersey Bureau of Securities ("Bureau"), the Bureau Chief hereby finds that there is good cause and it is in the public interest to enter into this Consent Order ("Consent Order") with John C. Howley ("Howley") and Howley hereby agrees to resolve any and all issues in controversy regarding the specific conduct described herein on the terms set forth in this Consent Order.

**WHEREAS,** the Bureau is the State agency with the responsibility to administer and enforce the Securities Law;

**WHEREAS,** N.J.S.A. 49:3-67 authorizes the Bureau Chief from time to time to issue such Orders as are necessary to carry out the provisions of the Securities Law, upon a finding that the action is

necessary and appropriate in the public interest or for the protection of investors or consistent with the purposes fairly intended by the provisions of the Securities Law;

**WHEREAS,** the Bureau has investigated certain of Howley's activities as set forth in this Consent Order;

**WHEREAS,** Howley and the Bureau Chief wish to resolve these issues without the expense and delay that formal proceedings would involve;

**WHEREAS,** Howley consents to the form, content, and entry of this Consent Order. Accordingly, Howley waives the following rights:

   a. To be afforded an opportunity for a hearing on the Bureau Chief's findings of fact and conclusions of law in this Consent Order; and

   b. To seek judicial review of, or otherwise challenge or contest, the validity of this Consent Order;

**WHEREAS,** Howley agrees that solely for the purposes of settling this matter, or any future proceedings by the Bureau solely related to the conduct herein, this Consent Order shall have the same effect as if proven and ordered after a full hearing held pursuant to N.J.S.A. 52:14B-1 to -31; and

**WHEREAS,** this Consent Order concludes the investigation and action by the Bureau Chief and any civil or administrative action that could be commenced, pursuant to the Securities Law, on behalf of the Bureau Chief, as it relates to seeking civil monetary penalties or other relief against Howley for the specific conduct described herein solely as it relates to Howley.

The Bureau Chief makes the following findings of fact and conclusions of law, which Howley neither admits nor denies:

## FINDINGS OF FACT

1. From at least 2016 through 2018 ("Relevant Period"), while acting as an agent of Park Avenue Securities ("Park Avenue") and an insurance agent of Guardian Life Insurance, Howley offered and sold unregistered securities in Global Credit Recovery, LLC ("GCR") in violation of Park Avenue's Written Supervisory Procedures ("WSPs"). GCR, an entity founded and managed by Kevin Merrill ("Merrill"), was ultimately determined to have been a fraudulent investment scheme.

2. In mid-September 2018, Merrill was indicted by a federal grand jury sitting in the United States District of Maryland and GCR was exposed as a $364-million Ponzi scheme. The Securities and Exchange Commission ("SEC") commenced a parallel civil action against Merrill and GCR, in which Merrill and others agreed to permanent injunctive relief with penalties and disgorgement to be determined by the Court at a later date. The GCR Securities became worthless overnight, and Merrill plead guilty and was eventually sentenced to 22 years in prison and ordered to pay at least $189 million in victim restitution, and civilly forfeit certain assets. After learning of Merrill's arrest, Howley disclosed to Park Avenue and Guardian that he had personally purchased GCR Securities and recommended them to his clients in violation of firm policy, Park Avenue and Guardian terminated Howley's affiliation with them.

3. On September 19, 2019, Howley agreed to a permanent bar from the securities industry in an Acceptance, Waiver and Consent ("AWC") with the Financial Industry Regulatory Authority ("FINRA") for failure to appear and provide testimony at an on-the-record interview.

### Respondent

4. Howley, (Central Registration Depository ("CRD") No. 2229244), residing in Rumson, New Jersey, during the relevant time period, was first registered with the Bureau as an agent on March 31, 1992. Most recently, Howley was registered with the Bureau as an agent of Park Avenue Securities, LLC (CRD No. 46173) ("Park Avenue") from May 3, 1999, through November 13, 2018.

5. Park Avenue discharged Howley for violating Park Avenue's rules by failing to disclose private securities transactions and referring of clients to outside investments.

6. Howley has also been licensed as an insurance producer with the New Jersey Department of Banking and Insurance from on or about July 1981 through the present. He conducted his insurance business through Howley Financial Group then forming it as Howley Financial Group, LLC (together, "Howley Financial") on July 24, 2017.

### Relevant Non-Parties

7. GCR was a Maryland limited liability company with its principal place of business in Towson, Maryland. GCR was the entity through which Merrill primarily operated, and GCR sold purported investments in consumer debt portfolios. From at least 2013 to September 2018, Merrill and others raised at least $345 million from more than 230 investors. Contrary to representations to investors, Merrill used only a fraction of the money raised to purchase consumer debt portfolios. Instead, Merrill and others misappropriated nearly $87 million for themselves and used over $213 million to make Ponzi-like payments to investors to maintain the scheme. The investment agreements and other investments offered and sold by Merrill, GCR, and others were securities under the Securities Law.

8. On September 13, 2018, Merrill and two associates were indicted by a federal grand jury sitting in the District of Maryland on conspiracy, wire fraud, identity theft, and money laundering charges, arising from an alleged $364-million investment fraud scheme involving GCR.

9. On October 11, 2019, Merrill was sentenced to 22 years in prison and ordered to pay over $189 million in restitution and to forfeit over $600,000 of assets. He is currently serving his sentence at FCI Allenwood Low in Allenwood, Pennsylvania.

10. The SEC filed a parallel civil complaint against GCR, Merrill, and others alleging various federal securities law violations arising from the operation of the Ponzi scheme.

### Howley Purchased the GCR Unregistered Securities

11. In or about September 2015, Howley became aware of GCR through an insurance client ("RI") who was attempting to raise money for GCR.

12. RI told Howley that he had invested in an entity known as GCR through Merrill. RI explained that GCR sold investments in consumer debt portfolios, and that investors received a percentage of GCR's profits. RI stated that he was pleased with the returns on his GCR investment. Howley expressed interest in the opportunity and began discussing an investment in GCR for his family and his clients.

13. On April 4, 2016, Howley met with Merrill in New York and gave Merrill the GCR investor agreement signed by Howley's wife and a $250,000 check signed by Howley to facilitate their first purchase of unregistered GCR Securities.

14. Howley effected additional investments in GCR on the following dates, all in his wife's name:

   a. An additional $500,000 investment on or about July 22, 2016;

   b. An additional $250,000 investment on or about August 16, 2016;

   c. An additional $250,000 investment on or about November 11, 2016;

   d. An additional $250,000 investment on or about October 17, 2017;

   e. An additional $250,000 on or about May 5, 2018.

15. In total, Howley facilitated the investment of $1,750,000 in unregistered GCR securities between April 2016 and May 2018 without seeking or obtaining prior authorization from Park Avenue.

### Howley Offered and Sold the Unregistered Securities to His Clients

16. Howley offered the unregistered GCR securities to some of his clients at Park Avenue and Guardian, as well as non-client friends.

17. On November 17, 2016, Howley invited a small group of his clients and friends to a presentation about the GCR Securities which Merrill and RI also attended. Among other things, Merrill and RI's presentation explained that investors' funds would be used to purchase debt portfolios and the investors would be able to participate in a portion of the profits from the collections.

### Howley "Sold Away" in Violation of Park Avenue's Policies and Procedures

18. During the Relevant Period, the Park Avenue Registered Representative Compliance Manual ("Park Avenue's Policies") contained a section entitled Private Securities Transaction ("PST")/Private Placements that prohibited "Selling Away," which included that:

   a. Park Avenue agents may only sell securities that have been approved and authorized for sale by Park Avenue, and that appear on the PAS [Park Avenue Securities] approved product list.

   b. Private securities transactions include, but are not limited to:

      - Representation, offer or solicitation and/or sale of unregistered and restricted securities;
      - Securities not on the Park Avenue Approved Product List;
      - Unregistered or unapproved limited partnerships; and
      - Issuance of promissory notes.

   c. The referral of clients or non-clients to an entity or individual for purposes of investing, as well as the facilitation of an investment through the procurement and/or handling of an application, is considered engaging in a private securities transaction, regardless of whether compensation is received.

   d. Agents are required to request and receive written approval from Park Avenue before attempting to offer, solicit, sell or otherwise engage in a private securities transaction. This rule applies regardless of whether the agent wants to engage in the transaction for him or herself, or recommends to a client or prospect that they do so.

19. Howley never disclosed or sought approval from Park Avenue to refer, offer or sell his Park Avenue and/or Guardian clients the unregistered GCR Securities.

20. Further, during the Relevant Period Park Avenue's Polices required Howley to disclose all outside business activities ("OBAs") to the firm and prohibited certain OBAs. Specifically prohibited OBAs included any activities that involve the raising of capital or investment banking, the offering of private securities transactions, and the sales of promissory notes.

21. Howley never disclosed or sought approval from Park Avenue to refer, offer, or sell to his Park Avenue and/or Guardian clients the unregistered GCR Securities in violation of both Park Avenue's policy regarding private securities transactions and its policy regarding OBAs.

### FINRA AWC

22. On September 9, 2019, FINRA accepted the AWC in which Howley consented to findings, without admitting or denying, that included the following:

    a. On July 29, 2019, pursuant to FINRA Rule 8210, FINRA sent Howley a request to appear for on the record testimony regarding an investigation of Howley's activities and to testify on August 26, 2019.

    b. The request was made in connection with a FINRA investigation into allegations regarding the facts detailed in this Order.

    c. On August 7, 2019, Howley's counsel called FINRA acknowledging that Howley had received FINRA's request and advised that Howley would not appear for testimony.

    d. By refusing to appear for testimony as requested by FINRA, Howley violated FINRA Rules 8210 and 2010.

23. In the AWC, Howley consented to the imposition of a sanction barring him from association with any FINRA member firm in any capacity.

### CONCLUSIONS OF LAW

### HOWLEY SOLD UNREGISTERED SECURITIES
### N.J.S.A. 49:3-60

24. The preceding paragraphs are incorporated by reference as though set forth verbatim herein.

25. The GCR Securities are securities as defined in N.J.S.A. 49:3-49(m).

26. The GCR Securities were required to be registered with the Bureau pursuant to N.J.S.A. 49:3-60.

27. The GCR Securities were not registered with the Bureau, not exempt from registration, and not federally covered.

28. Howley offered and sold unregistered securities in violation of N.J.S.A. 49:3-60.

29. Each offer and sale of the GCR Securities constitutes a separate violation of N.J.S.A. 49:3-60 and is cause for the imposition of civil monetary penalties pursuant to N.J.S.A. 49:3-70.1.

## HOWLEY ACTED AS AN AGENT WITHOUT REGISTRATION
### N.J.S.A. 49:3-56(a)

30. The preceding paragraphs are incorporated by reference as though set forth verbatim herein.

31. Howley acted as an agent of GCR, as defined under N.J.S.A 49:3-49(b), in effecting or attempting to effect transactions in securities in and from New Jersey.

32. Howley was not registered with the Bureau as an agent of GCR.

33. Howley violated N.J.S.A. 49:3-56(a), which provides, among other things, that only persons registered with the Bureau may lawfully act as agents.

34. Each offer and sale of the GCR Securities constitutes a separate violation of N.J.S.A. 49:3-56(a), and is cause for the imposition of civil monetary penalties pursuant to N.J.S.A. 49:3-70.1.

## HOWLEY WILLFULLY FAILED TO COMPLY WITH PARK AVENUE'S POLICIES
### N.J.S.A. 49:3-58(a)(1)
### N.J.S.A. 49:3-58(a)(2)(ii)

35. The preceding paragraphs are incorporated by reference into this conclusion of law as though set forth verbatim herein.

36. Howley willfully violated Park Avenue's Policies regarding Selling Away and OBAs by failing to disclose or request approval from Park Avenue to refer, offer, or sell his Park Avenue and/or Guardian clients the unregistered GCR Securities.

37. This is cause, pursuant to N.J.S.A. 49:3-58(a)(2)(ii), to revoke Howley's agent registration.

38. Based upon the foregoing, and pursuant to N.J.S.A. 49:3-58(a)(1), the revocation of Howley's agent registration and certain exemptions is in the public interest.

**<u>HOWLEY IS THE SUBJECT OF AN ORDER OF A SELF-REGULATORY ORGANIZATION EXPELLING HIM FROM A SELF-REGULATORY ORGANIZATION</u>**
**N.J.S.A. 49:3-58(a)(1)**
**N.J.S.A. 49:3-58(a)(2)(vi)**

39. The preceding paragraphs are incorporated by reference as though set forth verbatim herein.

40. Pursuant to N.J.S.A. 49:3-58(a):

> [t]he bureau chief may by order deny, suspend, or revoke any registration if he finds: (1) that the order is in the public interest; and (2) that the applicant or registrant . . . (vi) . . . is the subject of an order of . . . a self-regulatory organization . . . suspending or expelling him from a national securities or commodities association . . . .

41. Having been barred from association with any FINRA member, Howley has effectively been expelled from a self-regulatory organization.

42. This is cause, pursuant to N.J.S.A. 49:3-58(a)(2)(vi), to revoke Howley's agent registration and to deny certain exemptions.

43. Based upon the foregoing, and pursuant to N.J.S.A. 49:3-58(a)(1), the revocation of Howley's registration as an agent and the denial of certain exemptions is in the public interest.

**<u>CONCLUSION</u>**

THEREFORE, it is on this 29th [handwritten] ~~23rd~~ day of December 2021, **ORDERED** and **AGREED** that:

44. The agent registration of Howley is REVOKED;

45. Howley is assessed and liable to pay civil monetary penalties in the amount of $85,000, pursuant to N.J.S.A. 49:3-70.1, for violations of the Securities Law described in this Order, which is immediately due and payable to the "State of New Jersey, Bureau of Securities."

46. Payment of civil monetary penalties shall be made by certified check, bank check, or an attorney trust account check, and delivered to the Bureau at 153 Halsey Street, 6th Floor, Newark, NJ 07102, to the attention of the Bureau Chief. The civil monetary penalty payments shall be deposited in the Securities Enforcement Fund, pursuant to N.J.S.A. 49:3-66.1.

47. All exemptions contained in N.J.S.A. 49:3-50 subsection (a) paragraph 9, 10, and 11 and subsection (b) are hereby DENIED as to Howley.

48. All exemptions to the registration requirements provided by N.J.S.A. 49:3-56(b), N.J.S.A. 49:3-56(c), and N.J.S.A. 49:3-56(g) are hereby DENIED as to Howley.

## ADDITIONAL PROVISIONS

49. This Consent Order shall not bind any person not a party hereto, except as provided herein.

50. Each of the undersigned has read this Consent Order, understands it, and agrees to be bound by its terms.

51. Howley shall cooperate with the Bureau in this investigation or any related litigation, investigation, order, and/or proceeding. Cooperation with the Bureau is material and shall include, but is not limited to:

    a. voluntarily and promptly appearing, without a subpoena and at his own expense, to serve as a witness and testify completely and truthfully in any related litigation, investigation, order, and/or proceeding;

    b. voluntarily and promptly attending and fully participating in any meetings requested by the Bureau;

    c. agreeing to and complying with the terms of the Consent Order; and

    d. voluntarily and promptly responding to the Bureau's requests for documents or information.

52. Howley has read this Consent Order, understands it, and agrees to be bound by its terms. Howley understands that he had the right and opportunity to consult with an attorney regarding this Consent Order.

53. No employee, official of, or person representing the Bureau or the State of New Jersey has made any additional promise or representation to Howley regarding this Consent Order. Nothing contained herein shall in any manner be construed to limit or affect any position that the Bureau, any other government, or any person, including investors, may take in any future or pending action not specifically encompassed herein.

54.  In the event that Howley violates this Consent Order, the Bureau Chief may vacate this Consent Order and take further action against Howley under the Securities Law.

NEW JERSEY BUREAU OF SECURITIES

By: _____  12/29/2021
Christopher W. Gerold
Bureau Chief

DATED: December 23, 2021

_____
John C. Howley

11