**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | Case No. 1:18-cv-02844-RDB |
| **v.** | |
| **KEVIN B. MERRILL, et al.,** | |
| **Defendants.** | |

## RECEIVER GREGORY S. MILLIGAN'S FIFTEENTH QUARTERLY STATUS REPORT FOR THE PERIOD BETWEEN APRIL 1, 2022 AND JUNE 30, 2022

Lynn H. Butler, *pro hac vice*
Jameson J. Watts, *pro hac vice*
HUSCH BLACKWELL LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701
Telephone: (512) 472-5456
Facsimile: (512) 479-1101

Buffey E. Klein, *pro hac vice*
HUSCH BLACKWELL LLP
2001 Ross Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (214) 999-6100
Facsimile: (214) 999-6170

Brian P. Waagner, Fed. Bar No. 14954
HUSCH BLACKWELL LLP
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Telephone: (202) 378-2300
Facsimile: (202) 378-2318

*Attorneys for Receiver Gregory S. Milligan*

## TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................................... 1

II.     OVERVIEW OF THE RECEIVER'S ACTIVITIES .......................................... 2

        A.      Summary of Assets ...................................................................................... 2

                1.      Cash .................................................................................................... 2

                2.      Business Operations & Assets .......................................................... 3

                3.      Real Property ..................................................................................... 3

                4.      Other Property ................................................................................... 3

        B.      Administration and Management ............................................................... 4

                1.      Coordination and Conference with Other Parties ......................... 5

                2.      Activities in Companion Criminal Case .......................................... 5

                3.      Real Property ..................................................................................... 6

                4.      Other Property ................................................................................... 9

                5.      Insurance .......................................................................................... 10

III.    ESTATE ADMINISTRATION ............................................................................ 10

IV.     UNRESOLVED CLAIMS AGAINST RECEIVERSHIP PROPERTY ................... 10

V.      ACCRUED ADMINISTRATIVE EXPENSES ................................................... 11

VI.     TAX MATTERS .................................................................................................... 13

VII.    RECEIVER'S ONGOING INVESTIGATION .................................................. 14

VIII.   CLAIMS DETERMINATION AND DISTRIBUTION PROCESS ........................ 14

IX.     CONCLUSION ...................................................................................................... 16

HB: 4875-3539-6906.5

Receiver Gregory S. Milligan, of the firm Harney Partners (the "Receiver"), respectfully submits this Fifteenth Quarterly Status Report for the Period Between April 1, 2022 and June 30, 2022 (the "Report") in accordance with the Second Amended Order Appointing Temporary Receiver dated September 14, 2021 (Dkt. No. 484) (the "Receivership Order"),[1] and would respectfully show the Court as follows:

## I.  INTRODUCTION

On September 13, 2018, the Securities and Exchange Commission ("SEC") filed a Complaint ("SEC Action") that initiated this action against the Defendants alleging various securities violations arising from the Defendants' operation of a Ponzi scheme.[2]  A more detailed description of the case background is included with the Receiver's prior quarterly status reports (collectively, the "Prior Reports"), which are available on the Receiver's website at https://merrill-ledford.com/case-updates/ and incorporated herein by reference.

Pursuant to the Receivership Order, this Report provides information regarding the assets and liabilities of the Receivership Estate, a summary of the Receiver's activities for the period between April 1, 2022 and June 30, 2022 (the "Applicable Period"), and information regarding claims held by and against the Receivership Estate.  A summary of all the Receiver's receipts and disbursements for the Applicable Period is being filed contemporaneously with this Report and is incorporated herein by reference.

---

[1] A copy of the Receivership Order can be found on the Receiver's website for this SEC Action at:  https://merrill-ledford.com/wp-content/uploads/2021/09/2021-09-14-484-Second-Amended-Order.pdf.

[2] Capitalized terms herein shall have the meaning as used in the Receivership Order unless otherwise noted.

HB: 4875-3539-6906.5

## II.       OVERVIEW OF THE RECEIVER'S ACTIVITIES

During the Applicable Period, the Receiver, in coordination with the federal authorities, has continued to control, or taken steps to assume control of, the Receivership Assets with the objective of preserving the Receivership Assets to maximize the recovery for the Receivership Estate.  As detailed herein, the Receiver has continued the efforts outlined in the Prior Reports, as well as addressed several new issues that have arisen during the Applicable Period.

During the Applicable Period and as discussed in more detail below, the Receiver filed motions to prepare the final two real properties for sale, as well as a motion to dispose of certain personal property of de minimis value.  The Receiver also continued his negotiations related to potential claims against investors who withdrew fictitious profits from the Receivership Parties and resolved two such claims.  Meanwhile, the Receiver has continued to maintain and update the Receivership Estate website, located at www.Merrill-Ledford.com, with relevant and required information regarding asset sales, Claims Procedure, Distribution Plan, and other matters related to the case.

### A.       Summary of Assets

The Receiver continues the process of assuming control and management of all property of the Receivership Estate during the Applicable Period.

#### 1.       Cash

As of June 30, 2022, the Receivership Estate had approximately $61.7 million of cash on hand in Receivership Estate bank accounts under the sole control of the Receiver.  The amount of net cash on hand has increased by approximately $2.5 million during the Applicable Period due to the settlement proceeds from two Net Winners (defined and further discussed below) and the recovery of $145,000 from funds being held by a casino.  The Receiver anticipates that cash on hand will increase during the next applicable period due to further recoveries on claims against

2

third parties, including Clawbacks (defined and further discussed below) and the sale of the two remaining real properties in the Receivership Estate.

### 2.    Business Operations & Assets

All ongoing business operations of the Receivership Parties have been terminated and their assets liquidated, as detailed in the Receiver's eighth quarterly status report.  *See* Dkt. No. 370.

### 3.    Real Property

The Receivership Estate also contains one remaining commercial real property and one remaining residential real property, as discussed in greater detail below.

### 4.    Other Property

Additionally, there are several personal property items that the Receiver has recovered or identified to date, including:

- Other Property.  As provided in the Prior Reports, the Receivership Estate includes several remaining investments made by the Defendants including, but not limited to: (i) jewelry; (ii) a litigation financing arrangement; and (iii) an equity investment in an alternative investment management company.

  Some of the foregoing assets are of unknown value, and the Receiver is in the process of determining the best means to monetize the remaining investments for the benefit of the Receivership Estate.

- Clawbacks.  The Receivership may hold claims ("Clawbacks") against individuals and entities, in addition to the Relief Defendants, that received gifts, donations, or fraudulent transfers from the Receivership Parties.  These individuals and entities may have received funds from the Receivership Parties derived from Ponzi scheme funds fraudulently obtained from investors.  The Clawbacks include potential claims against investors who withdrew fictitious profits from the Receivership Parties (the "Net Winners").  An investor's withdrawn profits may be fictitious, for example, if that party received payments in excess of investments.  On September 14, 2021, the Court authorized the Receiver to investigate and make demands for full repayment of the gift, donation, or fraudulent transfer that may have been received from Receivership Parties. During the Applicable Period, the Receiver continued negotiations with Net Winners and entered into two settlement agreements for the return of the vast majority of the Net Winners' fictitious profits in the respective amounts of $2,200,000.00 and $143,000.00, for a total recovery of $2,343,000.00 during the Applicable Period.  The Receiver intends to file an omnibus motion to approve these two settlement agreements. The Receiver is also in active negotiations with several other Net Winners and has

settled an additional sixteen claims against Net Winners since the end of the Applicable Period through the date of this Report. Of the sixteen settlements, fifteen of the Net Winners have agreed to return 100% of their net winnings. These later settlement agreements will be discussed in more detail in the Receiver's next quarterly status report. Future reports will detail the Receiver's efforts and recoveries in more detail. If settlement negotiations are unsuccessful, the Receiver will, if and as appropriate, seek authority from the Court to file suit against the Net Winners and other recipients of fraudulent transfers.

- <u>Claims against Other Persons or Entities</u>. The Receiver has started to investigate, analyze, and collect evidence regarding potential causes of action against other third parties.

Based upon current available information, which is preliminary and subject to further due diligence, the Receiver team estimates total recoveries from Receivership Assets could range between $55 million and $65 million.[3] Future quarterly reports will have the benefit of additional recoveries, market data regarding assets yet to be monetized, and more due diligence leading to an increasingly accurate estimate of total Receivership Estate recoveries.

**B.    Administration and Management**

The Receiver and his team continue to manage and marshal the Receivership Assets with the goal of maximizing the recovery to the Receivership Estate consistent with concepts outlined in the Initial Preservation Plan (Dkt. No. 54) (the "<u>Preservation Plan</u>")[4] and the Prior Reports. To fulfill his obligations to the Court, the Receiver has undertaken the following tasks during the Applicable Period with respect to the various forms of property in the Receivership Estate.

---

[3] These preliminary estimates do not include any potential clawback or fraudulent transfer claims that are now being pursued by the Receiver and will be detailed in future reports.

[4] A copy of the Initial Preservation Plan can be found on the Receiver's website for this SEC Action at: https://merrill-ledford.com/wp-content/uploads/2019/05/Initial-Preservation-Plan-11.13.18.pdf.

HB: 4875-3539-6906.5

**1.      Coordination and Conference with Other Parties**

Since being appointed in this case, the Receiver has coordinated extensively with the SEC, U.S. Attorney's Office, FBI, and U.S. Marshals Service regarding the identification and safeguarding of Receivership Assets and the Receiver's proposed disposition of the Receivership Assets.  As detailed in greater detail in Prior Reports, the Receiver has also facilitated discussions with criminal counsel for Defendant Kevin B. Merrill ("Merrill") and Defendant Jay B. Ledford ("Ledford"), and counsel for Relief Defendant Amanda Merrill ("Amanda Merrill") and counsel for Relief Defendant Lalaine Ledford ("Lalaine Ledford") (Amanda Merrill and Lalaine Ledford are collectively, the "Relief Defendants"), to obtain their consent to the procedures and proposed disposition of the real property, personal property, and vehicles owned or purchased by Merrill, Ledford, and/or the Relief Defendants.

**2.      Activities in Companion Criminal Case**

As detailed in the Receiver's third quarterly status report, all three individual Defendants in this SEC Action entered plea agreements in the criminal action styled *U.S.A. v. Merrill, et al.*, Case No. 1:18-cr-00465-RDB (the "Criminal Action").  *See* Dkt. No. 177.  On October 11, 2019, the Court entered a Judgment[5] against Merrill in the Criminal Action imposing imprisonment for a term of 240 months on one count and 24 months on another count, to run consecutively, for a total of 264 months, with credit for time served in federal custody since September 18, 2018.  *See* Dkt. No. 146 in the Criminal Action.  On October 29, 2019, the Court entered a Judgment[6] against

---

[5] A copy of the Judgment against Merrill can be found on the Receiver's website for this SEC Action at:    https://merrill-ledford.com/wp-content/uploads/2020/01/2019-10-11-Dkt.-146-Judgment-as-to-Merrill1457.pdf.

[6] A copy of the Judgment against Ledford can be found on the Receiver's website for this SEC Action at:    https://merrill-ledford.com/wp-content/uploads/2020/01/2019-10-29-Dkt.-169-Judgment-as-to-Ledford1458.pdf.

HB: 4875-3539-6906.5

Ledford in the Criminal Action imposing imprisonment for a term of 144 months on one count and 120 months on a second count, to run concurrently, plus 24 months on a third count to run consecutive to the first two counts, for a total of 168 months, with credit for time served in federal custody since September 18, 2018.  *See* Dkt. No. 169 in the Criminal Action.  On January 27, 2020, the Court entered a Judgment against Amanda Merrill in the Criminal Action for conspiracy to obstruct justice.  *See* Dkt. No. 218 in the Criminal Action.

### 3.     Real Property

#### (a)     Overview

As described in Prior Reports, the Receivership Order granted the Receiver authority to "take custody, control, and possession of All Receivership Assets," including real property, and ordered the Receiver to "manage, control, operate, and maintain the Receivership Estate and hold in his possession, custody, and control all Receivership Assets."  Receivership Order, Dkt. No. 62 at ¶ 8.  During the pendency of this case, the Receiver has undertaken the review and analysis of various real estate holdings, including both residential and commercial properties located in Maryland, Florida, Texas, and Nevada.  The Receiver has engaged Sotheby's International Realty, Inc. ("Sotheby's") to assist with the monetization of the majority of the real properties.  On April 23, 2019, the Court entered an Agreed Order on the Sotheby's Motion (the "Merrill Agreed Order") with respect to certain real property owned or purchased by Merrill and/or Amanda Merrill (the "Merrill Real Property"), which established the procedures for the sale of the Merrill Real Property (the "Real Property Sales Procedures").  *See* Dkt. No. 137.[7]  In addition, the Receiver sought and obtained Court approval to retain Coldwell Banker Commercial Amarillo to market

---

[7] A copy of the Merrill Agreed Order can be found on the Receiver's website for this SEC Action at: https://merrill-ledford.com/wp-content/uploads/2019/05/2019-04-29-137-Agreed-Order.pdf.

and, upon further order of the Court, sell the commercial real property owned by Ledford that is located at 2801 Paramount Boulevard, Amarillo, TX 79109.  *See* Dkt. Nos. 185 & 189.

### (b)    Recommended Disposition of Remaining Real Property

The Receivership Estate contains the following remaining real properties that have yet to be monetized:

- 1132 Glade Road, Colleyville, Texas 76034 (the "Glade Road Property"); and
- 2308 Cedar Elm Terrace, Westlake, Texas 76262 (the "Cedar Elm Property").

On December 18, 2013, Frost Bank filed an Abstract of Judgment against King Fischer, Ltd. d/b/a LP Investments, Ltd. ("King Fischer"), Ledford, and Neil A. Patel, recorded as document number D213316737 in the Real Property Records of Tarrant County, in the amount of $5,990,247.61 (the "Frost Judgment Lien").  The Frost Judgment Lien attached to (i) the Cedar Elm Property, which was held in Ledford's name, and (ii) the Glade Road Property, which was held in King Fischer's name.  Ledford and King Fischer are both Receivership Parties in this SEC Action.  *See* Dkt. No. 484 at ¶1.

On March 8, 2021, the Receiver filed the Motion to Approve Settlement Agreement and Release to resolve a disputed lien against the Cedar Elm Property (the "Cedar Elm Settlement"), which the Court approved on March 9, 2021.  *See* Dkt. Nos. 403 & 410.  The Cedar Elm Settlement allowed the Receiver to market and sell the Cedar Elm Property and recover $204,477.92 ahead of the second lienholder, Thomas Preston ("Preston"), whose lien predated the Frost Judgment Lien and was $900,000.00.  Preston would now receive up to $695,522.08 after the first lien and a $204,477.92 payment to the Receiver are satisfied.  Without the Cedar Elm Settlement, the Receiver would not have recovered anything from the sale of the Cedar Elm Property due to the approximate $6 million Frost Judgment that was next in line for payment after the first and second mortgages were satisfied.

On June 17, 2022, the Receiver filed a Motion for Authorization of Sale of Real Property Located at 2308 Cedar Elm Terrace, Westlake, Texas 76262 (Dkt. No. 633) (the "Cedar Elm Sale Motion"), which proposed a sale of the Cedar Elm Property for an all-cash offer of $2,060,000.00. Pursuant to the Cedar Elm Settlement, the Receivership Estate would receive a total of $204,477.92 from the sale proceeds. The Court granted the Cedar Elm Sale Motion after the Applicable Period on July 20, 2022, and the recovery of the sale proceeds will be reflected in the Receiver's next quarterly status report. *See* Dkt. No. 646. The sale of the Cedar Elm Property closed on July 26, 2022. At closing, the first mortgage with Wells Fargo was paid in full, the Receiver received $204,477.92, and Preston received the remaining $677,161.75 after all closing costs and taxes were paid.

On May 23, 2022, the Receiver filed a Motion for Declaratory Relief on Lien Priority and Equitable Subrogation (Dkt. No. 625) (the "Glade Road Motion") with respect to the Glade Road Property. Specifically, the Receiver sought to subordinate all other lienholders and establish a first-priority lien in the amount of $1,663,792.59 in favor of Receivables Portfolio Interchange, Inc. ("Receivables Portfolio"), a Receivership Party, due to Receivables Portfolio's involuntary payoff of the first mortgage owed by King Fischer, another Receivership Party. *See* Dkt. No. 625. The Court granted the Glade Road Motion on June 29, 2022. *See* Dkt. No. 635. Without the Order granting the Glade Road Motion, it is unlikely the Receivership Estate would have recovered any amount from the sale of the Glade Road Property because the $6 million Frost Judgment Lien greatly exceeds the fair market value for the Glade Road Property, which is estimated to be approximately $2 million dollars. The Receiver intends to market and seek approval for the sale of the Glade Road Property, which will be detailed in the Receiver's next quarterly status report.

HB: 4875-3539-6906.5

### 4.      Other Property

The Receiver, independently and through collaboration with the SEC, FBI, and U.S. Attorney's Office, has identified other personal property as described in the Prior Reports. This category of assets includes but is not limited to art, collectibles, jewelry, watches, luggage, and similar luxury items. To maximize recovery to the Receivership Estate, the Receiver has researched and identified various consignment and/or auction outlets for monetizing the different classes of personal property at the appropriate time.

The Receiver previously obtained an Order from the Court to retain Heritage as broker for the Receivership Estate to sell certain categories of personal property that were being held in storage by the Receiver or held by the U.S. Marshals or the FBI ("Heritage Order"). *See* Dkt. No. 272. Heritage and the Receiver had begun noticing and setting dates for auctions as the COVID-19 pandemic began to impact the United States. Heritage provided the Receiver with sales data from other recent sales that confirmed the pandemic had not negatively affected expected sales prices. To ensure there were no unforeseen impacts from COVID-19, the Receiver negotiated a reserve price for each item. The reserve prices ensure that each item receives the minimum amount from its low-end valuation based on the market prior to COVID-19. Heritage continues to hold numerous items that have been contested by the Relief Defendants. The Receiver has protocols in place with Heritage to ensure none of the contested items are sold without the Relief Defendants' consent or further Order of the Court.

The Receiver continues to pursue additional potential Receivership Assets, including:

- at least one additional consumer debt portfolio;
- minority ownership interest in a commercial shopping center;[8]
- a minority interest in a privately-held biosciences company;

---

[8] The Receivership Estate receives approximately $800.00 per month for its interest in the net profit generated by the shopping center.

- $150,000 cash deposit for the purchase of a Porsche;
- additional collectable comics;
- new furniture and furnishings not yet installed in real properties being renovated;
- John Deere tractor;
- probate estate distribution rights;
- a condemnation award related to one of the real properties;
- a minority interest in an Asian-based technology company;
- an oil and gas interest; and
- one or more cryptocurrency accounts.

The Receiver and his counsel are also reviewing other potential Receivership Assets that could result in additional recoveries.

**5.      Insurance**

As referenced above, as of the filing of this Report, each of the real properties owned by the Receivership Estate is adequately insured and additional insurance needs continue to be evaluated.

## III.      <u>ESTATE ADMINISTRATION</u>

The Receiver has continued making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business for discharging his duties as Receiver.   The financial report filed contemporaneously with this Report delineates activity between the operating entities and the balance of the Receivership Estate providing a clearer picture of the separate components of the Receivership Estate.

## IV.      <u>UNRESOLVED CLAIMS AGAINST RECEIVERSHIP PROPERTY</u>

As detailed in the Prior Reports, the Relief Defendants have asserted claims to certain Receivership Assets that are separate and apart from the Claims Procedure.   The Receiver has protocols in place to ensure none of the contested Receivership Assets are sold without the Relief Defendants' consent or further Order of the Court.

## V.  ACCRUED ADMINISTRATIVE EXPENSES

During the Applicable Period, the Receivership Estate accrued administrative expenses comprised of professional fees for the services of the Receiver's team and counsel, along with the Receiver's claims agent, Bankruptcy Management Solutions Inc. d/b/a Stretto ("Stretto"), and tax accountant, BDO, USA, LLP ("BDO").  On April 2, 2022, the Receiver and his counsel each filed fee applications for the period between October 1, 2021 and December 31, 2021 (Dkt. Nos. 608 & 609), which were granted by the Court on June 30, 2022.  *See* Dkt. Nos. 641 & 642. On May 30, 2022, the Receiver filed fee applications for Stretto and BDO for the period ending December 31, 2021 (Dkt. Nos. 626 & 627), which were granted by the Court on June 30, 2022.  *See* Dkt. Nos. 636 & 637.  On June 6, 2022, the Receiver and his counsel each filed fee applications for the period between January 1, 2022 and March 31, 2022 (Dkt. Nos. 628 & 629) (the "Fourteenth Fee Applications"), which were granted by the Court on June 30, 2022.   *See* Dkt. Nos. 638 & 639.

Through the Fourteenth Fee Applications, the Receiver's fees total $2,521,773.75 and costs total $86,330.17, and Husch Blackwell's fees total $2,377,695.75 and its costs total $195,572.32. The total fees and expenses of all Receivership Estate professionals—including commissions paid to brokers, consignors, and auctioneers in conjunction with asset sales—through the Fourteenth Fee Applications total $9,186,139.79, which is 10.17% of the $90,343,846.41 recovered through June 30, 2022 and 14.89% of the $61,706,800.97 available cash on hand as of June 30, 2022.

Below is a detailed summary of all fee applications for the Receiver and his team, including the total fees and expenses incurred during each period and on a daily basis during each period, along with the date each prior fee application was approved by the Court.  As detailed below, Receiver's fees have declined by approximately 95% per day from the first fee application to the Fourteenth Fee Application.

11

| Fee App. No. | Time Period | Dkt. No. | Fees and Expenses | Per Day | Approved On | Dkt. No. |
|---|---|---|---|---|---|---|
| 1st | 9/13/18-10/31/18 | 70 | $ 357,908.89 | $ 7,304.26 | 6/7/2019 | 151 |
| 2nd | 11/1/18-12/31/18 | 118 | $ 301,292.71 | $ 4,939.22 | 6/7/2019 | 151 |
| 3rd | 1/1/19-3/31/19 | 159 | $ 405,380.62 | $ 4,504.23 | 10/4/2019 | 220 |
| 4th | 4/1/19-8/31/19 | 238 | $ 447,644.74 | $ 2,925.78 | 11/20/2019 | 243 |
| 5th | 9/1/19-12/31/19 | 278 | $ 263,152.31 | $ 2,126.71 | 3/12/2020 | 284 |
| 6th | 1/1/20-3/31/20 | 303 | $ 210,272.09 | $ 2,310.68 | 6/24/2020 | 314 |
| 7th | 4/1/20-6/30/20 | 338 | $ 191,503.08 | $ 2,127.81 | 9/1/2020 | 344 |
| 8th | 7/1/20-9/30/20 | 374 | $ 129,818.38 | $ 1,426.58 | 12/17/2020 | 386 |
| 9th | 10/1/20-12/31/20 | 404 | $ 70,651.78 | $ 776.39 | 4/13/2021 | 422 |
| 10th | 1/1/21-3/31/21 | 451 | $ 57,165.12 | $ 642.30 | 7/15/2021 | 462 |
| 11th | 4/1/21-6/30/21 | 487 | $ 67,034.92 | $ 747.96 | 11/29/2021 | 507 |
| 12th | 7/1/21-9/30/21 | 521 | $ 36,357.47 | $ 395.19 | 12/6/2021 | 527 |
| 13th | 10/1/21-12/31/21 | 608 | $ 36,598.13 | $ 397.81 | 6/30/2022 | 641 |
| 14th | 1/1/22-3/31/22 | 628 | $ 33,314.68 | $ 370.16 | 6/30/2022 | 638 |
| Total | | | $ 2,608,094.92 | | | |

Below is a detailed summary of all fee applications for the Receiver's counsel, Husch Blackwell, including the total fees and expenses incurred during each period and on a daily basis during each period, along with the date each prior fee application was approved by the Court. As detailed below, Husch Blackwell's fees have declined by more than 63% per day from the first fee application to the Fourteenth Fee Application.

| Fee App. No. | Time Period | Dkt. No. | Fees and Expenses | Per Day | Approved On | Dkt. No. |
|---|---|---|---|---|---|---|
| 1st | 9/13/18-10/31/18 | 71 | $ 184,169.83 | $ 3,758.57 | 6/7/2019 | 151 |
| 2nd | 11/1/18-12/31/18 | 119 | $ 254,017.68 | $ 3,885.64 | 6/7/2019 | 151 |
| 3rd | 1/1/19-3/31/19 | 160 | $ 288,614.74 | $ 3,186.03 | 10/4/2019 | 220 |
| 4th | 4/1/19-8/31/19 | 239 | $ 402,932.50 | $ 2,546.01 | 11/20/2019 | 244 |
| 5th | 9/1/19-12/31/19 | 279 | $ 188,368.17 | $ 1,527.03 | 3/12/2020 | 285 |
| 6th | 1/1/20-3/31/20 | 304 | $ 185,469.07 | $ 2,025.45 | 6/24/2020 | 315 |
| 7th | 4/1/20-6/30/20 | 339 | $ 214,021.84 | $ 2,180.59 | 9/1/2020 | 345 |
| 8th | 7/1/20-9/30/20 | 375 | $ 183,019.35 | $ 1,759.84 | 12/17/2020 | 387 |
| 9th | 10/1/20-12/31/20 | 405 | $ 99,102.02 | $ 872.60 | 4/13/2021 | 423 |
| 10th | 1/1/21-3/31/21 | 452 | $ 127,379.22 | $ 1,431.23 | 7/15/2021 | 463 |
| 11th | 4/1/21-6/30/21 | 488 | $ 132,386.81 | $ 1,270.17 | 11/29/2021 | 508 |
| 12th | 7/1/21-9/30/21 | 522 | $ 97,222.25 | $ 1,056.76 | 12/6/2021 | 528 |
| 13th | 10/1/21-12/31/21 | 609 | $ 92,492.70 | $ 1,005.36 | 6/30/2022 | 642 |
| 14th | 1/1/22-3/31/22 | 629 | $ 123,891.89 | $ 1,376.58 | 6/30/2022 | 639 |
| Total | | | $ 2,573,088.07 | | | |

At the end of the Applicable Period, the Receiver and his team had incurred approximately $26,000.00 in unpaid fees and expenses for the three-month period ending June 30, 2022, while

the Receiver's counsel has incurred approximately $167,000.00 in unpaid fees and expenses for the same three-month period.

As of June 30, 2022, the Receivership Estate had approximately $61.7 million of cash on hand in Receivership Estate bank accounts under the sole control of the Receiver, and the Receiver team estimates total recoveries from Receivership Assets could range between $55 million and $65 million.[9]

The Receiver anticipates the Receivership Estate will continue to accrue additional administrative expenses going forward with the actual amounts fluctuating commensurate with the activities required to properly administer the Receivership Estate.

## VI.   TAX MATTERS

As indicated in Prior Reports, the Receiver sought and obtained approval to retain BDO as tax accountant for the Receivership Estate to: (i) advise the Receiver on the tax liability of the Receivership Estate and the non-individual Receivership Parties; (ii) prepare and file state and federal tax returns on behalf of the Receivership Estate and the non-individual Receivership Parties; (iii) advise the Receiver on obtaining and maintaining the status of a taxable "Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code for Receivership Funds; and (iv) advise the Receiver on other tax matters related to the administration of the Receivership Estate.  See Dkt. Nos. 198 & 201.  During prior periods, the Receiver worked with BDO to prepare and file 2018, 2019, and 2020 federal and state tax returns for the Receivership Estate, as well as all required 2018, 2019, and 2020 state tax returns.  During the Applicable Period, the Receiver

---

[9] These preliminary estimates do not include any potential clawback or fraudulent transfer claims that have not yet been authorized by the Court or investigated by the Receiver.

HB: 4875-3539-6906.5

worked with BDO to prepare all required 2021 tax returns for filing on or before each applicable deadline.

## VII.   RECEIVER'S ONGOING INVESTIGATION

The Receiver continues his investigation with the assistance of his counsel, Husch Blackwell.  The Receiver will file supplemental reports to the Court for the duration of the Receivership, as required by the Receivership Order.

## VIII.   CLAIMS DETERMINATION AND DISTRIBUTION PROCESS

The Receiver previously obtained authority to identify claimant/creditors and to propose a plan of distribution.[10]  *See* Dkt. No. 222.  With this authority in the SEC Action, the Receiver then conferred with the U.S. Attorney's Office to obtain disclosure and release of information to the Receiver and the SEC, which was originally gathered by the U.S. Attorney's Office and FBI regarding both individual investors and pooled fund investors.  Orders authorizing such disclosure were entered in the Criminal Action at the end of November 2019.  The Receiver and his counsel have attended meetings with the U.S. Attorney's Office, FBI, and SEC to discuss the information developed by those agencies to date that will help facilitate the claims process in the SEC Action without duplicating prior efforts of those agencies.

As noted in the sixth quarterly status report, the Receiver performed a random sampling of investors and their investment activity with the Receivership Parties to confirm the accuracy of the claims analysis prepared by the U.S. Attorney's Office and FBI.  *See* Dkt. No. 291.  The random sampling was also undertaken to confirm the Receiver is in possession of the necessary bank statements, transactional documents, and other supporting documents to evaluate the accuracy of

---

[10] A copy of the Order Granting Motion to Authorize the Receiver to Identify Claimants and Creditors and Propose a Plan to Distribution can be found on the Receiver's website for this SEC Action at: https://merrill-ledford.com/wp-content/uploads/2019/11/2019-10-04-222-Order.pdf.

HB: 4875-3539-6906.5

the expected claims in this case.  After completion of the random sampling, the Receiver has confirmed the accuracy of the U.S. Attorney's Office and FBI's claims analysis, which served as the starting point for the Claims Procedure discussed below.

On February 9, 2021, the Receiver filed the Motion for Order Setting Claims Bar Date, Establishing Claims Procedure, and Approving Notification Process (the "Claims Procedure"). *See* Dkt. No. 395.  On February 10, 2021, the Court entered the Order approving the Claims Procedure and set a claims bar date of May 20, 2021 (the "Claims Bar Date").  *See* Dkt. No. 396. Pursuant to the Claims Procedure, the Receiver and his counsel worked extensively with Stretto during the Applicable Period to respond to questions about the Claims Procedure, review all claims and supporting documents, communicate with claimants, and request additional documents and information from claimants.  Stretto received a total of 274 claims submitted pursuant to the Claims Procedure.  The Receiver sent responses to 83 claimants requesting (i) additional supporting documents or information, or (ii) that the claimant voluntarily withdraw their claim for various reasons.   Following resolution of this process, there are 238 undisputed and allowed claims totaling $166,022,249.69, and there are 36 disputed claims that are the subject of the Receiver's Omnibus Objection to Claims (Dkt. No. 503) (the "Claims Objections").  *See* Dkt. No. 503.  The disputed claims include 8 Known Investor claims for a total amount of $8,672,556.83 and 28 Other Creditor claims for a total amount of $2,811,799.26.

On November 17, 2021, the Receiver filed the Distribution Plan and proposed an interim distribution of $50 million to claimants.  The Receiver proposed the rising tide methodology for the Distribution Plan, which would raise the most injured investors from 100% losses to a 48.86% recovery.  Additional interim and/or final distributions will increase the percentage recovery for those claimants most injured by the Defendants' Ponzi scheme.  Four parties-in-interest filed

objections to the Distribution Plan.  *See* Dkt. Nos. 512, 558, 559, and 565.  The Receiver filed replies in support of the proposed Distribution Plan to address the objections raised by certain claimants, and one claimant filed a surreply after obtaining leave of Court.  *See* Dkt. Nos. 580, 584, 591, and 594.  The Distribution Plan and Claims Objections are pending with the Court.  The Receiver anticipates an interim distribution to claimants upon the Court's resolution of the objections to the Distribution Plan and entry of an order authorizing an interim distribution.

The Receiver has received numerous contacts from potential investor victims requesting information.  The Receiver has provided general status updates and directed such parties to pleadings filed of record in the case that are available on the Receiver's website, including the Receiver's Preservation Plan, Prior Reports, the Claims Procedure, the Claims Objections, and the Distribution Plan.[11]

## IX.   **CONCLUSION**

Accordingly, the Receiver, Gregory S. Milligan, respectfully submits this Fifteenth Quarterly Status Report for the Court's consideration and, for the reasons stated in this Report, recommends the continuation of this Receivership Estate.

Respectfully submitted,

/s/ Lynn H. Butler
Lynn H. Butler, *pro hac vice*
Jameson J. Watts, *pro hac vice*
HUSCH BLACKWELL LLP
111 Congress Ave., Suite 1400
Austin, TX 78701
Tel: (512) 472-5456
Fax: (512) 479-1101
lynn.butler@huschblackwell.com
jameson.watts@huschblackwell.com

---

[11] The Receiver's website for this SEC Action contains a separate section to provide information regarding the claims and distribution process at: https://merrill-ledford.com/claims-process/.

16

Buffey E. Klein, *pro hac vice*
HUSCH BLACKWELL LLP
2001 Ross Avenue, Suite 2000
Dallas, Texas  75201
Tel: (214) 999-6100
Fax: (214) 999-6170
buffey.klein@huschblackwell.com

Brian P. Waagner, Fed. Bar No. 14954
HUSCH BLACKWELL LLP
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Tel: (202) 378-2300
Fax: (202) 378-2318
brian.waagner@huschblackwell.com

*Counsel for Receiver Gregory S. Milligan*

17

## <u>CERTIFICATE OF SERVICE</u>

On July 29, 2022, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court for the District of Maryland, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically through the Court's CM/ECF filing system for all parties who have registered to receive electronic service.  Additionally, the foregoing document was served on the following parties not registered for Court's CM/ECF filing system as indicated below:

**Defendant Kevin B. Merrill (via U.S. Mail):**

Kevin B. Merrill, #64274-037
FCI Allenwood Low
Federal Correctional Institution
P.O. Box 1000
White Deer, PA 17887

**Defendant Jay B. Ledford (via U.S. Mail):**

Jay B. Ledford, #55055-048
FCI Safford
Federal Correctional Institution
P.O. Box 9000
Safford, AZ 85548

**Criminal Counsel for Defendant Kevin B. Merrill (via E-Mail and U.S. Mail):**

Elizabeth Genevieve Oyer
Office of the Federal Public Defender
100 S Charles St Ste 900 Tower II
Baltimore, MD 21201
liz_oyer@fd.org

Maggie Grace
Office of the Federal Public Defender
100 S Charles St, Tower II, 9th Floor
Baltimore, MD 21201
maggie_grace@fd.org

**Criminal Counsel for Defendant Jay B. Ledford (via E-Mail and U.S. Mail):**

Harry J Trainor , Jr
Trainor Billman Bennett and Milko LLP
116 Cathedral St Ste E
Annapolis, MD 21401
htrain@prodigy.net

HB: 4875-3539-6906.5

**Criminal Counsel for Defendant Cameron R. Jezierski (via E-Mail and U.S. Mail):**

Joseph J Aronica
Duane Morris LLP
505 9th St NW Ste 1000
Washington, DC 20004
jjaronica@duanemorris.com

**Criminal Counsel for Relief Defendant Amanda Merrill (via E-Mail and U.S. Mail):**

Addy R. Schmitt
Ian Herbert
Miller & Chevalier Chartered
900 16th St NW
Washington, DC 20006
aschmitt@milchev.com
iherbert@milchev.com

**Baltimore County Office of Law (via E-Mail and U.S. Mail):**

Susan B. Dubin
Baltimore County Office of Law
400 Washington Avenue
Towson, Maryland 21204
sdubin@baltimorecountymd.gov

**Dundalk United Methodist Church (U.S. Mail):**

Dundalk United Methodist Church
c/o Edward F. Mathus
6903 Mornington Road
Baltimore, Maryland 21222

**Lienholders, Tax Assessors, and Other Interested Parties (U.S. Mail):**

Florida Community Bank, N.A.
2325 Vanderbilt Beach Road
Naples, Florida 34109

Mortgage Electronic Registration Systems, Inc.
PO Box 2026
Flint, Michigan 48501-2026

Collier County, Florida Tax Assessor
3291 Tamiami Trail East
Naples, Florida 34112

HB: 4875-3539-6906.5

Maryland Department of Assessments & Taxation
301 W. Preston Street
Baltimore, Maryland 21201-2395

Branch Banking and Trust Company,
A North Carolina Banking Corporation
PO Box 1290
Whiteville, North Carolina 28472

Talbot County, Maryland Finance Office
Talbot County Courthouse
11 North Washington Street, Suite 9
Easton, Maryland 21601

HSBC Bank USA, National Association, as trustee of
J.P. Morgan Alternative Loan Trust 2006-A5
c/o Howard n. Bierman, Trustee
c/o Select Portfolio Servicing, Inc.
3815 Southwest Temple
Salt Lake City, Utah 84115

Clark County, Nevada Tax Assessor
500 S. Grand Central Parkway
Las Vegas, Nevada 89155

First Financial Bank, N.A. Southlake
3205 E. Hwy. 114
PO Box 92840
Southlake, Texas 76092

Hunter Kelsey of Texas, LLC
4131 Spicewood Springs Road, Bldg. J-1A
Austin, Texas 78759

Frost Bank, f/k/a The Frost National Bank
c/o Michael J. Quilling
Quilling, Selander Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201

The City of Colleyville, Texas
c/o Victoria W. Thomas
Nichols, Jackson, Dilard, Hager & Smith, L.L.P.
1800 Lincoln Plaza
500 North Akard
Dallas, Texas 75201

Tarrant County, Texas Tax Assessor
100 E. Weatherford
Fort Worth, Texas 76196

Dallas Central Appraisal District
2949 N. Stemmons Freeway
Dallas, Texas 75247-6195

Bozeman West
PO Box 1970
15632 West Main Street
Bozeman, Montana 59771-1970

Neil A. Patel
5308 Burgandy Court
Colleyville, Texas 76034

TIB – The Independent BankersBank
350 Phelps Court, Suite 200
PO Box 560528i
Dallas, Texas 75356-0528

Wachovia Mortgage, FSB
PO Box 659548
San Antonio, Texas 78265-9548

Denton County Tax Assessor
1505 E. McKinney Street
Denton, Texas 76209-4525

Potter County, Texas Tax Assessor
900 South Polk, Suite 106
Amarillo, Texas 79101

Wells Fargo Home Mortgage
P.O. Box 10335
Des Moines, IA 50306

Albertelli Law
Attn: Coury M. Jacocks
2201 W. Royal Lane, Suite 155
Irving, TX 75063

Samual I. White, P.C.
5040 Corporate Woods Drive, Suite 120
Virginia Beach, VA 23462

Stephen D. Graeff
Dunlap Bennett & Ludwig
8300 Boone Boulevard, #550
Vienna, VA  22182

Kenneth C. Grace
Lash Wilcox & Grace PL
2202 West Shore Blvd.; Suite 200
Tampa, FL 33607

/s/ Lynn H. Butler
Lynn H. Butler

HB: 4875-3539-6906.5