IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | * | |
| | * | |
| Plaintiff, | | Civil Action No. RDB-18-2844 |
| | * | |
| v. | | |
| | * | |
| KEVIN B. MERRILL, *et al.* | | |
| | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

On September 11, 2018, a grand jury in the District of Maryland returned an indictment charging Defendants Kevin B. Merrill, Jay B. Ledford, and Cameron Jezierski with numerous counts, including wire fraud, identity theft, and money-laundering. *See United States v. Kevin B. Merrill, et al.*, Criminal No. RDB-18-0465 (ECF No. 1, unsealed on September 18, 2018, ECF No. 12.) On January 8, 2019, a superseding indictment charged an additional defendant, Amanda Merrill, with conspiracy to obstruct justice. *United States v. Kevin B. Merrill, et al.*, Criminal No. RDB-18-0465 (Superseding Indictment, ECF No. 60). Kevin Merrill, Jay Ledford, Cameron Jezierski, and Amanda Merrill have all since pled guilty and were sentenced by this Court in the criminal case. *Id.* (ECF Nos. 76, 81, 87, 140, 146, 169, 183, 218).

The Securities and Exchange Commission ("SEC") ultimately filed this action alleging that Kevin Merrill, Jay Ledford, and Cameron Jezierski (collectively, the "Defendants") raised more than $345 million from over 230 investors to purportedly purchase consumer debt portfolios. (Compl., ECF No. 1.) The SEC alleges that from at least 2013 to 2018, the Defendants operated a Ponzi-like scheme that involved, among other things, securities

offerings "rife with misrepresentations," fake debt, forged signatures, fabricated wire transfers, the movement of millions of dollars into personal accounts, and an elaborate scheme wherein Defendants offered and sold investments in the same debt and/or debt portfolios, to multiple victims. (Compl., ECF No. 1 ¶ 1.) Judgements in this civil action have been entered against Jezierski (ECF No. 181), Jay Ledford (ECF No. 196), and Kevin Merrill (ECF No. 211). On November 6, 2018, the SEC filed an Amended Complaint, adding Amanda Merrill ("Ms. Merrill") and Lalaine Ledford as Relief Defendants.[1]  (Am. Compl., ECF No. 50.)

This Court conducted a hearing on November 15, 2022, for oral arguments concerning various pending motions, including the Receiver Gregory Milligan's Motion for Interim Distribution (ECF No. 504) of funds to the victims of this Ponzi scheme. Several parties objected to the Receiver's Motion based on either the proposed framework or personal categorizations within the plan. (ECF Nos. 512, 558, 559, 565). Presently before this Court are objections by Claimants CCWB Asset Investments, LLC, ECB Asset Investment, LLC, and M.C. Dean, Inc. (collectively the "Virginia Group" or "Dean Group") (ECF No. 558) and objections by Claimants Jeffrey J. Connaughton, Tony Davis, Barbara Louderback, Rochelle Katz, Scott D. Oser, Ojas Patel, Pulin Patel, Dhaval Shukla, and Nishant Shukla (collectively the "Connaughton Group") (ECF No. 559). The Court has considered the relevant filings (ECF Nos. 558, 559, 584, *SEALED* 591, 594, 684) and arguments presented during the

---

[1] A "relief defendant" or a "nominal defendant" is someone who is not accused of violating the securities laws but who is nevertheless in possession of funds that the violator passed along to him or her. *See supra* (citing *CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 191-2 (4th Cir. 2002) ("a nominal defendant is part of a suit only as the holder of assets that must be recovered in order to afford complete relief; no cause of action is asserted against a nominal defendant")).  Ms. Merrill's plea of guilty as to obstruction of justice in the criminal case did not implicate her in the Ponzi scheme which is the subject of this securities enforcement action, and she has not been accused of any wrongdoing in this civil case.

hearing. For the reasons explained below, objections by the Virginia Group and the Connaughton Group are OVERRULED.

## BACKGROUND

On November 17, 2021, the Receiver Gregory Milligan submitted a proposed distribution plan for the Receivership Estate and sought authorization for a $50 million interim distribution. (ECF No. 504). The plan creates a hierarchy for distribution and groups Claimants into five classes. *Id.* The classes are divided into priorities based on the types of claims against the receivership. *Id.* The classes include: Class 1: administrative professional fees and claims; Class 2: priority claims; Class 3: secured claims; Class 4a: investor claims; Class 4b: general unsecured claims; Class 5: insider claims. *Id.*

In the instant objections, the parties do not contest their Class appointments, but instead argue against the methodology used to determine their owed distributions. The Class 4a Virginia Group contests that their withdrawals from the Merrill Ponzi[2] scheme should not be considered as recovery from the scheme when those withdrawals were subsequently reinvested into the scheme. (ECF No. 558 at 2). The Class 4a Connaughton Group argues that their third-party settlements should not be counted against their owed distributions. (ECF No. 559 at 4). In applying principles of equity and reasonableness, this Court finds that the Receiver's proposed treatment of the Virginia Group and Connaughton Group in the distribution plan is fair and reasonable, and therefore their corresponding objections shall be overruled.

---

[2] Black's law dictionary defines a Ponzi scheme as a "fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments." PONZI SCHEME, Black's Law Dictionary (11th ed. 2019).

## STANDARD OF REVIEW

A district court "has 'broad equitable power' in approving a distribution plan." *Sec. Exch. Comm'n. v. Quan*, 870 F.3d 754, 762 (8th Cir. 2017). "In supervising an equitable receivership, the primary job of the district court is to ensure that the proposed plan of distribution is fair and reasonable." *Sec. Exch. Comm'n. v. Wealth Mgmt. LLC*, 628 F.3d 323, 332 (7th Cir. 2010). "[T]he receiver's choice among allocation schemes [is] one within the discretion of the district court to approve or disapprove, like other aspects of the administration of a receivership." *Sec. Exch. Comm'n. v. Huber*, 702 F.3d 903, 908 (7th Cir. 2012).

"[T]he SEC's charge to enforce the securities laws carries with it the discretion to determine how to distribute recovered profits among injured investors." *Off. Comm. of Unsecured Creditors of WorldCom, Inc. v. Sec. Exch. Comm'n.*, 467 F.3d 73, 84 (2d Cir. 2006). "[D]istrict courts supervising receiverships have the power to 'classify claims sensibly.'" *Wealth Mgmt.*, 628 F.3d 323 at 333 (citing *Sec. Exch. Comm'n. v. Enter. Tr. Co.*, 559 F.3d 649, 651 (7th Cir. 2009)). "This power includes the authority to subordinate the claims of certain investors to ensure equal treatment." *Id.* Relevant to the Class 4 claims, "[r]ising tide appears to be the method most commonly used (and judicially approved) for apportioning receivership assets." *Huber*, 702 F.3d at 906 (collecting cases).

## VIRGINIA/DEAN GROUP OBJECTION

As Class 4a investors, the Virginia Group's owed distribution is calculated using the "rising tide" method under the Receiver's distribution plan. "Under the rising tide method,

4

withdrawals are considered part of the distribution received by an investor and so are subtracted from the amount of the receivership assets to which he would be entitled had there been no withdrawals." *Huber*, 702 F.3d at 905. Consequently, the rising tide method, as compared to the net loss method, inevitably disadvantages those that withdraw from a Ponzi scheme as their distribution relief is less. *Id.* at 906. However, where the percentage of investors that would receive some reimbursement is greater under the rising tide method, such methodology is more likely to "maximize the overall utility of the investors." *Id.* at 907. In *Huber*, the United States Court of Appeals for the Seventh Circuit noted in *dicta* that in a hypothetical situation where an investor reinvests his withdrawal into the Ponzi scheme, a receiver might apply a "maximum balance" approach. 702 F.3d at 907-08. Under this approach, the maximum balance in a Ponzi scheme "should be treated as his investment; the withdrawals, having in effect been rescinded, should be ignored." *Id.* at 907. The Seventh Circuit ultimately declined to pursue such a scenario between there existed no "discussion in case law or commentary of this 'maximum balance' approach." *Id.* at 907-08.

Under the distribution plan, the Class 4a Claimants' owed distribution accounts for pre-receivership withdrawals. (ECF No. 504 at 16). As a result, the pre-receivership withdrawals "are credited dollar-for-dollar from the principal amount they invested with the Receivership Parties." *Id.* The individual entities that comprise the Virginia Group each reinvested their withdrawals and therefore contend that they "received no benefit at the expense" of other investors in the Ponzi scheme, and therefore they "should receive distributions based on their having recovered the portion of their principal investments reflected by those small withdrawals." (ECF No. 558 at 8.) In effect, the Virginia Group argues

5

that the Receiver should instead apply this "maximum balance" approach discussed by the Seventh Circuit. *Id.* at 10. Alternatively, it argues that the Court should otherwise apply a net loss method, as the rising tide method is "unfair and inequitable to Investors and all other victims who have reinvested withdrawals." *Id.*

As the Receiver notes, the Virginia Group's proposed calculations under this "maximum balance" approach have not been adopted by any other court to date. (ECF No. 584 at 1-2). With equity in mind, the Receiver aptly highlights that "the 'maximum balance' approach as requested in the Objection would be extremely difficult from an administrative perspective, would require extensive time and resources that would further diminish the limited assets of the Receivership Estate, and is prone to inaccuracies." *Id.* at 2. Furthermore, and as discussed in this Court's hearing, the concerns and potential solutions explained in *Huber* about reinvestments are dicta; the Seventh Circuit expressly mentioned that there was no precedent for this maximum balance approach. 702 F.3d at 907-08. Despite the Virginia Group's emphasis on their own equitable distribution, their arguments omit the fact that when each entity withdrew money, there was a benefit from that withdrawal, however big or small. Further, the sheer number of transactions between the Virginia Group entities and the Merrill Ponzi Scheme is such that identifying and tracing the origin of all of the Group's funds for each reinvestment would be impracticable. As the Receiver explained during the hearing, the Virginia' Group's proposed method of calculation is a subjective test that is not founded in equity. Accordingly, the Virginia Group's objection (ECF No. 558) is OVERRULED.

## CONNAUGHTON GROUP OBJECTION

The Connaughton Group is comprised of individuals categorized as Class 4 Claimants that have received money from third-party settlements. According to the distribution plan, the distributions owed to these Claimants is lessened by the amount they received in those third-party settlements. (ECF No. 504). In their objection, the Connaughton Group argues that the distribution calculation has the effect of disincentivizing victims of Ponzi schemes from settling with third parties. (ECF No. 559). The Group asserts that the Receiver should not consider third-party recoveries, or instead should merely factor those recoveries, when making distributions. *Id.* The Receiver has responded that the Connaughton Group's request would "result in these few investors receiving a disproportionately higher recovery on their investment as compared to other victims." (*SEALED* ECF No. 591 at 1). The Receiver appropriately notes that the United States Court of Appeals for the Ninth Circuit has rejected the same argument that the Connaughton Group advances. *Id.* (citing *Sec. Exch. Comm'n. v. Capital Consultants, LLC*, 397 F.3d 733, 743 (9th Cir. 2005).

The Ninth Circuit in *SEC v. Capital Consultants* stated that a "judge is allowed to reduce a judgment in his own court to reflect the amount a plaintiff has already received from another party or in another proceeding." 397 F.3d at 742. This is especially true where there are limited funds and the court attempts to fashion a more equitable distribution of those limited funds. *Id.* Here, this Court rejects the Connaughton Group's objection, namely for the principle that under the Connaughton proposed calculation, the Connaughton Objectors would receive "a disproportionately higher recovery on their investment as compared to other victims." (*SEALED* ECF No. 591 at 1). To illustrate, the Connaughton Group received an average 57.72% percent recovery from their settlement efforts, which is about "9% higher than the

7

48.86% recovery the most injured investors in this SEC Action will receive from the proposed interim distribution." *Id.* at 6. As the Receiver states, the Connaughton Group will receive distributions from the Estate once the rising tide reaches the 57.72% recovery rate as presently received by the Connaughton Group, so recovery from the Receivership Estate is not wholly precluded. With this Court's broad equitable power, and with fairness and reasonableness in mind, the Connaughton Group's objection (ECF No. 559) is OVERRULED.

## CONCLUSION

Accordingly, IT IS this 18th day of November 2022, hereby **ORDERED** that the Virginia Group's objection (ECF No. 558) to Receiver Gregory Milligan's Motion for Order Approving Distribution Plan and Interim Distribution (ECF No. 504) is **OVERRULED**. Similarly, the Connaughton Group's objection (ECF No. 559) is **OVERRULED**.

　　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　Richard D. Bennett
　　　　　　　　　　　　　　　　　　United States District Judge